UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

LORRAINE WETZEL,

                    Plaintiff,

           -against-

THE TOWN BOARD OF ORANGETOWN,
THE TOWN OF ORANGETOWN,
THOM KLEINER, MARIE MANNING AND
DENIS TROY,

               Defendants.
------------------------------------------------------------------------ x

**DECLARATION IN SUPPORT
OF MOTION TO DISMISS**

08 Civ. 0196 (SCR)

*ECF Case*

       I, **LANCE H. KLEIN,** an attorney duly admitted to practice before the Courts of the

State of New York and before the United States District Court, Southern District of New York,

declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and

correct:

       1.      I am a member of the law firm of Keane & Beane, P.C., which is attorney for

Defendants the Town Board of Orangetown (the "Board"), the Town of Orangetown (the

"Town"), Thom Kleiner, Marie Manning and Denis Troy (collectively the "Defendants").  I

make this Declaration for the purpose of submitting to this Court documentary evidence as

introduced below, in support of Defendants' motion made pursuant to Fed. R. Civ. P. 12(b)(1)

and 12(b)(6), for an order: (i) dismissing the second, third and fourth causes of action in the

Complaint; (ii) dismissing the Complaint as asserted against Thom Kleiner, Marie Manning and

Denis Troy; (iii) striking Exhibit A to the Complaint; (iv) staying the adjudication of this action

until certain claims related to a disciplinary proceeding in *Wetzel v. Town of Orangetown, et al.,*

06 Civ. 6117 (SCR) ("*Wetzel III*"), are resolved; and (v) awarding the Defendants such other and further relief as the Court deems just and proper.

2.    A true copy of the Complaint, without its Exhibits, in this action is annexed hereto as Exhibit "A".

3.    A true copy of the Exhibits to the Complaint in this action are annexed hereto as Exhibit "B".

4.    A copy of the Rockland County Police Act, which is Chapter 526 of the Laws of 1936 of the State of New York, together with its amendments, is annexed hereto as Exhibit "C".

5.    A true copy of a letter from Bunyan & Baumgartner LLP to Keane & Beane, P.C., dated November 30, 2004, which requests that the disciplinary charges against Plaintiff be held in abeyance, is annexed hereto as Exhibit "D".

6.    A true copy of a letter from Joseph E. Wooley, Esq. to Bunyan and Baumgartner LLP and to Keane & Beane, P.C., dated June 29, 2006, is annexed hereto as Exhibit "E".

7.    A true copy of a letter to Michael D. Diederich, Jr., Esq. from me, dated July 5, 2006, is annexed hereto as Exhibit "F".

8.    A hearing was held with respect to the certain disciplinary charges preferred against Plaintiff on September 7, 2004 (the "Disciplinary Hearing"). This hearing commenced on July 11, 2006 and continued on August 4, 2006, September 6, 2006, September 8, 2006, September 14, 2006, September 20, 2006, October 17, 2006, October 18, 2006 and November 1, 2006. The Disciplinary Hearing was closed on November 1, 2006. A true copy of relevant excerpts from the transcripts of the each date of the Disciplinary Hearing are annexed hereto respectively, in chronological order, as Exhibits "G", "H", "I", "J", "K", "L", "M", "N" and "O".

9.    In or about August 2007, the record of the Disciplinary Hearing was provided to the Town Attorney of the Town of Orangetown for the Town Board's consideration. The record consisted of the transcripts of each day of the hearing and all exhibits admitted into evidence during the hearing (both documentary and electronic). The transmittal of the record to the Town Board was delayed due to an Order to Show Cause and Preliminary Injunction motion brought by Plaintiff's counsel in a related action *Colandrea v. Town of Orangetown, et al.,* 06 Civ. 11441 (SCR).

10.    A true copy of a letter to Supervisor Kleiner, Councilwoman Manning and Councilmen Morr, O'Donnell and Troy from Michael D. Diederich, Jr., Esq., dated September 21, 2006, is annexed hereto as Exhibit "P".

11.    On December 10, 2007, for five (5) minutes each counsel for Plaintiff and I addressed the Town Board of the Town of Orangetown with regard to certain disciplinary charges preferred against Plaintiff. (*See* Exhibit A, ¶ 67). At the beginning of his presentation to the Town Board, Plaintiff's counsel submitted a letter addressed to Supervisor Kleiner and Councilmembers Manning, Morr, O'Donnell and Troy that was dated December 10, 2007 and a true copy of the letter is annexed hereto as Exhibit "Q".

12.    A true copy of a letter to and So-Ordered by Your Honor from Stephanie L. Burns, Esq. of Keane & Beane, P.C., dated February 21, 2008, is annexed hereto as Exhibit "R".

13.    A true copy of a letter to and So-Ordered by Your Honor from Lance H. Klein, Esq. of Keane & Beane, P.C., dated March 27, 2008, is annexed hereto as Exhibit "S".

14.    A true copy of an Order Adopting Report and Recommendation issued by Your Honor concerning *Wetzel v. Town of Orangetown, et al.*, 06 CIV. 5144 (SCR) (*"Wetzel II"*), which is dated October 12, 2007, is annexed hereto as Exhibit "T".

15.    A true copy of the Amended Complaint in *Wetzel III*, dated July 9, 2007, without its exhibits, is annexed hereto as Exhibit "U".

16.    A true copy of the Amended Complaint in *Wetzel II*, dated August 10, 2006, is annexed hereto as Exhibit "V".

Dated:    White Plains, New York
          April 4, 2008

LANCE H. KLEIN (LK 8243)

Klein Declaration In Support of Motion to Dismiss *Wetzel VI*

| Exhibit | Description |
|---------|-------------|
| A | Complaint in this action without its exhibits |
| B | Exhibits to the Complaint in this action |
| C | Rockland County Police Act & its Amendments |
| D | Letter to Keane & Beane, P.C. from Bunyan & Baumgartner LLP, dated 11/30/04 |
| E | Letter to Bunyan & Baumgartner, LLP and Keane & Beane, P.C. from Joseph E. Wooley, Esq., dated 6/29/06 |
| F | Letter to Michael Diederich, Jr., Esq. from Lance H. Klein, dated 7/5/06 |
| G | Excerpt of July 11, 2006 Transcript of the Disciplinary Hearing pages 1, 121-22, 194, 261, 280, 292, 294-95 |
| H | Excerpt of August 4, 2006 Transcript of the Disciplinary Hearing pages 297, 308-309, 327-28, 376-77, 418, 420-21, 425, 468-69, 496-499 |
| I | Excerpt of September 6, 2006 Transcript of the Disciplinary Hearing pages 501, 508-509, 559, 563, 701-702, 728 |
| J | Excerpt of September 8, 2006 Transcript of the Disciplinary Hearing pages 730, 746-47, 839, 898, 910 |
| K | Excerpt of September 14, 2006 Transcript of the Disciplinary Hearing pages 912, 928, 1182-84, 1188 |
| L | Excerpt of September 20, 2006 Transcript of the Disciplinary Hearing pages 1190, 1194, 1397, 1400-01 |
| M | Excerpt of October 17, 2006 Transcript of the Disciplinary Hearing pages 1403, 1422, 1662, 1665 |
| N | Excerpt of October 18, 2006 Transcript of the Disciplinary Hearing pages 1667, 1697, 1771-72, 1865-66, 1892-94 |
| O | Excerpt of November 1, 2006 Transcript of the Disciplinary Hearing pages 1896, 1904, 2211, 2221-24 |
| P | Letter to the members of the Town Board of the Town of Orangetown from Michael Diederich, Jr., Esq., dated 9/21/06 |

Klein Declaration In Support of Motion to Dismiss *Wetzel VI*

| Exhibit | Description |
|---------|-------------|
| Q | Letter to the members of the Town Board of the Town of Orangetown from Michael Diederich, Jr., Esq., dated 12/10/07 |
| R | Memo Endorsed Letter to Honorable Stephen C. Robinson, U.S.D.J. from Stephanie L. Burns, Esq., dated 2/21/08 |
| S | Memo Endorsed Letter to Honorable Stephen C. Robinson, U.S.D.J. from Lance H. Klein, dated 3/27/08 |
| T | Order Adopting Report and Recommendation, dated 10/12/07 |
| U | *Wetzel III* Amended Complaint, without its exhibits |
| V | *Wetzel II* Amended Complaint |

**EXHIBIT A**

(1 of 2)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
LORRAINE WETZEL,

                Plaintiff,

    -against-

THE TOWN BOARD OF ORANGETOWN,
THE TOWN OF ORANGETOWN,
THOM KLEINER, MARIE MANNING AND
DENIS TROY,

                Defendants
------------------------------------------------------------------

**COMPLAINT**

("*Wetzel 6*")

08 Civ. 0196   *"ECF Case"*

### Complaint's Preliminary Statement

    *This complaint ("Wetzel 6") challenges, on due process and equal protection grounds, the action of the Defendant Town Board in adjudging Plaintiff Lorraine Wetzel guilty of disciplinary infractions, and imposing a 10 day suspension, based upon an unauthorized trial conducted in a constitutionally abusive manner before an uncredentialed and completely partisan "hearing officer" apparently selected by the municipal prosecutor (the Town's outside labor counsel) for the purpose of convicting Lt. Wetzel, regardless of the actual evidence, because of her opposition to the Town's unlawful discrimination.*

    *The challenged action is the most recent in a series of abusive actions taken by the Town and its agents in retaliation for Plaintiff's opposition to unlawful and unconstitutional discrimination, including the* Wetzel 1, *Wetzel 2,* Wetzel 3, *and* Wetzel 4 *federal lawsuits referenced below, and* Wetzel 5, *Plaintiff's freedom of information lawsuit uncovering the Town labor counsel's $1 million+ billings for "police personnel matters."*

    *A public employee, including a female police lieutenant, has a property interest in her public employment and the reasonable expectation that she will not be deprived of such without good cause. She also has a reasonable expectation that her municipal employer will act in good faith and fairly, and not abusively with reprisal, in her public employment.*

    *As described below, and in the annexed Exhibit "4" entitled "Manual for Municipal Reprisal," the Defendant Town and its agents (its outside counsel, its Police Chief and its henchman hearing officer)have prosecuted an administrative disciplinary case in a manner which violates Plaintiff's federal rights to the equal protection of the law and to due process of law. Plaintiff requests that the disciplinary proceeding be declared void and a nullity, and remanded to the Town Board. She also seeks damages for her unlawful suspension from work and as otherwise appropriate and authorized by law.*

### THE COMPLAINT

    Plaintiff Lorraine Wetzel, through her attorney Michael D. Diederich, Jr., alleges as her

complaint as follows:

    1.    Plaintiff LORRAINE WETZEL, is and was at all times relevant herein a citizen

of the United States and a resident of the Town of Orangetown, County of Rockland, State of

New York.

2.    Defendant TOWN OF ORANGETOWN (hereinafter "defendant Town"), upon information and belief, is and at all times relevant herein, was a municipal corporation organized and existing under the laws of the State of New York, and located within Rockland County.

3.    Defendant TOWN BOARD OF ORANGETOWN (hereinafter "defendant Town Board" or "Town Board"), upon information and belief, is and at all times relevant herein, was the governing and policymaking body for the Town of Orangetown.

4.    Defendant THOM KLEINER (hereinafter "defendant Supervisor" or "Town Supervisor"), upon information and belief, is and at all times relevant herein, was a resident of the Town of Orangetown, County of Rockland, State of New York, and is sued as Town Supervisor.

5.    Defendant MARIE MANNING (hereinafter "Defendant Councilwoman" or "Defendant Manning"), upon information and belief, is and at all times relevant herein, was a resident of the Town of Orangetown, County of Rockland, State of New York, and is sued in her official capacity as a Town Councilmember.

6.    Defendant DENIS TROY (hereinafter "Defendant Councilman" or "Defendant Troy"), upon information and belief, is and at all times relevant herein, was a resident of the Town of Orangetown, County of Rockland, State of New York, and is sued in his official capacity as a Town Councilmember.

## JURISDICTION AND VENUE ALLEGATIONS

7.    This court has jurisdiction over this action under 42 U.S.C. § 1983, the First, Fifth and Fourteenth Amendments to the Constitution of the United States, as authorized under 28 U.S.C. § 1331 and § 1343(4).

2

8.    Supplemental jurisdiction exists by virtue of 28 U.S.C. § 1367 regarding New York remedies under the N.Y.S. Bill of Rights, N.Y.S. statute, including the Police Act and N.Y.S. Civil Service Law § 75-b, and the common law.

## FACTS

*PART I –ESSENTIAL FACTS DIRECTLY RELATED TO THE TOWN BOARD'S DECEMBER 10, 2007 ADJUDICATION OF SEPTEMBER 7, 2004 DISCIPLINARY CHARGES*

1.    Plaintiff is a veteran of the Defendant Town of Orangetown's police department, serving in her 28th year of service, and holding the rank of lieutenant.

2.    Plaintiff's has for several years been involved in opposing unlawful discrimination engaged in by the Town, its Police Chief and its agents. For her efforts, she has experienced reprisal by Defendants' police chief and agents. *See*, Part II below and Exhibit "4".

3.    The September 7, 2004 disciplinary charges at issue here, as well as another set of disciplinary charges dated September 3, 2004 (as yet untried), were placed against Plaintiff by Chief Nulty. These charges were made shortly after Plaintiff filed an amended complaint in her still-pending federal discrimination lawsuit *Wetzel v. Town of Orangetown*, 03 Civ. 9896 (*"Wetzel 1"*), and within days of two local newspaper pieces discussing Plaintiff's opposition to the "glass ceiling" facing female police officers seeking promotion in the Defendants' Police Department.

4.    Both sets of disciplinary charges essentially allege deficiency in supervising subordinates.

5.    Both sets of disciplinary charges notify Plaintiff that she had the "right to trial before the town board," pursuant to the governing special state statute, the Rockland County Police Act ("Police Act"), Chapter 526 of the N.Y.S. laws of 1936, as amended. *(emphasis added)*

3

6.     Upon information and belief, Plaintiff's trial was, and is, the first and only trial to have taken place under the Police Act in recent history, including at least the last 28 years.

7.     Moreover, up until late March 2006, plaintiff and her PBA union believed that police discipline was governed by, and a subject of negotiation under, her union's collective bargaining agreement ("CBA") with the Town of Orangetown.

8.     In March 2006, certain CBA provisions regarding police discipline were held invalid by New York's highest court in *Matter of Orangetown PBA*, 6 N.Y.3d 563 (2006).

9.     Upon information and belief, after the *Matter of Orangetown PBA* decision, there was an absence of rules or regulations governing the imposition of police discipline in the Town.

10.    Specifically, the Defendant Town has not yet promulgated any rules or regulations under the Police Act relating to the adjudication of disciplinary cases involving police officers supervisors (sergeants or above).

11.    After disciplinary charges were placed against her, and while *Matter of Orangetown PBA* was being litigated, Plaintiff's PBA attorneys consented to a delay in the trial of the disciplinary charges pending Appellate Division (intermediate appellate court) disposition of the *Matter of Orangetown PBA* appeal.

12.    Plaintiff and her attorneys gave no further consent for the extension of time.

13.    In January, 2006, the Town Board promoted Plaintiff to the rank of lieutenant in the Defendants' police department.

14.    By letter dated February 1, 2006, the Town's outside counsel Lance Klein (of the law firm Keane & Beane PC) expressed the following to Plaintiff's attorney:

> "I also held the mistaken belief that you and your client realized the consequences of the two (2) disciplinary charges [sic] pending against her.  I can assure you that those cases will be prosecuted as soon as the Court of Appeals [in *Matter of Orangetown PBA* ] makes its determination as to who will hear the

4

charges. <u>It would be a shame for your client, as the first female Lieutenant in the department, to be the first Lieutenant disciplined.</u> (*emphasis added*)

15.     On June 30, 2006, which was over one year after the Appellate Division's decision in the *Matter of Orangetown PBA* case, Plaintiff and her attorneys received notice from an individual purporting to be a hearing officer, namely, Joseph E. Wooley, that a disciplinary trial was scheduled to begin five (5) business days thereafter, on July 11, 2006.

16.     Joseph E. Wooley had been appointed to "act as a hearing officer" regarding Plaintiff's disciplinary case by the Defendant Town Board on May 22, 2006. *See*, Resolution 441.

17.     Plaintiff was not notified of his appointment by the Town.

18.     The Town Board did not specify any duties, or timely delegate[1] any authority, in its resolution appointing Mr. Wooley.

19.     Upon information and belief, at the time of its appointment, the Town Board had no résumé, no written proposal, nor any other written information describing Mr. Wooley's credentials, including whether he had ever presided over any police disciplinary case before.

20.     Upon information and belief, Mr. Wooley was appointed because of the recommendation or suggestion of Keane & Beane attorney Lance Klein or one of its other attorneys.

21.     Upon information and belief, Mr. Wooley was hired to convict Plaintiff on disciplinary charges, regardless of guilt or innocence.

---

[1] The Town Board did attempt to correct this fatal defect in August 2006, after the prosecution case had rested, by retroactively tasking Defendant Wooley with making "findings of fact and issue a recommendation...." *See*, Town Board Resolution 600 of August 14, 2006, purporting to "amend" Resolution 441 appointing Mr. Wooley.

22.    Prior to June 30, 2006, Plaintiff had no notice that any person had been appointed to "act as a hearing officer" regarding her disciplinary case, nor the identity of any such person, nor any notice that the Town Board was contemplating appointing a hearing officer (as formal notice to her stated that trial would be before the Town Board itself), nor provided with any information about any process or procedure for the selection of an impartial hearing officer.

23.    After receiving the June 30, 2006 notice, Plaintiff, through her attorney, immediately requested a reasonable adjournment.

24.    The Town's outside counsel (Keane & Beane PC) indicated that it would consent to an adjournment of the disciplinary trial only if Plaintiff waived various discovery requests which he made in her pending *Wetzel 1* federal lawsuit against the Town and its police chief. Plaintiff refused.

25.    Mr. Wooley denied Plaintiff requests for an adjournment of the disciplinary trial.

26.    Upon information and belief, denial of a request for an adjournment under such circumstances was not in accordance with standard practice under Civil Service Law § 75 procedures, which procedures, according to Town Attorney Kenny, would provide guidance for this disciplinary proceeding. *See*, N.Y.S. Guide to Section 75 procedures (website).

27.    Upon information and belief, the denial of Plaintiff's request for an adjournment was done in bad faith, and solely to unfairly benefit Chief Nulty and his prosecutor, Mr. Klein.

28.    The disciplinary trial commenced on July 11, 2006.

29.    Plaintiff made jurisdictional challenge to the purported tribunal, including objection to the absence of any legal authority for Mr. Wooley to preside over a fact-finding hearing.

6

30.    The disciplinary trial continued for eight additional nonconsecutive days, and concluded on November 1, 2006.

31.    The disciplinary trial was conducted by Mr. Wooley in a highly unfair and abusive manner which demonstrated an utter lack of impartiality on his part, and which suggested that his sole function was to convict plaintiff on disciplinary charges, regardless of the facts.

32.    Upon information and belief, the annexed "Manual for a Municipal Reprisal" accurately and fairly describes, in narrative form with commentary, some of the abusive and retaliatory nature of the disciplinary proceedings against Plaintiff. *See*, Exhibit "4".

33.    In connection with the disciplinary trial, by letter dated September 21, 2006 from her attorney, Plaintiff sought relief from the Town Board regarding the hearing officer's lack of legal authority to preside over a disciplinary trial, the ostensible tribunal's lack of jurisdiction, the non-impartiality and unfairness of the hearing officer, and Plaintiff's right to trial before the Town Board itself, among other things. *See*, Exhibit "2".

34.    By prior letter sent on or about September 7, 2006, the Town's outside counsel (Lance Klein) had directed the Town Board not to consider any application to it from Plaintiff (including any letter from her attorney) in connection with the disciplinary matter.

35.    Upon information and belief, the Town Board did not consider the September 21, 2006, letter from plaintiff's counsel.

36.    Upon information and belief, Plaintiff has the First Amendment right to petition her local government for the redress of grievances, but was continually and repeatedly denied such right by the Defendants' refusal to entertain Plaintiff's requests (through her attorney) to the Town Board.

7

37.    Upon information and belief, the Constitution of the State of New York guarantees its citizens the right to freedom of speech, and to petition government. See, N.Y.S. Constit., art. I, §§ 8 & 9.

38.    In this regard, Plaintiff commenced an action in this Court requesting a declaration of her First Amendment right to petition local government (06 Civ. 5144), which action is currently on appeal (07-5114-cv).

39.    During the disciplinary trial, Mr. Wooley explained his practice for receiving post-trial briefs, which was essentially that briefs would be required to be simultaneously submitted two weeks after Plaintiff received a copy of the transcript of the disciplinary trial. *See*, Disciplinary Transcript at pages 921-923.

40.    Upon information and belief, the Town's outside counsel had in its possession all disciplinary transcripts shortly after the trial was concluded on November 1, 2006.

41.    For reasons unexplained by the Town's outside counsel, and unjustified, the Town did not make any transcripts available to Plaintiff's counsel until the end of January or early February 2007.

42.    Plaintiff's attorney requested Mr. Wooley to provide him with a date for simultaneous submission of Plaintiff's post-trial brief.

43.    In particular, Plaintiff's attorney wrote to Mr. Wooley, with copy to Prosecutor Klein:

> Via fax: 914-681-5131
>
> February 9, 2007
>
> Joseph E. Wooley, Esq.
> PO Box 6
> Hawthorne, NY 10532

8

Re: Chief of Police v Wetzel disciplinary case-submission post-hearing briefings

Dear Mr. Wooley:

Please advise whether you will be accepting post-trial briefs regarding the disciplinary charges dated September 7, 2004 against my client, Lt. Wetzel, and if so, the date for such submission from the parties (I suggest one month from today).

Secondly, as to your eventual report and recommendation, I request that you furnish this in a manner whereby I can review and comment upon your report and recommendation prior to its submission to the Town Board.

Thank you.

Sincerely yours<br>
/s/<br>
Michael D. Diederich, Jr. /'

cc: Lance H. Klein, Esq.
via fax 914-946-6868


44.    Mr. Klein responded by suggesting, in a letter dated February 12, 2007, that the one sentence statement Plaintiff's attorney made at the conclusion of the disciplinary trial constituted all the input that Plaintiff was entitled to give.

45.    Plaintiff's counsel further wrote Mr. Wooley another letter on May 2, 2007:

*Via mail and fax:*
    914-681-5131

                        May 2, 2007

Joseph E. Wooley, Esq.
PO Box 6
Hawthorne, NY 10532


Re:  Chief of Police v Wetzel disciplinary case—post-hearing matters

Dear Mr. Wooley:

I never received a response from you regarding my February 9, 2007 letter to you, attached.  Please advise.

Secondly, on behalf of my client, I would like to know whether you have any information as to why it took almost three months (from November until late January 2007) for the disciplinary transcripts to be made available to you and me in this Nulty v. Wetzel disciplinary matter.

Thirdly, can you please give the parties some indication of when you expect to complete your report and recommendation to the Town Board in this matter?

Lastly, you directed the Town to provide transcripts to my client, Lt. Wetzel.  Opposing counsel has a "Minu-script" (4 pages per page) version of such transcript.  I request that

9

you direct opposing counsel to provide me with one copy of such Minu-script version, for the following reasons: because the format is easier to read, with less waste of paper, because the 2200+ page transcript is large, because opposing counsel is now using such Minu-script pages of this Nulty v Wetzel hearing in connection with their work, and because providing my client with such is necessary for fair and equal treatment as between the parties in this disciplinary matter.

Your consideration of these requests, and prompt response, will be much appreciated. Thank you.

> Sincerely yours,
> /s/
> Michael D. Diederich, Jr.

cc: Lance H. Klein, Esq.

46.     For reasons not stated, and certainly unjustified, Mr. Wooley again failed and refused to respond to Plaintiff's correspondence. Thus, Mr. Wooley did not provide a date allowing Plaintiff to submit a post-trial brief.

47.     Approximately two weeks later, and over <u>six months after</u> the disciplinary trial had ended, the Town's outside counsel (disciplinary prosecutor Lance Klein) unilaterally submitted a 46 page "Closing Statement" on behalf of Chief Nulty wherein, among other things, Mr. Klein proposed a total of 62 days forfeiture of pay as a disciplinary punishment. *See*, Mr. Klein's transmittal letter dated May 11, 2007.

48.     A month later, without any post-trial input from Plaintiff's counsel, Mr. Wooley provided Plaintiff's attorney with a 59 page single-spaced Report and Recommendations ("Wooley Report").

50.     Mr. Wooley provided no information, in this letter as to how this Wooley Report would be submitted to the Town Board or the members thereof, nor whether trial exhibits (the evidence) would be provided to the Town Board.

10

51.    Thereafter, Plaintiff's attorney requested information about whether, when and

how the Town Board would review the disciplinary record and Closing Statement of prosecutor

Klein.

52.    In particular, on August 9, 2007, Plaintiff's attorney wrote the Town Clerk (clerk

to the Town Board) as follows:

> *VIA FACSIMILE (359-5126) & MAIL*
>
> August 9, 2007
>
> Charlotte Madigan, Town Clerk
> Orangetown Town Clerk's Office
> 26 Orangeburg Road
> Orangeburg, NY 10962
>
> *Re: Joseph Wooley's disciplinary submission regarding Lt. Wetzel*
>
> Dear Ms. Madigan:
>
> As Lt. Lorraine Wetzel's attorney, I request reasonable advance notice as to whether, and
> when, the report and recommendation of Joseph Wooley will be submitted to the Town
> Board.
>
> Please be advised that I wish to provide input to the Town Board, including but not
> limited to articulating to the Town Board what it likely already knows, namely, that Mr.
> Wooley was and is not an impartial or unbiased adjudicator of the facts concerning Lt.
> Wetzel, and that he presided over a disciplinary trial not authorized by the Rockland
> County Police Act.
>
> I would also like to personally explain to the Town Board why Mr. Wooley's "findings of
> fact" are unsupported by the evidence, and why Mr. Wooley's recommendation regarding
> punishment is absurd, patently unjust, and manifestly the product of reprisal. For these
> reasons, Mr. Wooley's report and recommendation must be rejected in its entirely.
>
> There was and is no grounds for a disciplinary proceeding based upon September 2004
> charges against Lt. Wetzel, and the prosecution of such charges, after her 2006
> promotion, was a naked attempt to extort Lt. Wetzel into dropping her federal civil rights
> case against the Town and its Police Chief. If the Town Board condones such illegality,
> my client will seek further remedies provided by law.
>
> Thank you for your attention to this matter.
>
> Sincerely yours,
> /s/
> Michael D. Diederich, Jr.

53.    Plaintiff was never provided with any notice from either Mr. Wooley, prosecutor

Klein, Town Attorney Theresa Kenny, or the Town Clerk that the disciplinary record and trial

exhibits (with or without Mr. Klein's Closing Statement) had been furnished to the Town Board or its members.

54.    Thus, as to Plaintiff's requests for information about the status of the case and for an opportunity to provide his client's side of the story to the Town Board, no response was provided.

55.    It was not until reading Mr. Klein's papers in connection with defendants' motion to dismiss Plaintiff's retaliation case,[2] *Wetzel 3,* that Plaintiff's counsel learned that the disciplinary record had been already been provided to the Town Board, apparently in August.

56.    Plaintiff's counsel once again requested that the Town Board provide him with an opportunity to present his client's defense.  He wrote:

> **VIA FACSIMILE (359-5126) & MAIL**
>
> November 20, 2007
>
> Charlotte Madigan, Town Clerk
> Orangetown Town Clerk's Office
> 26 Orangeburg Road
> Orangeburg, NY 10962
>
> *Re:  Joseph Wooley's disciplinary submission regarding Lt. Wetzel*
>
> Dear Ms. Madigan:
>
> Upon reviewing for the first time today the legal papers of the Town's outside counsel, regarding a motion to dismiss returnable in 10 days or so, I see that the Town's outside counsel Lance Klein indicates that "[i]n or about August 2007, the record of the Disciplinary Hearing" relating to July 7, 2004 charges against my client, Lt. Lorraine Wetzel, "was provided to the Town Attorney … for the Town Board's consideration."
>
> By my letter to you dated August 9, 2007, attached, I previously requested:
>> "reasonable advance notice as to whether, and when, the report and recommendation of Joseph Wooley will be submitted to the Town Board."
> I also informed you that I wished to provide input to the Town Board, including but not limited to presenting the facts which show that Mr. Wooley was and is <u>not</u> an impartial or unbiased adjudicator of the facts concerning Lt. Wetzel; that the disciplinary trial was not authorized by the Rockland County Police Act; why Mr. Wooley's "findings of fact" are

---

[2] Plaintiff's 2006 retaliation lawsuit, *Wetzel v. Orangetown*, 06 Civ.6117, which includes the claim that the disciplinary charges brought against her, and forcing her to undergo a disciplinary trial, was the product of reprisal.

unsupported by the evidence; and why Mr. Wooley's recommendation regarding punishment is absurd, patently unjust, and manifestly the product of reprisal.

Please advise me immediately as to what, if anything, has actually been shown to the Town Board regarding Lt. Wetzel, and whether I will be given the opportunity to present my client's side of the case.   Thank you.
                    Sincerely yours,
                    /s/
                    Michael D. Diederich, Jr.
cc:  Town Attorney  *via fax*

57.    Town Attorney Kenny eventually responded, by informing Plaintiff's counsel by letter faxed late in the day on December 3, 2007, that he and Prosecutor Klein would both be "allowed to speak for five minutes" during the public portion of the Town Board's regularly scheduled December 10, 2007 meeting.

58.    Promptly responding by letter dated December 7, 2007, Prosecutor Klein stated:

"Please note that on behalf of the Chief of Police Kevin Nulty, I hereby accept the Town Board's offer to comment upon the Wetzel disciplinary matter at the public portion of the December 10, 2007 Town Board meeting.  Of course, I will adhere to the rules promulgated by the Town Board.

59.    Upon information and belief, there were no "rules promulgated by the Town Board," only *ad hoc* rules likely formulated by its attorneys.

60.    Significantly, neither Town Attorney Kenny nor any other representative of the town expressly informed plaintiff's counsel that the disciplinary case was on the Town Board agenda or action planned for that evening.  Thus, Plaintiff was not even informed that decision-making regarding her career would take place that evening, until she heard this as her attorney was speaking.

61.    Significantly, it appeared from Ms. Kenny's December 3, 2007 letter that the Town Board may have <u>only</u> considered the Wooley Report, the hearing transcript and <u>one</u> tape

13

recording, as there is no indication that any of the other physical (electronic) evidence introduced as trial exhibits was available for review, or was reviewed, by the Town Board.

62.    Upon information and belief, the physical (electronic) trial exhibit evidence was not examined by the Town Board, even though this evidence was critical to undercutting the misleading, if not perjurious, testimony of prosecution witness Robert Zimmerman and Chief Nulty.

63.    For example, although both Zimmerman and Nulty testified that a major failing of Plaintiff was allowing a detainee to wander about the booking room for extended periods of time, the videotapes establish that this testimony (and the charges which the testimony supported) was not supported by the actual evidence.

64.    As shown below, Plaintiff's belief that the Town Board did not review the physical evidence, including, for example, the videotapes, is corroborated by the Town Board's December 10, 2007 resolution in this matter, which resolution states, in its fifth paragraph, that "Whereas the Town Board has had an opportunity to review the record in this matter, as well as the report and recommendation of the Hearing Officer, and...." *(emphasis added)*

65.    Thus, in its formal resolution, there is no indication that any the trial exhibits were reviewed by the Town Board. And because the prosecution testimony was based upon the electronic evidence (audiotapes and videotapes), essentially the exhibits are the evidence of the case. The Town Board apparently only reviewed the prosecution witnesses' interpretations of the evidence, without looking at the actual evidence. And by denying Plaintiff the ability to present a defense to it, and comment on the evidence, the Town Board remained oblivious to the vital need for it to itself examine critical portions of the physical electronic evidence.

14

66.    On the day before the December 10, 2007 Town Board meeting, the Town Attorney informed Plaintiff's counsel that the Town Board would <u>not</u> permit a closing statement or "argument on the evidence."    Thus, Plaintiff did not even receive a meaningful five minutes of time.

67.    Rather, when Plaintiff's counsel addressed the Town Board, he was forced to limit his presentation to reading from a letter he had prepared, which, in the short 5 minutes allowed, focused on history of his client's opposition to unlawful discrimination and the reprisals she experienced as a consequence.    At precisely 5 minutes, he was directed to stop speaking by the Town Supervisor, without even being allowed to finish the sentence.

68.    All indications are that Plaintiff's guilt, by this date, had already been predetermined by the Town Board.    This is logical, as it had had the prosecutions side of the case (the Wooley Report) for months, and refused input from the defense.

69.    When Plaintiff's attorney got up to speak at the public portion of the December 10, 2007 meeting, the Town Supervisor advised him that the Town Board would be deciding the disciplinary matter later in the evening (but that further input would not be permitted on behalf of Plaintiff) and that there was no further need for plaintiff or her counsel to remain at the meeting.

70.    The maximum punishment permitted by the Police Act, short of termination, is a 20 day forfeiture of pay.    Mr. Wooley recommended that maximum punishment short of termination.

71.    On December 13, 2007, plaintiff's attorney received correspondence from Town Attorney Kenny indicating that the Town Board had issued a finding of "guilty" as recommended by Mr. Wooley, and a penalty of a 10 day suspension without pay.

15

72.    By the time Town Attorney Kenny sent her correspondence, Plaintiff's attorney

had already read about its verdict of guilt in the local Our Town newspaper, as apparently the

Town Board saw fit to publicize its finding of guilt and penalty assessment at the Town Board

meeting -- an unprecedented and unnecessary action, as personnel matters are virtually always

discussed privately, in executive session.

73.    This action by the Town Board was, we believe, designed to publicly humiliate

and disparage the Plaintiff.

74.    The Town Board resolution of December 10, 2007, annexed as Exhibit "1", and

available on the Town's website,[3] reads as follows (with emphasis added):

> **RESOLUTION NO. 795 POLICE/DISCIPLINARY CHARGES EMPLOYEE NO. 1422**
>
> Councilman Troy offered the following resolution, which was seconded by Councilman O'Donnell and on a roll call was adopted:
>
> Whereas a proceeding was commenced against Employee Number 1422 based upon disciplinary charges dated September 7, 2004, that were issued by the Chief of Police pursuant to the Rockland County Police Act; and
>
> Whereas the Town Board designated Joseph P. [sic] Wooley, Esq., as the Hearing Officer for such charges; and
>
> Whereas a hearing was held at which Employee Number 1422 was represented by counsel; and
>
> Whereas, the Hearing Officer rendered findings of fact and recommendations based upon the record presented at the aforementioned hearing; and
>
> **Whereas the Town Board has had an opportunity to review the record in this matter, as well as the report and recommendations of the Hearing Officer; and**
>
> **Whereas, on December 10, 2007, at its regularly scheduled public meeting, the Town Board provided the Employee and Chief Nulty with an additional opportunity to address the Town Board with respect to the pending disciplinary charges;**
>
> **Now, therefore, be it resolved that the Town Board hereby accepts the Hearing Officer's findings of fact, as more fully set forth in the decision of the Hearing Officer dated June 11, 2007; and**
>
> Be it Further resolved that, based upon the recommendations contained in the decision of the Hearing Officer, the Town Board hereby finds Employee Number 1422 guilty of Charge 1(a), (b) and (c); Charge II, Charge III(a) and (b); Charge IV; Charge V; Charge VI (a) and (b); Charge VII(a); Charge VIII; Charge IX, and Charge X, and
>
> Be it Further resolved that, based upon the recommendations contained in the decision of the Hearing Officer, the Town Board hereby finds Employee Number 1422 not guilty of Charge VII(b) and Charge XI, and
>
> Be if Further resolved that the Town Board rejects the Hearing Officer's recommendation that a penalty of

---

[3] See, http://www.orangetown.com/departments/clerk/2005051714410.11/townBoardMinutes/20070111115321.156/folder_view

16

twenty (20) days forfeiture of salary or compensation be imposed; and

**Be it Further resolved that, based upon the entire record in this matter, and in recognition of the employees prior length of service without any prior disciplinary problems, the Town Board imposes a ten (10) days suspension without pay,** which is less than the penalty recommended by the Hearing Officer.

Ayes: Councilpersons Troy, O'Donnell, Manning
Supervisor Kleiner
Noes: None
Abstained: Councilperson Morr

75.    Thereafter, Chief Nulty (the disciplinary charges' accuser) was permitted to

implement the punishment. The Town permitted this notwithstanding the request of Plaintiff's

attorney that the new Town Board be permitted to reconsider the matter.[4]

76.    Even before Plaintiff's 30 days to appeal had expired, the police chief

implemented the punishment as follows:

- the 10 day suspension would be served during two separate periods of time separated by Plaintiff's two regular days off. This transformed the 10 day suspension into two six day suspension over a period of 12 calendar days suspension. Thus, a 10 day suspension was transformed by Chief Nulty into a 12 day suspension. As expected, Plaintiff was offered, and given, no work during her regular two days off.
- Chief Nulty also decided that the suspension would begin on January 4, 2008, in the New Year which, because a new PBA contract is anticipated, will be a more expensive penalty, including affecting retirement pay, than if the penalty had been served promptly after its Town Board issuance, in 2007.
- Upon information and belief, these were gratuitous acts of reprisal, for the Police Chief and his prosecutor to get in their last pokes.
- Forcing Plaintiff to undergo the humiliation of being required to turn in her shield, her weapon and her ID card to her own subordinate sergeant.

***Untried September 3, 2004 charges unaddressed still***

77.    No mention was made by the Town on an important outstanding item. There

remains the pending yet untried September 3, 2004 disciplinary charges against Plaintiff, relating

to the events of July 4, 2004.

---

[4] Two of the five Town Board members had not been reelected, in part because of the public interest advocacy of Plaintiff's attorney in an unrelated litigation-- additional cause for bias, and request for reconsideration.

17

78.    Prosecutor Klein has refused to divulge Chief Nulty's intentions regarding these untried charges.

79.    Upon information and belief, it was unprecedented, and abusive, for those charges not to be tried with the September 7, 2004 disciplinary charges.   The Town has permitted those charges to loom over Plaintiff's head for almost four (4) years, presumably with the malicious motive of again using a henchman—a "for hire" adjudicator like Mr. Wooley—to convict Plaintiff again a second time around, making her a "repeat offender and subject to dismissal from the force after 28 years of loyal service.  That is, if she does not submit to the Town's unlawful demands that she cease opposing unlawful discrimination, reprisal and illegality.

80.    If those now-ancient July 4, 2004 charges are tried before a truly fair and impartial adjudicator, Plaintiff is confident that should would be found innocent and her good name vindicated.   If tried before another Wooley, even irrefutable proof of innocence would not spare a conviction, in our view, as that is not how Stalinist justice works.

81.    In Plaintiff's view, notwithstanding the damage to her and her reputation resulting from the Town Board's December 10, 2007 action, the much greater injury caused by the wrongful Town action is to the civil service, to the police officers who enforce the Law, and to the public which depends upon faithful adherence to the Law by government.

82.    Plaintiff intends to continue her struggle against the Town government's lawlessness, in the public interest, as well as to vindicate her good name and her professional reputation.

83.    Upon information and belief, if Plaintiff as a police lieutenant and 27 year police veteran cannot successfully oppose such blatantly unlawful practices, then no one effectively can, and illegality will replace the Rule of Law in Orangetown.

PART II – FURTHER DESCRIPTION OF PLAINTIFF'S OPPOSITION TO UNLAWFUL DISCRIMINATION
& ILLEGALITIES

A.  Background to Wetzel "6"—the Wetzel "1" through Wetzel "4" federal actions, all still
    active

84.    Plaintiff was hired as a police officer in 1980 (the Town's second female police

officer), and was subsequently promoted to the rank of sergeant in 1990 (becoming the Town's

first female sergeant) and, since 2001 fought for the right to be treated equally with men

regarding promotion.[5]

85.    In January 2001, Plaintiff was passed over for promotion in favor of a man who

had approximately one third of her seniority and meritorious service and a comparable civil

service examination score—the criteria upon which promotion should have been based under

applicable law, namely, the Police Act.[6]

86.    In 2001, Plaintiff filed a New York State article 78 petition alleging that she was

wrongfully denied promotion in January 2001.

87.    In December 2003, Plaintiff filed a federal complaint alleging, inter alia, gender

discrimination by the defendant Town and Police Chief Nulty, including discrimination resulting

in Plaintiff's non-promotion to the rank of lieutenant in January 2001.

88.    In January 2004, Plaintiff was again passed over for promotion in favor of a man

who, again, had much inferior seniority and meritorious service, and an identical civil service

examination score.

---

[5] Plaintiff finally was promoted to the rank of lieutenant in January 2006, but not without being subjected to further
threats, abuse and retaliation alleged herein and in Wetzel 3 (06 Civ. 6117, pending in this Court).

[6] Section 7 of the Police Act sets forth criteria for promotion. See, Rockland County Police Act, Chapter 526 of the
N.Y.S. Laws of 1936, as amended.

89.    On or about July 12, 2004, Plaintiff filed an amended/supplemental complaint (hereinafter "**2004 Federal Complaint**"), adding the new 2004 claims, including the discriminatory refusal to promote her in January 2004.

90.    The 2004 Federal Complaint alleged, *inter alia*, that as to the objective criteria for promotion set forth in the Police Act,  Plaintiff, a woman, possessed an equivalent civil service examination score and approximately two to three times more seniority and meritorious service than the men chosen for promotion in 2001 and 2004.

91.    Chief Nulty did not take lightly Plaintiff's continued opposition to his unlawfully biased administration of the police department.

92.    For example, shortly after Plaintiff's 2004 Federal Complaint, Police Chief Nulty made comments to a local newspaper, OUR TOWN, which comments were published in an article in that newspaper in early August 2004, and which publicly disparaged Plaintiff, belittled her, and publicly denied that his or his department's action against Plaintiff were biased or discriminatory.

93.    Upon information and belief,  Chief Nulty's making statements to the OUR TOWN reporters regarding one of his own subordinates, a Town employee, was unprecedented, unprofessional and evidenced discriminatory and retaliatory animus toward Plaintiff Wetzel.

94.    Thereafter, Plaintiff's attorney wrote a response which was published on or about August 23, 2004  in the same local Orangetown newspaper, OUR TOWN.  The letter to the editor from Plaintiff's attorney expressed the view that Police Chief Nulty's police department had created a "glass ceiling" preventing the promotion of female police officers.

95.    In addition, during this same time period (July-August 2004), Police Chief Nulty and his administration began (illegally) examining audiotaped telephone conversations between

20

two citizens (detainee Frank Dowd and Nicole Colandrea), and as a result saw this as an

opportunity for bringing baseless disciplinary charges against Plaintiff Wetzel.

96.    On September 3 and September 7, 2004, action was taken regarding the dismissal

of Plaintiff's state court Article 78 proceeding relating to her Police Act challenge to her non-

promotion.  These are also the precise dates of disciplinary charges placed against Plaintiff

Wetzel, regarding alleged events of July 4 and 7, 2004.

### i.    Chief Nulty signs retaliatory disciplinary charges in September 2004

97.    Upon information and belief, based upon the 2004 Federal Complaint, the above

mentioned August 2004 OUR TOWN letter to the editor, and the article 78 dismissals, Chief Nulty

decided to undertake  reprisal, which reprisal was also designed to sabotage Plaintiff's upcoming

January 2005 promotional opportunity.

98.    On September 3, 2004 and September 7, 2004, Police Chief Nulty signed

departmental disciplinary charges against Plaintiff.

99.    The disciplinary charges in sum and substance alleged "failure to supervise"

police subordinates properly on, respectively, July 4 and July 7, 2004.

### ii.    Disciplinary charges made & prepared in bad faith by the Law Firm Actors and Municipal Officials

100.    Upon information and belief, Keane & Beane PC and its attorney, Lance Klein

(together the  "**Law Firm Actors**") prepared and/or assisted in the preparation of such

disciplinary charges, and gave advice thereon to Chief Nulty, Lieutenant (now Captain)

Zimmerman, Supervisor Kleiner (together the "**Municipal Officials**") and the Defendant Town.

101.    One indication of the Law Firm Actors' input into the disciplinary charges is the

Law Firm's document identifier "18681961264594 VI 9/7/04" written on the charges.

21

102.    Upon information and belief, these disciplinary charges were not prepared in good faith by the Law Firm Actors or the Municipal Actors.

103.    Rather, it appears that the Law Firm Actors have profited greatly, at taxpayer expense, by orchestrating much of the Town's reprisal against the Plaintiff.    When Plaintiff's attorney, on her behalf, sought information about what has been paid to Keane & Beane PC, he was provided with unintelligible documents, and as a consequence was required to commence a state court proceeding under the N.Y.S. Freedom of Information Law ("*Wetzel 5*") in order to obtain the public documents.  Plaintiff learned, through FOIL disclosure, that Keane & Beane PC and actually invoiced the Town over $3,000 for preparing an ethics grievance against Plaintiff's attorney, which grievance was a malicious litigation tactic and ultimately dismissed by the governing judicial authority.

104.    Upon information and belief, the reason disciplinary charges were not prepared by a deputy town attorney (several of whom are employed by the Town), rather than by the Town's outside counsel, was the fact of Plaintiff's federal lawsuit, and the Town's desire to use disciplinary charges to obtain an advantage in the federal lawsuit. *See also*, Mr. Klein's February 1, 2006 extortionate letter.

105.    Specifically, upon information and belief, these disciplinary charges were prepared in retaliation for Plaintiff's opposition to unlawful discrimination and to coerce her into settling or abandoning her *Wetzel 1* opposition to unlawful discrimination.

106.    These September 2004 disciplinary charges were the first and only disciplinary charges made against Plaintiff in her entire 27 year police career with the Orangetown Police Department (Plaintiff is now in her 28th year of service).

107.    Prior to these charges, Plaintiff had an unblemished police record.

108.    The disciplinary charges do not allege that Plaintiff committed affirmative misconduct herself, but essentially allege failure to supervise, on a shift where she was the lone headquarters supervisor (Lt. Zimmerman was away) working the same shift with a patrol sergeant of greater seniority.

109.    Upon information and belief, the municipal Defendants did not even attempt to inquire of Plaintiff about the alleged events at the time, to gather factual information or otherwise to consider her knowledge of the facts.

110.    Plaintiff's immediate supervisor, Lt. Zimmerman, made no effort to ascertain facts from Plaintiff regarding the alleged events of July 7, 2004, nor did he ascertain whether Plaintiff was in need of education or training regarding her alleged incompetence or dereliction, nor did he require any additional education or training regarding her alleged incompetence or dereliction, nor did he reflect her alleged incompetence or dereliction on a performance evaluation of Plaintiff, notwithstanding that these actions were, upon information and belief, required of him under the General Orders of the police department, including the job description for Lt. Zimmerman's rank (lieutenant).

111.    Lt. Zimmerman received two promotion in the department after helping formulate the disciplinary charges against his subordinate, Plaintiff Wetzel.  He later became the sole prosecution witnesses against the Plaintiff.

112.    Upon information and belief, it is impossible to discern from the face of the charges precisely what Plaintiff is alleged to have done wrong.

113.    As to the allegations against Plaintiff, no corrective action or progressive discipline was sought nor applied.  It is apparent to Plaintiff that these disciplinary charges were

23

wrongfully motivated, and not designed for any corrective or remedial purpose or *bona fide* discipline.

**B. Statutory Background – Plaintiff becomes the first officer tried under the Rockland County Police Act**

114.    Upon information and belief, throughout the Defendant Town's modern history it cooperatively agreed upon rules and procedures for the discipline of police officers, such as through a collective bargaining agreement ("CBA").

115.    For reasons unknown to plaintiff, the Town decided in or around 2004 to challenge the procedures which it itself had previously agreed to in its CBA with the police officers union, the PBA. It did so in the *Matter of Orangetown PBA* (hereinafter "CBA challenge").

116.    Upon information and belief, the town was influenced in its decision by the advice of the Law Firm Actors (its outside counsel, Keane & Beane) which law firm was then paid handsomely by the town to challenge the CBA provisions relating to police officer discipline.

117.    Specifically, the town challenged the CBA provisions requiring binding arbitration on police disciplinary matters.

118.    Upon information and belief, the September 2004 disciplinary charges against Plaintiff were made while the CBA challenge was pending. For this reason, Plaintiff's PBA attorneys consented to the disciplinary charges being held in abeyance pending determination by the Appellate Division of the N.Y.S. Supreme Court as to whether the charges would be tried before the defendant town's town board, or tried before an arbitrator.

24

119.   Upon information and belief, there was <u>never</u> any suggestion by the Town that trial would be other than noticed in Plaintiff's disciplinary charges, namely, "trial before the Town Board."

120.   Upon information and belief, Plaintiff's PBA attorneys would not have consented to any extension of time, and plaintiff certainly would not have consented, to trial for a non-a partially chosen hearing officer. Plaintiff had the right to expect trial before the Town Board itself.

121.   Upon information and belief, neither Plaintiff nor her attorneys gave any further consent to the extension of time to try disciplinary charges against her other than consent to abeyance pending Appellate Division decision.

122.   The Appellate Division determined the appeal in or around May 2005.

123.   Upon information and belief, the Defendant Town did not obtain consent from Plaintiff for further delay of the disciplinary case against her.

124.   Nevertheless, as further described below, over one year later, on July 30, 2006, Plaintiff and her attorneys were informed that a disciplinary trial would commence a few days later, on July 11, 2006.

125.   Furthermore, on July 30, 2006, Plaintiff was informed for the first time that trial was to be conducted by an ostensible hearing officer, a "Joseph Wooley," rather than by the town board itself.

126.   Upon information and belief, there is no authority under the Police Act for the delegation of fact-finding to a hearing officer.

127.   The Defendant Town as promulgated no rules or regulations under the Police Act authorizing the delegation of fact-finding from the Town Board to a hearing officer.

25

**EXHIBIT A**
(2 of 2)

128.    The Defendant Town as promulgated no rules or regulations under the Police Act authorizing the delegation of fact-finding from the Town Board to a hearing officer.

### C. *Untried September 3, 2004 charges (relating to July 4, 2004 events)*

129.    In addition to the September 7, 2004 disciplinary charges at issue here, as mentioned above there was another set of disciplinary charges against Plaintiff related to events of July 4, 2007.

130.    Other police officers charged with infractions that day, though not necessarily related matters, were  five individuals, whose initials are CS (a woman), JA, FY, DF, KD and Plaintiff.

131.    Upon information and belief, of the above-mentioned individuals, <u>only the female officer was actually punished</u> with loss of pay.

132.    Upon information and belief, female Officer CS's alleged misdeeds did not warrant a financial punishment, or any punishment at all.

133.    Specifically, upon information and belief she was charged with making a joke to another police officer about Orangetown's detectives not working on the July 4 holiday, 2004.

134.    Upon information and belief, she eventually voluntarily left the police department, to work as a police officer elsewhere.

135.    <u>Not</u> charged regarding July 4, 2004 events was male officer, Officer S, who appears to have been most directly involved with the events alleged against Plaintiff, but who was, it appears, a "favorite" of the administration and Captain Zimmerman.  This officer has apparently also had repeated instances of serious misconduct, yet he has faced no substantial disciplinary consequences or corrective measures.

26

136.    Upon information and belief, as to the male officers,  disciplinary charges were recently (in 2007) withdrawn as to JM.  Charges never brought as to FY (who retired in 2004). No resolution was ever reached with Sergeant DF.  Officer KD received only a "for the record" suspension (meaning no financial punishment was actually exacted).

137.    As to Sergeant DF, it appears that his public pension was unjustifiably threatened by the Law Firm Actors and/or the Municipal Officials in a manner which dissuaded him from providing testimony at Plaintiff's 2006 disciplinary trial.   Upon information and belief, Sgt. DF asserts his innocence of disciplinary infraction to this day.

138.    The town's outside counsel, Keane & Beane, represented to the federal court judge that regarding the above charges, as well as the charges described below relating to July 7, 2004, there were "10 persons charged, 9 settled, and one, the plaintiff, did not" or words to that effect.

139.    It appears, in actuality, it only three individuals actually settle charges, and as to two of those (the men), the settlements included expunging the disciplinary record from their files after a short period of time.

140.    This was a material misrepresentation to the federal court, designed to hinder the federal court from properly ascertaining the facts when Plaintiff sought a TRO to prevent the start of the disciplinary trial at issue here.

141.    Upon information and belief, Keane & Beane did so to obstruct the federal district court judge from understanding and recognizing the reprisal and abuse being perpetrated against Plaintiff.

142.    As mentioned above, these September 3, 2004 charges remain an ongoing threat, hanging over the head of Plaintiff and her policing career.

27

### D. *September 7, 2004 charges do not require re-trial here*

143.    The September 7, 2004 charges against plaintiff Wetzel of the subject of this lawsuit.

144.    Plaintiff is cognizant of the reality that this federal court will be disinclined to second-guess fact-finding undertaken in a legitimate administrative proceeding.

145.    Therefore, for the purposes of this complaint, Plaintiff will not here set forth the 11 separate charges and accompanying specifications contained in the September 7, 2004 disciplinary charges.

146.    Rather, the details of the charges, and the evidence supporting the charges, will be necessarily examined only if the Court does not invalidate the Town Board action on the constitutional and state law jurisdictional grounds alleged herein.

147.    For example, if the Court determines, as plaintiff believes it must, that there was no legal authority for fact-finding to be placed into the hands of Mr. Wooley (because there were no rules and regulations allowing for such delegation, and because even if there were rules and regulations, there was nevertheless no written delegation), the case can be disposed of on that basis, through nullification of the Town Board action and remand to the Town Board.

148.    Similarly, if the court determines that the non-impartial nature and circumstances surrounding of Mr. Wooley appointment by the Town Board nullify his fact-finding determinations, and the Town Board's adoption of the Wooley report, there again is no need to further explore the disciplinary trial. Again, nullification of the Town Board action with remand will suffice.

28

149.    Of course, plaintiff nevertheless requests this Court to provide her with appropriate declaratory relief prohibiting unconstitutional action if the Town continues prosecuting the September 2004 disciplinary cases against plaintiff.

### i.    *Bogus nature of the disciplinary charges at issue*

150.    A brief discussion of the insufficient nature of the September 7, 2004 disciplinary charges against Plaintiff is set forth next, to provide the Court with a perspective as to the bad faith nature of the disciplinary charges.

151.    The September 7, 2004 disciplinary charges, consisting of ten separate "charges," and numerous specifications, essentially allege failure to supervise in that police officers with whom Plaintiff worked (one subordinate and one senior, Sgt. Flannery) supposedly failed in their duties.

152.    However, nothing untoward occurred as a result of the alleged mistakes by the other police officer and sergeant.

153.    Upon information and belief, no citizen was injured nor written complaint made by any citizen.

154.    Upon information and belief, nor did any citizen make any complaint about Plaintiff's conduct or Plaintiff's supervision of others.

155.    On or about September 7, 2004, Police Chief Nulty filed disciplinary charges against Officer Holihan regarding the events of July 7, 2004.

156.    Upon information and belief, Officer Holihan was the only police officer facing disciplinary charges who had direct supervision of detainee Mr. Dowd on July 7, 2004.

157.    The law firm Defendants and Defendants Chief Nulty and Cpt. Zimmerman accused Sgt. Wetzel of indirectly permitting Mr. Dowd to make threatening and/or harassing

29

telephone calls to Ms. Colandrea, through purported lack of supervision, even though Plaintiff

Wetzel was never in Mr. Dowd's presence at any time when he was using the telephone in the

downstairs booking room.

      158.    For example, Charge IV of the September 7, 2004 disciplinary charges against

Sgt. Wetzel state at specifications 8 through 12 as follows:

> Specification 8:  On or about July 7,2004, at approximately 9 p.m., Officer Holihan returned to Orangetown Police Headquarters from the hospital with Mr. Dowd for processing.
>
> Specification 9:  On or about July 7, 2004, at approximately 9:00 p.m., Officer Holihan proceeded to process the arrest of Mr. Dowd.
>
> Specification 10:  On or about July 7, 2004, between 9:00 p.m., and 10:45 p.m., Officer Holihan failed to properly process Mr. Dowd in that he allowed Mr. Dowd to make several telephone calls to the complainant from the booking room.
>
> Specification 11:  The telephone calls made by Mr. Dowd included harassment and inappropriate language.
>
> Specification 12:  On July 7, 2004, <u>you failed to supervise Officer Holihan thereby allowing Mr. Dowd to make the inappropriate telephone calls</u> to the complainant.
> *(emphasis added)*

      159.    Upon information and belief, Plaintiff was handling headquarters alone that

evening, as Lt. (now Captain) Zimmerman, the Squad Commander, was on leave or otherwise

absent.

      160.    During Plaintiff's shifts of duty on both July 4 and July 7, 2004, the municipal

Defendants required Plaintiff to single-handedly supervise headquarters, by not providing a

substitute for the absent Lt. Zimmerman.

      161.    Upon information and belief, the municipal Defendants knew full well that the

headquarters supervisor, if handling that duty as the sole supervisor,  would need to handle at

least some of the regular duties of the other supervisor.

162.    Upon information and belief, on September 7, 2004, Plaintiff had to perform her own duties as headquarters sergeant, plus at least some of Lt. Zimmerman's duties (in his absence), at a headquarters where her subordinates included a probationary officer (Officer Drane) and an officer with less than stellar performance nearing retirement (Officer Youngman).

163.    Plaintiff was given no notice whatsoever that there were accusations against her regarding the events of July 7, 2004 until two months or so after the alleged events, when she was served with formal charges, at which time her Memo Book, used for noting events, was taken from her.

164.    Upon information and belief, her Memo Book was taken from her for the purpose of depriving her of the ability to recollect events for which she stood accused.

165.    Notwithstanding the purported seriousness of the disciplinary charges, the municipal and law firm Defendants were willing to "settle" these for what amounted to no financial punishment at all (a two day, for the record only suspension), on the condition that the settlement and/or charges could be used against Plaintiff in her federal discrimination case, *Wetzel 1*.

166.    Upon information and belief, this was an attempt to exact an unconstitutional condition, in further violation of Plaintiff's equal protection and Title VII rights, and, like Mr. Klein's February 1, 2006 letter, was extortionate in nature.

167.    As described elsewhere in this complaint and in Exhibit 1, the testimony of the prosecutions only witness, Captain Zimmerman, as well as that of Chief Nulty was that plaintiff allowed a detainee to wander around the booking room unsupervised for significant periods of time, where the videotapes disapprove this testimony completely (and suggests intentional misrepresentation is not perjury).

31

168.    In addition, as mentioned above, the town deprived plaintiff of a central witness to her defense, namely, Sergeant (retired) Flannery, as it threatened him with prosecution of disciplinary charges even in his retirement.

169.    Mr. Wooley made no reference to the exculpatory evidence which the defense uncovered as the trial proceeded. Upon information and belief, as to some of the exculpatory evidence showing misleading if not perjurious statements by pro-prosecution witnesses, a truly impartial hearing officer might have recommended disciplinary charges against the witnesses providing the false testimony (including Captain Zimmerman and Chief Nulty).

170.    Plaintiff remains willing to set forth in great detail the many reasons why any impartial and fair-minded adjudicator would have found her innocent of all 11 charges alleged in the September 7, 2004 set of charges.

171.    For the reasons stated above, Plaintiff requests equitable relief and damages, for the Defendants' unlawful actions and reprisal.

## FIRST CLAIM FOR RELIEF
## DENIAL OF EQUAL PROTECTION OF THE LAW

172.    Plaintiff repeats and reiterates the allegations above as if fully set forth again here at length.

173.    Defendants have denied Plaintiff the equal protection of the law, because she is a woman who has opposed unlawful discrimination, and is the target of unlawful reprisal.

174.    In particular as relevant here, Plaintiff has been denied of the Equal Protection of the Law because the disciplinary proceedings against her were motivated by unlawful retaliation, and a desire to coerce Plaintiff into abandoning her opposition to unlawful discrimination including gender discrimination and political cronyism, as alleged in *Wetzel 1*.

32

175.    Upon information and belief, for the first time ever in the town of Orangetown, a police officer respondent, the Plaintiff, was denied trial before a fair and impartial trier of the facts. Upon information and belief, she was singled out for such given by her government for no legitimate and proper governmental reason.

176.    The Town's disciplinary prosecutor, in his letter to Mr. Wooley dated September 12, 2007, states that a hearing officer is not required to "treat the parties equally or fairly" as a matter of constitutional due process. Upon information and belief, this was a direction by the Town's labor counsel to the Town's representative (Mr. Wooley, acting as hearing officer) that he need not act with impartiality and fairness towards the disciplinary respondent.

177.    Upon information and belief, other municipalities in Rockland County endeavor in their police disciplinary trials to use fair and impartial adjudicators.

178.    Upon information and belief, the Police Act , either expressly or impliedly, requires the use of a fair and impartial adjudicator of the facts.

179.    Upon information and belief, a fair and impartial adjudicator would have found Plaintiff not guilty of all charges against her, and would have dismissed, were recommended dismissal of, all charges.

180.    Upon information and belief, favored men (especially politically favored men) have never been subjected to the sort of disciplinary proceeding abuse and maltreatment as plaintiff has experienced.

181.    Upon information and belief, Plaintiff has been maliciously made a "guinea pig" as the first police officer tried in Orangetown under the Police Act.

182.    Upon information and belief, besides unequal protection based upon her gender and her opposition to unlawful discrimination, Plaintiff has also been denied equal protection as a "class of one" through the town's arbitrary treatment and this treatment of her.

183.    Upon information and belief, Plaintiff has been singled out for prosecution even though there was no probable cause, nor good faith grounds, nor good faith impartial investigation for the initiation of disciplinary charges, nor sworn charges, and even though the charges were a result of an improper fishing expedition improperly looking into private citizens Federal Wiretap Act-protected conversations.

184.    Upon information and belief, Plaintiff's disciplinary punishment was far in excess of that received by male police officers for infraction much more serious than those alleged against Plaintiff

185.    It is patently arbitrary, and also retaliatory, for the Police Chief to offer a "two day 'for the record only'" penalty,[7] based upon what he testified at trial were egregious facts, but then to recommend a forfeiture of pay totaling 62 days after the those egregious facts were shown to be false at trial.  This demonstrates bad faith and unlawful animus.

186.    Moreover, the Police Chief's insistence that he be able to use the disciplinary settlement as an admission of Plaintiff's guilt on the September 3 and 7, 2004 disciplinary charges in Plaintiff's *Wetzel 1* federal lawsuit reveals the Defendant Town's intent to exact an unconstitutional condition from Plaintiff, and to coerce her into giving up legitimate federal rights.

---

[7] *See*, August 9, 2006 letter of Lance Klein, indicating to plaintiff's counsel that the Town had previously offered settlement of the disciplinary charges with settlement including a "two (2) day suspension."

34

187.    Plaintiff Wetzel has been damaged thereby, for which she seeks the remedies available the 5th and 14th Amendments to the United States Constitution, as enforceable under 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF——
## VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE AND PROCEDURAL DUE PROCESS

188.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

189.    In using sham and rigged disciplinary process, the Defendant Town has violated procedural and substantive due process rights of its civil servant, the Plaintiff.

### *Official town action*

190.    Upon information and belief, the municipal conduct at issue is not "random and unauthorized" action by individual agents of Town government, but rather the considered an authorized (though illegal) action of the Town's legislative body.

191.    Involved here is the official action of the Town of Orangetown, not "random and unauthorized act" of its employees.

192.    Moreover, the fact that Plaintiff has sought to petition the Defendant Town government  for the redress of grievances further evidences its municipal policy of intentionally depriving its citizens and its employees of federally guaranteed rights. *See, Wetzel 2.*

35

### *Hearing officer henchmen for hire*

193.     Upon information and belief, the use of a "for hire" "hearing officer," acting essentially as a henchman,[8] violates Plaintiff's basic Due Process right to a fair and impartial factfinder.

194.     Upon information and belief, Keane & Beane (including Mr. Klein) and Mr. Wooley have had a familiar working relationship in the past.  See, Higham v. Temple, 2006 WL 2714712 (S.D.N.Y., Sep 22, 2006).

195.     Upon information and belief, Mr. Wooley has a reputation for always adjudicating cases in favor of his municipal employer.  Id.

196.     however, the pontiff mention them believe the relationship between Keane & Beane and Mr. Wooley is not merely that of two professionals coincidentally working together on the same case, but rather that of a patron-benefactor.

197.     Upon information and belief, Keane & Beane recommends Mr. Wooley's appointment, and Mr. Wooley reciprocates my adjudicating cases in favor of Keane & Beane's client.

198.     Upon information and belief, it is human nature to reward those who grant you favor.  However, it is antithetical to justice in the context of the judge favoring one party in a disputed case.

199.     Thus, upon information and belief, defendant Wooley is a henchman, and administrative "hanging judge," whose services are "for hire" to any municipality or its counsel desiring a favorable outcome against an employee, regardless of the evidence.

---

[8]  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY definition of "henchman" includes: " 2 a: trusted follower; a right-hand man  b: a political follower whose support is chiefly for personal advantage  c: an unscrupulous often violent member of a gang."

200.    Upon information and belief, Mr. Wooley's conduct and presiding over the disciplinary case at issue provides ample proof of partisan behavior.

201.    The refusal of Mr. Wooley to allow *voir dire* at the beginning of the disciplinary trial on the subject of his impartiality or lack thereof further suggests a lack of impartiality, and that his was a "for hire" appointment.

### Denial of, and intentional infringement upon, the right to defend at trial

202.    Upon information and belief, the Defendants in the town representatives including the police chief and his prosecutor/counsel) engaged in attempting to deny plaintiff her basic due process rights, such as adequate notice of charges before trial, adequate ability to prepare and present a defense, and adequate access to and production of relevant evidence needed for the defense.

203.    Upon information and belief, the Defendants' representatives actively sought to deprive the disciplinary respondent, Plaintiff, of necessary evidence within the Town's control, including physical evidence in the possession of the Town, and testimonial evidence in the form of necessary witness testimony.  Upon information and belief, the prosecution engaged in the intentional intimidation of witnesses, and was also involved in the intentional non-preservation of evidence (if not the actual destruction of evidence, for example, FOB data), at the disciplinary trial.

### No input to ultimate decision maker, the Town Board

204.    Plaintiff was denied any reasonable opportunity to be heard by the decision-maker on the disciplinary charges against her, namely, the Defendant Town Board.

205.    The Wetzel disciplinary process was, upon information and belief, intentionally designed by the Town's representatives to be conducted in an abusive and  fundamentally unfair manner as feasible.

37

206.    Upon information and belief, the proceedings abusive tactics were intentionally designed to burden and oppress the respondent public employee, Plaintiff herein.

207.    Upon information and belief, this action violates procedural and substantive due process, and is shocking to the conscience.  Some aspects of this governmental abuse are as follows:

i.   The possibility that the public employee might need to expend perhaps a year's worth of salary or more in order to adequately defend her career against retaliatory accusations is abusive and shocking;

ii.  The assertion by the Town's outside counsel (and the hearing officer in his Wooley report) that a disciplinary respondent (Plaintiff) might be subjected to personal liability under the Federal Wiretap Act for exercising her right to a public hearing  (The assertion is also shocking to the conscience because it was the Town's police chief and his counsel which caused both the unlawful recordings, and the public dissemination of such recordings at the disciplinary trial.)

iii. The disciplinary trial was designed to be a sham and a charade, with the purpose being a disciplinary convicting regardless of the guilt or innocence.

iv.  A 2 year delay in trial violates basic Due Process, as does the four year span concerning the as yet untried September 3, 2004 charges;

v.   The unconstitutional condition demanded by the town and its 2004 proposed settlement;

vi.  The Town Attorney's presenting a proposal to Plaintiff's PBA representative immediately prior to the disciplinary trial, but without informing Plaintiff's attorneys;

vii. The outrageously excessive punishment requested by the police chief.

### *No notice of the penalty sought*

208.    Upon information and belief, an important aspect of due process is notice of the punishment sought by the government.

38

209.    In this case, Plaintiff was provided with absolutely no notice of what punishment was sought by Chief Nulty.

210.    As described above, she was offered a settlement which amounted to only a "paper penalty" of a two-day suspension without any financial exaction (but I condition that her admission of guilt be available to the Town to use against her and her federal litigation).

211.    As described above, because Plaintiff exercised her right to a trial, and even though the evidence which developed a trial exonerated Plaintiff regarding the factual assumptions relied on by Chief Nulty, is requested punishment and became the maximum short of termination.

212.    However, at this stage of the proceeding where Chief Nulty sought maximum punishment, Plaintiff was not permitted to provide any further input, as she was denied the opportunity to submit a post-trial brief, and denied any meaningful input to the Town Board.

213.    Upon information and belief, it violates fundamental due process not to inform the respondent of the penalty sought.

### Disciplinary punishment was unconscionably excessive

214.    Even if Plaintiff had committed the infractions (which we believe any impartial person would agree she did not), the punishment imposed is excessive and unconscionable.

215.    Upon information and belief, in the context of police officers disciplined, imposing one half the maximum punishment short of termination would be analogous to imposing one half of a sentence of life imprisonment for the offense of jaywalking.

216.    This becomes apparent when one considers that, upon information and belief, police officers committing far more serious alleged infraction have suffered penalties only a fraction as severe as that imposed upon Plaintiff.

217.    Essentially the prosecution has accused Plaintiff of committing a mistake in judgment. Respectfully, the mistake in judgment was theirs, not hers, but nevertheless the alleged faults were mistakes in judgment and as such, should not be the subject of quasi-criminal punitive action, namely, suspension without pay.

218.    Of much greater risk, impose punishment provides a predicate for future adverse action, such as termination.

219.    Finally, it is clear that this punishment is designed to terrorize not only plaintiff, but all other police officers who might, someday, need to decide whether to "demand a trial" regarding accusations of wedge their answer. The answer is clear, absent a federal remedy in this case-- no reasonable police officer would dare subject himself or herself to the administrative system of injustice administered by the town

220.    It is a system which violates procedural and substantive due process, is shocking to the conscience, and detrimental to the public interest.

***Disparate punishment***

221.    Upon information and belief, in Orangetown, under the Chief Nulty's administration, and condoned by the Town Board, Caucasian male officers under 40 have received very minor disciplinary punishment for quite severe errors in judgment or misconduct.

222.    Females, on the other hand, are treated harshly for actions which may not be infractions at all. Plaintiff situation is the most egregious, but other female officers experiencing unreasonable or unjustified disciplinary action at the hands of Chief Nulty include Sergeant (retired) Barbara Noyes and Police Officer Cathleen Sampath.

223.    On the other hand, upon information and belief, examples of minor punishment men for men perpetrating serious misconduct or negligence include:

40

    a. a male Police Officer (now in another department) for his negligent discharge of an AR 15 (M16-like) semiautomatic assault rifle in the police officer lineup room, thereby endangering the lives of any police officers in attendance. He is reported to have received a punishment of 3 days pay or less.

    b. a male Police Officer (now detective) for negligent discharge of a pistol, shooting another police officer in the ankle. The Officer is reported to have received a punishment of 3 days pay or less

    c. a male Police Officer for negligent discharge of a pistol, shattering a mirror in the officers' locker room and traveling into the supervisors' section of the locker room. He is reported to have received a punishment of perhaps one day pay (but in no event more than 3 days pay).

    d. Officer R.S. received minimal discipline for his involvement in permitting an improper and outrageous strip search of one or more emotionally disturbed high school (BOCES) student(s), yet is reported to have received punishment of merely three days loss of pay.

224.    Upon information and belief, the official written policy of the Defendant Town's police department is progressive discipline, meaning ordinarily a progression from less severe punishment to correct disciplinary problems, to more severe disciplinary punishment if a problem continues.

225.    Thus, if an officer is in need of correction or discipline, supervisors should first use counseling, and if such counseling does not correct the deficiency, then extra training, admonition, informal reprimand, formal reprimand, with formal disciplinary charges used only as a last result (or where the misconduct is so egregious that only formal discipline is appropriate).

226.    Progressive discipline was not provided to Plaintiff. Rather, Plaintiff has been punished in an intentionally humiliating and public manner serving no proper purpose, but rather, detrimental to the department, detrimental to the town, detrimental to morale and discipline, and detrimental to expectation of police officers that they will be treated fairly.

*Officially-sanctioned due process violations require a federal remedy*

227.    Upon information and belief, Defendants' officially sanctioned disciplinary

process is so arbitrary, capricious, and abhorrent to basic principles of due process as to violate

substantive due process of law.

228.    As noted in part above in connection with Plaintiff's first claim regarding

deprivation of equal protection, Defendants disciplinary process intentionally, and by design,

denied Plaintiff due process of law by:

   a.   denying Plaintiff the right to trial before the town board itself, where she was
        both notified of this in the notice of charges, and where this such appears a
        requirement of the Police Act;

   b.   providing Plaintiff with only five work days notice in advance of trial, at the
        same time Plaintiff was informed of the identity of the hearing officer,
        namely, June 30, 2006;

   c.   denying Plaintiff's reasonable request for an adjournment regarding the trial
        scheduled, on five work days notice, for July 11, 2006.

   d.   bifurcating the September 2004 charges into two sets of charges, thereby
        requiring Plaintiff to prepare separate defenses for, and undergo, two separate
        disciplinary trials, one scheduled for July 11th, and the other yet unscheduled
        one year later.

   e.   providing no procedural guidance regarding the conduct of the hearing, with
        the Town having promulgated no rules or regulations under the Police Act to
        guide Plaintiff as a disciplinary respondent;

   f.   providing no effective opportunity for Plaintiff to subpoena witnesses or
        evidence prior to the first day of trial, and arguably no power to subpoena
        witnesses or evidence at all (because the hearing officer tribunal is
        unauthorized here);

42

g.  Police Chief Nulty's attorney, Mr. Klein, forbade Plaintiff's counsel from
    contacting any town employees in connection with the disciplinary case, and
    threatened recourse to the federal magistrate judge handling discovery in
    *Wetzel I* if Plaintiff's counsel attempted to prepare a defense by contacting
    potential witnesses.[9]

h.  providing no discovery (even of written material confiscated from Plaintiff in
    September 2004) as to material vital to Plaintiff's defense, such as activity
    logs, FOB access card records, video camera recordings, Plaintiff's own
    Memo Book, and many other items requested of the Town, in writing, but
    refused;

i.  providing no bill of particulars, or adequate opportunity to prepare and request
    same, so that Plaintiff was not reasonably apprised of the disciplinary charges
    against her;

j.  providing no specific trial location (e.g., a specific room to convene the
    proceedings) in its notification to her, so that Plaintiff could so inform the
    interested public, and have a public trial, as was and is her Police Act right;

k.  as mentioned above, the appearance and actuality of bias and non-impartiality
    by the hearing officer, including that:

    A.  there is no indication that defendant Wooley was selected in an
        impartial manner, but rather appears that he was selected by the
        defendant Town and Police Chief Nulty (who has a personal stake
        in the litigation as a § 1983 defendant), and their counsel, Keane &
        Beane PC is acting as both an advocate in *Wetzel 1*, as the
        "prosecutor" in the disciplinary matter, and apparently also as
        counsel to the Town Board, which in a disciplinary matter is
        obligated to be an impartial as "judge";

    B.  thus, it appears the Charging Party (Police Chief Nulty) is
        vicariously sitting as judge and jury, in violation of the express
        provisions of § 7 of the Police Act, and fundamental principles of
        due process;

---

[9] See, Keane & Beane (L. Klein ) letter dated June 5, 2006, letter #1.

43

    C.  it appears that defendants attorneys engaged in *ex parte* communication with the hearing officer to establish a trial date on an expedited basis, to prejudice Plaintiff's rights in *Wetzel 1*.

    D.  Plaintiff served discovery demands in *Wetzel 1* (inquiring into the retaliatory aspects of defendants actions) on June 28, 2006, and two days later Plaintiff was informed that the disciplinary trial was schedule for 5 work days later;

    E.  The disciplinary trial was set to begin two days before the defendants' deposition of Plaintiff in *Wetzel 1*, and thus apparently designed to interfere with Plaintiff's preparation for her deposition in the federal lawsuit, *Wetzel 1*.

    F.  There is no evidence that Defendant Wooley had any substantial prior experience in police disciplinary hearings or arbitrations;

    G.  There is no evidence that this hearing officer was regularly selected through any regular and competitive system, such as a published request for proposals, or other process designed to avoid the favoritism disfavored by public policy, as described, for example, in N.Y.S. General Municipal Law § 104-b;

l.  Plaintiff was has never been notified of what the Town regards as the maximum punishment which could be imposed, if all charges were proven. She was not informed, for example, whether the Town considers termination, or demotion in rank, a possible punishment.

m.  The hearing officer's letter indicated that the procedures of Civil Service Law Section 75 will be applied, yet in the Town's challenge to arbitration in police disciplinary matters, New York's highest court expressly held that the longstanding arbitration procedures were impermissible, and that Civil Service Law Section 75 did not apply.  See, *Matter of Patrolmen's Benevolent Ass'n of City of New York v. New York State Pub. Empl. Relations Bd.*, 6 N.Y.3d 563,(2006), decided March 28, 2006 ("*Orangetown v. PBA*")("...where Civil Service Law §§ 75 and 76 apply, police discipline may be the subject of collective bargaining.").

n.  Notwithstanding *Orangetown v. PBA*, the Town has not promulgated rules and regulations in accordance with Orangetown v PBA, even though that decision pre-dated the disciplinary trial.

44

o. There is no "neutral" or "detached" governmental official responsible for supervising this disciplinary procedure, even though the procedure could significantly affect Plaintiff's property or liberty interests, 27 year career, and 2006 achievement of becoming the second female lieutenant in Rockland County history, with an unblemished disciplinary past, significant career achievements and excellent reputation among police officers and supervisors.

p. There is no procedure in place for a disciplinary respondent to directly input the actual decision-maker, the Town Board, and thus no effective "opportunity to be heard."

q. Plaintiff has been denied any meaningful opportunity to provide input to the ultimate decision maker, the Town Board;

r. plaintiff was denied the ability to submit a post-trial brief to the hearing officer;

s. the remains the threat of a repetition of most or all of the above abuses if the municipal and law firm Defendants choose to prosecute the still pending September 3, 2004 disciplinary charges.

229. Upon information and belief, disciplinary proceedings of civil servants are "quasi-criminal" and punitive in nature, and warrant full due process protections.

230. In sum, this Court must provide a federal venue to remedy the carefully calculated official action intentionally devised to deprive police officers (such as Plaintiff ) of their federal right to due process of law.

231. Plaintiff Wetzel has been damaged thereby, for which she seeks the remedies available under the 5th and 14th Amendments to the United States Constitution, as enforceable under 42 U.S.C. § 1983.

### THIRD CLAIM FOR RELIEF—
### CERTIORARI (ARTICLE 78) REVIEW OF THE FINDING OF GUILT
### AND PENALTY ASSESSMENT OF THE DEFENDANT'S TOWN BOARD,

## WITH A DECLARATION NULLIFYING THE TOWN BOARD'S DECEMBER 10, 2007 ACTION

232.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

233.    Upon information and belief, under the Police Act, Plaintiff is entitled to

*certiorari* review from a court of competent jurisdiction.

### Federal Court's supplemental jurisdiction

234.    *Certiorari* review is a common law judicial remedy to provide legal review of

governmental action, and is specifically allowed by the Police Act.

235.    Such review is within, and can properly be undertaken under, this Court's

supplemental jurisdiction.  See, e.g., City of Chicago v. International College of Surgeons, 522

US 156 (1997).

236.    This Court's supplemental jurisdiction is found at 28 U.S.C. § 1367, which

provides in relevant part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided
> otherwise by Federal statute, in any civil action of which the district courts have
> original jurisdiction, the district courts shall have supplemental jurisdiction over
> all other claims that are so related to claims in the action within such original
> jurisdiction that they form part of the same case or controversy under Article III
> of the United States Constitution. *** *(emphasis added)*

237.    There can be no doubt that this case involves state claims that are inextricably

intertwined with Plaintiff's Federal claims, and that the state claims are certainly part of the

federal case in controversy.

238.    Plaintiff is entitled by federal statute to elect the federal forum, where

predominantly federal rights have been violated.   The Court should note that an article 78

proceeding does not provide for a jury trial, nor does it provide a damages remedy.

46

239.    If *certiorari* review is not provided by this federal court, Plaintiff may be forced

to forego such remedy and proceed only on her federal claims.  This will, of course, defeat both

the spirit and intent of the supplemental jurisdiction provisions of Title 28.

### Straightforward *certiorari* relief is sought

240.    As to Plaintiff's request for certiorari review under the Police Act, Plaintiff

respectfully submits that Town Board's action is unlawful under New York law in that:

- Disciplinary trial should have been undertaken exclusively by the Town Board, as there were no rules or regulations promulgated by the Town permitted otherwise, even assuming *arguendo* that the Police Act would permit the Town to delegate such authority;[10]

- Even if *arguendo* that promulgated rules or regulations existed authorizing a delegation of authority to a hearing officer, there was no timely written delegation here by the Town Board to Mr. Wooley to conduct fact-finding. The Town resolution which purported to do so here (Resolution 600 of August 2006)  was issued <u>after</u> the prosecution had already rested.

- The unilateral selection of a partisan to preside over a full adjudicatory hearing, where the individual is selected by the prosecution with the intention that he act as a henchman, and convict the respondent regardless of the evidence and fairness, violates not only federal constitutional law, but also of New York law.

241.    As to the above, the federal court is not faced with a difficult task.  I need only

declare the Town Board action a nullity, and remand for the matter to the Town Board, to

conduct a trial itself, if it chooses to do so, with certain guidance so that the Town can do so in

the future in a constitutionally sufficient manner.

---

[10] Under the Westchester County Police Act, factfinding cannot be delegated by a town or village. For the State to provide police officers with substantively different rights, merely because they work on different sides of the Hudson River, may violate equal protection, the privileges and immunities clause, and due process under the federal Constitution, as the Police Act is applied.

242.    The Court should consider that the State law issues are few compared to the many important federal law issues involved herein.  Moreover, the the State law issues are easily redressible, without undue burden to the federal court.

243.    On the other hand, if not addressed by the federal court in this case, the State courts would be unduly burdened, especially if it is required to examine the *Wetzel* 1 through *Wetzel* 4 lawsuits already pending in this federal court.

## FOURTH CLAIM FOR RELIEF—
## FIRST AMENDMENT RIGHT TO PETITION GOVERNMENT
## FOR REDRESS

244.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

245.    Plaintiff repeatedly attempted to seek redress from the Town Board in connection with her disciplinary case, and the trial thereof.

246.    The Town Board refused to allow such petition, including but not limited to considering the September 21, 2006 letter-motion from Plaintiff's attorney challenging the authority of Mr. Wooley to preside over a disciplinary trial, and challenging his non-impartiality and unfairness.

247.    The Town Board continues to refuse Plaintiff the right to petition for redress.

248.    In Plaintiff's opinion, being afforded "5 minutes" to for her attorney to talk, while prohibited from making "argument on the evidence" or making a "closing statement," is not permitting a petition.  It is a sham offer of an opportunity, after decision-making was all but concluded.

249.    Upon information and belief, for constitutional purposes it makes absolutely no difference whether the First Amendment petition is furnished by the petitioner herself (the

plaintiff therein), an attorney in fact (such as a lay spokesperson) or an attorney at law

(Plaintiff's attorney).

250.    By continuing to deprive Plaintiff of the ability to object to the unfair disciplinary

process, and to deprive her of the ability to present "her side of the story" to the Defendant Town

Board, where it was being presented only with the Police Chief version of the facts (via the

closing statement of the Town's outside counsel and the Report and Recommendation of its

henchman hearing officer), Plaintiff was deprived of her right to petition her government for the

redress of wrongs.

251.    Plaintiff has been damaged thereby.

### FIFTH CLAIM FOR RELIEF—
### REQUEST FOR DECLARATION THAT THE POLICE ACT, AS
### APPLIED TO PLAINTIFF, IS UNCONSTITUTIONAL.

252.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

253.    The Police Act is a special statute of state government and as such, upon

information and belief, must not violate citizens federal constitutional either facially or as

applied.

254.    Upon information and belief, as applied by the defendant town, the Police Act

violates Plaintiff's federal constitutional rights, and also the federal constitutional rights of all

police officers which may be subject to its similar unlawful application.

255.    As applied, Police Act deprives police officers, including the Plaintiff, to equal

protection of law, to due process of law, to freedoms of speech, association and petition under

the First Amendment, and the privileges and immunities of American citizens.

256.    As applied, the defendant town's application of the Police Act deprives public employees of their property right to security in their public employment, and to the merit service protections of the civil service.

257.    As applied, the provisions of the Police Act are also unconstitutionally vague, allowing for an interpretation which essentially deprives the saucers of basic due process and equal protection.

## SIXTH CLAIM FOR RELIEF—
## RETALIATION FOR EXERCISING FEDERAL RIGHTS
## UNDER 42 U.S.C. § 1983 AND TITLE VII

258.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

259.    Defendants retaliated against Plaintiff because Plaintiff opposed gender discrimination, opposing political patronage, cronyism and political discrimination in police promotions, opposed unlawful retaliation, and opposed the violation of Plaintiff's federal statutory and constitutional rights.

260.    Defendants retaliated because plaintiff would not be coerced into abandoning her federal lawsuit.

261.    Defendants retaliation includes allowing, and condoning, the abusive and pretextual disciplinary proceedings which have been prosecuted against her, and the Town Board adjudication thereof, including its refusal to permit any meaningful input from the Plaintiff or her attorney, and the police chief abusive implementation of the punishment adjudged.

262.    Plaintiff has previously sought relief regarding these retaliatory disciplinary charges including filing a timely charge of discrimination with the United States Equal Employment Opportunity Commission, which charge remains pending.

50

## SEVENTH CLAIM—RETALIATION PROHIBITED BY
## N.Y.S. CIVIL SERVICE LAW § 75-b

263.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

264.    The Defendants and their representatives (including Mr. Wooley) denied Plaintiff her right to put on a defense of retaliation, unequal treatment or selective prosecution at the disciplinary trial.

265.    Defendant Wooley refused to permit Plaintiff to introduce evidence of retaliation. He refused to consider or allow into evidence Defendant Klein's February 1, 2006 letter.

266.    Upon information and belief, this refusal to consider retaliation in connection with the disciplinary proceeding against Plaintiff, a civil servant, violated N.Y.S. Civil Service Law § 75-b, by denying Plaintiff the right under § 75-b(3)(a) to assert the defense of retaliation.

267.    Upon information and belief, § 75-b(4) permits this federal court to adjudicate this matter here, as the retaliation defense was not permitted by Defendant Wooley in the disciplinary trial.

## EIGHTH CLAIM FOR RELIEF—
## DECLARATION OF INVALIDITY UNDER THE STATE
## CONSTITUTION, INCLUDING STATE BILL OF RIGHTS AND CIVIL
## SERVICE PROVISION

268.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

269.    Defendants' actions have also violated the provisions of New York's constitution, including but not limited to N.Y.S. Constitution Article I, § 6, guaranteeing due process of law, and Article I, § 11, guaranteeing the equal protection of law, as well as state statutory provisions protecting civil service in their public employment, and prohibiting retaliation for disclosing unlawful and discriminatory governmental activities, including but not limited to the N.Y.S. Human Rights Law contained in Executive Law article 15.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

51

a) declaring that the December 10, 2007 action of the Defendant Town Board adjudicating Plaintiff's guilt and assessing a penalty is a legal nullity;

b) issuing an injunction retroactively restating Plaintiff regarding her 10-day suspension;

c) remanding the disciplinary case to the Town Board, for its further consideration and action consistent with the requirements of law;

d) awarding Plaintiff back pay equivalent to 12 days (the actual period of her suspension as a fermented by the police chief)

e) declaring that the procedures employed by the defendants, ostensibly under the Police Act, are unconstitutional as applied,

f) granting Plaintiff a permanent injunction against continued retaliation in the form of baseless disciplinary charges adjudicated before a non-impartial agent of the town

g) declaring Plaintiff's rights as a public employee, including but not limited to the rights to equal protection of law and due process of law set forth above;

h) if the Court deems it appropriate, consolidating the damages aspects of this case with Plaintiff's federal retaliation case, *Wetzel 3;*

i) granting an award of reasonable attorneys' fees and the costs of this action; and

j) awarding Plaintiff such other and further relief as the Court deems just and equitable in the circumstances.

52

**Jury Demand**

*Plaintiff demands trial by jury in this action.*

Dated: Stony Point, New York
        January 9, 2008

                       Respectfully submitted,

                       _____/S/_____

                       MICHAEL D. DIEDERICH, JR.
                       *Attorney for Plaintiff*     *(MD 2097)*
                       361 Route 210
                       Stony Point, N.Y. 10980
                       845-942-0795
                       Mike@DiederichLaw.com

Attachments:
Exhibit "1" (Town Board Resolution 795 of December 10, 2007)
Exhibit "2" (Wetzel Chronology outline)
Exhibit "3" (Itemization of disciplinary trial due process deprivations
Exhibit "4" (Manual for Municipal Reprisal against Police Officers--draft)

**EXHIBIT B**
(1 of 2)

*EXHIBIT "1"* ( Town Board Resolution 795 of December 10, 2007)

### RESOLUTION NO. 795 POLICE/DISCIPLINARY CHARGES EMPLOYEE NO. 1422

Councilman Troy offered the following resolution, which was seconded by Councilman O'Donnell and on a roll call was adopted:

Whereas a proceeding was commenced against Employee Number 1422 based upon disciplinary charges dated September 7, 2004, that were issued by the Chief of Police pursuant to the Rockland County Police Act; and

Whereas the Town Board designated Joseph P. [sic] Wooley, Esq., as the Hearing Officer for such charges; and

Whereas a hearing was held at which Employee Number 1422 was represented by counsel; and

Whereas, the Hearing Officer rendered findings of fact and recommendations based upon the record presented at the aforementioned hearing; and

Whereas the Town Board has had an opportunity to review the record in this matter, as well as the report and recommendations of the Hearing Officer; and

Whereas, on December 10, 2007, at its regularly scheduled public meeting, the Town Board provided the Employee and Chief Nulty with an additional opportunity to address the Town Board with respect to the pending disciplinary charges;

Now, therefore, be it resolved that the Town Board hereby accepts the Hearing Officer's findings of fact, as more fully set forth in the decision of the Hearing Officer dated June 11, 2007; and

Be it Further resolved that, based upon the recommendations contained in the decision of the Hearing Officer, the Town Board hereby finds Employee Number 1422 guilty of Charge 1(a), (b) and (c); Charge II, Charge III(a) and (b); Charge IV; Charge V; Charge VI (a) and (b); Charge VII(a); Charge VIII; Charge IX, and Charge X, and

Be it Further resolved that, based upon the recommendations contained in the decision of the Hearing Officer, the Town Board hereby finds Employee Number 1422 not guilty of Charge VII(b) and Charge XI, and

Be if Further resolved that the Town Board rejects the Hearing Officer's recommendation that a penalty of twenty (20) days forfeiture of salary or compensation be imposed; and

Be it Further resolved that, based upon the entire record in this matter, and in recognition of the employees prior length of service without any prior disciplinary problems, the Town Board imposes a ten (10) days suspension without pay, which is less than the penalty recommended by the Hearing Officer.

Ayes: Councilpersons Troy, O'Donnell, Manning
Supervisor Kleiner
Noes: None
Abstained: Councilperson Morr

*EXHIBIT "2"*

## CHRONOLOGY[1] --*Wetzel v Orangetown*

| | |
|---|---|
| 1977 | Plaintiff Wetzel, as a civilian, awarded PBA award for bravery for assistance to a police officer in trouble (Patrolman Kevin Nulty-- the Defendant Chief)) |
| 1978 | Barbara Noyes hired as first female police officer in Town of Orangetown (and second in history of Rockland County) |
| 1980 | June 28  Plaintiff appointed to the Orangetown Police Department, following a family tradition of police service. |
| 1990 | October 22  Plaintiff was appointed to the rank of Sergeant (under Chief Crable). |
| 1997 Feb. | Captain Kevin Nulty promoted to chief of police |
| 1997 June | Two Lieutenant promotional opportunities -- first ever where a female was an eligible candidate (Barbara Noyes) |
| 1999 | Plaintiff takes Lieutenant examination |
| 2000 June | Plaintiff learns of upcoming Lieutenant promotional opportunity |
| 2000 Sept.13 | Chief Nulty letter to 4 sergeants (Brown, Butterworth, Mercurio & Wetzel) notifying of promotional opportunity |
| 2000 Dec | Interview for promotion |
| 2001 Jan. 16 | Sgt. Mercurio promoted over Plaintiff (notwithstanding Plaintiff's much greater seniority and service).  Mercurio is male, and his aunt is a prominent county politician (in the same political party as the majority of the Town Board).  He has Honor Guard ceremony. |
| 2001 May | Another apparently "politically connected" officer is selected over another officer with apparently far better credentials for promotion under Police Act criteria. |
| 2001 May | Plaintiff files N.Y.S. article 78 petition (Kopf [a/k/a Wetzel] v Orangetown/Lt. Mercurio ("Mercurio Art. 78") |
| 2001 Jan | Lt. Mercurio takes over midnight squad |
| 2001 Autumn | Mercurio Art. 78 litigation activity & motion to dismiss |
| 2002 Jan | Mercurio moved to Plaintiff's squad, becoming her immediate supervisor |
| 2001-2002 | Mercurio Art. 78 petition decision  (May 29, 2002) & subsequent appeal. |
| 2003 Autumn | Schedule Mercurio Article 78 for trial |
| 2003 Dec. | Federal action 03 Civ 9896 ("*Wetzel I*") commenced |
| 2004 Jan. | Promotion of Sgt. Donald Butterworth to Lieutenant; Plaintiff again denied promotion (notwithstanding, again, Plaintiff's much greater seniority and service and identical civil service exam scores).   He has Honor Guard ceremony. |

---

[1] This document was prepared by Plaintiff's counsel, and is intended as demonstrative evidence as an aid to the Court.

2004 March    Mercurio Article 78 trial commences

2004 April    Plaintiff files EEOC charge of gender discrimination regarding January 2004 non-promotion

2004 April    Plaintiff files article 78 petition (Butterworth's January 2004 promotion)

2004 May 28    EEOC "Right to Sue" letter

2004 Summer-Autumn  Chief Nulty anticipates and/or plans for new lieutenant vacancy for January 2005.

2004 July 4 & 7  Events of these days serve as pretext for September 3 & 7, 2004 disciplinary charges

2004 July 14 (approx)  Plaintiff finalizes & files *Wetzel 1*supplemental/amended federal complaint.

2004 July-August      Chief Nulty's HQs officers (including Lt. Zimmerman)  illegally review secretly eavesdropped telephone conversations between detainee Frank Dowd and his domestic companion Nicole Colandrea.  The audiotapes serve as a basis for September 7, 2004 disciplinary charges.

2004 August 4  Judge William Nelson (Rockland Co. Supr. Ct.) dismisses Plaintiff's article 78 petitions, finding that the Town Board promotions of the two men had a "rational basis"

2004 Aug. 18    Chief Nulty's OUR TOWN comments of Aug 18, 2004 critical of Plaintiff, his subordinate police officer

2004 Aug 23    Diederich's responsive letter to editor to OUR TOWN

2004 August  Keane & Beane PC (and its principal Lance Klein Esq.) assist and advise Chief Nulty in investigating and developing disciplinary charges against Plaintiff Wetzel, at the same time Keane & Beane represents the Chief and Town Board in defending against *Wetzel 1*. Keane & Beane learns of (and may have provided advice to the municipal defendants regarding) unlawfully recorded telephone conversations.  Keane & Beane appear to be actively participating in and designing the deprivation, obstruction and interference with Plaintiff's federal rights (and those of others too—Ms. Colandrea, Mr. Dowd and Sgt. Flannery).

2004 Sept 3    Entry of Judgment – Plaintiff's article 78 (re: Sgt. Donald Butterworth promotion)

2004 Sept. 3 or 4  Plaintiff handed a sealed manila envelope containing disciplinary charges-- 1st set  re: events of July 4, 2004.

2004 Sept. 8    Plaintiff was served second set of disciplinary charges regarding alleged events of July 7, 2004.

2004 Sept. 8  Lt. Mercurio finalizes a compilation of data which Keane & Beane subsequently asserts was "prepared in contemplation of litigation" and therefore privileged from disclosure (e.g., at the Wetzel disciplinary trial).

2004 Sept and ongoing  Keane & Beane represents the Town in arguing in Matter of Orangetown PBA that police discipline is not a proper subject of collective bargaining and impartial arbitration.  Keane & Beane presumably earns significant fees in litigating this issue, yet there appears to be no demonstrated need to change an arbitration procedures in effect for years.

2004 Oct. 5  Article 78 Notice of Appeal filed

2004 December   Plaintiff develops serious medical problem (ultimately requiring partial hysterectomy)

2004 December Plaintiff learns about upcoming promotional opportunity

| | |
|---|---|
| 2005 Jan. | Sgt. James Brown promoted to Lieutenant   He has Honor Guard ceremony. |
| 2005 | Chief Nulty directs Plaintiff to be gynecologically examined by a gynecologist unknown to her |
| 2005 | After undergoing major surgery, Plaintiff subjected to "bed check" telephone calls from the Police Department |
| 2005 June 9 | EEOC complaint |
| 2005 Sept. 5 | Decision of U.S. District Court (Judge Robinson) re: Town/Nulty's motion to dismiss federal complaint |
| 2005 Nov. 3 | Plaintiff's attorney is released from active duty with U.S. Army, after serving one year in central Iraq. |
| 2006 Jan. | Plaintiff is promoted to the rank of lieutenant.   She has no Honor Guard ceremony (unlike prior 3 promotions of men to rank of lieutenant). |
| 2006 Jan. | Defendants' attorney Lance Klein suggests to Plaintiff's attorney that he makes a demand.   Plaintiff's attorney proposes settlement. |
| 2006 Feb. 1 | Defendants' attorney Lance Klein indicates that if Plaintiff does not abandon her federal lawsuit (or settle on Defendants' terms), that he will ensure that the 2 disciplinary cases (of September 3 & 7, 2004) pending against Plaintiff will be prosecuted |
| 2006 Spring/Summer | Plaintiff begins successfully working in her new position of squad lieutenant. Performance is acknowledged as satisfactory. |
| 2006 June 30 | Plaintiff is unexpectedly informed that a disciplinary trial will be prosecuted against her, and that it will commence against her in 5 business days, beginning July 11 |
| 2006 July 7 | Plaintiff commences *Wetzel 2*, to enjoin the retaliatory disciplinary proceeding.   TRO is denied. |
| 2006 July 11- Nov 1 | The Wetzel disciplinary trial (9 days) |
| 2006  Nov 1 – June 12 | For over 6 months, Defendant Wooley does not issue a findings and recommendations. |
| 2006  Nov 1 – June 12, 2007 | For over 6 months, Defendant Wooley does not issue a findings and recommendations. |
| 2007 February & thereafter | Lt. Wetzel's attorney repeatedly asks Hearing Officer for opportunity to submit a post-trial brief.  No response is forthcoming. |
| 2007 May | Keane & Beane submits a "Closing Statement" (49 page written brief) and Hearing Officer Wooley refuses to inform Lt. Wetzel's counsel whether a brief submitted on Lt. Wetzel's behalf would be considered |
| 2007 June | Hearing Officer Wooley mails a copy of his 59 page, single spaced, report/recommendation to Lt. Wetzel's counsel.   This recommends the maximum penalty authorized by the Police Act, short of termination. |
| 2007 August | Town provides no information to Plaintiff's attorney regarding status of case; whether case will or has been presented to the Town Board; and whether he will be given an opportunity to provide Plaintiff's side of the case—her defense—to the Town Board |

2007 Nov.    Plaintiff learns that the Town Board is reviewing the record and Wooley Report, and again requests an opportunity to provide a defense

2007 Dec. 3    The Town Attorney advises that he will be afforded "5 minutes" to provide a statement at the public portion of the December 10, 2007 Town Board meeting. The Town Attorney later clarifies that plaintiff's attorney will not be permitted to make "argument on the evidence" or provide a "closing statement."

2007 Dec. 10    Plaintiff's attorney reads from a letter, and is allowed exactly 5 minutes.  Later, the Town Board adjudicates guilt and punishment.

2007 Dec    Plaintiff request Town Board reconsideration; Town Attorney responds no.

2008 Jan 4    Plaintiff begins her "10 day suspension," in two segments extending over 12 days.

2008 Jan 9    Wetzel "6" is commenced, seeking, *inter alia*, invalidation of Town Board's December 10, 2007 guilt finding and penalty assessment, and challenging the unconstitutional disciplinary proceedings under the Police Act, as applied

EXHIBIT "3"

## ITEMIZATION OF VARIOUS DUE PROCESS
### DEPRIVATIONS ENCOUNTERED DURING THE DISCIPLINARY TRIAL

The Town's ad hoc and unprecedented disciplinary process is arbitrary and capricious, and designed to deprive Lt. Wetzel of due process of law. It is essentially a sham, and a hoax as far as due process of law is concerned. In particular, defendants intended disciplinary process denies Lt. Wetzel due process of law for a number of reasons including, but not limited to, the following:

a. denying Lt. Wetzel the right to trial before the town board itself, where she was notified in the notice of charges that trial would be before the Town Board, and where this such appears the requirement of the Police Act;

b. providing Lt. Wetzel with only four regular work days notice in advance of trial, at the same time Lt. Wetzel was informed of the identity of the hearing officer, namely, June 30, 2006;

c. denying Lt. Wetzel's reasonable request for an adjournment regarding the trial scheduled, on four work days notice, for July 11, 2006;

d. bifurcating the September 2004 charges into two sets of charges, thereby requiring Lt. Wetzel to prepare separate defenses for, and undergo, two separate disciplinary trials, one scheduled for July 11th, and the other yet unscheduled;

e. providing no procedural guidance regarding the conduct of the hearing, with the Town having promulgated no rules or regulations under the Police Act to guide Lt. Wetzel as a disciplinary respondent;

f. providing deficient notice of her rights, including deficient opportunity to subpoena witnesses and evidence;

g. purporting to rights similar to those under Civil Service Law § 75, as summarized in the Civil Service Commission "Manual" referred to by the hearing officer in his notice of hearing letter dated June 29, 2006, yet denying such rights;

h. allowing Police Chief Nulty's attorney, Mr. Klein, to forbid Lt. Wetzel's counsel from contacting <u>any</u> town employees in connection with the disciplinary case, and threatened recourse to the federal magistrate judge handling discovery in *Wetzel I* if Lt. Wetzel's counsel attempts to prepare a defense by contacting potential witnesses;

i. refusing to provide evidence relevant to Lt. Wetzel's defense;

j. providing no bill of particulars, or adequate opportunity to prepare and request same, so that Lt. Wetzel is not reasonably apprised of the charges against her;

k.  providing no specific trial location (e.g., a specific room to convene the proceedings) in its notification to her, so that Lt. Wetzel can be confident that her trial will be public, if she elects such option, as is her Police Act right;

l.  the appearance of likely bias and non-impartiality of the hearing officer, and his refusal to state whether he has a prior relationship with Keane & Beane, P.C. or its lead attorney, Lance Klein.

m.  Lt. Wetzel was has never been notified of what the Town regards as the maximum punishment which could be imposed, if all charges were proven. She is not informed, for example, whether the Town considers termination, or demotion in rank, a possible punishment.

n.  The hearing officer's letter indicates that the procedures of Civil Service Law Section 75 will be applied, yet in the Town's challenge to arbitration in police disciplinary matters, New York's highest court expressly held that arbitration was impermissible, because Civil Service Law Section 75 and 76 did <u>not</u> apply.  <u>See</u>, <u>Matter of Town of Orangetown v. Orangetown Policemen's Benevolent Association</u>, No. 34, decided March 28, 2006 ("*Orangetown v. PBA*")("…where Civil Service Law §§ 75 and 76 apply, police discipline may be the subject of collective bargaining.").

o.  Notwithstanding *Orangetown v. PBA*, the Town has not promulgated rules and regulations in accordance with that N.Y. Court of Appeals decision.

*[This list does not include post-trial deprivations described in the body of the Wetzel 6 complaint herein.* ]

Exhibit "4"

# *Manual for Municipal Reprisal against Police Officers*
## *(draft #1 Jan 9, 2008)*

## I.   *Introduction*

This is a "how to" guide for retaliating against police officers and other municipal civil servants for any nefarious motive. While subtlety is useful, it may not be necessary. Blatant reprisal may find no immediate remedy, or no remedy at all, if the Manual's user—the Reprising Official—can expend sufficient effort, using taxpayer dollars, to implement the Reprisal Plan.

A Reprisal Plan can be usefully employed to achieve various goals. Reprisal can be effectively used to discourage civil servants from "whistle-blowing" or otherwise challenging activities such as unlawful discrimination or political cronyism. Successful reprisal will "educate" the workforce—they will be able to see that municipal leaders are all-powerful. If ruthlessly employed, civil servants will realize that they must not oppose in any manner the "powers that be." For corrupt public officials, the use of a Reprisal Plan is very important, as an essential tool for insulating them from public exposure. Crafty use of a Reprisal Plan can defeat union protections, and the protection of State statutes designed to protect the integrity of the civil service, by eviscerating "merit protection" and other statutory safeguards designed to protect the public interest.

An effective Reprisal Plan must carefully disguise itself, and its retaliation and abuse. The Reprisal Plan must not be expressly labeled as such. And it is crucial that the municipal actors co-opt or neutralize potential opposition forces. It is best if, for example, the Reprising Official obtain the sympathy, if not the active cooperation, of other officials, such as elected officials and perhaps the judiciary. If such officials have any potential for believing that civil servants must be treated fairly, then the best strategy is to withhold or misrepresent information to such officials. Litigation facilitates this. If the reprisal provokes a lawsuit, the Reprising Official can accomplish much by convincing the elected officials and news media that the civil servant at issue is undesirable. "Advocacy" can be used to distort or misrepresent facts, to place the employee in the least favorable light, perhaps even vilifying her and even, if possible, creating public scorn. Outside counsel, retained by the municipality to defend against the employee's lawsuit can be effectively used for these tactics, while also being responsible for achieving these results in their role as the "attorneys" for the municipality, and at the same time insulating the municipality responsibility for the Reprising Official's actions. "It's in the hands of our attorney" will be the convenient public response.

The municipality can further insulate itself from responsibility for the reprisal if it prevents the civil servant or her attorney from publicly addressing the abuse to the municipality's elected officials. *See, e.g., "Wetzel 2" (06 Civ 5144),* now on appeal. Finally, if the litigation is assigned to a pro-government, anti-individual rights judge (increasingly common, for many reasons), the civil servant may find herself with no timely remedy for multiple acts of *in seriatim* reprisal. Without the prospect for a federal judicial remedy (and a realistic award of attorney's fees, which the civil servant could not otherwise afford), the civil servant will be coerced into submission, or fired. The Reprisal Plan's "mission" will be accomplished.

## II.    The Lorraine Wetzel case –a study in condoned municipal reprisal

The above is not merely hypothetical.   A Reprisal Plan appears to have been developed in one suburban New York community, the Town of Orangetown, New York. Most of the tactics and strategies  described herein have been vigorously opposed by the author, who views the Town's various and cumulative actions as lawless.  To date, neither the courts nor the EEOC have done anything whatsoever to stop the reprisals. The Rule of Law does not appear to apply to the Town of Orangetown.  The Town's ability to engage in reprisal is at the cutting edge of the law (or more precisely, the cutting edge of lawlessness).

With Orangetown in mind, municipal officials, and the lawyers who represent them, can use the various techniques described herein as a useful "how to" guide for abusing civil servants.  Ultimately, with the help of the courts, these officials might success in destroying civil service merit protection without any action by the State Legislature or Governor—a truly remarkable non-democratic and lawless achievement. However, because the author may be successful opposing such lawlessness, this Reprisal Manual should not be adopted until the courts either condone, or meaningfully deter and prohibit, the retaliatory tactics described herein.

### A.  Background—police department gender bias

Lorraine Wetzel is a 28 year career police officer, now a lieutenant, employed by the Town of Orangetown Police Department.  Before becoming a police officer, she received a commendation for heroism for rescuing Patrolman Kevin Nulty from a dangerous situation.  Patrolman Nulty eventually rose to become the Town's present Chief of Police, and as chief, is responsible for personnel actions regarding his subordinate police officers.  As such, as to select subordinates, he has become the lead Reprising Official.

Police Officer Wetzel was the second female police officer in the Town's history, and ten years later she was promoted to sergeant, becoming the first female sergeant in the Town's history.  Ten years after that Sgt. Wetzel hoped for promotion to the rank of lieutenant.  A special New York State statute, the Rockland County Police Act,[1] provides specific criteria for promotion:  seniority, meritorious service, and civil service exam score.   Patrol officer Wetzel was best qualified under these criteria when she was promoted to sergeant.  However, under the new administration of Chief Nulty, she was not selected for promotion in 2001, even though clearly best qualified.  Under Chief Nulty's new reign, no women were hired into the department, none were promoted, and the Town's first female police Officer, Barbara Noyes, was sufficiently frustrated to retire and move to a different department.

Sgt. Wetzel's prior attorney commenced a State law "article 78" proceeding challenging her non-promotion.  The State court judge (a male) dismissed the case, which was restored on appeal (with female judges on the panel) and remanded for trial before the original judge.  Sgt. Wetzel's new attorney commenced a federal action asserting federal discrimination claims regarding Sgt. Wetzel's non-promotion and unlawful

---

[1] Chapter 526 of N.Y.S. Laws of 1936, *as amended*.

discrimination. For this reason, at the trial of the article 78 case after remand, Sgt. Wetzel limited her case to violation of the Police Act, not discrimination. On this, the judge found that the Town had a "rational basis" for promoting the male, but without making any determination as to who was best qualified. Sgt. Wetzel has not yet sought to appeal this determination to the State courts. She may still appeal.

### B. Start of Reprisal – some subtle yet useful tactics

After commencing her article 78 proceeding in 2001, Sgt Wetzel experienced reprisal designed to obstruct her chances for promotion in the future. This included, for example, making her subordinate to the person who was promoted over her, which created the intentionally awkward (and humiliating) situation of a far less experienced and far less qualified individual being elevated to become Sgt. Wetzel's supervisor, for reasons unrelated to merit. At least one subordinate male police officer commented, in writing, that the new male lieutenant acted in an abusive manner.

Additional reprisal included refusing to offer Sgt. Wetzel the types of extra duties, assignments as well as self-promoting "fluff," which would make any future candidacy for promotion more attractive/sellable by the Chief (who recommends promotions) to the Town Board under the ever-shifting and *ad hoc* procedures used for selecting only men for promotion.

> REPRISAL TIP: *For effective reprisal, it is important to keep the employee "in her place", to minimize the opportunity for the employee to prove her worth or to demonstrate a potential for advancement. It is important to avoid even-handed business or governmental practices, such as providing developmental counseling and regular performance evaluations whereby job performance can be objectively evaluated and good performance acknowledged and rewarded.*

In this regard, an important technique for engaging in effective reprisal is to ensure that the employee's job performance is not routinely and objectively documented. Accurate documentation of competent or excellent job performance will undermine various Reprisal Plan options, such as falsely accusing the employee of dereliction or incompetence. Worse, documenting good performance from a woman, a member of a minority or member of an employee in some other protected class may provide the employee with evidence of unlawful discrimination.

> REPRISAL TIP: *Do not permit the creation of routine documentation objectively showing good job performance. If routine performance evaluations are in place, make sure the object of reprisal receives none.*

In the case of Sgt. Wetzel, all her performance evaluations were very good and competitive with her peers, until she challenged her 2001 non-promotion. Thereafter, she received a poor evaluation from the same individual whose promotion over her she challenged, and at the same time that the legal challenge was pending against him. After Sgt. Wetzel's 2001 non-promotion, Chief Nulty also imposed a moratorium on regular (semi-annual) performance evaluations (without any authority from the Town Board to do so).

3

The Police Act is special legislation which has, as an obviously intent, the meritorious selection of police officers for promotion. Whatever the motivation (bias, reprisal, self-interest or an ill-advised disregard of the Police Act criteria), it is clear that the Chief Nulty selected a preferred male (and also politically-connected) candidate for promotion.

> *REPRISAL TIP: People in power relish the ability to control outcomes. The power to pre-determine results manifests itself often in the actions of Chief Nulty, and the reprisal against Lt. Wetzel. It is a recurrent theme. It is the power which facilitates and enables unlawful reprisal.*

### C. Non-promotion again: 2004

Whether an act of reprisal or "mere" discrimination, Sgt. Wetzel was again passed over for promotion in 2004, with the individual selected for promotion again a male possessing credentials far inferior to hers under the applicable Police Act criteria.

Several techniques appear to have been used by the Town to achieve its pre-determined result of promoting another male sergeant. These can be emulated in any Reprisal Plan.

First, the Reprisal Plan or plan for unlawful discrimination should develop a strategy for achieving its ultimate goals. Whether the goal is reprisal alone (keeping Sgt. Wetzel from being promoted) or unlawful discrimination (selecting individuals in the favored class or classes for promotion), it is logical and smart to plan a course of action to achieve such goal. Accordingly, it would not be a smart course of action to promote by faithful application of Police Act criteria, yet bypassing Sgt. Wetzel for promotion. This would have resulted in sequential non-promotion of the most qualified candidate (Sgt. Wetzel) in favor of the second best candidates (male Sgts. Brown, Butterworth and Mecurio) and thus give a clear appearance of discrimination. The better approach would be to employ non-Police Act factors for promotion, and then select the same male sergeants but in a reverse order (Sgts. Mecurio, Butterworth and Brown), thereby making the discrimination less obvious. With this strategy, the Chief can seek to avoid a claim of discrimination by asserting, upon Sgt. Mecurio's promotion, that "we did not promote Sgt. Brown either, and his credentials were similar to Sgt. Wetzel's," and similarly assert this again as non-discrimination with Sgt. Butterworth's promotion ("Sgt. Brown was not promoted").[2]

> *REPRISAL/DISCRIMINATION Tip: If you wish to exclude a "disfavored" individual (e.g., a woman) from promotion, be sure to adopt promotional criteria by which you can minimize the qualities of the woman. If possible, do not immediately promote a male (e.g., Sgt. Brown) with qualifications similar to the woman's, because you can then point to that male as you proof of lack of bias in favor of men. And when you eventually promote the male (Sgt Brown) over the female*

---

[2] Some of these issues are currently under review in the pending *"Wetzel 1" case, 03 Civ. 9896*, summary judgment motion pending.

4

*(Sgt. Wetzel), you can assert that their credentials were similar and thus no bias reasonably shown.*

Second, reprisal (or mere discrimination) is facilitated by changing employment decision-making processes in order to obtain immediate goals. Thus, in the context of promotions, the process and criteria for promotion should be altered to facilitate the goal of selecting the desired (pre-determined) candidate for promotion. In Sgt. Wetzel's case, this included:

> ➢ Altering and eliminating and the prior use of a "Lieutenant's Board";
>
> ➢ Not considering regular performance evaluations
>
> ➢ Eliminating (without Town Board authority) the creation of performance evaluations to document job performance.

Third, deny information or developmental counseling to the candidate for promotion, so that she will be unable to know what criteria will be used, and what, if any, special assignments and duties are needed, to be "competitive" for the next promotion.

Fourth, decline to select or place a potential candidate (Sgt. Wetzel) into jobs which would make her "competitive."

> *REPRISAL/DISCRIMINATION Tip:  It is best to keep the disfavored employee "in the dark" as to how to demonstrate his or her worth.  If such employee is denied insight into expectations or criteria for promotion, the employee will undoubtedly be unable to meet unexpressed/unarticulated expectations.*
>
> *FURTHER TIP:  And if the employee is a superior candidate under an established set of expectations (such as the Police Act criteria and/or criteria historically applied for promotion prior to Chief Nulty's administration), you should secretly establish, without announcement, new criteria and then "groom" you favored individuals so that only they will meet the new criteria.*

As to Sgt. Wetzel, she met all settled expectations regarding promotion in 2001 and 2004—where seniority (time in rank) and meritorious service were obviously most determinative, because examination scores were always close (as only the candidates with the top three scores on the civil service list were put forward as candidates).

### D.  Bogus disciplinary charges in 2004 and non-promotion in 2005

After Sgt. Wetzel's non-promotion in January 2004, she again challenged the non-promotion on Police Act grounds, and also as being discriminatory and the result of a gender "glass ceiling."

Sgt. Wetzel's amended federal complaint, adding claims relating to the January 2004 non-promotion, was filed in mid-July 2004.  It does not appear to be "coincidental" that beginning around this time and thereafter, Chief Nulty and his senior staff "discovered" tape recorded conversations, including conversations of a very personal nature between two Orangetown residents, which Chief Nulty and his outside attorneys

5

then used as a basis for developing bogus disciplinary charges against Sgt. Wetzel—the first charges in her 28 year police career.

> NOTE: Another supervisor (a 43 year police veteran whom Chief Nulty wanted gone) was also charged, as was a patrol officer. The supervisor retired in December 2004, and his charges apparently remain pending to this day (for no apparent purpose, as his retirement benefits are entitlements which cannot be affected). The other police officer arguably deserved disciplinary charged, which he settled for a trivial punishment, if it was punishment at all (which 2004 charges were "settled" as the witness took the witness stand during Lt. Wetzel's 2006 disciplinary trial).

Actually, two sets of charges were drafted. Both sets appear to have been drafted by Chief Nulty's attorneys—the Town's outside counsel. The retaliatory disciplinary charges, and ensuing abusive prosecution thereof, are described below at "The Tactic of Reprisal thru Administrative Disciplinary Charges" discussed in at Part 3 below.

The two sets of disciplinary charges served one immediate goal—that of sabotaging Sgt. Wetzel's chances for promotion in January 2005. Chief Nulty certainly would not recommend the promotion of a candidate who was, at the time, the subject of two sets of charges, totaling 21 separate charges of misconduct, dereliction and incompetence. Promotion of someone potentially so misfeasant would appear out of the question.

### E.  2006 promotion

Sgt. Wetzel was not promoted in January 2005. However one year later, in January 2006, the Town Board promoted her to the rank of lieutenant, notwithstanding that the disciplinary charges remained pending. The Town Board may have viewed her as most qualified for promotion. More likely, however, the Town Board saw it as in its self-interest to promote Sgt. Wetzel, in light of the federal court's refusal to dismiss her discrimination lawsuit.

> REPRISAL TIP: *If a federal court refused to dismiss claims of discrimination, and if the civil servant (police officer) deserves promotion, consider abandoning the Reprisal Plan.*

### F.  Immediately after 2006 promotion, attempt to extort a lawsuit settlement

Shortly after she was promoted to lieutenant, the Town's outside counsel solicited a settlement proposal from Lt. Wetzel's attorney. Her attorney submitted a settlement proposal. The Town made no counter-proposal. Instead, the Town's outside counsel the law firm of Keane & Beane PC, and its principal Lance Klein, wrote what appeared to be an extortionate threat, designed to coerce Lt. Wetzel into abandoning her federal claims. Mr. Klein wrote in his letter dated February 1, 2006:

> "I also held the mistaken belief that you and your client realized the consequences of the two (2) disciplinary charges pending against her. I can assure you that those cases will be prosecuted as soon as the Court of Appeals makes its determination as to who will hear the charges. It would be a shame for your

6

client, as the first female Lieutenant in the department, to be the first Lieutenant disciplined. (*emphasis added*)

> *REPRISAL STRATEGY & TIPS*: It is not recommended that the Reprising Official's attorney place extortionate threats in writing, especially if such threat might meet all elements of crimes such as coercion or extortion. See, e.g., N.Y.S. Penal Law § 155.05. However, if the attorneys are confident that they will not suffer any consequences for their threats, then extortion becomes a powerful coercive tool of reprisal.

Ultimately, it appears that the Town's refusal to negotiate has, as further described below, generated a huge amount of "billable hours," perhaps $500,000 or more, paid for by the Town's taxpayers to defend against Chief Nulty's and his attorneys' discrimination and follow-on Reprisal Plan.  Undoubtedly, Lt. Wetzel would have settled her case for a tiny fraction of what the Town has paid to its outside counsel to facilitate lawlessness.  However, a reasonable settlement may have been viewed as embarrassing to Chief Nulty, and would have deprived his (and the Town's) outside counsel, Keane & Beane PC of considerable taxpayer-paid attorney fees.

> *REPRISAL STRATEGY & TIPS*: If the municipality's taxpayers are keep uninformed, or do not care, that their taxpayer dollars are used for the purposes of discrimination and reprisal, then hiring outside counsel to aggressively "litigate" the employee's claims, including the use of abusive tactics to "wear out" the employee, financially and otherwise, will succeed if the courts decline to provide an efficacious and timely remedy.

The Town's outside counsel refused to present any federal litigation settlement counterproposal in 2006.  Instead, Chief Nulty and/or his and the Town's outside counsel decided to play what they considered to be the trump card which they had concocted in 2004, namely, the two sets of disciplinary charges which Chief Nulty preferred against then-Sgt. Wetzel.  The apparent goal was to coerce a favorable disposition of the *Wetzel 1* federal lawsuit by threatening Lt. Wetzel's police career.  This is discussed next.

### III.    The Tactic of Reprisal via Administrative Disciplinary Charges

The use of administrative disciplinary charges is the ultimate weapon available for use against a career civil servant, including police officers, because a disciplinary prosecution has the potential for not only terminate the civil servant's employment, but also destroying his or her career.  For example, a police officer fired from municipal employment in Rockland County will have virtually no chance of re-employment as a police officer in the county, or with the State, or with the federal government.  Being fired for cause as a police officer is akin to being accused of serious crime, which we believe is the most common grounds for termination of police officer employment in New York State.

As presently postured, Lt. Wetzel is facing an obvious risk of potential termination of employment, and destruction of an exemplary 28 year police career, even though, as further described below, the Town has <u>no</u> proof that she violated any rules or regulations or engaged in any wrongdoing whatsoever.  She was prosecuted, and found

7

guilty, of disciplinary charges solely because of her opposition to unlawful discrimination by the Town and its police chief.

Lt. Wetzel is courageous, because she is unwilling to be bullied into silence or coerced into condoning unlawful discrimination. Hers is a fight between right and wrong. Moreover, if the Town can fire her, it will demonstrate that it has the power to fire any police officer without justification. Police officers will, as a consequence, realize that they owe personal loyalty to the police chief, not to the public they serve. This is an invitation to corruption, and an invitation for cronyism. It is contrary to the principles of merit which are fundamental to the civil service system.

Seeing the abuse that the Town can direct toward Lt. Wetzel, no reasonable police officer in the Town would ever challenge disciplinary charges. As discussed below, challenging disciplinary charges would be suicidal, because the Town has ensured that the outcome of any trial is predetermined—the Town hires and pays its "hearing officer" to convict, through a sham proceeding, rather than to impartially conduct a fair hearing.

The tactics are un-American, and we believe illegal,[3] yet it is a perfect weapon to accompany a Reprisal Plan. A sham trial means that there is no risk that retaliatory disciplinary charges will ever be revealed as such, because the henchman hearing officer will ensure findings of guilt. While "un-American" in concept, the evolution of employment law has allowed for numerous arguments which may permit sham administrative proceedings unless the courts are cognizant of the abusive reprisal. For example, the Town has repeatedly argued that *Younger v. Harris* prevents federal court intervention in a "pending state proceeding."

Perhaps most contrary to Americans' notions of justice is the intentional denial of an impartial adjudicator. Here, the "judge" (hearing officer) was selected essentially to be a hanging judge or henchman. Such behavior is sometimes likened to that of a whore. And with what amounts to a "paid for" judge, the respondent can be assured that no defense will prevent conviction, accompanied by the harshest recommendation of punishment which the henchman hearing officer muster within the limits of credibility.

> *REPRISAL TIP*: *It is important to disguise a henchman hearing officer as a legitimate quasi-judicial official. Referring to him as a "hearing officer", just as referring to a person as a "judge," suggests proper authority, legitimacy and an entitlement to judicial respect. Similarly, it is important to create a sham proceeding and to disguise it with the trappings of a legitimate proceeding, such as by appointing the henchman hearing officer as the presiding officer, hiring a stenographer, using the Town's outside counsel as the "prosecutor," creating a "record" of the proceedings (whether or not all evidence is actually included) and permitting the henchman hearing officer to make "findings of fact" with "recommendations" as to punishment.*

Using a henchman hearing officer[4] and making the process as abusive as possible will result in a cumulative effect of exhausting the financial and personal resources of the

---

[3] *See*, Lt. Wetzel's lawsuit against the retaliation, *"Wetzel 3", 06 Civ. 6117.*

[4] A non-impartial hearing officer will be referred to in this Manual as a "Henchman Hearing

8

employee, and unreasonably burdening her attorney, while at the same time demonstrating to the employee, and all other employees observing or learning of the proceedings, that defending against retaliatory charges will be a futility. Merit protection in civil service will become meaningless, and the careers of public employees unjustifiably subject to destruction.

Described below are some of the many abusive tactics which can be used in connection with a bad faith disciplinary proceeding. Because ostensibly it is an "administrative" proceeding of the municipal government, redress is properly sought from the Town. However, as was done in regarding Lt. Wetzel's attempt to petition the Town to redress and stop the retaliatory abuse, the Town's elected officials may refuse to entertain and consider any such petition for redress, notwithstanding that petitioning one's government for the redress of wrongs is a fundamental First Amendment right. See, *Wetzel 2* appeal.

### A. Fishing expedition for pretextual charges

To threaten the civil servant with the ultimate threat of disciplinary charges, the Reprising Official or his underlings must identify actions or inactions of the subject civil servant which can be turned into disciplinary charges. This is not difficult in a police department setting, as there are numerous rules and regulations which can be used to create retaliatory disciplinary charges against any employee. All that is needed is to closely watch the police officer, and then look for the slightest deviation from the rules, regulations, or the Chief's interpretation of "proper judgment" with regard to such.

> REPRISAL TIP: *It is best to look for action which can be portrayed as a mistake or omission, so that the charges can be portrayed with credibility. It is best to charge more than one person, as this will help defuse the accusation of reprisal against one individual. The non-target officers charged with disciplinary infractions can then be rewarded in the future (such as by receiving a promotion) for becoming unfortunate but necessary tools of the Reprisal Plan. (For example, Patrolman Thomas Holihan is now Sgt. Holihan.) Or charges can simply be dropped after sufficient time has elapsed (Det. Lt. John McAndrew), or never brought to trial (Sgt. Flannery and PO Youngman, both now retired).*

For example, the Town wished charges drafted against Chief of Police Nulty, such would be an especially easy undertaking, with charges upheld by even a non-henchman hearing officer.

Briefly, Chief Nulty preferred two sets of disciplinary charges against Sgt. Wetzel regarding events of July 4 and July 7, 2004, which charges were signed on September 3 and 8, 2004, respectively. These are briefly described below.

---

Officer" or "HHO"

9

### i.  July 7, 2004 disciplinary charges

As to the July 7, 2004 charges, then-Lieutenant (now twice promoted to Captain) Robert Zimmerman was Sgt. Wetzel's squad lieutenant at that time.  For reasons unknown, he became involved in investigating the alleged supervisory misfeasance of his own two squad sergeants (Sgt. Dennis Flannery and Sgt. Wetzel)  after Mr. Frank Dowd telephoned the NYPD to complain of excessive force used in connection with his arrest for disorderly conduct a few days earlier.

In particular, although Mr. Dowd complained that excessive force in connection with his arrest caused a laceration at Sunset Road in Blauvelt, Lt. Zimmerman's investigation evolved into a fishing expedition into telephone conversations made between Mr. Dowd and his girlfriend Nicole Colandrea.   Ms. Colandrea became unfairly mischaracterized by Chief Nulty's administration as a "victim" of "domestic violence" and also portrayed as a "complainant" when she was not.  In fact, Chief Nulty and his administration did not even inquire of Ms. Colandrea regarding the events of July 7, 2004.  Yet Chief Nulty and his administration have characterized Mr. Dowd as having committed "aggravated harassment" despite the complete absence of proof regarding any such charge.  Essentially, in their enthusiasm and haste for developing disciplinary charges against Sgt. Wetzel in pursuit of their Reprisal Plan, Chief Nulty and his administration (and the Town's outside counsel and henchman hearing officer) have made victims of Mr. Dowd and Ms. Colandrea as well, by using their personal relationship, and Mr. Dowd's mistake of becoming an obnoxious drunk on that date, to portray Sgt. Wetzel as a police sergeant unconcerned with issues of domestic violence (notwithstanding that no such issue was present).

> *REPRISAL TIP:  It is permissible to violate the rights of innocent citizens, such as Ms. Colandrea, in connection with prosecuting disciplinary charges against a police officer, because the Reprising Official can assert that exposure of citizens' lives was the fault of the civil servant who demanded a hearing on disciplinary charges, and, in any case, the employee will not have "standing" to assert the violation of the individuals' rights.*

The prosecution's chief witness was Captain Zimmerman, who at the time of the July 2004 events, was Lt. Zimmerman and Sgt. Wetzel's immediate supervisor. Strangely, he never discussed Sgt. Wetzel's alleged failings with her, nor took any corrective action.  In fact, Sgt. Wetzel and Sgt. Flannery were, a few months later, again working a shift alone, unsupervised by Lt. Zimmerman, without having even been counseled as to what they did wrong on July 7, 2004, and what was needed to avoid such alleged omissions and incompetence in the future.

### ii.  July 4, 2004 disciplinary charges – even more bogus

As to the July 4, 2004 charges, Sergeant Wetzel and several others were charged with various acts or omissions, all loosely related to a communication which suggested that a child might be "missing."  Sergeant Wetzel was never reasonably made aware of this situation, yet is being faulted for it.

10

It appears, for example, that another female police officer, Police Officer Cathleen Sampath, was presented with formal disciplinary charges for making what was intended as a humorous comment to another police department. She "settled" her charges, and not long thereafter, it appears, retired from the Department out of frustration with its gender hostility and promotional glass ceilings.

It also appears that the person most responsible for failing to explore the issue of a potentially missing child was a police officer who is both a favorite of Chief Nulty's administration, and who also has committed rather egregious acts of misconduct and/or incompetence, including but not limited to being involved with the strip searching of a school child. He was not charged with anything regarding events of July 4, 2004.

> *REPRISAL TIP: It stands a splendid message to all civil servants that if you are a "favored" employee, you will be spared disciplinary charges, whereas if you are a troublemaker (e.g., by being a diligent, honest civil service who objects to unlawful practices) you will face disciplinary charges even if you did nothing wrong.*

### B. Service of disciplinary charges & notice "right to trial before Town Board"; abuse of separate trials

The disciplinary charges made against Sergeant Wetzel included notice that she was entitled to a trial on the charges to be conducted before the Town Board. It was not until five business days before the trial that she learned that the charges were instead to be tried before a person of unknown credentials appointed to "act as a hearing officer."

> *REPRISAL TIP: It is a useful tactic to misrepresent intentions to the subject of reprisal.*

As to the July 4, 2004 charges against Sergeant Wetzel, Chief Nulty's prosecutor did not present these during the 2006 trial. His attorney has asserted the right to try these separately, in the future. It must be pointed out that it is unheard of to conduct two separate disciplinary trials against an employee under circumstances such as those present here. The police chief easily could have presented all charges pending against Sergeant Wetzel at one proceeding, before the same hearing officer.

> *REPRISAL TIP: By "holding back" one set of charges, the Reprising Official keeps further reprisal leverage over the employee. After conducting trial on the first set of charges in an abusive fashion, the Reprising Official can dare the employee not to submit to his will. This is a splendidly coercive tactic. It can even be used to seek the termination of a resistant civil servant's employment, by arguing that conviction on the second set of charges show her to be a "repeat offender."*

### C. PBA litigation – Orangetown argues for politically responsible officials to be final adjudicator, not neutral arbitrators

The Town, using its outside counsel, litigated <u>Matter of Orangetown PBA</u>.[5] Its reasons for pursuing this litigation are unknown to Lt. Wetzel, as it appears to have

---

[5] Orangetown Policemen's Benevolent Ass'n v. Town of Orangetown, 18 A.D.3d 841 (2d Dept

involved a large expenditure of taxpayer funds to "fix what was not broken," namely, the collectively agreed manner of fairly handling police discipline. For many years, if not decades, the police department used neutral arbitrators to adjudicate police disciplinary cases. We believe that the disciplinary issue involved in <u>Matter of Orangetown PBA</u> was trivial, and ultimately resulted in small penalty against a police sergeant sill serving in the department.

Cynically, in <u>Matter of Orangetown PBA</u> it appears that the Town (or its outside counsel) affirmatively kept Sgt. Wetzel, her counsel, and her PBA union misinformed as to its actual intention, namely, to try disciplinary charges before a henchman hearing officer in the abusive manner described in this Manual. There is no logical reason why a neutral arbitrator, retired judge or JHO could not preside over disciplinary cases, unless the Town's intent was <u>not</u> to conduct a fair proceeding.

> *REPRISAL TIP: If litigating appeals which may relate to your ability to perpetrate reprisal, do not "tip your hand" by disclosing the abusive tactics you intend, because if you do, the courts may then recognize the potential for abuse. Thus, make your adversary (here, the PBA) believe (through its clients' notice of charges) that trial is to be "before the Town Board," and then, only after you receive a favorable, broadly worded appellate decision, disclose your intent to conduct a sham trial before a hired hatchet man.*

> *BEWARE: One day, the PBA (or perhaps Sgt. Wetzel, a member) may make a federal challenge to the Matter of Orangetown PBA, The Town misinformed the PBA & members (or the present PBA did not represent its members), thereby overbroadly voiding Article 15 of the PBA contract. However, the holding of the case is limited to final decision-making, and therefore procedures allowing fair rules and a fair fact-finder are needed.*

### D. Town's appointment of a henchman

At around the same time that the Town's attorneys were hoping for a favorable N.Y.S. Court of Appeals ruling on their argument that police discipline decision-making should be by the Town Board, not an impartial arbitrator, they apparently were arranging for the appointment of a partisan "hearing officer" hired, it became obvious, for the purpose of convicting the charged police officer regardless of the evidence.

Noteworthy, the Town had longstanding agreement over the years through its many collective bargaining agreements ("CBAs") with the police union, the PBA, that the selection of hearing officers would be of mutually agreed and impartial adjudicators of the police disciplinary matters. Now, suddenly, the Town was unilaterally selecting its ostensible "hearing officer" with absolutely no input from any representative of the civil servant charged.

Much worse, it appears the Town was selecting the prosecutor's choice. It appears obvious that the "hearing officer" was chosen by Chief Nulty's principal lawyer, Lance Klein, the disciplinary prosecutor (and Town's labor counsel).

---

2004); *aff'd* 6 N.Y.3d 563 (2006).

The answer seems clear from the response to the question which counsel directed to the hearing officer, answered at the disciplinary hearing on July 11, 2006, at transcript pages 57-58:

```
21          MR. DIEDERICH: -- that this
22     proceeding is a charade, an absolute
23     charade. And I'd like to know, for example,
24     who recommended you to the Town Board? Did
25     Keane & Beane recommend you to the Town
2      Board?
3          HEARING OFFICER WOOLEY:
4      Mr. Klein.
```

Mr. Klein is a Keane & Beane attorney. Thus, Chief Nulty essentially assured himself that Sergeant Wetzel would be convicted, because his prosecutor "hired the judge."

> *REPRISAL TIP: If you can select an attorney to prostitute himself into always finding in favor of the attorneys (your attorneys) who recommends and causes his selection as a "hearing officer," you will be assured of a conviction against the subject of reprisal. Your outside counsel will be happy too. They will always win, thereby justifying their retention and the payment of their large fees.*

In his extortionate letter of February 1, 2006 (see above), Mr. Klein misrepresents that it would not be until the "Court of Appeals makes its determination as to who will hear the charges" that the disciplinary case would go forward. However, the Court of Appeals was never asked by Mr. Klein (or any other attorney from the town) to authorize use of the hearing officer, and the ruling does not authorize the use of a hearing officer. If this were the issue, and if fair adjudication were desired, the Town could just as well of have used an arbitrator to make findings of fact and recommendations.

> *REPRISAL TIP: If an impartial adjudicator is used (such as a mutually chosen arbitrator or Judicial Hearing Officer (JHO)), reprisal will become difficult and sometimes impossible. Therefore, it is vital to make sure that a partisan, or better yet, a "paid for" henchman, is placed into the role of "adjudicator."*

### E. Sgt. Wetzel's non-consent for post-Appellate Division appeal; undue delay to trial and conclusion

It is abusive to the employee, the Town and the public to have a two year delay in bringing disciplinary charges (July 2004 events ) to trial (July 2006) then to conclusion (January 2008 punishment). It is especially abusive when the whole process is intended as reprisal.

The Town received consent for an adjournment pending decision of New York's intermediate appellate court (the Appellate Division, Second Department). The Town has produced no evidence of any consent for further adjournment, and specifically, no consent to await an appeal before New York's highest court, the resolution of which

would have been expected to extend about a year. It took 10 months. Tr. 77. Without such consent, the disciplinary charges should have been tried, and tried as noticed— "before the Town Board."

Moreover, even if Sgt. Wetzel had provided further consent for adjournment, no consent for adjournment would have been an informed consent, because she consented to adjournment of "trial before the Town Board" (as noticed in her charges), not an abusive trial devoid of any pre-established rules of procedure, conducted before a lawyer apparently selected by Chief Nulty's attorneys and paid as a henchman to convict Sgt. Wetzel regardless of the evidence or lack thereof.

> REPRISAL TIP: *Obtain consent based upon one set of assumption (mislead your opponent, if necessary) and then implement the abusive actions after the consent is given. Because your henchman hearing officer will rule on motions, you will be assured that a subsequent motion to dismiss for lack of consent to adjournment will be denied.*

### F.   *Town Board relies entirely upon Keane & Beane's Mr. Klein in appointing Henchman Wooley*

When the Town's and Police Chief's attorney, Mr. Lance Klein, wrote his threatening February 1, 2006 attempted extortion letter, he appears that he already knew that his firm's "friend," Henchman hearing officer Joseph Wooley, whom Mr. Klein appears to have recommended to the Town, had already been appointed by the Town. It does not appear that Mr. Wooley was ever interviewed by the Town Board, nor were his credentials evaluated, nor did he even furnish a resume or a written proposal.

> REPRISAL TIP: *Refuse to negotiate if you can assure yourself a win, by rigging the disciplinary trial to assure victory. Hire your friend to assure victory—a lawyer with whom you have similarly orchestrated convictions in the past, and who is beholden to you for arranging for the new work as an ostensible "hearing officer."*

### G.   *"Kick-back" a portion of fees (taxpayer money) to the Reprising Official's supervisor, to keep his favor*

Chief Nulty's boss is the Town Supervisor, the chief fiscal officer of the town. Chief Nulty has a been approving Keane & Beane invoices. Town Supervisor Kleiner is ultimately responsible for Town disbursements. Over the past few years, Keane & Beane has been paid over $1 million as outside counsel for police "personnel matters." Keane & Beane has also made financial contributions to the political campaign of Supervisor Kleiner. The appearance is that public funds paid to the law firm are being returned to the elected official who approves the expenditure. Presumably, the more fees paid to Keane & Beane, the more incentive they have to reciprocate with political contributions to the town's chief financial officer, it's supervisor. (It might be interesting to explore

14

whether this arrangement may involve professionally unethical "champerty," "maintenance" and/or fee-splitting,[6] especially as public funds are involved.)

> REPRISAL TIP: In New York, vendor kick-backs of taxpayer funds received for municipal work is referred to as "pay to play." In order to play (receive government work), the vendor must pay (the officials—or their political campaigns—who approve or are influential in approving the vendor's continued work as a governmental contractor). Thus, the Reprising Official should make sure that any vendors (e.g. outside counsel) assisting with the reprisal should make political contributions to influential elected officials, such as a Town Supervisor, in order to remain in his or her favor.

### H. Inadequate notice of hearing, and non-notice regarding the selection process or the identity of the "hearing officer"

Though disciplinary charges were pending against Sergeant Wetzel for almost a year, she was provided with no reasonable notice, after her promotion to lieutenant, that the Town would actually be pursuing a disciplinary trial against her. Her only notice was Mr. Klein's extortionate February 1, 2006 letter, and that letter also implied that both sets of disciplinary charges would be tried, presumably together.

Sgt. Wetzel was not provided with any notice that it had become the intention of the Town to use a hearing officer, nor was she informed of any legal authority for such. The disciplinary charges expressly stated:

> "By reason of these formal disciplinary charges, you are entitled to a hearing before the Town Board of the Town of Orangetown."

Nor was Sgt. Wetzel provided with any information regarding the manner for selecting the purported hearing officer, nor provided with any assurance that he was impartial, nor provided with his identity, nor provided with his professional credentials.

If the municipality desires to act in good faith and reasonably toward its employee, it would advise the employee of its intentions regarding a disciplinary proceeding, and discuss with the employee or her attorney procedural matters, evidentiary issues, and the possibility of arranging a mutually convenient date for the parties and all necessary witnesses.

> REPRISAL TIP: It is not desirable to act in good faith and reasonably towards the subject of reprisal. Reprisal is designed to abuse and punish the employee, not to be fair or reasonable. If other civil servants believe that the municipality will be fair and reasonable, they may assert civil service rights to merit protection.

---

[6] See, Code of Professional Responsibility, Ethical Consideration 2-3; N.Y. Jur.2d, Champerty & Maintenance § 2.

### I. No notice of Hearing Officer identity, nor of any delegation of Town Board authority;

After advising Sgt. Wetzel of her right to trial before the Town Board, she learned 5 business days before trial that trial would now be before a "hearing officer"—a person unidentified to her with no disclosed credentials nor a transparent selection process.

The Town Board held a workshop which including discussing the appointment of Mr. Wooley on May 15, 2006, which was almost 2 months prior to the trial date. Apparently it did not discuss Sgt. Wetzel's right to trial before the Town Board itself, nor how a date for trial would be established, nor the procedures to be used nor rights the respondent would be afforded. We do not know whether the Town Board gave specific direction that the proceeding should be as abusive toward Sgt. Wetzel as possible,, and that she, as the disciplinary respondent, should be given the bare minimum 5 business days notice of hearing, and that should minimal notice would be given immediately before the July 4th holiday weekend.

Significantly, while "appointing" Mr. Wooley, the Town Board failed to provide a written delegation of authority to him. Thus, although it appointed him to "act as a hearing officer," it did not authorize him to make factual findings or recommendations regarding punishment. From Resolution 441 of May 22, 2006, Sgt. Wetzel could reasonably have presumed by that he was merely to preside over a trial "before the Town Board," where the Town Board would act as the jury and, like a military court-martial, adjudicate both guilt and punishment.

Resolution 441 of May 22, 2006 states:

RTBM 5/22/06

**RESOLUTION NO. 441**

**APPOINT/JOSEPH WOOLEY ESQ HEARING OFFICER/DISCIPLINARY HEARING/P 0 EMPL #1422**

Councilwoman Manning offered the following resolution, which was seconded by Councilman Troy and was unanimously adopted:
RESOLVED, that Joseph Wooley, Esq., with offices at 15-6 Granada Crescent, White Plains, NY is hereby appointed to act as a hearing officer in the disciplinary hearing of the police officer with Employee Number 1422 at a rate of $195.00 per hour, in accordance with and pursuant to the provisions of the Rockland County Police Act.
Ayes: Councilpersons Manning, Troy, Morr Supervisor Kleiner
Noes: None
Absent: Councilman O'Donnell
(emphasis added)

Resolution 600 of August 14, 2006 purportedly "amended" the above. This was more than one month after the July 11, 2006 start of the Wetzel disciplinary trial, and after Mr. Klein had already rested Chief Nulty's case-in-chief. Thus, this is an improper and invalid retroactive attempt at delegating authority, and an nullity.

Moreover, if the Town Board wished the power to delegate factfinding and punishment, it was required to do so by promulgated rules and regulation. The Police Act specifically requires this:

> "no member of such police department shall be fined, reprimanded, removed or dismissed until written charges shall have been examined, heard and investigated in such manner … as the [Town] board, <u>by rules and regulations</u> from time to time, may prescribe." *(emphasis added)*

<u>See</u>, Section 7 of Police Act

### J.  Minimum 5 days notice, over Independence Day weekend

There appears to be no good faith justification, regarding a case which had languished for almost 2 years, for the Town's agents to afford Sgt. Wetzel a mere five business days notice of the disciplinary trial, over Independence Day weekend.

> *REPRISAL TIP:  Minimal notice, particularly over the holiday weekend, is important to both hinder the ability of the subject of reprisal to prepare a defense, and also to hinder the civil servant from seeking judicial relief such as a temporary restraining order or injunction.*

Presumably, the henchman hearing officer had coordinated the selection of the trial date with Chief Nulty and Prosecutor Klein, to make sure that the date was convenient for the prosecutor and his witnesses. Moreover, the selected hearing date was obviously designed to be maximally disadvantageous to the defense—it was after the Independence Day holiday, and commenced immediately prior to, and perhaps overlapping with, previously ordered deposition dates in the Respondent's federal discrimination lawsuit against the charging party, Chief Nulty.

> *REPRISAL TIP:  Fully prepare your prosecution case, and then select with the hearing officer, ex parte, a date convenient to your witnesses and the hearing officer, but maximally disadvantageous to the disciplinary respondent.  Be sure the absolute minimum notice is provided to the defense.*

Of course, if this were a legitimate adjudicatory proceeding, this would constitute an improper one-sided *"ex parte"* communication.  As will be seen below, the prosecutor repeatedly accused Sergeant Wetzel's attorney of attempting "ex parte" communication with the Town Board (a ridiculous accusation) whereas the prosecutor appears to have had *sub rosa* communications with both the henchman hearing officer and the Town Board (which was, incidentally, also his client, as "labor counsel").

> *REPRISAL TIP:  Be sure to aggressively accuse your adversary of precisely the misconduct which you are committing yourself as agent of the Reprising Official.  With this technique, you can endeavor to keep the civil servants and returning on the defensive.  Whenever possible, accuse the civil servant's attorney of unethical conduct, for similar effect.  If possible, invoice the municipal taxpayers for your bad faith accusations as prosecutor.*

Presumably, the henchman hearing officer had coordinated the selection of the trial date with Chief Nulty and his outside counsel prosecutor, to make sure that the state was convenient for the prosecutor and his witnesses. Of course, if this were a legitimate adjudicatory proceeding, this would constitute an improper one-sided "ex parte" communication. As will be seen below, the prosecutor repeatedly accused Sergeant Wetzel's attorney of attempting "ex parte" communication with the Town Board (a ridiculous accusation) whereas the prosecutor appears to have had *sub rosa* communications with both the henchman hearing officer and the Town Board (which was, incidentally, also his own client).

And as described further below, Chief Nulty's prosecutor even had the extraordinary arrogance, motivated by financial gain, to accuse Sgt. Wetzel's counsel of engaging in an *ex parte* communication when he directed a letter-motion to the Town Board (and copied Mr. Klein on such letter), and to then file a grievance, for which he Town billed the Town's taxpayers over $3,000.

### K.  *Non-notice regarding intent to prosecute the two sets of charges separately*

Prosecutor Klein never advised the disciplinary respondent, Sergeant Wetzel, or her attorneys (PBA counsel or Mr. Diederich) that only the September 7, 2004 set of disciplinary charges was being prosecuted against Sergeant Wetzel, and that the other set of disciplinary charges, those of September 3, 2004, were to be tried at some future date. Nor did the Town Board's appointment of Mr. Wooley provide any such directive or authority.

It was, and remains, a mystery to Sgt. Wetzel as to how Mr. Wooley was informed that only the September 7, 2007 charges were intended by Chief Nulty's attorneys for trial on July 11, 2006.  The only explanation is *ex parte* communication between Prosecutor Klein and Henchman Hearing Officer ("HHO") Wooley.

This created an abusive dilemma for the disciplinary respondent, especially as she objected to being forced to endure two separate trials. With only five business days to prepare, and if HHO Wooley had agreed that separate trials are improper, the defense would then need to be prepared to meet all charges-- two sets totaling 21 separate disciplinary charges containing over 70 specifications—on the first day of trial. Accordingly, Sergeant Wetzel's attorney prepared a request for a bill of particulars where he devoted over 10 pages to the September 3, 2004 charges.

It was not until the actual day of hearing, July 11, 2006, that HHO Wooley ruled in favor of Prosecutor Klein allowing him to go forward only on the September 7, 2004 charges, and thus presumably permitting him to prosecute the September 3, 2004 charges at some time in the future. (The charges are still outstanding as of January 9, 2008).

> REPRISAL TIP:  *If you have to separate sets of disciplinary charges, plan on trying these on two separate occasions, but do not inform the respondent or her attorney of such plans, because they will logically assume, based upon CSL § 75 practice, that all charges will be tried at one time.   The defense will spend a considerable amount of wasted effort preparing for charges which you do not intend to presently try.*

18

*FURTHER REPRISAL TIP: Engage in ex parte communication with your hand-chosen and trusted hearing officer in advance. Inform him that you are proceeding on only one set of charges. Arrange for a mutually convenient trial date (but one expected to be inconvenient to the respondent). Fill the henchman hearing officer in on all details necessary for the desired conviction.*

### *L.  Communication of proposed settlement "around back" of Sgt. Wetzel's attorneys*

On the very eve of trial, July 10, 2006, Town Attorney Teresa Kenny wrote to Sgt. Wetzel's PBA representative (a non-lawyer) proposing settlement which included the Town's right to use the settlement (wherein Sgt. Wetzel would admit guilt as to both July 4th and July 7th, 2004) in connection with her federal discrimination lawsuit. This appears to have been an attempt by Ms. Kenny go "go around" Sgt. Wetzel's attorneys. Though the Police Chief and Prosecutor Klein were copied on this settlement proposal, Sgt. Wetzel's attorneys were not.

No settlement with other officers charged in connection with the events of July 4 or July 7, 2004, contained language allowing use by the Town in a court litigation. Sgt. Wetzel was singled out in this, because if her pending federal discrimination lawsuit. The Town Attorney's proposal was thus an attempt to impose an unconstitutional condition upon the disciplinary proposal, linking it to the federal lawsuit opposing discrimination to impair her federal rights.

### No notice of penalty sought – another due process violation

The N.Y.S. § 75 Guidelines[7] point out that the employee should be provided with notice of the penalty sought. This is consistent with basic due process requirements. The Town proposed settlement of two days suspension "for the record" (meaning no actual penalty), but gave no indication of what it might seek at a hearing. As reprisal for refusing to settle, Sgt. Wetzel encountered the harshest penalty recommendation which HHO Wooley and prosecutor could muster.

### *M.  Refusal to provide reasonable adjournment*

Almost immediately after receiving notice of the disciplinary trial, Sergeant Wetzel's attorney requested an adjournment because of the short notice, and also because he had previously-scheduled army reserve duty.[8] The Police Chief's attorneys refused to consent to an adjournment of the trial, because Sergeant Wetzel's attorney refused to withdraw discovery requests made in the *Wetzel 1* federal discrimination lawsuit.

Essentially, Chief Nulty's attorneys sought to hinder Sergeant Wetzel's federal lawsuit by refusing to act reasonably in the disciplinary case if she did not waive discovery rights in her federal lawsuit. There was no legitimate reason for declining to grant a reasonable adjournment, and any impartial hearing officer would have done so under the circumstances.

---

[7]  See, N.Y.S. Dept. of Civil Service, Manual of Procedure in Disciplinary Actions (2003).

[8]  Plaintiff's counsel informed HHO Wooley of his year tour of duty in central Iraq which ws completed 8 months or so earlier.

19

> *REPRISAL TIP: Granting a reasonable adjournment can only help the subject of reprisal. Use of a henchman as the hearing officer will avoid this possibility.*

### N.  Misrepresentation that Civil Service Law § 75 procedures would be used

Shortly after being notified of the trial date, Sergeant Wetzel's attorney was informed that the general procedures of § 75 of the N.Y.S. Civil Service Law would be followed.  However, this was not the case, for many reasons including but not limited to the absence of an impartial adjudicator, and other basic procedural rights, such as adequate notice of the charges placed against the civil servant, and the right to exculpatory evidence, to witnesses, to an orderly proceeding, to adequate notice of charges, and the basic right to present a defense in to impartial fact-finder and impartial decision-maker.  These are described in more detail below.

> *REPRISAL TIP: It is important to give the appearance that the proceeding is fair, even though the proceeding is designed for reprisal, and conviction regardless of innocence.*

### O.  Refusal to provide a Bill of Particulars, or to discuss pre-trial matters e.g. scheduling of witnesses, expected evidence, etc.

A basic element of due process is adequate notice of the charges.  New York law is clear that a civil servant accused of administrative disciplinary charges is entitled to demand a bill of particulars regarding charges which lack adequate specificity.  Because of the intentionally short notice, Sergeant Wetzel's attorney was forced to draft a demand for a bill of particulars on the same afternoon that he received the notice of trial.  Even though Sergeant Wetzel's demand for a bill of particulars was timely made, no response tendered, nor one required by the henchman hearing officer.

> *REPRISAL TIP: Another reason for not identifying the henchman hearing officer until the last possible moment is to hinder the right of the employee to request pretrial relief, such as a bill of particulars. If the civil servant and her attorney are not informed of the identity of the hearing officer, they cannot make other reasonable requests either, such as requesting a public hearing, discussing evidentiary issues, or arranging for the orderly presentation of each party's case, including the scheduling of witnesses.*

### P.  Lack of ability to obtain relevant evidence.

HHO Wooley indicated that if relevant evidence existed, "maybe [he] would direct the Town to turn it over." *Tr.* 62.  In addition, Sgt. Wetzel's counsel pointed out the apparent lack of CPLR 2302 subpoena power in this unauthorized proceeding, to which he responded at page  64 "My suggestion with you with that also is that you take that up with a court."  Of course, that was quite impracticable with 4 business days notice and no hearing officer previously identified.  HHO Wooley did not even provide a fax number or street address in his initial correspondence.  If the hearing was to be concluded on its first day, it would have been impossible for Sgt. Wetzel's counsel even

to subpoena relevant governmental documents (her employer is a government) as such
would have required a "so ordered" subpoena under CPLR 2302.

Obviously, neither the Town nor the HHO had any intention of allowing Sgt.
Wetzel to obtain exculpatory evidence from the Town with which to defend herself. *See*,
below.

While the subject of "discovery" is similar to the subject of evidence production
at trial, HHO Wooley insisted upon conflating the two, in order to prevent Sgt. Wetzel
from obtaining needed evidence.   He would not even permit her access to her own
Memo Book, which the department had taken from her in 2004, and which was relevant
to her activities of that evening (at transcript pages 68-69):

```
 5            MR. DIEDERICH:  How -- wait, sir,
 6      if only you have the power to cause the Town
 7      to produce for us documents and you indicate
 8      you even have subpoena power, so I would
 9      request you to subpoena them if you feel you
10      have to.  But if only you have that power
11      then I would like for you to tell them they
12      have to produce documents, such as my
13      client's memo book.
14            HEARING OFFICER WOOLEY:  Which
15      I'm not going to do.
16            MR. DIEDERICH:  Why?
17            HEARING OFFICER WOOLEY:  Because
18      you're not entitled to it.
19            MR. DIEDERICH:  Why?
20            HEARING OFFICER WOOLEY:  Now move
21      on.
22            MR. DIEDERICH:  As a matter of
23      due process, sir, my client is entitled to
24      be able to prepare a defense.  And if the
25      Town takes her property and her documents
[page 69]
 1            Proceedings
 2      and her papers and it takes those papers two
 3      years ago and then keeps them and won't give
 4      them up, when those things are needed for
 5      her to refresh her memory as to what
 6      happened two years ago, I cannot believe
 7      that that is not in violation of her basic
 8      right to be able to prepare a defense.
 9            HEARING OFFICER WOOLEY:
10      Mr. Diederich, I suggest you take it up with
11      the Supreme Court, the Appellate Division
12      and/or the Court of Appeals, which I am
13      relying on a representation by the Town
14      counsel that this was argued all the way up
15      those lines, okay, and several others and
16      denied.
```

21

There were many items which would have helped establish Sgt. Wetzel's defenses, but which the Prosecutor and HHO sought to deny her. Just some examples, as her attorney argued early in the proceedings (at page 84):

| | |
|---|---|
| 7 | … also her |
| 8 | entire memo book that was taken from her |
| 9 | regarding entries that she made documenting |
| 10 | what she did on July 7th, 2004, transcripts |
| 11 | of interrogations of other people made in |
| 12 | connection with these events, copies of |
| 13 | recordings, including radio and telephone |
| 14 | and FOB computer messages that occurred. |
| 15 | Things that would show that she was busy |
| 16 | doing her work as a supervisory sergeant on |
| 17 | that date. |

Evidence in the Town's hands was crucial to the defense. As her attorney argued regarding, for example, Charge I (at pages 86-87):

| | |
|---|---|
| 19 | If you look at Charge I, the time |
| 20 | period involved seems to be between 6:44 |
| 21 | p.m. and seven o'clock, actually 7:08. |
| 22 | That's the whole length of time of this |
| 23 | charge. That's, I believe, 19, 20 minutes, |
| 24 | somewhere around that. So this alleges that |
| 25 | in a period of 20 minutes or so, my client |
| [page 87] | |
| 2 | failed to do supposed supervision of various |
| 3 | things. But again there's no evidence that |
| 4 | my client wasn't involved in some other |
| 5 | important emergency at headquarters. And |
| 6 | without discovery, how can she defend |
| 7 | against it? |

The proceeding was Kafkaesque. Essentially, all physical evidence was in the hands of the Town, but the only such evidence produced what that which the prosecution deemed relevant.

### *Q. Absence of promulgated Rules and Regulations*

There were no rules or regulations promulgated by the Town Board regarding the prosecution of disciplinary cases under the Police Act. Nor was there any delegation by the Town Board to Mr. Woolley to "act as hearing officer" regarding the disciplinary charges against Sergeant Wetzel.

There was a letter from the town attorney to the parties stating that the proceeding would be generally governed by § 75 of the N.Y.S. Civil Service Law. However, the town attorney has no independent power to establish rules or regulations regarding police disciplinary cases. That power rests with the Town Board alone.

> *REPRISAL TIP: it is best not to promulgate any formal rules or regulations. Ad hoc procedures, devised by the hearing officer or prosecutor during the preceding allow the greatest ability for abusing the subject of reprisal.*

22

### R.  Absence of any authority for the delegation of power to make findings of fact or recommendations—or to preside over or adjudicate a hearing

In the absence of a rule or regulation allowing for delegation of fact-finding to a hearing officer, as well as the absence of a written delegation, made the proceeding presided over by the henchman hearing officer a legal nullity. Under the Police Act, and as Sergeant Wetzel was advised as her right in the discipline charges themselves, Sergeant Wetzel was entitled to trial before the town board itself. This would be consistent with prior practice in the county. *See, e.g.,* Matter of Rockland County PBA v. Town of Clarkstown, 149 A.D.2d 516, 539 N.Y.S.2d 993 (2d Dept. 1989).

> *REPRISAL TIP: The henchman hearing officer is being paid to preside over a disciplinary trial. He certainly will not undermine his own ability to preside, and be paid his fees, by ruling that he does not have authority to preside over the case. It is important, therefore, that the Town Board not be presented with the civil servant's objection to lack of jurisdiction. Otherwise, it might realize that it is required to conduct the hearing itself, to adjudicate the case.*

As acknowledged in the Section 75 guidebook referenced as guidance by HHO Wooley, the absence of a written delegation of authority to a hearing officer constitutes a jurisdictional defect.

### S.  Faced with a federal court challenge to the retaliation, the Reprising Official's attorneys mischaracterized or misrepresented the facts

Federal court judges generally expect that the members of the federal Bar will represent facts truthfully and with candor to the Court. In response to Sgt. Wetzel's effort to obtain a TRO and injunction against the disciplinary proceeding, the Town's outside counsel, Mr. Klein, made the following statement to the federal court on July 13, 2006, when he indicated, *inter alia,*

> "I can't make up what these facts are. Ten people are charged. Ten people are offered settlements. Nine people accept the settlements, one [Lt. Wetzel] doesn't."

This, it turns out, was a completely false statement. As of that date, it appears that only one person (another female police officer, Kathy Sampath, on July 4, 2004 charges completely unrelated to those placed against Sgt. Wetzel) may have settled. See, below.

The teaching point for the Reprising Official is this: If faced with a federal court challenge to the disciplinary proceeding as retaliatory, it is relatively simple to make misrepresentations to the federal court, because the employee will not likely have evidence at hand to counter the misrepresentations. And once the federal court denies injunctive relief, it will not likely have reason to revisit the issues arising in the municipal administrative proceeding.

> *REPRISAL TIP: While misleading a federal judge is somewhat risky, the bold attorney for a Reprising Official may find it financially worthwhile to take this risk, as he can be fairly confident that the federal courts will be*

23

**EXHIBIT B**

(2 of 2)

*very reluctant to examine the details of a local government's administrative proceeding.*

*ADDITIONAL REPRISAL TIP: It is also important to know the local federal court, and local office of the EEOC, because if the local judges and/or EEOC are unsympathetic to employment discrimination and/or retaliation cases, it is less likely that they will devote the requisite effort to ensuring that the civil servant's federal rights are protected. In a gender case, this becomes even more of a problem if the judges are male, because they too may unconsciously have a gender bias.*

### T. *Conflict of interest whether the prosecutor will personally profit by obtaining a conviction*

A deputy town attorney, not an outside counsel, should have been tasked with prosecuting any disciplinary case, and to do so fairly, as is a governmental prosecutor's ethical obligation. Here, on the other hand, the outside counsel is acting as prosecutor, has selected the hearing officer, and is legal advisor (as its labor counsel) to the Town Board, the ultimate adjudicator of the case. It can be fairly assumed that the hearing officer and the Town Board, under such circumstances, will look to the prosecutor for advice and guidance, and also give him a conviction. The prosecutor, as outside counsel will profit both financially, and in the eyes of his municipal benefactor, especially if he can also harm Lt. Wetzel, as that would help Chief Nulty in defending against her federal lawsuit, where he is an individual defendant. Cost to the town (his other client) will be of no concern to the outside counsel/prosecutor, thought the taxpayers might take exception.

The Town Board will be also (unfairly) benefit by a conviction, as a conviction will hurt the employee's civil rights lawsuit against the Town, and the henchman hearing officer will profit by performing in a manner which will ensure him future employment by same municipality, and perhaps again at the recommendation of the prosecutor.

Only justice and the integrity of government suffers, and the victimized public servant.

HHO Wooley and Prosecutor Klein were unconcerned over Mr. Klein's conflict of interest in representing both the Town, the Police Chief (in the federal litigation) and the Police Chief (as disciplinary prosecutor). The following is indicative:

| | |
|---|---|
| 17 | MR. DIEDERICH: So that brings up |
| 18 | another issue. You refer to Mr. Klein as |
| 19 | Town counsel. Mr. Klein apparently is |
| 20 | representing both the Town and also |
| 21 | representing the police chief. The police |
| 22 | chief is the charging party here. |
| 23 | MR. KLEIN: I'm not representing |
| 24 | the Town, that's completely false. |
| 25 | MR. DIEDERICH: Well, I have a |

[page 70]

| | |
|---|---|
| 2 | letter from his office indicating that Keane |
| 3 | & Beane represents the Town of Orangetown. |
| 4 | MR. KLEIN: With respect to the |

24

5    disciplinary charges, I only represent the
6    Chief of Police, I've had no communications
7    with anyone on the Town Board regarding this
8    matter.  I don't represent them in this
9    matter.
10         MR. DIEDERICH:  The Town speaks
11    for the Town through its Town Board and if
12    Keane & Beane is labor counsel to the Town
13    of Orangetown -- by the way, is also
14    defending, the counsel, against my client's
15    federal lawsuit against, by the way, the
16    Town and the police chief.  So if Keane &
17    Beane is representing the Town for all of
18    those purposes and also representing the
19    police chief as basically a charging party,
20    then it's a blatant conflict of interest.
21         HEARING OFFICER WOOLEY:  Give me
22    a citation to that effect.
23         MR. DIEDERICH:  How about --
24         HEARING OFFICER WOOLEY:  Give me
25    a citation.
[page 71]
2         MR. DIEDERICH:  How about the
3    disciplinary rules?
4         HEARING OFFICER WOOLEY:  Give me
5    a citation.
6         MR. DIEDERICH:  It's blatant
7    conflict of interest.
8         MR. KLEIN:  Conflict of interest
9    is for me and my client to discuss, not him.

### U. *Unsworn and apparently uninvestigated charges*

As pointed out on the first day of the disciplinary hearing, the disciplinary charges were not sworn, nor is there any indication that they were even investigated.  Implicit in a good faith prosecution is a good faith investigation of the charges, which did not occur here.  The Town should promulgate rules under the Police Act, and these should require assurance in the future that disciplinary actions have a proper factual basis and are undertaken in good faith. *Tr.* 75.

### V. *Mr. Wooley refuses to answer* **voir dire** *questions*

As stated above, HHO Wooley appears to have acknowledged that Mr. Klein recommended his appointment.  However, Mr. Wooley refused to provide any other indication of his credentials.  There is nothing in the record anywhere, nor in FOILed Town records, to indicate that he was competitively selected, or that he has any experience whatsoever in police matters.

Without any background or experience in policing and police matters, there is no reason give his evaluations or recommendations any credence whatsoever.  And based

25

upon his recommendations, it is obvious that a layman, or even a schoolchild, would have been more fair.

Sgt. Wetzel's attorney has learned from the reported <u>Temple</u> case[9] that Mr. Wooley has a reputation of <u>always</u> finding for his municipal employer.  His reputation appears to be that of a municipal whore.   It is no wonder that he refused to answer any *voir dire* questions regarding his appointment and potential non-impartiality.

### W. Disciplinary Trial, Day 1 -- the testimony of the only prosecution witness, Cpt. Zimmerman, subsequently revealed to be materially false and misleading

It is apparent that Chief Nulty's prosecutor (the Town's outside counsel) sought to start and finish the charade of a disciplinary trial on a single day, based upon the testimony of the man who was, on July 7, 2004, Sergeant Wetzel's squad leader, namely, Lt. (now Captain) Zimmerman.

At the start of Captain Zimmerman's testimony, he was perhaps most credible with hindsight response to Prosecutor Klein's question (at page 158):

```
15   Q.  Did you have any problems with what
16        Lieutenant Wetzel did?
17   A.  Me personally?
18   Q.  Yes.
19   A.  I believe I would have done more.
```

That statement was not an indictment of a subordinate, and suggest a potential need for mentoring, counseling or some corrective training.  He suggesting Sgt. Wetzel could and should have viewed the video monitors.   He viewed her as committing errors in judgment.

In this regard, Captain Zimmerman's testimony between pages 173 and 178 reveals assumptions about what Sgt. Wetzel should have done, but presents <u>no</u> evidence that she did not do these things.  For example, Captain Zimmerman says she should have inquired about Mr. Dowd's condition, but does not provide any information that she did not so inquire (and later testimony makes clear that she had extensive discussions about Mr. Dowd with arresting officer Holihan).

Unfortunately, it appears that Captain Zimmerman has been assigned the duty of becoming the Police Chief's henchman.  The testimony he provided on the first day of trial was damning.  It was also provably and materially false, although it took most of the 8 additional days of trial to uncover the actual facts.

### a.   Materially False and misleading prosecution evidence from Cpt. Zimmerman

What the defense was eventually able to show was that Captain Zimmerman's testimony was false and apparently perjurious, designed to provide a rationale for the Henchman hearing officer to convict Sergeant Wetzel on his false and misleading

---

[9] *Higham v. Temple,* 2006 WL 2714712 (S.D.N.Y., Sep 22, 2006).

testimony, which testimony was contradicted by the physical evidence which the Town itself produced.

Examples of the provably false testimony are as follows (at page 160):

```
10  BY MR. KLEIN:
11  Q.  And so you reviewed all videos?
12  A.  I believe I did, yes.
13  Q.  And what did you find upon your review of
14      the videos?
15  A.  As apparent on the tape, the suspect
16      appeared to be making phone calls without
17      anybody assisting him.  He had a good
18      portion of free reign in the booking room
19      for extended periods where he would move
20      from one seat, go to the phone and either
21      dial or answer.  There's no audio on the
22      tapes, I didn't line them up with the CDs.
23      But he can move fairly freely from one
24      portion of the booking area to the other,
25      he did pick up the phone several times.
```

Captain Zimmerman repeats this assessment again a short while later (in relation to Charge III ):

> "The fact that he was allowed to make so many phone calls, to answer the phone, to move freely around the booking room would indicate that the booking procedure was not being supervised." Tr. 179.

And again (in relation to Charge VII) he testifies at Tr. 185:

> "In reviewing the videos, he strolled around for extended periods of time, going from one seat to another, answering the phone, making phone calls. *** And the prisoner is not supposed to be roaming freely around the booking room."

And once again (in relation to Charge IX) he testifies at Tr. 187:

> "The fact that this prisoner was allowed to roam freely, those were all issues that should have been dealt with by the supervisor in the building, and that refers to not dealing with those issues, individually, collectively, just as a whole on her shift."

And (in relation to the Charge X) he testifies at Tr. 188:

> "and the actions of the suspect inside our facility roaming around, lack of notification...."

In reality, as can be seen from underline actually viewing at the videotapes, during Sgt. Wetzel's shift Mr. Dowd never had "free reign in the booking room for extended periods..." during Sgt. Wetzel's shift. On the contrary, Sgt. Wetzel may have been already departing her shift before Mr. Dowd ever begins walking unescorted outside the holding pen at some time around 10:56 pm or thereafter.  To hold Sgt. Wetzel for failure to monitor this activity at or after the very end of her shift, when as headquarters

commander she has no duty to constantly monitor the video cameras at all, is absolutely ridiculous.[10] Thus, Captain Zimmerman's testimony is materially misleading if not perjurious.

Captain Zimmerman continues his misleading and perjurious testimony with his testimony about Nicole Colandrea's telephone call to the police headquarters. He describes the call, in relation to Charge VI, as follows (at Tr. 182):

> "In this case complainant Nicole, I forget her last name, called the desk to say that she received three phone calls from our station that <u>she considered to be harassing</u> or aggravating in nature." *(emphasis added)*

And again he testifies at Tr. 186:

> "A.  In this case the incident being that a person outside the Department called to say that they were <u>being harassed</u> from within the Department.... *** a prisoner was allowed to make harassing phone calls from our site."

And Captain Zimmerman again testifies at Tr. 188-89:

> "here we have <u>somebody calling the station to report that they are being harassed from our facility,</u> this is something that we should have taken very seriously, if nothing else for the fact that it started and ended in our building. The fact that we did absolutely nothing about it, I believe we let that family down and collectively it was conduct unbecoming an officer." *(emphasis added)*

However, a review of Nicole's actual conversation (attached), as well as her later testimony in this disciplinary case, revealed that she did <u>not</u> consider Mr. Dowd's calls to be telephone harassment (nor where they—indeed, Nicole <u>never</u> hung up on any of Mr. Dowd's calls), and Nicole did not wish to, and did not, file <u>any</u> complaint against Mr. Dowd on that day or at any time. Moreover, if he had bothered to investigate the matter, he would have learned that Sgt. Wetzel had by this time already discussed this case with Orangetown Justice Phinney, who reviewed the facts with her, and not one involving "domestic violence." Thus, Captain Zimmerman was painting a misleading picture. Nicole was never a "victim," except perhaps a victim of the embarrassment caused by a drunken domestic partner.

Captain Zimmerman did regard Sgt. Wetzel's inaction after Nicole's phone conversation with her as a "mistake in judgment." *Tr.* 239. Mistakes in judgment are not normally, nor properly, the subject of a disciplinary proceeding seeking the imposition of punishment.

### X. Disciplinary Trial, Day 1 -- HHO Wooley reveals himself to be a henchman

Typical of his ruling throughout the disciplinary trial, HHO Wooley reveals himself to be a municipal henchman early on.

---

[10] Mr. Dowd was permitted telephone calls, so seeing him use the telephone would be of no concern to the upstairs supervisor.

### a.  *Intentionally misrepresenting the facts to improperly attack the respondent*

For example, during cross-examination of Captain Zimmerman, HHO Wooley jumped on Captain Zimmerman's bandwagon, by suggesting that Dowd's telephone calls to his girlfriend were criminal (which the calls clearly were not):

> HEARING OFFICER WOOLEY:  Throw another caveat in there. Supposing the phone call came in saying that the crime was being committed from the police station, what would you have done? (Tr. 233-34)

Cpt. Zimmerman was still on cross-examination and HHO Wooley had already concluded guilt.

An even more egregious example of his partisan perspective involves video tape evidence.  Prosecutor Klein offered into evidence what was represented to be approximately six (6) hours of videotapes, which Lt. Wetzel's attorney objected to, stating that the prosecution has had "two years and three days to produce them for us." Tr. 190.  Prosecutor Klein then withdraw is offer of the tapes into evidence, after Sgt. Wetzel's counsel expressed the desire to review the tapes and then *voir dire* the Captain Zimmerman (whose testimony was based exclusively upon the videotapes and audiotapes). Defense counsel nevertheless demanded inspection.   In a remarkable display of partiality and unreasonableness, HHO Wooley then denied the defense inspection of the tapes <u>unless</u> introduced into evidence.  Tr. 191-192.  The testimony reads:

```
 8          MR. KLEIN:  I'm going to
 9    withdraw, I'm not going to offer them into
10    evidence, not at this time.
11          I'm fine, I have no further
12    questions.
13          MR. DIEDERICH:  I'd still like
14    production of them.
15          HEARING OFFICER WOOLEY:  That's
16    another story.  The answer to that is no.
17    If they were introduced -- moved into
18    evidence, then you would have a right to
19    have a copy of them.
20          MR. DIEDERICH:  With all due
21    respect, the Town obviously believes they're
22    relevant to the case and if they are
23    relevant to the case, they may be relevant
24    to the defense, and the defense should have
25    an opportunity to see them as a matter of
[page 193 ]
 2    basic due process.
 3          HEARING OFFICER WOOLEY:
```

29

4       Overruled.  Now, this is the time that you
5       get to cross-examine Captain Zimmerman.  If
6       you want to take a minute to talk to your client.

Essentially, HHO Wooley, as with the audiotape evidence, again denied the defense the actual evidence, here videotapes, upon which prosecution witness Zimmerman based his testimony.  The "best evidence rule" had been converted into the "worst evidence rule"—testimonial evidence of an extremely biased witness based solely upon his biased (or here, perjured) interpretation of the physical evidence.

To date, Lt. Wetzel has never had the opportunity to point this out to the Town Board.  Of course, HHO Wooley was certainly aware of his one-sided rulings and actions as a hearing officer henchman, but certainly did not admit this, or discuss exculpatory evidence, in his Report and Recommendations.  After all, his job was not to describe evidence of Lt. Wetzel's innocence.

### b.  *Non-dismissal of a clearly defective charges.*

Another example of HHO Wooley's partisanship involves his refusal to dismiss charges which were fatally defective on their face..

One was Charge VII refers to an entirely irrelevant subsection of the departmental orders, namely, General Orders 660 (2)(F).  Upon discovery that the wrong section of the General Orders was referenced in the charges, Prosecutor Klein refers to it a "typo" and seeks to informally amend the charge to recite the intended and different subsection, namely, GO 660 (2)(G).  HHO Wooley permits this.  Tr. 184.

No impartial hearing officer would have permitted such a material amendment of charges during the trial, as such action would is a basic due process violation—a respondent is entitled to notice of the actual charges.

Another charge referred to a general order provision requiring informing supervisors of a lack of sufficient manpower or equipment (" deficiencies in personnel or equipment"), yet the Henchman hearing officer interpreted this provision to involve performance deficiencies in individual officers, rather than a logistics insufficiency.  As to all the other charges, it was a general lack of credible proof of the charges.

> REPRISAL TIP: *The hiring of a henchmen as a "hearing officer" will ensure that even utterly defective charges survive a motion to dismiss. Ignoring exonerating evidence is an important task of a henchman hearing officer.*
> *An bona fide and fair judge may have tossed the entire case upon recognizing prosecutorial misconduct.*

### c.  *Excluding Defense witnesses, but not the prosecution only witness*

It is also indicative of HHO bias that Mr. Wooley, from the beginning of the trial, permitted Captain Zimmerman to remain present, even though he was the prosecution's principal witness, and one the defense intended to call.  Thus, even though HHO Wooley

30

excluded all other witnesses, including the Sgt. Wetzel's co-respondent, retired Sgt.
Flannery, whom HHO Wooley indicated he would <u>preclude</u> from testifying if he stayed
in the room (a patently unreasonable sanction in a disciplinary case), he permitted the
prosecution witness to remain.  Tr. 112-115.

### d.  HHO Wooley allows introduction of cherry-picked evidence

Another example of HHO Wooley's partisan approach was his willingness to
permit the introduction of prosecution-selected evidence, but not to provide the defense
the ability to examine non-selected evidence.   The prosecution's case was analogous to
showing videos of a coin toss and arguing that "the coin always shows tails (guilt)", by
not producing all the video shots of the coin toss showing heads (innocence).

Specifically, as to the evidence introduced through Captain Zimmerman, although
he is not an internal affairs investigator, he apparently took charge of selecting certain
recorded communications purportedly showing that Headquarters Sergeant Wetzel did
not communicate directly with Patrol Sergeant Flannery.  Yet the defense was provided
with no inspection of all recorded communications between Sergeant Wetzel and
Sergeant Flannery that evening.  Rather, only the selected portions which Captain
Zimmerman had chosen were produced at the trial, and admitted by HHO Wooley.

Captain Zimmerman admitted that he only looked for tapes concerning Mr.
Dowd, which undoubtedly did not include discussions between Sergeants Flannery and
Wetzel, notwithstanding that the charges alleged their failure to directly communicate.
This did not concern HHO Wooley.   Captain Zimmerman testified at transcript pages
150-151:

```
 3    Q.  In other words, could you explain to us how
 4         that tape was made; in other words, did
 5         somebody go to other recordings and then
 6         copy selected portions, I presume?
 7    A.  This may be complicated.  What happens is
 8         when you put the disk in and you download
 9         the data, it will list every call that's on
10         the disk, every channel, pretty much in
11         date and time order.  What you have to do
12         is listen to them to see if they are
13         relevant.  If they are, you put an asterisk
14         in front of it and it drags it from one
15         portion to the other, which is going to be
16         your burn list.
17              So those are the calls that I
18         found that were relevant to this case.  As
19         far as how many other calls were there, I
20         wouldn't even begin to guess.  There could
21         be a thousand, there could be none.  The
22         machine is just going to record -- it's
23         dormant until there's conversation and it's
24         voice activated.
25    Q.  And who was the person who determined what
[page 151]
```

31

```
2     was relevant to this case as far as
3     selecting tape?
4   A.  For the most part when I did the tape, if
5       it pertained to the arrest of Frank Dowd,
6       whether starting from the first call to the
7       last call, whether it be the police
8       channel, the phone lines, then I made a
9       copy of it.
```

*(emphasis added)*

> *REPRISAL TIP: Provide only the portions of evidence that will advance your deceit, and hide or destroy all other evidence. The subject of reprisal will have little if any ability to defend, where only pro-prosecution evidence is made available to the defense. Make sure your trusted captain and chief prosecution witness is the person who selects only evidence which is favorable to the prosecution.*

### e.  *HHO Wooley denies Sgt. Wetzel alternative means of establishing her diligence—the testimony of Sgt (retired) Flannery*

HHO Wooley not only denied Sgt. Wetzel access to physical evidence (e.g., FOB cards, videotape evidence and audiotape evidence), but also denied her the right to exculpatory witnesses. For example, a key witness was Sgt. Wetzel's fellow sergeant, Sgt. Flannery. An alternative method for Sergeant Wetzel to establish that she regularly communicated with Sergeant Flannery would be Sergeant Flannery's testimony. However, during the trial it appears that Sergeant Flannery was intentionally intimidated by the threat of prosecution of the disciplinary charges against him, and the (legally baseless) threat that his retirement pension could be affected. The prosecutor, Mr. Klein, refused to withdraw the charges against Sergeant Flannery thereby continuing the Town's intimidation of this witness. HHO Wooley, though agent for the Town, did nothing to correct this denial of basic due process.

Because HHO Wooley did nothing, and based upon the Town's threats, Sergeant Flannery declined to testify for the defense. Thus, Chief Nulty and his attorney actively sought, and achieved with the aid of HHO Wooley, the denial of Sergeant Wetzel's right to testimony vital to her defense.

> *REPRISAL TIP: If a witness crucial to the defense exists, intimidate such witness into refusing to give testimony. Although this would be a crime if it were a judicial proceeding, because this is a sham proceeding, the defense will have no effective remedy regarding the abuse.*

### f.  *HHO Wooley ignores the fully exculpatory evidence*

As described above, the most egregious aspect of Captain Zimmerman's testimony was his testimony that Sergeant Wetzel essentially allowed Mr. Dowd free rein to roam around the booking room unsupervised for extended periods of time during her shift on July 7, 2004. Captain Zimmerman based this testimony upon his careful viewing of what was represented as "8 hours of videotape," which videotapes had not, at

32

that time, been made available to the defense, and which were not played at all on the police chiefs direct case.

It was not until near the end of the trial, when Captain Zimmerman was put on as a defense witness, that Captain Zimmerman was forced to acknowledge that the only time that Mr. Dowd walked around the booking room or made a telephone call unattended appeared to be 10:55 p.m. (2255 hrs), in other words, the last few minutes of the 3 pm -11 pm shift. If the incoming Sergeant had already relieved her (as is a common and accepted practice among incoming and outgoing supervisors), Sergeant Wetzel would have already left for the evening.

Witnesses present at the hearing can testify that HHO Wooley was not even interested in looking at the monitor when this evidence was played at the disciplinary trial. Why bother? He knew his job was to convict.

> REPRISAL TIP: *If you have a witness willing to provide false evidence, this is a very effective tool of reprisal, especially if you can make it difficult or impossible to refute the perjury.*

### g. "Selective prosecution"

Sgt. Wetzel's answer contained the affirmative defense of "selective prosecution." Of course, this could have encompassed reprisal. But not so under HHO Wooley's views, and partisan view. Another aspect of selective prosecution was the question of whether Mr. Dowd (and the booking officer supervisor) where engaged in precisely the same conduct for which Sgt. Wetzel was charged, but after under the supervisors of the next shift. (The evidence reveals Mr. Dowd's calls continuing into the next shift.) HHO Wooley refused any inquiry, even though this would have revealed selective prosecution, because when Prosecutor Klein objects (pg 216 21-23) "it doesn't matter what anyone else did." HHO Wooley rules "I agree."

### Y. Gamesmanship interfering with Sgt. Wetzel's ability to put on a defense

Chief Nulty's outside counsel prosecutor sought to make the disciplinary proceeding abusive toward the defense, whether by personally attacking Sergeant Wetzel's attorney, forcing Sergeant Wetzel to bear the cost of "subpoenaing" witnesses (even her coworkers), or obstructing the orderly presentation of evidence. This "gamesmanship" hindering the presentation of the defense case is described herein.

Typical of Mr. Klein's gamesmanship was his refusal to rest the prosecution's case on July 11, 2006, even though he completed his case on that first day of trial, indicating that he might have further witnesses. Thereafter, when Sergeant Wetzel's attorney wrote him inquiring of his plans for the start of the next court date, August 4th, as Sgt. Wetzel would be required to begin her defense case at that time, Mr. Klein stated that he might have one or two brief witnesses. This was a deceptive ruse on his part, and an attempted ambush, because the witness he then attempted to call was Sgt. Wetzel herself.

Essentially, in this quasi-criminal proceeding, the prosecutor sought to make Sergeant Wetzel a witness against herself. Of course, Sergeant Wetzel would likely be

expected to eventually testify. Yet this tactic served its purpose of delaying the start of the defense case, with defense witnesses waiting.

> REPRISAL TIP: *Professional courtesy and the orderly presentation of a case has no place because the goal is to abuse and burden the defense. Gamesmanship and the inconveniencing of people called as defense witnesses should be practiced wherever possible.*

### Z. Denying reasonable meal breaks—in a "rush to judgment"?

HHO Wooley did not permit a break in the proceedings on the first day until 4:00 p.m., despite repeated defense requests for a meal break. He left the decision of a break to the stenographer (Mr. Klein's selected reporter). Tr. 148, 164. This appeared designed to burden the defense. At 4 pm, an unreasonably short meal break was allowed:

```
 8        MR. DIEDERICH:  I would suggest
 9     it's four o'clock, that we break for dinner
10     because we've been here since the notice
11     time of 9:30 this morning without a break,
12     other than a few minute breaks.
13        HEARING OFFICER WOOLEY:  4:30.
15        (Break in the proceeding.)
```

### AA.    What purpose in prosecuting this competent police woman?

No credible explanation exists for subjecting Lt. Wetzel to disciplinary charges. The only credible explanation is reprisal. As the prosecution's only witness, Captain Zimmerman, testified:

```
18   Q.  *** Would it be fair to say you've
19       had a long-term working relationship with
20       Lieutenant Wetzel?
21   A.  Yes.
22   Q.  And you supervised her for many years?
23   A.  Yes.
24   Q.  Is she a competent officer?
25   A.  As a general rule I'd say yes.
[page 195]
 2   Q.  Competent sergeant when she was a sergeant?
 3   A.  I would say yes.
 4   Q.  Competent lieutenant when she was a
 5       lieutenant?
 6   A.  I would say yes.
```

She is a competent lieutenant. She is respected by her men and they perform well under her command. These disciplinary charges reflect pure abuse of governmental power for wrongful purposes, and at substantial taxpayer expense.

34

Captain Zimmerman testified that he was Sgt. Wetzel's supervisor, yet he did not inquire of her about the events of July 7, 2004. Why not? If she did wrong or made mistakes, why not correct her? Tr. 202-204. And he did not know what she was or not doing that evening, supervising headquarter alone in Lt. Zimmerman's absence. His follow-up corrective action was only "more observation." *Tr.* 240.

And Zimmerman admits that the was no working speaker in the communication room on July 7, 2004, which, if working, would have been used to advise Plaintiff of Officer Holihan's arrival with Mr. Dowd. Tr. 252.

### BB.   *Refusal to allow Sgt. Wetzel's attorney to seek redress from, or make motion to, the Town Board*

A henchman hearing officer, hired to convict, has an obvious self-interest in upholding his own authority to preside over the unlawful and unauthorized proceedings, as well as to uphold the disciplinary charges against challenges of legal insufficiency or failure of proof.

Because the Town Board, perhaps upon the advice of its outside counsel (prosecutor Klein), is the governmental body controlling the proceedings against its civil servant, Lt. Wetzel, it is the proper entity for considering and remedying any improper or unauthorized actions. This it has not done, either intentionally so, or because its agents prevent relevant information from reaching it.

The various actions of prosecutor Klein and Henchman Hearing Officer Wooley in attempting to prevent and preventing Sergeant Wetzel from addressing the above and related issues to the Town Board deprived her of her right to seek redress from her own local government—a right guaranteed by both the First Amendment and § 15 of the N.Y.S. Civil Rights Law. *See, Wetzel 2.* In this regard, Sgt. Wetzel's attorney submitted a lengthy letter-motion during the disciplinary trial, after HHO Wooley stated that he would not find that he lacked jurisdiction (or grant Sgt. Wetzel's other request). Obviously, Sgt. Wetzel was entitled to request the appointing authority to review its appointment, on the grounds of lack of legal authority, lack of impartiality or to make any reasonable request regarding matters within the Town Board's control relating to the procedure the Town Board had directed. This is her First Amendment right to petition her own government for the redress of wrong (a right which the Town's outside counsel has challenged, at least where the petition is presented by an attorney – *See, Wetzel 2* appeal).

Nevertheless, even before Sgt. Wetzel's attorney wrote the Town Board, its outside counsel (Prosecutor Klein) directed the Town Board "not to accept or read anything written from [Sgt. Wetzel's counsel] that concerns this disciplinary hearing." *See*, L. Klein letter dated September 7, 2006. The fact that Prosecutor Klein was giving the Town Board direction is revealing. It suggests that he, not it, is controlling the disciplinary process.

> *REPRISAL TIP: The Reprising Official must carefully keep control over the Reprisal Plan, and not allow potentially intervening officials, such as a Town Board, to become involved. The Reprising Official and his attorneys must also*

*protect and insulate the Town Board, because evidence of reprisal in its hands could become a political liability.*

If the town had considered the letter motion from Sergeant Wetzel's counsel, it could have stopped the abusive proceedings, and directed trial, if any, before itself. Because it had no power to delegate fact-finding, it was the sole entity with the power under the Police Act to try the case.

### CC.    *HHO Wooley faults Sgt. Wetzel for not becoming an officious intermeddler*

The Henchman hearing officer devoted considerable time in his Report in writing how Sergeant Wetzel failed to "investigate" how Frank Dowd injured his chin during his arrest on July 7, 2004. Mr. Wooley does not explain why Sergeant Wetzel would have such responsibility, as she was not the patrol sergeant, nor did she supervise the patrol sergeant (Sergeant Flannery was both the patrol sergeant, and the senior officer on duty that evening).

If HHO Wooley knew anything about policing (and he might, on this issue), he would realize that a police officer who becomes an officious intermeddler in making accusations against a fellow police officer is not viewed favorably. In fact, the patrol sergeant did prepare a use of force report, and a subsequent internal affairs investigation was conducted by the detective Lt. John McAndrew, which report exonerated the police officers involved in arresting Mr. Dowd. Sgt. Wetzel was not directly involved in any of this, and should not have been charged with a disciplinary infraction where she had no duty to act.

### DD.    *HHO Wooley's Report & Recommendations is the work of a henchman*

It was no surprise that Henchman hearing officer Wooley's report and recommendation found without Wetzel "guilty as charged" upon 10 of 11 charges. Tellingly, he made no comment whatsoever regarding the overstated and false testimony of Captain Zimmerman, nor the similarly false testimony of Chief Nulty. As expected of a "hanging judge," he portrayed all facts and circumstances in favor of the prosecution, and drew all inferences against the defense. And he sprinkled his 59 page report with gratuitous jabs at Sergeant Wetzel's attorney, even though counsel was not on trial.

It is also no surprise that Henchman hearing officer Wooley failed to comment upon the failures of the prosecution's proof such as, for example, the assertion that Mr. Dowd had free reign walking around the booking room for extended periods of time, which Sergeant Wetzel should have noticed had, for example, she been watching the video monitors, where in actuality any walking which Mr. Dowd did without supervision was likely after Sergeant Wetzel had ended her shift.

Similarly, Henchman hearing officer Wooley faults Sergeant Wetzel for not informing Sergeant Flannery about the arrest of a drunken Mr. Dowd at 42 Sunset Rd, Blauvelt, New York, where the audiotape evidence clearly indicates that Sergeant Wetzel was outside of the ready room, likely conducting a mandatory building check, when these events took place. Nor does he comment upon the false assertion in the charges that four

vehicles were "dispatched" to Sunset Rd., when in actuality only one vehicle was dispatched.

Henchman hearing officer Wooley has no trouble whatsoever vilifying Mr. Dowd's girlfriend, Nicole, including impugning both her character and her testimony, and suggesting that she was out to "make a quick buck" by complaining about the unlawful eavesdropping and use of her personal telephone conversations with Mr. Dowd. *See*, Wooley Report, p. 49.

Henchman hearing officer Wooley made no comment whatsoever regarding the utter lack of justification for examining tape-recorded conversations of Mr. Dowd and his girlfriend called where Mr. Dowd's complaint of excessive force related to what occurred on the street, and had nothing to do with telephone conversations. These disciplinary charges resulted from a fishing expedition intruding upon private telephone conversations between two citizens of the town.

> *REPRISAL TIP: Creation of a large report will help ensure that the Town Board does not read anything other than the conclusions. Do not include physical evidence such as audio or videotape evidence, or make sure such evidence is as inaccessible as possible.*

### EE.    Denial of opportunity to provide input to the Town Board decision makers

With no promulgated rules or regulations governing the disciplinary proceedings, there was no established procedure for providing input either to the Henchman hearing officer or, more importantly, to the decision-making Town Board. Rather, this was an *ad hoc* process dictated by both disciplinary prosecutor Klein and the Henchman hearing officer, as described below.

#### A.    Initial HHO Wooley guidance

During the disciplinary hearing, Henchman hearing officer Wooley described for the parties the process he would use for receiving post-trial briefs at the conclusion of the disciplinary hearing. Briefly, he directed that the prosecutor provide the defense with a copy of the transcript, and briefs would be due two weeks thereafter.

Aside from the fact that the prosecutor was obtaining the trial transcripts on an ongoing basis, including the defense copy, by refusing to provide a copy to the defense, as well as the fact that two weeks might be an unreasonably short period of time due to the size of the transcript and complexity of the case, the concept of simultaneous submission of post-trial briefs is commonplace and acceptable. Thus, this was counsel's expectation.

#### B.    Close-of-hearing sand-bagging

Appearing suspiciously coordinated, at the close of the trial, and in an apparent haste to adjourn, Wooley at Mr. Klein's suggestion invites a discussion over whether the parties preferred post-trial briefs or a closing argument, and that he preferred a brief, at which time Sergeant Wetzel's attorney offered that his closing argument would

essentially be that Sgt. Wetzel is innocent and the charges the result of reprisal. This was obviously rhetorical, and HHO Wooley could not genuinely have construed that statement to be an election between closing argument and post-trial brief. However, in the spirit of a henchman, Wooley did construe this as an election and there no further discussion on the record.[11]

---

[11] Disciplinary Transcript pages 2220-2224:

|    |    |
|----|----|
| 15 | MR. DIEDERICH: Then I would like |
| 16 | to have the transcripts here at Town Hall. |
| 17 | This is a Town proceeding and for me to |
| 18 | have to travel to White Plains will be very |
| 19 | burdensome. |
| 20 | MR. KLEIN: You go to White |
| 21 | Plains all the time, you file complaints |
| 22 | left and right. |
| 23 | HEARING OFFICER WOOLEY: I have |
| 24 | ordered the transcripts to be turned over, |
| 25 | how they get to you is between you and |

2221

|    |    |
|----|----|
| 2  | Mr. Klein at this point. |
| 3  | With that this hearing is -- |
| 4  | MR. KLEIN: There's one question |
| 5  | I have. This will be a deviation from any |
| 6  | hearing that I have done, ordinarily you do |
| 7  | have either a closing statement or a brief. |
| 8  | And I think because you're making a |
| 9  | recommendation to the Town Board's best interest to not |
| 10 | be in the Town Board's best interest to not |
| 11 | only have your decision but to have briefs |
| 12 | from the parties or closing statements. |
| 13 | HEARING OFFICER WOOLEY: Choose |
| 14 | one. |
| 15 | MR. KLEIN: I'll choose a brief. |
| 16 | HEARING OFFICER WOOLEY: |
| 17 | Mr. Diederich, choose one. |
| 18 | MR. DIEDERICH: I would like to |
| 19 | see the report and recommendation of the |
| 20 | hearing officer yourself and know when -- |
| 21 | be advised when that is going to be |
| 22 | submitted to the Town Board so that I could |
| 23 | then make any comments to the Town Board |
| 24 | based upon your report and recommendation. |
| 25 | HEARING OFFICER WOOLEY: My |

2222

|    |    |
|----|----|
| 2  | question is do you want to do a closing |
| 3  | statement or a brief or neither, I don't |
| 4  | care. If you don't want to do either, |
| 5  | that's perfectly fine also. |
| 6  | MR. DIEDERICH: My closing |
| 7  | statement is the Town, A, didn't prove the |
| 8  | case. And B, this whole thing is |
| 9  | retaliatory based upon her fighting |
| 10 | discrimination in this town. |
| 11 | HEARING OFFICER WOOLEY: Is that |
| 12 | the extent of your closing argument? |
| 13 | MR. DIEDERICH: And I'd like an |
| 14 | opportunity to review and comment upon the |
| 15 | hearing officer's report of recommendation |
| 16 | prior to it being submitted to the board. |

38

Not long thereafter, Sergeant Wetzel's attorney requested HHO Wooley to advise of a date for simultaneous submission of post-trial briefs. Henchman hearing officer Wooley did not respond. Mr. Klein, however, did respond, and on behalf of Chief Nulty suggested that Sergeant Wetzel's counsel had made an election to proceed by (one sentence) closing argument.

Interestingly, although Mr. Klein had in his possession all trial transcripts shortly after the last day of the trial, November 1, 2006, he did not submit a post-trial brief two weeks thereafter. Rather, Mr. Klein submitted his 49 page post-trial brief approximately 6 months thereafter, in May 2007. In other words, Sgt. Wetzel's attorney received a few moments time to give a one sentence closing statement, while the prosecution received 6 months to prepare a 49 page brief.

Of course, it would have been foolish for Sergeant Wetzel's attorney to have prepared and submitted a brief without guidance from henchman hearing officer Wooley, as he undoubtedly, by virtue of being a henchman, would likely have rejected the document for one reason or another, as may be reasonably implied by his failure to respond to Sgt. Wetzel's correspondence.

| | |
|---|---|
| 17 | I'd like at least two weeks notice. |
| 18 | HEARING OFFICER WOOLEY: |
| 19 | Mr. Klein, feel free to submit a brief. I |
| 20 | will tell you on the record there will be |
| 21 | no reply. |
| 22 | The way this is usually done and |
| 23 | the way I do it is both sides submit their |
| 24 | briefs. Mr. Diederich has chosen to do |
| 25 | what he purports to be a closing argument. |
| | 2223 |
| 2 | You have opted to do a brief. There will |
| 3 | be no reply briefs in this matter. |
| 4 | MR. DIEDERICH: Then I would like |
| 5 | to know what the submission date is going |
| 6 | to be so that I would have the opportunity |
| 7 | to submit a brief that's contemporaneous |
| 8 | with Mr. Klein. |
| 9 | HEARING OFFICER WOOLEY: I |
| 10 | understand or I'm lead to believe that you |
| 11 | do this on a regular basis, in which |
| 12 | point -- |
| 13 | MR. DIEDERICH: I've never had a |
| 14 | hearing like this. |
| 15 | MR. KLEIN: Never had a hearing. |
| 16 | HEARING OFFICER WOOLEY: You |
| 17 | would know that what I will do is I will |
| 18 | submit to both of you my findings of fact |
| 19 | and recommendations, okay, at the same time |
| 20 | as submitting it to the Town Board. I |
| 21 | would have thought that you would have |
| 22 | known that. |
| 23 | This hearing is now closed. |
| 24 | (Whereupon, the Hearing was |
| 25 | concluded at 5:24 p.m.) |

In any event, HHO Wooley would not likely have considered anything counsel would have written, other than perhaps to try to deflect valid arguments.

My letter faxed to Mr. Wooley, and copied to Mr. Klein, sent February 9, 2007 was as follows:

> Dear Mr. Wooley:
>
> Please advise whether you will be accepting post-trial briefs regarding the disciplinary charges dated September 7, 2004 against my client, Lt. Wetzel, and if so, the date for such submission from the parties (I suggest one month from today).
>
> Secondly, as to your eventual report and recommendation, I request that you furnish this in a manner whereby I can review and comment upon your report and recommendation prior to its submission to the Town Board.
>
> Thank you.
>
> > Sincerely yours,
> > /s/
> > Michael D. Diederich, Jr. /'
>
> cc: Lance H. Klein, Esq.

On May 2, 2007, Sgt. Wetzel's counsel again asked Mr. Wooley for a response to counsel's February 9, 2006 letter. No response was forthcoming.

Nine days later, Mr. Klein submitted his 49 page "Closing Statement" to HHO Wooley. Mr. Wooley gave no indication that he would accept anything from Sgt. Wetzel's counsel, and presumably he would not based upon his prior non-responses and his requirement of simultaneous submission of briefs.

HHO Wooley's report was issued approximately one month later, on or about June 12, 2007, without any input from Sgt. Wetzel's counsel, and without indicating to whom his report was being sent.

Thereafter, Sgt. Wetzel's counsel requested the Town to provide information about this, and the Town Clerk was requested to relate Sgt. Wetzel's request that her counsel be permitted to provide input to the Town Board regarding the Wooley Report and Recommendation.

Counsel pointed out his view that Mr. Wooley was a hired henchman hired to convict regardless of the evidence or lack thereof, and, respectfully, it was incumbent upon a fair-minded board to consider this position and permit a presentation of Sgt. Wetzel's side of the case.

### C. HHO Wooley's and Prosecution's unilateral submission to Town Board

Sergeant Wetzel's counsel was not advised when Mr. Wooley's Report and Recommendation would be submitted to the Town Board, and Mr. Wooley apparently provided Mr. Klein with the original physical evidence and transcripts. Thus, Sergeant Wetzel's attorney was not provided with information as to how the Town Board would be

considering the matter, what precisely would be considered, and when or where this would occur. Presumably all materials addressed to the Town Board would be sent to the Town Clerk.

It is unclear whether prosecutor Klein's 49 page "Closing Statement" was submitted to the Town Board. Presumably it was. For this additional reason, Sergeant Wetzel should have had an opportunity to provide her defense. The Wooley Report, as well as the Prosecutor's "Closing Statement," are essentially accusations against Lt. Wetzel to which she should have an opportunity to rebut under principles of due process. This is especially necessary where, as here, the trial is essentially a fact-finding and adjudicatory hoax—a sham proceeding—as the trial was rigged.

### D. Sgt. Wetzel's request to provide input to the Town Board

Sergeant Wetzel had hoped that perhaps the Town Board would be more inclined to be fair than Henchman hearing officer Wooley. For this reason, counsel wrote a letter to the town clerk request information as to whether and when the town board would be considering the Wetzel disciplinary matter, how whether Sergeant Wetzel would be permitted an opportunity for input into the decision-making. Counsel noted that Mr. Wooley refused to provide an opportunity for input to him, and that no opportunity was afforded to comment upon Mr. Wooley's reports and recommendation.

### FF.   The Town Board denies the defense a reasonable opportunity to submit input, and therefore deprives itself of a reasonable opportunity to look for, and examine, exculpatory evidence and the prosecution's lack of proof

It is common sense that without input from the defense, the Town Board would find it difficult, if not impossible, to adequately comprehend Sergeant Wetzel's defense against the charges. Certainly her counsel's one sentence statement at the conclusion of the trial would not suffice, nor was it intended to.

Moreover, the Town Board should have recognized the Wooley document for what it was, namely, a hatchet job. It should have provided Lt. Wetzel and her attorney in opportunity to provide an argument in defending against the charges.

As discussed below, a few days before its December 10, 2007 regularly scheduled Town Board meeting, and one business day after Sergeant Wetzel had submitted her opposition to the Town's motion to dismiss in *Wetzel 3*, Town Attorney Theresa Kenny advised Sergeant Wetzel's counsel that he would be given "five minutes" time to address the board on December 10, 2007. See, Kenny letter. After Sergeant Wetzel's counsel protested that five minutes was a ridiculously short amount of time to present a defense, the town attorney followed this notice up with direction that's Sergeant Wetzel's counsel could not "argue the evidence" or make a "closing statement."

At the town Board meeting, Sergeant Wetzel's counsel abided by this directive, and used the time provided at the public input portion of the Town Board meeting (where he was previously informed he would be permitted to speak) to describe the background to the disciplinary prosecution and the patently retaliatory nature of the disciplinary

41

charges. At precisely the five-minute mark, a timer rang and the town supervisor told Sergeant Wetzel's attorney to cease speaking. He submitted his letter to the Town Clerk.

Prosecutor Klein began his five minutes of allotted of time, and immediately began arguing the evidence of the case, raising counsel's objection, as Sergeant Wetzel had been informed that argument was prohibited.

At that time, the conversation was adjourned into executive session, with Sergeant Wetzel and her counsel present, at which time Mr. Klein further argued, and the town board unjustifiably agreed, that Sergeant Wetzel had been afforded an adequate opportunity to provide a defense.

### GG.    The Town Board, it appears, did not even have relevant exculpatory evidence available to it—for example, prosecutor Klein kept the videotapes

An intentional tactic employed by prosecutor Klein and HHO Wooley was to make sure that current to the extent possible, relevant audiotape and videotape evidence was made difficult to manage and review. This would hinder review by anyone not attending the actual trial, including the Town Board and a reviewing court.

For example, the videotaped evidence could have easily been placed into a DVD format so that a reviewer could do this on a personal computer. Instead, chief Nulty and his counsel chose prehistoric VCR video format.

Likewise, the hearing officer refused to permit the brief conversation between Nicole Colandrea and Sergeant Wetzel to be taken down by the stenographer, even though this was the prosecution's central piece of evidence. Thus, to review this central piece of dialogue, a person must listen to the audiotape, rather than simply review a transcript. This was unfair to the defense.

Because of the prosecution's decision to place all audiotapes on one CD, the listener must wade through the several Dowd--Colandrea conversations in order to listen to the one brief, and innocuous, Colandrea-Wetzel conversation (transcription attached).

Because no input from the defense was permitted, the defense was unable to point out to the reviewing Town Board vital things to examine in the physical evidence, such

- as Nicole's actual conversation with Sgt. Wetzel, and

- the fact that Mr. Dowd did not "walk around unsupervised" in the booking room until after Sgt. Wetzel had likely departed because her shift had ended, and

- the misleading and perjurious testimony of both Captain Zimmerman and Chief Nulty (suborned by the outside counsel/prosecutor) with regard to the above facts—facts which are clear when the actual physical evidence is examined.

42

***HH.     The Town Board unfairly selected a politically convenient date to
conclude the disciplinary case***

It appears that the Town Board intentionally permitted adjudication of this case to drag on for over a year after the conclusion of the trial, and until after Election Day 2007, for political purposes. This is an improper basis for delaying a civil servant's case, especially when its timing meant guilt and punishment being imposed over the Christmas holiday season (just as the trial had been imposed just after the July 4th holiday. Abusive scheduling appears at work.

***II.  Town Board  members not re-elected to office (in part due to unrelated public
interest litigation of Sgt. Wetzel's attorney) should have recused themselves,
as should the entire Town Board***

As the Town Board is fully aware, Lt. Wetzel's attorney has advocated for the public interest in taxpayer litigation around the county, and one of his cases, *Morgan v. Orangetown*, involved suing the Town Board over retroactive pension benefits. For this additional reason, the timing of the Town Board's action on this disciplinary matter is quite suspect, as this matter should have been addressed long before the November 2007 election. We again presume it was delayed for political reasons.

Of greatest concern is that two board members (Morr and O'Donell) who were defeated at the polls largely as a result of *Morgan v Orangetown* and the public outcry regarding this taxpayer abuse will hold Lt. Wetzel responsible for the advocacy (in an unrelated case) of her attorney. In fact, those two board members behaved in an openly hostile towards Lieutenant Wetzel's counsel in the executive session on the night it convicted Lieutenant Wetzel. Morr, to his credit, did recuse himself from decision, and he also remained present. O'Donnell did not. He should have recused himself, particularly as both appeared openly prejudiced regarding Lieutenant Wetzel disciplinary case, which again had nothing to do with the *Morgan* litigation.

We must also point out that the remaining Town Board members (perhaps with the exception of its new members) undoubtedly have become prejudiced against Lt. Wetzel by virtue of the actions they have taken, and not taken, against her, some of which has resulted in her suing the Town. Under these circumstances, the present Town Board cannot be considered as a fair and impartial adjudicator, and so it too should recuse itself.

***JJ. The Town Board apparently permits the police chief to schedule a position of
punishment in a manner most abusive to Sergeant Wetzel***

As further indication of reprisal and an intent to inflict maximum abuse upon Sergeant Wetzel, the Town Board apparently delegated to the prosecution (Chief Nulty) control over the manner in which punishment was imposed. He then imposed the punishment in a manner most abusive towards Sergeant Wetzel.

43

A. <u>Chief Nulty delays imposing the punishment until 2008, making the punishment more financially severe than if immediately imposed</u>

The Town Board did not specify when a suspension would begin. It should have. Or it should have rules. Suspension should have begun promptly, or begun after any appeal had been concluded.

However, rather than imposing punishment immediately, Chief Nulty decided that the punishment—a 10 day suspension—would be imposed immediately after the New Year, commencing on January 2, 2008. Because a new police contract is expected, essentially Chief Nulty imposed a more costly penalty upon Sergeant Wetzel than if the penalty were imposed in 2007.

B. <u>Chief Nulty imposes punishment even before Sergeant Wetzel's 30-day time to appeal had expired</u>

Although the Town Board did not specify when imposition of punishment would occur, nor did it delegate to Chief Nulty the power to decide when punishment would be imposed. Under the Police Act, a police officer has the right to appeal to a court of law within 30 days of a finding of guilt and discipline or charges. Sergeant Wetzel reasonably presumed that she would not suffer punishment for her right to appeal had expired and the appeal adjudicated. This is an especially reasonable presumption regarding a suspension, because once time is lost via a suspension, it can never be regained. If the Town had promulgated Rules and Regulations under the Police Act, the uncertainty could have been avoided.

Without Town Board direction, Chief Nulty should not have directed imposition of punishment even before Sergeant Wetzel's 30 day time to appeal had expired.

C. <u>Chief Nulty transforms the Town Board's 10 day suspension into 12 days</u>

Although police officers in the past have been given suspensions served exclusively, or almost exclusively, on their days off, Chief Nulty has taken the extraordinary, unprecedented, and unauthorized step of breaking the "10 day suspension" directed by the Town Board into two discrete suspension periods, with two days in between. Chief informed Sergeant Wetzel that she was suspended between January 2 and January 6, 2008, and again January 9 through January 12, 2008. Less, she was ostensibly not suspended on her "regular days off", namely January 7 and January 8, 2008. This effectively created a 12 day suspension period, as Sergeant Wetzel was not suspended on days and days for which it was unlikely she would be able to work (or want to work in view of her suspension). This unprecedented two part suspension is further evidence of discriminatory animus and reprisal from Chief Nulty and the town's outside counsel.

> *REPRISAL TIP: it is best to demonstrate that the Reprisal Plan will be implemented as harshly towards the employee as possible. If men receive suspensions which overlap days off, you should ensure that a female subject of reprisal which are only on a regular days of work. This guarantees that she understands that she is the subject of reprisal.*

D.  Lt. Wetzel must turn in her badge, and weapon, to her subordinate to
commence her suspension

By requiring Lt. Wetzel to turn in her weapon and badge to her own subordinate,
the Police Chief sought to purposefully humiliate Lt. Wetzel before her own squad,
undermine her leadership, and decrease respect for her among her subordinates.  Chief
Nulty apparently has no concern whatsoever for the damage which his reprisal will do to
morale, discipline and respect for the chain of command.


## IV.  Not only Reprisal, but Innocence too

Even if Lt. Wetzel were guilty of all charges, the prosecution of this case would
nevertheless constitute unlawful retaliation.  He favored male sergeants would not have
been prosecuted under the same set of facts, especially a sergeant subsequently promoted
to lieutenant, and doing his job well.

However, the trial of this case demonstrated not only its retaliatory nature, but
also false and perjured testimony by the prosecution, and of Sergeant Wetzel's innocence.
A brief discussion is set forth below, because a complete discussion is beyond the scope
of this Reprisal Manual.  The reader is also directed to the above discussion regarding the
materially false and perjurious testimony of the prosecution's chief witness, Captain
Zimmerman.

> REPRISAL TIP:  It is best to retaliate against employee who is at least guilty
> of substantial charges, as otherwise embarrassment to the Reprising
> Official and his cronies, such as that described below, will result.

The discussion of innocence is divided into the two separate proms of the
disciplinary charges, first, the arrest of Mr. Dowd at Sunset Road in Blauvelt, and second,
the telephone calls which occurred at police headquarters in Orangeburg.

### A.  Sunset Road events of July 7, 2004

"Prosecutor" Klein and HHO Wooley attempt to convince the reader that all the
evidence which prosecutor Klein presented demonstrated that Sergeant Wetzel failed to
supervise Sergeant Flannery and his patrol squad during a time span of the few minutes
on July 7, 2004.  A few basic facts counter their arguments:

1.  It was not Sergeant Wetzel's job to supervise Sergeant Flannery or his patrol
squad.  Sergeant Flannery was the senior officer in charge that evening, and in
charge of the shift.  It is not the duty of the headquarters supervisor to also
micromanage or otherwise supervise the squad in the field.

2.  The audiotapes clearly reveal that Sergeant Wetzel had just returned to the
radio room as Mr. Dowd was being transported to the hospital.  As headquarters
supervisor, she had the mandatory duty of conducting a building check, which it
appears she had been doing.  There is absolutely no indication that she was
informed by her headquarters staff (Officers Youngman and Drain) of the events
at Sunset Road.  Moreover, there is no evidence that the offense at Sunset Road

45

involved anything more than a drunk and disorderly man, Mr. Dowd, tripping and thereby cutting his chin.

3. As to lack of communication between Sergeant Wetzel and Sergeant Flannery, the charging party (the prosecution) produced only a few self-serving audio tapes of its own selection. Sergeant Wetzel was not provided with the opportunity to examine, or produce, all audiotapes or videotapes concerning the events of that evening, which most certainly would have shown ongoing communication between her and Sergeant Flannery, and the diligent performance of police duties. By refusing Lt. Wetzel such evidence (of which the Town is an exclusive control), she was denied the basic right to defend herself.

> REPRISAL TIP: Produce only evidence supporting your desired allegation (e.g., produce telephone conversations over a 15 minute time period which to not include Sergeant Flannery, but omit to produce all the conversation which otherwise occurred) and refuse to permit discovery of any evidence which would reveal the contrary.

4. Further as to communication between Sergeant Wetzel and Flannery, Sergeant Flannery could have testified to this but for his refusal to testify at all (and his PBA counsel's direction that he not testify) based upon Chief Nulty's and Prosecutor Klein's continuing and affirmative threat of pursuing a disciplinary trial against this retired officer. The disciplinary charges contain more proven inaccuracies than they do facts. Only one police vehicle was dispatched to Sunset Road (not four). Officer Ryder, who allegedly requested an ambulance, was not even on duty that evening. Because Sergeant Flannery did not testify, and because all audiotapes of police calls were not produced, there is no reason to believe that Sergeant Flannery was not fully aware of his subordinates whereabouts (his duty, as Patrol Sergeant, not the Headquarters Sergeant's duty).

5. Finally, nothing untoward occurred as a result of any of the allegations against Sergeant Wetzel (or Sergeant Flannery). An obnoxious drunk was arrested, treated at night hospital for a laceration, and then detained at police headquarters as he sobered up. I made a few calls to his residence (unlawfully eavesdropped upon by Chief Nulty's staff), spoke obnoxiously to his girlfriend, but she continued speaking with him, apparently trying to find out why he was set, and she never hung up the phone (thus, this cannot be considered harassment). They resumed life again as domestic partners after his release from custody, and are together today. There was absolutely no credible evidence that the woman was a "victim" of "domestic violence" At the disciplinary trial, she flatly denied such, and she further testified that she did not telephone the police station to make any sort of complaint.

> *REPRISAL TIP: It is poetic to be able to accuse a female police officer of failing to aid a "victim of domestic violence." This, the female citizen was characterized as a victim of domestic violence by Chief Nulty and his prosecutor, even though she was not.*

46

### B. Police headquarters events of July 7, 2004

Prosecutor Klein and HHO Wooley attempt to convince the reader that Sergeant Wetzel failed to perform her duties and headquarters. If you basic facts counter their arguments:

1. It was a busy night at police headquarters, and Sergeant Wetzel was handling the shift alone. The squad leader, Lt. Zimmerman, was not working that evening, and there was no replacement.

2. Sergeant Wetzel was not informed of the arrival of Officer Holihan and Mr. Dowd at the station, and therefore she could not meet them "immediately upon arrival." There is no evidence to the contrary.

3. Sergeant Wetzel could use the booking room from the video monitors in the radio room, which I did, and observed nothing unusual. In addition, other officers, including a senior sergeant, were in the booking room that evening.

4. Based upon 27 years of experience, and being able to casually view of the monitors which showed nothing unusual taking place in the booking room, there was no reasonable reason for Sergeant Wetzel to anticipate that forwarding a phone call to the booking room would not result in a being answered by a police officer. The fact that it was not, and that Mr. Dowd picked up the telephone and conversed with Nicole, is hindsight. It is not a sufficient basis for disciplinary charges.

5. To any impartial witness to the testimony, the essence of the accusation against Sergeant Wetzel was that, as Captain Zimmerman repeated approximately 7 times in his testimony, and Chief Nulty repeated several times, the allegation that Sergeant Wetzel allowed us to Dowd to have free reign to roam about the booking room unsupervised. However, these accusations were shown to be completely unfounded by a careful review of the videotape. The videotape evidence reveals Mr. Dowd moving about the booking room, apparently unsupervised, and only one brief occasion, at 10:55 p.m. (as indicated by the time indicated on the videotapes) or perhaps 11:00 p.m. or thereafter (as the booking room clock indicated that it was after 11:00 pm).

6. Thus, if the incoming Sergeant had already arrived, Sergeant Wetzel may have already been handing over the shift and departing the premises (as is entirely permissible), and even if present, it was not the duty of the headquarters sergeant to continually monitor video cameras such as cameras 9 and 10 viewing the booking room. Moreover, there was no working audio piping in from the booking room, and therefore there was no way for Sergeant Wetzel to hear conversations (e.g., Mr. Dowd's conversations with his girlfriend) taking place in the booking room.

7. Almost the entire case against Sergeant Wetzel is based on the charging party's distorted view of the girlfriend's call to the police department. The transcript of that call clearly shows that the woman was not attempting to make a complaint against her boyfriend, but rather was seeking information regarding his condition. This interpretation is corroborated by the woman's (Nicole's) own

testimony at the disciplinary hearing. Thus, at most this was a difference in judgment and how to interpret the telephone call, and in retrospect, Sergeant Wetzel's interpretation of the call was the correct one.

8.    Finally, if Chief Nulty and his staff genuinely believed that Nicole was a victim of domestic violence and telephone calls constituting aggravated harassment, and it was absolute dereliction on their part not to further investigate this, and speak directly with this oppressed victim. They did not.

> *REPRISAL TIP: It would have been highly damaging to the prospects for reprisal to find out from the "victim of domestic violence", Nicole, that she was not a victim at all, and that Sergeant Wetzel's actions were perfectly appropriate.*

### C.    No "Fair and Impartial" adjudication of the facts

Prosecutor Klein, in his letter to HHO Wooley dated September 12, 2006, states that due process "does <u>not</u> require [the hearing officer] to treat the parties equally and fairly.'" *(emphasis added)* Of course, impartiality requires fair and equal treatment. Thus, Mr. Klein is once again reminding his chosen adjudicator to proceed in partisan fashion.

Mr. Wooley was hired to convict. Naturally then, he construed all factual issues, and all inferences, against Sgt. Wetzel.

Any fair and impartial adjudicator would have seen this case for what it is—pure reprisal against a competent and diligent female police supervisor. This was the Town's first disciplinary trial under the Police Act—against its first female police supervisor, for alleged lack of supervising.

> *REPRISAL TIP: If the courts do not provide supervision over outrageous abuse of this sort, the police officers whose duty it is to uphold the law will find that, as to their own employment as civil servants, lawlessness prevails, and merit protection is meaningless. This will be especially true if you are a woman or a minority.*

## V.    The Tactic of Harassing and Burdening the Employee's Lawyer, her Colleagues, and her Witnesses

Besides directing abuse at Sgt. Wetzel directly, as described above, Chief Nulty and his attorneys also did their best to dissuade others from coming to the aid of Sgt. Wetzel, through such tactics as inconveniencing and intimidating witnesses, and threatening the professional license of her attorney.

### A.    Intimidation and Inconveniencing of Police Colleagues

There is a reason that Sgt. Wetzel alone was brought to trial, namely, everyone else is justifiably intimidated—indeed, terrorize—by the Stalinist disciplinary process which the Reprising Official and his municipal have created.

After all, if a 27 year veteran with an unblemished record can face termination on charge based upon fanaticized facts (whether intentionally or incompetently

48

manufactured by the Nulty administration and the Town's outside counsel), it is obvious that no other officer has merit protection.

### 1. Sgt. (now retired) Flannery's intimidation

It appears he was deceived into believing that disciplinary testimony on behalf of Lt. Wetzel could result in a disciplinary trial against him, and that his retirement might then be placed at risk.

> REPRISAL TIP: If there is a witness who possesses exculpatory evidence regarding the target of reprisal, take measures to prevent him from providing such evidence. One effective tool is to make him a disciplinary co-respondent. And if he retires, continue baseless threats (such as by refusing to drop charges 2 years after the events, and delivering proposed settlement papers during the Wetzel trial) so as to intimidate this essential witness and his PBA attorney.

### 2. Other police officer "given a clear message"

Other police officer given the clear message "play the game our way or face trouble. One clear message was financial. As described next, when Sgt. Wetzel called a fellow police officer to testify as a witness, such officer was denied his hourly wage, even though such testimony was given in connection with his public employment.

### 3. PO (now sergeant) Holihan intimidation

Police Officer Thomas Holihan was responsible for booking Mr. Dowd, and may (the Chief would argue should) have been present when Mr. Dowd conducted his telephone conversations with Nicole. He was an experienced police officer at the time, with several years experience with the NYPD.

Officer Holihan's disciplinary charges were "settled" almost 2 year after the July 7, 2004 events, during the 2006 Wetzel disciplinary trial. He was on the sergeants' promotional list at the time. We believe his penalty was for a five day or less suspension, with the disciplinary record removed from his personnel records. (Apparently a common practice, "sterilizing" an officer's records to make them appear unblemished.) Officer Holihan subsequently was promoted to the rank of sergeant.

Also, as described below, he was paid only Sgt. Wetzel's subpoena fee, not his ordinary wage, in an abusive manner, as discussed next.

### 4. Penalty of lost pay if testifying for Lt. Wetzel

Without informing Sgt. Wetzel's attorney, Chief Nulty and his attorneys decided that any witnesses called to testify for Sgt. Wetzel would not be paid their wages for this time. This was not only unprecedented (as police officers are always paid when required to give testimony in connection with their employment—and subpoena fees tendered to them are turned over to the municipal employer), but also irrational, as this ostensibly official proceeding was conducted for ostensibly governmental reasons, and thus

49

participation was not for the personal benefit of Sgt. Wetzel or her witnesses. Thus, for
participation, they should be paid. See, *Wetzel 4*.

As a further example of the intentional abuse, Officer Holihan had be requested
by the defense to testify. The prosecution did not inform Sgt. Wetzel that Officer
Holihan was directed to the premises and essentially held incommunicado until defense
counsel inquired about whether he had arrived and was present. When placed on the
stand by the defense, Officer Holihan directed some ire at the Sgt. Wetzel's attorney for
his having been present for several hours, for which, he was told by Chief Nulty's
administration, he would not be paid.

Thus, with the ad hoc procedures concocted by Chief Nulty and his lawyers, Sgt.
Wetzel was required to pay a subpoena fees to obtain the testimony of her co-workers,
and the co-workers would be paid only such fee, and not their (considerably higher)
police officer wages. Thus, both the respondent and her witnesses are financially
punished for putting on a disciplinary defense.

> REPRISAL TIP:   *It is an effective tool of retaliation to make co-workers
> resent the subject of reprisal.*
>
> FURTHER REPRISAL TIP:   *Force the respondent employee to pay subpoena
> fees, and deprive co-worker witness of his or her ordinary wage
> entitlement. The respondent is thus forced to expend money for subpoena
> fees to put on the defense, and coworkers called as defense witnesses are
> denied their ordinary wage for assisting the subject of reprisal.*

And as mentioned in Part II, above, Sgt. Wetzel was similarly denied her ordinary
wage for attending her own disciplinary trial.

### B.  Intimidation and Inconveniencing of non-employee witnesses

Nicole is an "innocent victim" to the reprisal against Lt. Wetzel. Her boyfriend
got drunk, disorderly and injured. He called her. She called the police station to
ascertain his circumstances. Thereafter, and unbeknownst to her, she became
intentionally mischaracterized by Chief Nulty and his lawyers as a "victim of domestic
violence," and her very personal telephone conversations published "to the world" by
Chief Nulty's prosecutor in the unauthorized disciplinary trial before HHO Wooley.

HHO Wooley allowed her to be victimized by the disciplinary proceedings, by
denying her request that her personal telephone conversations be suppressed, and the
audiotape evidence of her conversations with Frank Dowd eliminated from the
proceeding. If HHO Wooley had granted this request, the only record of the
conversations would be in the minds of the few people to attended the Wetzel trial.
HHO Wooley denied this request, thereby creating a permanent public publication of the
personal conversations, some of the most obnoxious portions thereof quoted by Mr. Klein
in his publicly accessible Closing Statement.

HHO Wooley has further victimized Nicole by accusing her, in his Report, of
looking to "make a few bucks off of this." Wooley Report at p. 49. Mr. Wooley failed
to mention that Nicole commenced a federal action under the Federal Wiretap Act (now

being handled by attorney William Gerard), and that Mr. Wooley is a personally named defendant.

At the disciplinary trial, Nicole, with infant child, made repeated visits to the hearing location at Town Hall to give testimony, but was repeatedly turned away by HHO Wooley, for unjustified reasons.

She had to defend herself, and it appears her personal integrity, against the questioning of Mr. Klein—questioning which appeared intended to seek to embarrass Nicole, and which certainly was embarrassing for her domestic partner, Mr. Dowd. Thus, these citizens became victim of Chief Nulty's Reprisal Plan.

> *REPRISAL TIP: The fact that innocent citizens in the community may become victim of a Reprisal Plan should be no deterrence to undertaking the reprisal.*

### C. The Town and its Police Chief maliciously seek to burden, harass, intimidate and disparage Sgt. Wetzel's counsel, by lodging a professional grievance

During the disciplinary trial, the HHO and the outside counsel Prosecutor saw the opportunity to further harass the defense when the defense obtained the cooperation of another victim of the Town's illegality, Mr. Dowd's girlfriend Nicole.

Keane & Beane's Lance Klein, accused Lt. Wetzel's attorney of professional misconduct and lodged a professional grievance alleged unethical conduct against him. They also billed the Town over $3,000 for preparing this grievance—maliciously intended to burden and harass him for representing his client, and to disparage his good name and reputation. Mr. Klein announced the filing of this grievance publicly, and certainly informed the Police Chief and the Town Board. Such public disclosure by Mr. Klein was improper.

In January 2008, attorney Diederich received notice from the Committee on Professional Standards that the professional grievance had been dismissed. Unlike Keane & Beane, he will not seek payment from his client for his client the time and effort necessary to defend against the malicious and unfounded grievance.

## VI. The Disparate imposition of punishment—men who shoot colleagues receive a slap on wrist, while the Chief asks for 62 days forfeiture of salary against his female lieutenant, merely for opposing his illegality

In this disciplinary case, the HHO was the hanging judge, and gave recommended the absolute maximum punishment short of termination (which even Chief Nulty's counsel did not dare request). With the July 4, 2004 charges still looming over her head, Chief Nulty can draw such blood at the next go around, if he decides he wants the ultimate reprisal of termination of public employment.

It is interesting to contrast Chief Nulty's (and his attorneys') concept of appropriate punishment against a female who opposes unlawful discrimination with the punishments meted out for such things as lying to superiors or accidentally shooting or almost shooting fellow officers.

REPRISAL TIP: It is absolutely vital that the subject of reprisal recognize that she will be treated most harshly absent submission to the Reprising Official's will, and that she is powerless to resist. Make clear that you can fire her, and that her only remedy then will be seeking judicial relief which may take years and years, and be resolved only after her police career has been long since destroyed.

ADDITIONAL REPRISAL TIP: Make sure all subordinates are aware of the Reprising Officials complete and absolute power of reprisal. Inform them that there is absolutely nothing they can do to counter this absolute power, and that he can terminate their jobs, and destroy their civil service careers, at will and without effective recourse. Tell them that the Reprising Official will be long retired, and they will be long in a non-police career, before even the possibility of a jury trial.

### A. *Chief Nulty argues for a penalty amounting to forfeiture of 3 months' pay*

In the "Closing Statement" submitted by Chief Nulty's attorneys, he states that forfeiture of 62 days of pay is the appropriate penalty, "[g]iven the gravity of the offenses, as well as Respondent's refusal to acknowledge that she did anything wrong." Under the PBA contract, such a penalty would equate to being punished approximately 3 months work without pay. Chief Nulty did not seek termination only because, as stated in the Closing Statement, "Since … Respondent has no prior disciplinary record, it is appropriate that the Chief is seeking forfeiture of salary rather than termination."

### B. *Chief Nulty allows "slaps on the wrist" for his favored men regarding July 4 and July 7, 2004 events*

In stark contrast to the exceedingly harsh penalty sought by Chief Nulty against Lt. Wetzel is the punishment which he has meted out to his favored men, even those committing serious infractions.

### D. *Making a "mountain made out of a mole hill"*

In seeking formal discipline for what was, a most, minor mistakes in judgment if mistakes at all, the Police Chief and his counsel have intentionally created the "proverbial mountain over a mole hill" for ulterior motives of discrimination and reprisal. There was no remedial or corrective goal intended. Only reprisal and harassment. This was employee management by tyranny.

The Police Chief's wrongful goals also provided the opportunity for the financial enrichment of the Town's outside counsel, who were more than happy to oblige, and to select a lawyer friend (the hearing officer) who could assist in this charade. These lawyers had their own obvious self interests—Mr. Klein in "winning" both the disciplinary case and the federal litigations, and Mr. Wooley in assuring himself future employment with this Town or otherwise at the recommendation of Mr. Klein and his firm.

52

## VII. Denying the civil servant her right to assert the defense of reprisal intentionally denies her State civil service law protection, further undermining merit protection

The civil service is designed to protect good civil servants. In return for receiving less compensation than that provided in the private sector, they are supposed to receive job security for a job properly done.

The New York Legislature has recognized the potential for abuse against civil servants in the form of retaliatory disciplinary action. Consequently, it enacted Civil Service Law § 76-b to provide protection against reprisal.

Here, the HHO denied Sgt. Wetzel the right to defend upon such grounds. Astonishingly, he viewed such defense as procedurally improper because, in his view, the Town had not been provided with adequate notice of the claim of retaliation. Of course, Sgt. Wetzel's initial federal lawsuit claimed retaliation, as did her amended lawsuit, as did her second federal lawsuit seeking a TRO, as did her charges of discrimination and reprisal made to the EEOC, as did her PBA attorney's formal answer to the disciplinary charges which included the explicit Affirmative Defense that the disciplinary charges were the result of "selective enforcement" by the police chief. Thus, for HHO Wooley to disallow the introduction of evidence on the defense of reprisal was patently absurd. It further evidences his role as a henchman.

> REPRISAL TIP: It is important to hinder any attempts by the subject of reprisal to prove that reprisal is taking place.

## VIII. Reprisal beyond the Wetzel case

### A. Lt. Wetzel's uniquely qualities will be reprisal easier against less exemplary civil servants

Lt. Wetzel is a police a lieutenant with superior supervisory skill and, it appears, the respect of her subordinates. Thus, the Reprising Official must be more creative in retaliating against someone with her qualities than an "ordinary" employee.

Moreover, because of her acknowledged competent work as a lieutenant, and ability to make the department look good for Chief Nulty, it does not appear that he wishes her employment terminated. He merely wishes her to be "in her place," uncritical of his gender bias and the Town's political cronyism.

### B. Reprisal against less exemplary civil servants is easier

As to less exemplary employees, the Reprisal Plan can be much more direct, and vigorous. For example, if Sgt Wetzel were a rookie, rather than an experienced cop, it is apparent from Henchman hearing officer Wooley's Report and Recommendation that he would have recommended termination of employment. The Henchman hearing officer would (and did) refuse to consider that the male arresting officer who was "booking" Mr. Dowd received only a slap on the wrist, or the selective inclusion of evidence by the

police chief's henchmen designed to paint one picture, while omitting (and perhaps destroying) any and all exculpatory evidence.

      With the Henchman hearing officer findings and recommendations, and the inability to defend himself or herself, a rookie cop, for example, could easily be fired as part of a Reprisal Plan, with little or no remedy available to rectify the situation. A reviewing court would ordinarily look only at the Henchman hearing officer's determination of facts, especially on matters of credibility. It will not retry the case. The reprisal will then succeed.

## IX.    *Conclusion*

      Hopefully, the reader has found this to be an informative and interesting guide to the many ways in which civil servants can be abused and retaliated against. Whether this guide should be used depends on whether the courts will provide civil servants with the legal protection they are entitled to, or whether the courts will allow local government free reign to ignore the law, including fundamental constitutional rights. As the attorney for the victim of reprisal, Lt. Wetzel, it is my hope that this Manual can be used by advocates for upstanding civil servants to oppose abuses such as those described herein.

      Draft document prepared by the
Law Office of Michael Diederich, Jr.

54

Attachment "1" –
Nicole Colandrea / Lorraine Wetzel telephone conversation of July 7, 2004

**Wetzel:**        Orangetown Police

**Nicole:**        Hi... um... My name is Nicole my boyfriend was arrested earlier this evening...um... he just call... um he was arrested and they told me that they would let me know if he was released because he was very very drunk and he is very abusive when he is drunk. So I just received...um... one, two three phone calls from him in a row

**Wetzel:**        Well, who is your boyfriend

**Nicole:**        Frank Dowd

**Wetzel:**        You received three phone calls from him?

**Nicole:**        Yes just now from the Orangetown Police Department cause I have caller ID...

**Wetzel:**        Yes

**Nicole:** ...and he keeps calling and I'm wondering did they let him out?

**Wetzel:**        No, he is down in our holding cell

**Nicole:**        Oh he is in he holding cell, very good. Ok so he'll be there all evening?

**Wetzel:**        That I can't tell you

**Nicole:**        Oh alright, cause you know, like, I'm not going to be able to sleep cause he's still very drunk, cause when he's not drunk he does not call me names, he's calling me three times in a  row still calling me abusive names and...

**Wetzel:**        Do you want to sign a charge?

**Nicole:**  Well I'm just trying to figure out if, you know, he's out, if he's...

**Wetzel:**        He's in the holding cell

**Nicole:** Yeah

**Wetzel:**        Let me put you down to the arresting officer

**Nicole:**   Alright, thank you

**Wetzel:**        Ok

55

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

LORRAINE WETZEL,

Plaintiff,

-against-

TOWN OF ORANGETOWN, et al

Defendants.

-----------------------------------------------------------------

COMPLAINT

("*Wetzel 6*")

08 CIV 0196

"*ECF Case*"

MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff*    (*MD 2097*)
361 Route 210
Stony Point, N.Y. 10980
845-942-0795
Mike@DiederichLaw.com

To: Teresa Kenny, Town Attorney
Town of Orangetown
26 Orangeburg Road
Orangeburg, NY 10962
845-359-5100

**EXHIBIT C**

rd of trustees may make a
ication, provided the member
ual number of days' absentee
etermination of the board as
r a member is entitled during
review by certiorari.

such police departments shall
ess than fourteen consecutive
compensation as fixed by or
lic emergency. In the event
the vacation or portion of a
withheld, upon the cessation
ll then receive with pay the
eld.

cemen. The policemen so
und be subject to the duties
i in serving process in any
icemen shall have power to
by justices of the peace of

f policemen. The board of
alary of each village police
by such officer belong to the
to the village, except those
cocess, civil or criminal, out-
village, and for the execu-
age while not on duty as a
all not receive any present
us fees or salary, except by
very village policeman shall
l all services performed by
e; and shall present claims
hich chargeable. All orders
those hereinabove specified,
asurer, who shall collect the

provisions of any general
operation of village police
provisions of this act shall
ed for in this act,
ediately.

# CHAPTER 525

AN ACT to amend the civil service law, in relation to the reinstatement of employees from a preferred list

Became a law May 11, 1936, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Chapter fifteen of the laws of nineteen hundred nine, entitled "An act in relation to the civil service of the state of New York and the civil divisions and cities thereof, constituting chapter seven of the consolidated laws," is hereby amended by inserting therein a new section, to be section thirty-one-b, to read as follows: <span>Ch. 15 amended.</span> <span>New § 31-b added.</span>

§ 31-b. **Reinstatement of persons on preferred list.** An employee reinstated from a preferred list to same or to a similar position shall receive at least the same salary such employee was receiving at time of separation from the service.

§ 2. This act shall take effect immediately.

# CHAPTER 526

AN ACT providing for the establishment, organization and operation of police departments in towns of the first class in Rockland county

Became a law May 11, 1936, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. **Establishment, organization and operation of police departments in towns of the first class in the county of Rockland.** Notwithstanding any other provisions of law, the establishment, organization and operation and all matters concerning police or police departments in all towns of the first class in the county of Rockland shall be governed by the provisions of this act. The employment of such policemen and special policemen shall continue to be in accordance with the rules of the state civil service commission as heretofore extended to the employment of policemen in such towns of Rockland county.

§ 2. **Establishment of town police departments.** A. The town board of any town of the first class in Rockland county which now has a police force or police department, or employs police officers or policemen or which hereafter employs such policemen or police officers, shall establish a police department and appoint a chief of police, and such lieutenants, sergeants and patrolmen as may be needed and fix their compensation, except that it shall not be mandatory for a town which employs special policemen only for temporary periods of time in accordance with this act to establish a police department. The compensation of such policemen shall be a town

charge. The town board may, at its option, determine that the town shall pay all or part of the cost of the uniforms and necessary equipment of its policemen. When appointed, such policemen shall be peace officers and shall have all the powers and be subject to all the duties and liabilities of a constable of such town in all criminal actions and proceedings and special proceedings of a criminal nature.

Town policemen who were serving as such in all towns of the first class in the county of Rockland on May sixteenth, nineteen hundred thirty-five or who have been appointed to permanent positions pursuant to law since such date, and who are lawfully entitled to continue in such positions at the time this act takes effect, shall continue to be members of the town police department without further civil service examination regardless of their age and shall retain their present lawful rank. All appointments made hereafter to any such police department shall be made in accordance with the provisions of section three of this act.

B. The town board of a town in which such a police department has been established at any time by resolution may establish a board of police commissioners for such town and appoint one or three police commissioners who shall at the time of their appointment and throughout their term of office be owners of record of real property in and electors of such town, and who shall serve without compensation, and at the pleasure of the town board. If the town board shall appoint only one such police commissioner, it shall in addition designate two members of the town board to serve as members of such police commission. When either of such boards of police commissioners shall have been established, such board of police commissioners shall have and exercise all the powers relative to police matters conferred upon the town board pursuant to this article. The town board may by resolution at any time abolish such police commission and thereupon the town board only shall exercise the powers conferred upon it by this article.

§ 3. Qualifications. No person shall be eligible to appointment or reappointment to such police department, nor continue as a member thereof, who shall not be a citizen of the United States, who has been convicted of a felony, who shall be unable to read and write understandingly the English language or who shall not have resided within the state of New York one year and in any town or village in Rockland county for six months next preceding his appointment. No person shall be appointed a member of such police force who is over the age of thirty-five years; provided, however, that a person who is serving as a town policeman who is over the age of thirty-five years and who possesses the above qualifications shall be eligible for appointment in such department at the time of its organization only. No person shall be appointed a member of such police force unless he shall have passed an examination held by the state civil service department, and unless at the time of his appointment his name shall be on the eligible list of the state civil service department.

§ 4. Promotion. I
police department sh
of seniority, meritori
shown by competitiv
ducted by the state, c
personal bravery, ma
service in such exami
plete service record of
accordance with the r
department and shall
promotion to the state
examination. Notwith
to the contrary, such
examinations held by
of the number of can
the number of candid
action of the town bo
dates are certified as
or names shall constitu
In no case shall the
offices be for longer p
for the office of chief,
geant or three years a
year as sergeant or tw
geant, one year as pat
such promotion exami
on the police force of

§ 5. Transfers. Tr
to another town or vi
be made upon the mut
departments affected.
or has been transferred
ment to which he is tra
or in the department
as though the full tim
which he has been trans
pensions and general a

§ 6. Administration.
enforce rules, orders an
administration, and dis
the members thereof.
ments thereto shall be i
ous place in the police
ment shall receive a co

§ 7. Discipline and
law, a member of such
unless suspended or dis
The town board shall h
make rules and regulat
gation and determinati

s option, determine that the
t of the uniforms and neces-
ien appointed, such policemen
e all the powers and be sub-
of a constable of such town
ings and special proceedings

: as such in all towns of the
l on May sixteenth, nineteen
appointed to permanent posi-
and who are lawfully entitled
ime this act takes effect, shall
n police department without
ardless of their age and shall
appointments made hereafter
be made in accordance with
us act.

hich such a police department
y resolution may establish a
such town and appoint one
shall at the time of their
term of office be owners of
ctors of such town, and who
d at the pleasure of the town
oint only one such police com-
iate two members of the town
ilice commission. When either
rs shall have been established,
shall have and exercise all the
nferred upon the town board
oard may by resolution at any
and thereupon the town board
rred upon it by this article.
iall be eligible to appointment
epartment, nor continue as a
a citizen of the United States,
who shall be unable to read
lish language or who shall not
w York one year and in any
for six months next preceding
e appointed a member of such
of thirty-five years; provided,
ring as a town policeman who
: and who possesses the above
pointment in such department.
No person shall be appointed
iless he shall have passed an
service department, and unless
name shall be on the eligible
nent.

§ 4. **Promotion.** Promotions of officers and members of such
police department shall be made by the town board on the basis
of seniority, meritorious police service and superior capacity as
shown by competitive examination, such examination to be con-
ducted by the state civil service department. Individual acts of
personal bravery may be treated as an element of meritorious
service in such examination. The town board shall keep a com-
plete service record of each member of such police department in
accordance with the rules and regulations of the state civil service
department and shall transmit the record of each candidate for
promotion to the state civil service department in advance of such
examination. Notwithstanding any other special or general laws
to the contrary, such promotion examination shall be competitive
examinations held by the state civil service commission regardless
of the number of candidates eligible for such promotion, and if
the number of candidates is restricted to less than four by the
action of the town board, and if the names of one or more candi-
dates are certified as having passed such examination, such name
or names shall constitute an eligible list under the civil service law.
In no case shall the requirements for service for the respective
offices be for longer periods than the following periods of time:
for the office of chief, one year as lieutenant or two years as ser-
geant or three years as patrolman; for the office of lieutenant, one
year as sergeant or two years as patrolman; for the office of ser-
geant, one year as patrolman. No person shall be eligible to take
such promotion examination unless he is serving as a policeman
on the police force of a town or village in Rockland county.

§ 5. **Transfers.** Transfers from one town police department
to another town or village police department in the county may
be made upon the mutual consent of the appointing officers of the
departments affected. Any member of such police force who is
or has been transferred shall receive credit with the town depart-
ment to which he is transferred for time served on the police force
or, in the department, of any village or town within the county,
as though the full time had been served with the department to
which he has been transferred, for purposes of seniority, promotion,
pensions and general administration.

§ 6. **Administration.** The town board may make, adopt and
enforce rules, orders and regulations for the government, discipline,
administration and disposition of the police department and of
the members thereof. Such rules and regulations and all amend-
ments thereto shall be in writing and shall be posted in a conspic-
uous place in the police headquarters. Each member of the depart-
ment shall receive a copy thereof and of all amendments thereto.

§ 7. **Discipline and charges.** Except as otherwise provided by
law, a member of such police department shall continue in office
unless suspended or dismissed in the manner hereinafter provided.
The town board shall have the power and authority to adopt and
make rules and regulations for the examination, hearing, investi-
gation and determination of charges, made or preferred against

1264                    LAWS OF NEW YORK, 1936          [CHAP.

any member or members of such police department. Except as otherwise provided by law, no member or members of such police department shall be fined, reprimanded, removed or dismissed until written charges shall have been examined, heard and investigated in such manner or by such procedure, practice, examination and investigation as the board, by rules and regulations from time to time, may prescribe. Such charges shall not be brought more than sixty days after the time when the facts upon which such charges are based are known to the town board. Any member of such police department at the time of the hearing or trial of such charges shall have the right to a public hearing and trial and to be represented by counsel; no person who shall have preferred such charges or any part of the same shall sit as judge upon such hearing or trial. Witnesses upon the trial of such charges shall testify thereto under oath. No member of such department who shall have been dismissed shall be reinstated unless he shall, within twelve months of his dismissal, file with such board a written application for a rehearing of the charges upon which he was dismissed. Such board shall have the power to rehear such charges and, in its discretion, may reinstate a member of the force after he has filed such written application therefor.

Any member of such department found guilty upon charges, after five days' notice and an opportunity to be heard in his defense, of neglect or dereliction in the performance of official duty, or of violation of rules or regulations or disobedience, or of incompetency to perform official duty, or of an act of delinquency seriously affecting his general character or fitness for office, may be punished by the town board having jurisdiction by reprimand, by forfeiture and withholding of salary or compensation for a specified time not exceeding twenty days, by extra tours or hours of duty during a specified period not exceeding twenty days, by suspension from duty for a specified time not exceeding twenty days and the withholding of salary or compensation during such suspension, or by dismissal from the department. Such board shall have the power to suspend, without pay, pending the trial of charges, any member of such police department. If any member of such police department so suspended shall not be convicted of the charges so preferred, he shall be entitled to full pay from the date of suspension. The conviction of a member of such police department by the town board shall be subject to review by certiorari to the supreme court in the judicial district in which such town is located, provided that application therefor be made within thirty days from the determination of such conviction by the town board.

§ 8. **Effect of resignation.** Any member of such department who shall resign shall not be reinstated by such board unless he shall make written application, within twelve months of his resignation, for reappointment as a member of such department.

§ 9. **Absentee leave.** Every member of such police department shall be entitled, in addition to any vacation or absentee leave now

526]              LAWS

prescribed by law, to one ing chief of the police de the name and shield num and the hours worked b The town board may mak hours of vacation, provid year the actual number entitled. The town board days of rest hereinbefore pay. Whenever the town attend police school, such of duty and when so atten reimbursement for actual full pay may be granted been incurred without the

§ 10. **Special policemen** whether there be a police may employ temporary p town board may determin officers shall be known as the power and authority laws of the state and su with law, as shall be con They shall be subject to the town board and to su board may prescribe, not policemen shall serve at t town board shall fix their forms and equipment ther be appointed nor any exp said town board shall have previously adopted, and i of the budget appropriati not be eligible to appoint examination held by the st their names shall be on th the time of their appointn possess the qualifications s

§ 11. **Vacations.** Every shall be allowed an annual secutive days without dim fixed by or pursuant to la In the event of a public e portion of a vacation of a the cessation of such emer with pay the number of da

§ 12. **General laws appl** law governing the organi departments not inconsiste apply in all cases not specif

§ 13. This act shall take

Case 7:08-cv-00196-SCR    Document 6-6    Filed 04/04/2008    Page 6 of 18

lice department. Except as
ᵣ or members of such police
ᵈded, removed or dismissed
examined, heard and investi-
ᵉedure, practice, examination
ᵉs and regulations from time
s shall not be brought more
the facts upon which such
ᵒwn board. Any member of
the hearing or trial of such
ᵉ hearing and trial and to be
ᵒ shall have preferred such
sit as judge upon such hear-
of such charges shall testify
such department who shall
ᵗed unless he shall, within
ᵗ such board a written appli-
pon which he was dismissed.
ᵉhear such charges and, in
r of the force after he has

found guilty upon charges,
ᵣtunity to be heard in his
the performance of official
ᵗtions or disobedience, or of
or of an act of delinquency
ᵃcter or fitness for office,
ᵃving jurisdiction, by repri-
of salary or compensation
ᵗy days, by extra tours or
not exceeding twenty days,
ᵗ time not exceeding twenty
compensation during such
ᵖartment. Such board shall
pay, pending the trial of
ᵖartment. If any member
ᵈ shall not be convicted of
ᵗitled to full pay from the
ᵉ a member of such police
ᵉ subject to review by cer-
ᵗicial district in which such
ᵒn therefor be made within
ᵒf such conviction by the

ember of such department
ᵈ by such board unless he
ᵛelve months of his resigna-
f such department.

of such police department
ᵃtion or absentee leave now

prescribed by law, to one day of rest in seven. The chief or act-
ing chief of the police department shall keep a time book showing
the name and shield number of each member of the department
and the hours worked by each of such policemen in each day.
The town board may make a variation from the above prescribed
hours of vacation, provided the member shall receive during each
year the actual number of days absentee leave to which he is
entitled. The town board, at its option, may, in addition to the
days of rest hereinbefore provided, grant an annual vacation with
pay. Whenever the town board shall designate any policeman to
attend police school, such attendance shall be deemed in the course
of duty and when so attending he shall receive his usual pay and
reimbursement for actual and necessary expenses. Sick leave with
full pay may be granted whenever such sickness or disability has
been incurred without the delinquency of the policeman.

§ 10. Special policemen. The town board of any such town,
whether there be a police department in and for such town or not,
may employ temporary police officers from time to time as the
town board may determine their services necessary. Such police
officers shall be known as "special policemen" and shall have all
the power and authority conferred upon constables by the general
laws of the state and such additional powers, not inconsistent
with law, as shall be conferred upon them by the town board.
They shall be subject to the general authority and direction of
the town board and to such orders and regulations as the town
board may prescribe, not inconsistent with law. Such special
policemen shall serve at the pleasure of the town board and the
town board shall fix their compensation and may purchase uni-
forms and equipment therefor but no such special policemen shall
be appointed nor any expense incurred by reason thereof unless
said town board shall have provided therefor in its annual budget,
previously adopted, and no expenditure shall be made in excess
of the budget appropriation therefor. Such special police shall
not be eligible to appointment unless they shall have passed an
examination held by the state civil service commission, and unless
their names shall be on the eligible list of the said commission at
the time of their appointment, and unless such special policemen
possess the qualifications set forth in section three of this act.

§ 11. Vacations. Every member of such police department
shall be allowed an annual vacation of not less than fourteen con-
secutive days without diminution of salary or compensation as
fixed by or pursuant to law, except in case of public emergency.
In the event of a public emergency during which the vacation or
portion of a vacation of a member shall have been withheld, upon
the cessation of such emergency, such member shall then receive
with pay the number of days of such vacation withheld.

§ 12. General laws applicable. The provisions of any general
law governing the organization and operation of town police
departments not inconsistent with the provisions of this act shall
apply in all cases not specifically provided for in this act.

§ 13. This act shall take effect immediately.

Case 7:08-cv-00196-SCR    Document 6-6    Filed 04/04/2008    Page 7 of 18

# CHAPTER 701

AN ACT to amend chapter five hundred and twenty-six of the laws of nineteen hundred thirty-six, entitled "An act for the establishment, organization and operation of police departments in towns of the first class in Rockland county," relating to promotions

Became a law April 23, 1941, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

L. 1936,
ch. 526,
§ 4,
amended.

Section 1. Section four of chapter five hundred and twenty-six of the laws of nineteen hundred thirty-six, entitled "An act for the establishment, organization and operation of police departments in towns of the first class in Rockland county," is hereby amended to read as follows:

§ 4. Promotion. Promotions of officers and members of such police department shall be made,[1] and all vacancies above the grade of patrolmen filled whenever possible by promotion from among persons holding positions in a lower grade in the department in which the vacancy exists,[2] by the town board on the basis of seniority, meritorious police service and superior capacity as shown by competitive examination, such examination to be conducted by the state civil service department. Individual acts of personal bravery may be treated as an element of meritorious service in such examination. The town board shall keep a complete service record of each member of such police department in accordance with the rules and regulations of the state civil service department, and shall transmit the record of each candidate for promotion to the state civil service department in advance of such examination. Notwithstanding any other special or general laws to the contrary, such promotion examination shall be competitive examinations held by the state civil service commission regardless of the number of candidates eligible for such promotion, and if the number of candidates, is restricted to less than four by the action of the town board, and if the names of one or more candidates are certified as having passed such examination, such name or names shall constitute an eligible list under the civil service law. In no case shall the requirements for service for the respective offices be for longer periods than the following periods of time: for the office of chief, one year as lieutenant or two years as sergeant or three years as patrolman; for the office of lieutenant, one year as sergeant or two years as patrolman; for the office of sergeant, one year as patrolman. No person shall be eligible to take such promotion examination unless he is serving as a policeman on the police force of a town or village in Rockland county.

§ 2. This act shall take effect immediately.

[1-2] Words from "and all vacancies" through words "the vacancy exists" new matter inserted.

---

# CHAPTE[

AN ACT creating for certain purposes a... in the town of East Greenbush in the... tained within the boundaries of com... such town prior to its consolidation in... the transfer and conveyance to such... of such common school district not ... solidation, and providing for the gov... provement district

Became a law April 23, 1941, with the... three-fifths bei...

*The People of the State of New York,...*
*do enact as follows:*

Section 1. All that territory in... the county of Rensselaer which was... of and constituted common school ... at the time, in or about the month ... eight, of the organization and est... trict number one of the towns of E... Sand Lake and North Greenbush, ... Columbia county, within which ... mon school district was consoli... created and established as an im... for the purpose of keeping, ma... for the benefit of the residents of... property and other property of s... since sold or otherwise disposed ... to its consolidation within such... vided the transfer and conveyan... in accordance with the provisions...

§ 2. Within ninety days afte... of education of central school c... of East Greenbush, Nassau, S... Greenbush, Rensselaer county, ... shall submit for determination to... district number two in the town... to whether or not the school l... property of such common scho... time of the creation of such ce... sold or otherwise disposed of pu... and conveyed by such board o... ment district created by this ac... at the time of and in connectio... central school district or it may... of such voters which such boar... for such purpose, and all the pr... ing to such a meeting and the s... the sale or disposal of such pro... of such question. If a major...

Case 7:08-cv-00196-SCR   Document 6-6   Filed 04/04/2008   Page 8 of 18

detective duty shall be counted for all purposes as if served in his rank or grade in the uniformed force.

New § 17, added.

§ 17. **Reservation.** Nothing in this chapter contained shall deprive any person or persons of any of the benefits of any other provisions of law unless the same shall be inconsistent with the provisions of the chapter, and no other provision of law which may be inconsistent shall prevent the operation of the provisions of this chapter.

§ 15, repealed.

§ 2. Section fifteen of such chapter is hereby **repealed.**

§ 3. This act shall take effect immediately.

# CHAPTER 941

AN ACT to amend chapter five hundred twenty-six of the laws of nineteen hundred thirty-six, entitled "An act for the establishment, organization and operation of police departments in towns of the first class in Rockland county," in relation to grades of policemen and detective service, and repealing section twelve thereof, relating to applicability of general laws to such chapter

Became a law April 22, 1946, with the approval of the Governor. Passed, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

L. 1936, ch. 526, new § 12, added.

Section 1. Chapter five hundred twenty-six of the laws of nineteen hundred thirty-six, entitled "An act for the establishment, organization and operation of police departments in towns of the first class in Rockland county," is hereby amended by inserting therein three new sections, to be sections twelve, thirteen and fourteen, to read, respectively, as follows:

§ 12. **Grades of policemen.** The annual salary and compensation of the members of such police department shall be uniform in accordance with their rank and grade except as provided by section thirteen of this chapter and a copy of such salary scale and any changes made therein shall be filed with the state civil service commission. All patrolmen who shall have served four years or upwards on such police force shall be patrolmen of the first grade. All patrolmen who shall have served for less than four years and more than three years shall be patrolmen of the second grade. All patrolmen who shall have served for less than three years and more than two years shall be patrolmen of the third grade. All patrolmen who shall have served for less than two years and more than one year shall be patrolmen of the fourth grade. All patrolmen who shall have served for less than one year shall be patrolmen of the fifth grade. Whenever any patrolman of the fifth grade shall have served therein for one year, he shall be advanced to the fourth grade and whenever any patrolman of the fourth grade shall have served therein for one year, he shall be advanced to the third grade and whenever any patrolman of the third grade shall have served therein for one year, he shall be advanced to the second grade and

whenever any patrolman of the secor therein for one year, he shall be advance

§ 13. **Detective service.** The chief approval of the town board and board any, may from time to time, detail to d bers of the force as he may deem nec efficient and he may at any time revoke who may be so assigned by the chief of be paid a salary in excess of that paid grade. Any policeman detailed to dete shall retain his rank and shall be eligi as if serving in the uniformed force an serves in detective duty shall be counted in his rank or grade in the uniformed f

§ 14. **Reservation.** Nothing in thi deprive any person or persons of any provisions of law unless the same sha provisions of this chapter, and no other be inconsistent shall prevent the operat chapter.

§ 2. Section twelve of such chapter

§ 3. This act shall take effect immed

# CHAPTER 9

AN ACT to amend the code of criminal pr

Became a law April 22, 1946, with the app three-fifths being p

*The People of the State of New York, repr do enact as follows:*

Section 1. Section four hundred fift inal procedure is hereby amended to rea

§ 458. **Case, when necessary, how** a party intends to appeal from a judgm of an issue of fact he must, except a law or by this section, make a case a settled and signed, by the judge or j the action was tried, as prescribed in or, in case of the death or disability in such manner as the appellate cou contain so much of the evidence, an the trial, as is material to the quest and also the exceptions taken by the and in a case where a special que jury, such exceptions taken by any p be necessary to determine whether th

*This amendment is recommended by the Ju see the Twelfth Annual Report of the Judicial
[1] Word "general" omitted here and through
[2] Word "civil" new matter inserted.

all purposes as if served in his

this chapter contained shall
ay of the benefits of any other
shall be inconsistent with the
er provision of law which may
operation of the provisions of

ter is hereby **repealed.**
mediately.

## R 941

twenty-six of the laws of nineteen
for the establishment, organization
n towns of the first-class in Rock-
policemen and detective service, and
ing to applicability of general laws

approval of the Governor. Passed,
ng present

*represented in Senate and Assembly,*

twenty-six of the laws of nine-
"An act for the establishment,
ice departments in towns of the
s hereby amended by inserting
e sections twelve, thirteen and
follows:

e annual salary and compensa-
department shall be uniform in
de except as provided by section
by of such salary scale and any
l with the state civil service com-
lave served four years or upwards
rolmen of the first grade. All
or less than four years and more
l of the second grade. All patrol-
; than three years and more than
third grade. All patrolmen who
o years and more than one year
grade. All patrolmen who shall
r shall be patrolmen of the fifth
n of the fifth grade shall have
shall be advanced to the fourth
an of the fourth grade shall have
ll be advanced to the third grade
the third grade shall have served
advanced to the second grade and

whenever any patrolman of the second grade shall have served
therein for one year, he shall be advanced to the first grade.

§ 13. **Detective service.** The chief of police after consent and
approval of the town board and board of police commissioners, if
any, may from time to time, detail to detective duty as many mem-
bers of the force as he may deem necessary, to make the service
efficient and he may at any time revoke such detail. Any policeman
who may be so assigned by the chief of police to detective duty may
be paid a salary in excess of that paid a member of his rank and
grade. Any policeman detailed to detective duty, while so detailed,
shall retain his rank and shall be eligible for promotion, the same
as if serving in the uniformed force and the time during which he
serves in detective duty shall be counted for all purposes as if served
in his rank or grade in the uniformed force.

§ 14. **Reservation.** Nothing in this chapter contained shall
deprive any person or persons of any of the benefits of any other
provisions of law unless the same shall be inconsistent with the
provisions of this chapter, and no other provision of law which may
be inconsistent shall prevent the operation of the provisions of this
chapter.

§ 2. Section twelve of such chapter is hereby **repealed.**

§ 3. This act shall take effect immediately.

New § 13, added.

New § 14, added.

§ 12, repealed.

## CHAPTER 942*

AN ACT to amend the code of criminal procedure, in relation to appeals

Became a law April 22, 1946, with the approval of the Governor. Passed,
three-fifths being present

*The People of the State of New York, represented in Senate and Assembly,
do enact as follows:*

Section 1. Section four hundred fifty-eight of the code of crim-
inal procedure is hereby amended to read as follows:

§ 458. **Case, when necessary, how made and settled.** When
a party intends to appeal from a judgment rendered after the trial
of an issue of fact he must, except as otherwise prescribed by
law or by this section, make a case and procure the same to be
settled and signed, by the judge or justice, by or before whom
the action was tried, as prescribed in the¹ rules of civil² practice;
or, in case of the death or disability of such judge or justice,
in such manner as the appellate court directs. The case must
contain so much of the evidence, and other proceedings, upon
the trial, as is material to the questions to be raised thereby,
and also the exceptions taken by the parties making the case;
and in a case where a special question is submitted to the
jury, such exceptions taken by any party to the action as shall
be necessary to determine whether there should be a new trial.

Criminal Code, § 458, amended.

---

* This amendment is recommended by the Judicial Council. For explanation
see the Twelfth Annual Report of the Judicial Council.
¹ Word "general" omitted here and throughout chapter.
² Word "civil" new matter inserted.

charter'' means a charter which supersedes
[charter] in its entirety or in the manner
[i]n three *or subdivision four* of section twenty;

[t]ree of section twenty of such law is hereby
[f]ollows:

[com]mission of a city created pursuant to this
[is] a draft of a new charter of such city. The
[?] contain such provisions or effect such results
[eff]ected by local law under the provisions of
[an]y contain any provisions of the existing
[d]eemed necessary to make a complete charter
[?] changes in the headings and in the number-
[?]s, chapters, sections and subdivisions wherein
[?]nd in the existing charter as may be deemed
[?]te and coordinate them with the other pro-
[?] charter, and with such changes in the text
[m]ay be deemed desirable to clarify the mean-
[?], and to vest in any of the officers of the
[?]e proposed charter any power or authority
[?]sions. Such new charter shall be completed
[of] the city clerk in time for submission to
[t]han the second general election after the
[?]ers of the charter commission are elected
[t]e commission are chosen by election, after
[t]he commission is authorized. The local
[?] provide for such publication or other
[t]he provisions of the proposed charter as
[?]d for its submission to the electors of the
[?]ction or a general election held not earlier
[t]he filing thereof in the office of the city
[?] the next general election which does not
[?]xty days, provided, however, that if such
[?] within ninety days after the said filing,
[a]ll be submitted at such general election.
[?] as hereinafter provided, there shall be
[?] electors of the city the question: "Shall
[t]he charter commission be adopted?" The
[?] however, require that its proposed char-
[?] more parts so arranged that correspond-
[?] charter shall remain in effect if one or
[?]t adopted, and may also submit alterna-
[?]e provisions to supersede designated por-
[c]harter if adopted.   In such case the
[?] prescribe the form of the questions to
[?] be such as clearly to indicate the effect
[?]ovision in such charter for the election
[?] any system of proportional representa-
[?]unless the definite question with respect
[?]ystem for the election of such officers
[?] as a separate question and separately

approved at such election by the affirmative vote of a majority of
the qualified electors voting thereon. If any question submitted
by the charter commission receive the affirmative vote of a majority
of the qualified electors of the city voting thereon, the proposal
submitted thereby shall take effect as specified therein and the
charter so proposed or as so modified shall be the charter of such
city, and shall become operative as prescribed therein.  Such
charter shall be a local law of such city within the meaning of
this chapter. [If such questions be submitted at a special election,
no other questions shall be submitted at such special election.]
*Except as otherwise provided by or pursuant to subdivision four
of this section, at any election at which any question or questions
shall be submitted to the qualified electors of the city by a charter
commission pursuant to this subdivision, no other question or
questions pursuant to any local law, ordinance, resolution or peti-
tion shall be submitted to or voted upon by such electors if such
other question or questions involve or relate directly or indirectly
to the adoption of a new city charter, the amendment (however
extensively) of a city charter, charter revision, the establishment of
a commission to draft a new city charter or the functions, powers or
duties of any elective officer of the city, except the question or
questions submitted pursuant to this subdivision. If there be a
conflict between the provisions of two or more proposals approved
by the electors at the same election, the proposal receiving the
largest number of affirmative votes shall prevail to the extent of
such conflict.*

§ 4. This act shall take effect immediately.

# CHAPTER 88

AN ACT to amend chapter five hundred twenty-six of the laws of nineteen
hundred thirty-six, entitled "An act providing for the establishment, organi-
zation and operation of police departments in towns of the first class in
Rockland county," in relation to taxable property against which the expense
of compensation of policemen shall be a charge

Became a law March 13, 1961, with the approval of the Governor. Passed,
by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly,
do enact as follows:*

Section 1. Subdivision A of section two of chapter five hundred
twenty-six of the laws of nineteen hundred thirty-six, entitled "An
act providing for the establishment, organization and operation of
police departments in towns of the first class in Rockland county,"
is hereby amended to read as follows:

A. The town board of any town of the first class in Rockland
county which now has a police force or police department, or
employs police officers or policemen or which hereafter employs
such policemen or police officers, shall establish a police department

L. 1936,
ch. 526,
§ 2,
subd. A,
amended.

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

and appoint a chief of police, and such lieutenants, sergeants and patrolmen as may be needed and fix their compensation, except that it shall not be mandatory for a town which employs special policemen only for temporary periods of time in accordance with this act to establish a police department. The compensation of such policemen shall be a town charge, *except that the town board of such town may enter into an agreement with any village within it or partially within it which maintains a police department of four or more policemen on an annual full-time basis, established and maintained under the rules of civil service, and determine therein what part of the cost thereof shall be assessed against the property in the village and what part thereof shall be assessed against the property in the town outside of the village. Thereafter such portion of the cost thereof determined to be assessed outside of the village shall be a charge against that part of the town outside of any such village and assessed, levied and collected from the taxable property of that part of the town outside of the village.* The town board may, at its option, determine that the town shall pay all or part of the cost of the uniforms and necessary equipment of its policemen. When appointed, such policemen shall be peace officers and shall have all the powers and be subject to all the duties and liabilities of a constable of such town in all criminal actions and proceedings and special proceedings of a criminal nature.

Town policemen who were serving as such in all towns of the first class in the county of Rockland on May sixteenth, nineteen hundred thirty-five or who have been appointed to permanent positions pursuant to law since such date, and who are lawfully entitled to continue in such positions at the time this act takes effect, shall continue to be members of the town police department without further civil service examination regardless of their age and shall retain their present lawful rank. All appointments made hereafter to any such police department shall be made in accordance with the provisions of section three of this act.

§ 2. This act shall take effect immediately.

---

## CHAPTER 89

AN ACT to amend the general municipal law, in relation to sale, lease and transfer of certain public lands to the state of New York

Became a law March 13, 1961, with the approval of the Governor. Passed, by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

General
Municipal
Law,
§ 72-h,
subd. (a),
amended.

Section 1. Subdivision (a) of section seventy-two-h of the general municipal law, as added by chapter two hundred thirty-three of the laws of nineteen hundred forty, is hereby amended to read as follows:

(a) Notwithstanding any provision of local law or of any charter, the superviso board of a town, the board of trustees of of estimate of a city, or if there be none of such city, may sell, transfer or lease municipal corporation or municipal corp *New York,* for a valuable consideration a conditions as shall be approved by such owned by such county, town, village or corporation may acquire or lease such r in this section. The term of any lease the provisions of this section shall not exc herein contained shall prevent the renew

§ 2. This act shall take effect immediat

---

## CHAPTER 90

AN ACT to amend the correction law, in relati department of correct

Became a law March 13, 1961, with the approv by a majority vote, three-fifths

*The People of the State of New York, represe do enact as follows:*

Section 1. Section seven of the correc by chapter three hundred forty-three of dred fifty-seven, is hereby amended to re

§ 7. Organization. The organization tinued, except as provided by this chap be changed pursuant to law. There shal correction the following divisions:

1. Division of administration.
2. Division of industries.
3. Division of estimate and audit.
4. Division of education.
5. Division of probation.
6. Division of identification.
7. Division of research.
8. Division of *correctional camps for*

The commissioner of correction may abolish additional divisions or bureaus tional divisions.

§ 2. This act shall take effect immedia

EXPLANATION — Matter in *italics* is new; matter in b

and the legal representatives of a deceased
:r or trustee of a person, partnership, asso-
√ho delivers or causes to be delivered news-
√r delivering or selling and delivering by a
inder the age of eighteen years as defined in
:ed nineteen-a of the education law.

of section two of such law, as last amended
. ninety-nine, and seven hundred of the laws
y-six, is hereby amended to read as follows:

:cludes employment in a trade, business or
)y the employer for pecuniary gain, or in
:cept where the employer elects to bring his
)rovisions of this chapter as provided in
:t employment as a domestic worker as pro-
ind except where a town elects to have the
:r apply to the town superintendent of high-
 shall also include, in connection with the
for purposes of this chapter the service of a
n authorized activities of a volunteer agency
 by a local office as defined in a state defense
√vice of a civil defense volunteer who is also
ised by an employer for service to such
leemed to be in employment of a local office
:ivil defense service in his employment or in
he purposes of this chapter only "employ-
: the *delivery or* sale and delivery of news-
)y a newspaper carrier boy as defined in
:ed nineteen-a of the education law.

ake effect October first, nineteen hundred

## CHAPTER 370

:ation law, in relation to correcting an erroneous
in relating to employment certificates

3, with the approval of the Governor. Passed, by a
 vote, three-fifths being present

)f New York, represented in Senate and Assembly,

n three of section thirty-two hundred
ation law, as last amended by chapter ten
f the laws of nineteen hundred sixty, is
d as follows:

:rtificate to be designated as a "farm work
 for employment in farm service to a minor
 i years of age, or for employment pursuant
 of subdivision [three] *two* of section one
bor law of a minor over twelve years of age,

in the same maner as a standard employment certificate except that
no schooling record may be required and except that neither a
pledge of employment nor the name of the employer shall be
required for its issuance. Such permit shall authorize the minor's
employment for farm service during vacation periods, during re-
lease from school by local school authorities of such minor for farm
work as provided by this chapter, before and after school hours,
and on days when attendance in school is not required. Such
permit shall be valid only when signed by the employer and subject
only to the condition that it shall not be valid for work in or in
connection with a factory.

§ 2. This act shall take effect immediately.

## CHAPTER 371

AN ACT to amend chapter five hundred twenty-six of the laws of nineteen
hundred thirty-six, entitled "An act providing for the establishment, organi-
zation and operation of police departments in towns of the first class in
Rockland county," in relation to personnel of police departments and pro-
motions in such departments

Became a law April 16, 1963, with the approval of the Governor. Passed, by a
majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly,
do enact as follows:*

Section 1. Subdivision A of section two of chapter five hundred
twenty-six of the laws of nineteen hundred thirty-six, entitled "An
act providing for the establishment, organization and operation
of police departments in towns of the first class in Rockland
county," as amended by chapter eighty-eight of the laws of nineteen
hundred sixty-one, is hereby amended to read as follows:

A. The town board of any town of the first class in Rockland
county which now has a police force or police department, or
employs police officers or policemen or which hereafter employs
such policemen or police officers, shall establish a police depart-
ment and appoint a chief of police, and such *captains,* lieutenants,
sergeants and patrolmen as may be needed and fix their compensa-
tion, except that it shall not be mandatory for a town which employs
special policemen only for temporary periods of time in accordance
with this act to establish a police department. The compensation
of such policemen shall be a town charge, except that the town
board of such town may enter into an agreement with any village
within it or partially within it which maintains a police depart-
ment of four or more policemen on an annual full-time basis,
established and maintained under the rules of civil service, and
determine therein what part of the cost thereof shall be assessed
against the property in the village and what part thereof shall

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

be assessed against the property in the town outside of the village. Thereafter such portion of the cost thereof determined to be assessed outside of the village shall be a charge against that part of the town outside of any such village and assessed, levied and collected from the taxable property of that part of the town outside of the village. The town board may, at its option, determine that the town shall pay all or part of the cost of the uniforms and necessary equipment of its policemen. When appointed, such policemen shall be peace officers and shall have all the powers and be subject to all the duties and liabilities of a constable of such town in all criminal actions and proceedings and special proceedings of a criminal nature.

Town policemen who were serving as such in all towns of the first class in the county of Rockland on May sixteenth, nineteen hundred thirty-five or who have been appointed to permanent positions pursuant to law since such date, and who are lawfully entitled to continue in such positions at the time this act takes effect, shall continue to be members of the town police department without further civil service examination regardless of their age and shall retain their present lawful rank. All appointments made hereafter to any such police department shall be made in accordance with the provisions of section three of this act.

§ 2. Section four of such chapter, as amended by chapter seven hundred one of the laws of nineteen hundred forty-one, is hereby amended to read as follows:

§ 4. Promotion. Promotions of officers and members of such police department shall be made, and all vacancies above the grade of patrolmen filled whenever possible by promotion from among persons holding positions in a lower grade in the department in which the vacancy exists, by the town board on the basis of seniority, meritorious police service and superior capacity as shown by competitive examination, such examination to be conducted by the state civil service department. Individual acts of personal bravery may be treated as an element of meritorious service in such examination. The town board shall keep a complete service record of each member of such police department in accordance with the rules and regulations of the state civil service department and shall transmit the record of each candidate for promotion to the state civil service department in advance of such examination. Notwithstanding any other special or general laws to the contrary, such promotion examination shall be competitive examinations held by the state civil service commission regardless of the number of candidates eligible for such promotion, and if the number of candidates is restricted to less than four by the action of the town board, and if the names of one or more candidates are certified as having passed such examination, such name or names shall constitute an eligible list under the civil service law. In no case shall the requirements for service for the respective offices be for longer periods than the following periods of time: for the office of chief,

one year as *captain or two years as* years as sergeant or [three] *ten* years *of captain, one year as lieutenant or tw years as patrolman;* for the office of lieu or [two] *five* years as patrolman*; for year] *three years* as patrolman. No take such promotion examination unless on the police force of a town or village

§ 3. This act shall take effect immed

---

## CHAPTER

AN ACT to amend the highway law, in relat
the city of Hor

Became a law April 16, 1963, with the appro
city message, pursuant to article IX, sect
two-thirds vote

*The People of the State of New York, rep
do enact as follows:*

Section 1. That part of section th
the highway law which relates to the
by chapter four hundred thirty-two of
fifty-five, is hereby amended to read a

### CITY OF HOF

Beginning at a point on the souther
Street, thence northerly on new loca
Albion Street, continuing northerly
routes, as determined by the superir
the vicinity of Canisteo Street and S
line, State Highway No. 5130.] *in th
No. 5212, thence northerly on or alon
Street, as determined by the Superi
the north city line, in the vicinity*
Approximate length 2.1 miles.

Beginning at the westerly city lir
thence southeasterly along West Mai
an intersection with the arterial route
graph. Approximate length 0.6 mile.

§ 2. This act shall take effect imm

---

* So in original. [Word misspelled.]

EXPLANATION — Matter in *italics* is new; matter i

erty in the town outside of the village.
f the cost thereof determined to be
ge shall be a charge against that part
. such village and assessed, levied and
roperty of that part of the town outside
oard may, at its option, determine that
rt of the cost of the uniforms and neces-
men.   When appointed, such policemen
hall have all the powers and be subject
ties of a constable of such town in all
eedings and special proceedings of a

re serving as such in all towns of the
. Rockland on May sixteenth, nineteen
o have been appointed to permanent
since such date, and who are lawfully
h positions at the time this act takes
members of the town police department
ce examination regardless of their age
nt lawful rank.  All appointments made
department shall be made in accordance
on three of this act.

a chapter, as amended by chapter seven
f nineteen hundred forty-one, is hereby
:

tions of officers and members of such
made, and all vacancies above the grade
ver possible by promotion from among
in a lower grade in the department in
by the town board on the basis of
e service and superior capacity as shown
on, such examination to be conducted
epartment.  Individual acts of personal
an element of meritorious service in such
ard shall keep a complete service record
olice department in accordance with the
e state civil service department and shall
h candidate for promotion to the state
n advance of such examination.  Not-
pecial or general laws to the contrary,
ion shall be competitive examinations
ice commission regardless of the number
such promotion, and if the number of
less than four by the action of the town
of one or more candidates are certified
nination, such name or names shall con-
r the civil service law.  In no case shall
e for the respective offices be for longer
. periods of time: for the office of chief, .

one year as *captain or two years as* lieutenant or [two] *three* years as sergeant or [three] *ten* years as patrolman; *for the office of captain, one year as lieutenant or two years as sergeant or seven years as patrolman;* for the office of lieutenant, one year as sergeant or [two] *five* years as partolman*; for the office of sergeant, [one year] *three years* as patrolman.  No person shall be eligible to take such promotion examination unless he is serving as a policeman on the police force of a town or village in Rockland county.

§ 3. This act shall take effect immediately.

---

## CHAPTER 372

AN ACT to amend the highway law, in relation to state arterial highways in the city of Hornell

Became a law April 16, 1963, with the approval of the Governor.  Passed, on city message, pursuant to article IX, section 11 of the Constitution, by a two-thirds vote

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. That part of section three hundred forty-nine-e of the highway law which relates to the city of Hornell, as amended by chapter four hundred thirty-two of the laws of nineteen hundred fifty-five, is hereby amended to read as follows:

### CITY OF HORNELL

Beginning at a point on the southerly city line, [east of Canisteo Street, thence northerly on new location to Canisteo Street near Albion Street, continuing northerly on a single route or dual routes, as determined by the superintendent of public works, in the vicinity of Canisteo Street and Seneca Street to the north city line, State Highway No. 5130.] *in the vicinity of State Highway No. 5212, thence northerly on or along Canisteo Street and Seneca Street, as determined by the Superintendent of public works, to the north city line, in the vicinity of State Highway No. 5130.* Approximate length 2.1 miles.

Beginning at the westerly city line, State Highway No. 5342, thence southeasterly along West Main street and Main street, to an intersection with the arterial route described in the above paragraph.  Approximate length 0.6 mile.

§ 2. This act shall take effect immediately.

---

* So in original. [Word misspelled.]

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

**EXHIBIT D**

# BUNYAN & BAUMGARTNER LLP
### ATTORNEYS AT LAW

500 BRADLEY HILL ROAD
BLAUVELT, NEW YORK 10913
TEL: (845) 353-2200
FAX: (845) 353-7601

JOSEPH P. BAUMGARTNER
RICHARD P. BUNYAN*

November 30, 2004

OF COUNSEL
CAPASSO & OSGOOD, P.C.
NEIL H. GREENBERG

*ADMITTED IN NY & CT

Keane & Beane P.C.
445 Hamilton Avenue
White Plains, New York 10601
Attn: Lance Klein, Esq.

Re: Orangetown Police Department Disciplinary Charges
   Against Sergeant Lorraine Wetzel
   Disciplinary Charges dated July 4, 2004 and July 7, 2004

Dear Mr. Klein:

I respond to your November 24, 2004, letter.

Pursuant to your letter and our conversation of November 29, 2004, my client requests that you hold the prosecution of the disciplinary charges in abeyance pending a decision of the Appellate Division in the case Town of Orangetown v. Orangetown PBA, Index No. 8484/03 and/or the case of the Orangetown PBA v. the Town of Orangetown, Index No. 6096/03.

Pursuant to your letter, please prepare a stipulation to this effect.

Very truly yours,

BUNYAN & BAUMGARTNER LLP

Joseph P. Baumgartner

JPB:jr

cc: Sergeant Wetzel

RECEIVED
DEC - 2 2004
KEANE & BEANE, P.C.

**EXHIBIT E**

# JOSEPH E. WOOLEY

Attorney-at-Law
P.O. Box #6
Hawthorne, New York 10532
(914) 497-7742

June 29, 2006

**BY FACSIMILE TO (845) 353-7601 and FIRST CLASS MAIL**
Bunyan and Baumgartner, LLP
500 Bradley Road
Blauvelt, New York 10913

**BY FACSIMILE TO (914) 946-6866 and FIRST CLASS MAIL**
Keane & Beane, P.C.
Attn: Lance Klein, Esq.
445 Hamilton Avenue
White Plains, New York 10601

Re: Town of Orangetown Disciplinary Matter (Lt Wetzel) July 7, 2004 Incident

Dear Sirs:

As you are aware, I was recently appointed as the hearing officer in this matter. I have scheduled the hearing on this matter for July 11, 2006 at 9:30 a.m. the hearing will be held at the Orangetown Town Hall.

Please be advised that this matter will be conducted pursuant to the Rockland County Police Act. I intend to conduct the hearing in the same manner, and under the same evidentiary rules, as a Civil Service Law § 75 hearing. In other words both sides will have the opportunity to present witnesses and documents and the rules of evidence will be "relaxed." If further guidance is desired, please see the Manual of Procedure in Disciplinary Actions at www.cs.state.ny.us.

Thank you for your attention to this matter.

*Joseph E. Wooley*
JOSEPH E. WOOLEY
Hearing Officer

# EXHIBIT F

# KEANE & BEANE, P.C.

445 HAMILTON AVENUE

WHITE PLAINS, NEW YORK 10601

(914) 946-4777

TELEFAX (914) 946-6868

www.kblaw.com

July 5, 2006

**VIA FACSIMILE (845) 942-0796**

Michael Diederich, Jr., Esq.
361 Route 210
Stony Point, New York  10980

    Re:  Town of Orangetown Disciplinary Action
       (Lorraine Wetzel)

Dear Mr. Diederich:

   I am in receipt of your letter dated July 2, 2006 again requesting our consent to an adjournment of the disciplinary action pending against your client.  Ordinarily, it is our practice to routinely consent to adjournments of disciplinary matters, as long as compensation is not at issue.  However, due to the circumstances surrounding this particular disciplinary matter, we are not inclined to do so.

   Because you seem to be determined to demand and receive discovery on the disciplinary matter, an issue we have already litigated with the Orangetown Policeman's Benevolent Association (the "PBA"), we are not inclined to consent to any adjournment.  As you should be aware, this matter was served in September 2004 with the intent on having a hearing shortly thereafter.  Due to litigation commenced by the PBA's attorneys, who also represented Ms. Wetzel in the disciplinary matter, the PBA's attorney requested an adjournment of the disciplinary matter until the litigation pending between the Town of Orangetown (the "Town") and the PBA was resolved.  As a courtesy, we consented to this request and agreed to hold the disciplinary matter in abeyance pending a resolution by the Court.

   Recently, the New York State Court of Appeals resolved all of the outstanding litigation between the Town and the PBA.  As a result of that decision, it was determined that the disciplinary matter which was held in abeyance (at your client's request) could proceed.  Thus, it is simply not accurate to state that you have not had notice of the charges.  Indeed, you and/or your client have had notice of these disciplinary charges for more than 18 months.  Additionally,

KEANE & BEANE, P. C.

Michael Diederich, Jr., Esq.
July 5, 2006
Page 2

as you have often quoted my letter to you dated February 1, 2006, you were well aware that the disciplinary charges would be prosecuted "as soon as the Court of Appeals [made] its determination...". The Court of Appeals made its determination sometime in March, 2006. Accordingly, your client was given sufficient notice regarding this disciplinary matter.

You should also be aware that the PBA desperately tried gain discovery on this and an unrelated disciplinary matter (Police Officer Munno) through both the New York State Supreme Court as well as the New York State Public Employment Relations Board. Relying upon the Rockland County Police Act, the New York State Supreme Court declined to compel the Town to provide the information that the PBA sought in several subpoenas it served on the Town and some of its employees. The Appellate Division, Second Department similarly rejected the PBA's request to compel disclosure through the subpoenas.

Likewise, although based upon the Taylor Law, PERB also declined to grant the PBA the information that it sought specifically with regard to your client's disciplinary matter. The matter was heard by an Administrative Law Judge who agreed with the Town that your client was not entitled to receive any of the information she sought in connection with the disciplinary matter. PERB's Board confirmed the ALJ's determination. Thus, the issue of your client's request for discovery concerning her disciplinary matter has been fully litigated both before the New York State Courts as well as PERB. Accordingly, we are not inclined to give you any of the discovery that you seek.

Since you are not entitled to any discovery on the disciplinary matter, I am not inclined to allow you to take depositions of our clients, and seek other types of discovery (document requests) on the disciplinary matter through other means, including specifically the action presently pending in Federal Court. (03 Civ. 9896 (SCR) (MDF)). In that regard, I note that we are not prepared to consent to adjourn the disciplinary matter given the fact that you have noticed depositions of our clients and intend to ask them questions regarding the disciplinary matters prior to the disciplinary matter taking place. However, in the event that you agree, in writing, to refrain from asking all witnesses any questions regarding the disciplinary matter or anything related to the disciplinary matters, as well as agree, in writing, to waive our requirement to produce any documents in connection with the disciplinary hearing, I would then be inclined to consent to an adjournment to August or September 2006. I offer this to you as our sole and unconditional offer to adjourn the disciplinary matter.

Thank you for your attention to this matter.

Sincerely,

Lance H. Klein

LHK/sj

1868/96/302357 V1 7/5/06

\* \* \* COMMUNICATION RESULT REPORT ( JUL. 5.2006  4:30PM )\* \* \*

|  |  |  |  | TTI | KEANE & BEANE |
|---|---|---|---|---|---|
| FILE MODE | OPTION | ADDRESS (GROUP) | | RESULT | PAGE |
| 871  MEMORY TX | | 18459420796 | | OK | P. 3/3 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL          E-2) BUSY
E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION

## KEANE & BEANE, P.C.

445 HAMILTON AVENUE, 15TH FLOOR
WHITE PLAINS, NEW YORK 10601
(914) 946-4777
FACSIMILE (914) 946-6868
www.kblaw.com

### FAX TRANSMISSION

Date: July 5, 2006

To:

**Name:**                                   **Fax No.:**
Michael D. Diederich, Jr., Esq.          (845) 942-0796

**This Fax is from: Lance H. Klein**

Client/Matter Numbers: 1868.96

We are transmitting __3__ pages (including this cover sheet).
If transmission is incomplete, please call (914) 946-4777.

*THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL AND IS INTENDED ONLY FOR THE USE OF THE
NAMED ADDRESSEE. IF THE READER OF THIS MESSAGE IS NOT THE NAMED ADDRESSEE OR THE PERSON
RESPONSIBLE TO DELIVER IT TO THE NAMED ADDRESSEE, YOU ARE HEREBY NOTIFIED THAT ANY USE OF THIS*

**EXHIBIT G**

STATE OF NEW YORK  :  TOWN OF ORANGETOWN
------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

     -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
------------------------------------X

               H E A R I N G

                         July 11, 2006
                         10:26 a.m.
                         Orangetown T.H.
                         Orangeburg Road
                         Orangeburg, NY

BEFORE:           JOSEPH E. WOOLEY,
                  Hearing Officer

APPEARANCES:     LANCE KLEIN, ESQ.
                  Keane & Beane, P.C.
                  Attorneys for Chief Nulty
                  445 Hamilton Avenue
                  White Plains, New York 10601

                  MICHAEL J. DIEDERICH, JR.
                  Attorney for Lorraine Wetzel
                  361 Route 210
                  Stony Point, New York 10980

```
 1                      Proceedings
 2         your Honor, Mr. Baumgartner is the PBA
 3         attorney, like we mentioned before.  We
 4         wanted to confirm that he received that
 5         letter of yours on June 30th, I think it's
 6         documented.
 7                      HEARING OFFICER WOOLEY:
 8         Mr. Diederich, I already told you I refaxed
 9         it to them on the 30th because they called
10         me and told me that only the first page came
11         through, and that's the cover page, and they
12         didn't get the letter until the 30th.  In
13         fact a young lady from his office called me
14         in the morning and I was on my way to
15         another part of New York and I told her I
16         would get it to her as soon as I came back.
17         And I believe I did it around two and I
18         stayed on the phone so they acknowledged
19         that they actually got it.
20                      MR. DIEDERICH:  I appreciate that
21         clarification, thank you.
22                      MR. KLEIN:  So that means he's
23         not going to call Mr. Baumgartner I take it.
24                      MR. DIEDERICH:  No.
25                      HEARING OFFICER WOOLEY:  Call
```

```
 1                Zimmerman-Direct-Klein

 2          your first witness.

 3                    MR. KLEIN:  I call Captain Robert

 4          Zimmerman.

 5

 6                    ROBERT ZIMMERMAN,

 7          having been first duly sworn by the Notary

 8          Public, was examined and testified as

 9          follows:

10                    *   *   *   *   *   *

11

12                    HEARING OFFICER WOOLEY:  Would

13          you state your name and position for the

14          record, please.

15                    THE WITNESS:  Robert Zimmerman,

16          captain, Orangetown Police Department.

17                    HEARING OFFICER WOOLEY:

18          Mr. Klein.

19                    MR. KLEIN:  Thank you.

20

21     DIRECT EXAMINATION

22     BY MR. KLEIN:

23     Q.   Captain Zimmerman, when were you first

24          employed by the Town of Orangetown?

25     A.   June of 1984.
```

```
 1                    Zimmerman-Cross-Diederich
 2                    THE WITNESS:  Do you want me to
 3          give them to you or Lorraine?
 4                    MR. DIEDERICH:  Lorraine is fine.
 5                    HEARING OFFICER WOOLEY:
 6          Mr. Diederich, on cross-examination.
 7                    MR. DIEDERICH:  Thank you.
 8
 9     CROSS-EXAMINATION
10     BY MR. DIEDERICH:
11     Q.   Good afternoon, Captain Zimmerman.  Sorry
12          to put you through this ordeal any longer.
13          A few questions for you.  Congratulations,
14          by the way, on your promotion to captain.
15     A.   Thank you.
16     Q.   When were you promoted to captain?
17     A.   May 30th, 2006.
18     Q.   Very good.  Would it be fair to say you've
19          had a long-term working relationship with
20          Lieutenant Wetzel?
21     A.   Yes.
22     Q.   And you supervised her for many years?
23     A.   Yes.
24     Q.   Is she a competent officer?
25     A.   As a general rule I'd say yes.
```

```
 1                    Zimmerman-Redirect-Klein
 2                    HEARING OFFICER WOOLEY:   Any
 3          redirect?
 4                    MR. KLEIN:   Just a couple of
 5          questions.
 6
 7                    (Town Exhibit 7 - MEMO BOOK
 8                    EXCERPTS marked this date for
 9                    identification.)
10
11     REDIRECT EXAMINATION
12     BY MR. KLEIN:
13     Q.   Captain Zimmerman, you have in front of you
14          what's been marked for identification as
15          Town Exhibit 7.  Can you tell us what it
16          is?
17     A.   It appears to be the cover and two pages of
18          Sergeant Wetzel's memo book number 11.
19     Q.   And what period of time does it cover?
20     A.   Opened 3/16/04, closed 7/21/04.  And
21          appears to have Lieutenant McAndrew's
22          initials on the cover.
23     Q.   And what dates in particular are included
24          with a copy of the memo?
25     A.   Page 45 starts with 7/6/04 and page 46 at
```

```
 1                     Zimmerman-Recross-Diederich
 2                     MR. DIEDERICH:  Objection as to
 3          his opinion.
 4                     HEARING OFFICER WOOLEY:
 5          Overruled.
 6     A.   From what I am saying here, I believe that
 7          the fact that the information Sergeant
 8          Wetzel had from the complainant calling in
 9          they were getting called by the prisoner
10          that was injured, I would say that that
11          would take precedence for the most part
12          over anything I see in this blotter.
13                     MR. KLEIN:  I have nothing else.
14                     HEARING OFFICER WOOLEY:  Any
15          recross?
16
17     RECROSS-EXAMINATION
18     BY MR. DIEDERICH:
19     Q.   Captain Zimmerman, have you closely
20          examined all of the things that are
21          contained in Exhibits 8 and 9?
22     A.   9, considering I just got it, I would say
23          closely, no.
24     Q.   So you can't really say that there was
25          nothing else more pressing than those calls
```

```
 1                    Proceedings
 2     Mr. Klein indicated that this was going to
 3     be his only witness.
 4               HEARING OFFICER WOOLEY:  Are you
 5     resting?
 6               MR. KLEIN:  I'm not sure.
 7               MR. DIEDERICH:  You know, I think
 8     it would be appropriate for the Town to make
 9     a decision because if, for example, it could
10     give us that answer and if it was resting
11     today, then I could make a motion for direct
12     verdict.
13               HEARING OFFICER WOOLEY:  And you
14     can do that if they rest the next time.  It
15     would be the first thing if they rest, you
16     make your motion.  If it isn't --
17               MR. DIEDERICH:  You'd have the
18     benefit of being able to research this and
19     whatever is needed between this hearing and
20     the next hearing and we would not have to
21     prepare a defense if that were the case.
22               HEARING OFFICER WOOLEY:  Next
23     date.  Availability.
24               MR. KLEIN:  As soon as you are.
25               HEARING OFFICER WOOLEY:  I'm
```

```
 1                    Proceedings
 2       after that I have the 16th and the 18th.
 3                 MR. KLEIN:  16th is fine.
 4                 MR. DIEDERICH:  I don't have my
 5       calendar, I think the 16th is okay.
 6                 HEARING OFFICER WOOLEY:  I'm
 7       putting it in the book.
 8                 MR. DIEDERICH:  If it's a
 9       problem, I'll immediately contact both of
10       you.
11                 HEARING OFFICER WOOLEY:  Pardon?
12                 MR. DIEDERICH:  If it's a problem
13       with me, I'll immediately contact both of
14       you.
15                 HEARING OFFICER WOOLEY:  That
16       would be appropriate.  August 16th.  Thank
17       you.  9:30.
18                 (Whereupon, the Hearing was
19                 adjourned at 6:54 p.m.)
20
21
22
23
24
25
```

1

2                    C E R T I F I C A T I O N

3

4

5              I, Lora J. Curatolo, RPR,

6        Certified Shorthand Reporter, Certificate

7        No. 1031-1, and Notary Public, do hereby

8        certify that I recorded stenographically

9        the proceedings herein at the time and

10       place noted in the heading hereof, and that

11       the foregoing transcript is true and

12       accurate to the best of my knowledge, skill

13       and ability.

14              IN WITNESS WHEREOF, I have

15       hereunto set my hand this 6th day of August

16       2006.

17

18

19       *Lora J. Curatolo CSR RPR*
         LORA J. CURATOLO,  CSR, RPR

20

21

22

23

24

25

# EXHIBIT H

STATE OF NEW YORK   :   TOWN OF ORANGETOWN
----------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

      -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
----------------------------------------X

                H E A R I N G

                            August 4, 2006
                            10:29 a.m.
                            Orangetown T.H.
                            Orangeburg Road
                            Orangeburg, NY

BEFORE:          JOSEPH E. WOOLEY,
                  Hearing Officer

APPEARANCES:      LANCE KLEIN, ESQ.
                  Keane & Beane, P.C.
                  Attorneys for Chief Nulty
                  445 Hamilton Avenue
                  White Plains, New York 10601

                  MICHAEL J. DIEDERICH, JR.
                  Attorney for Lorraine Wetzel
                  361 Route 210
                  Stony Point, New York 10980

```
 1                    Proceedings
 2         should be an in camera review by the
 3         hearing officer.  It's her material, it's
 4         her document.
 5                    HEARING OFFICER WOOLEY:  This is
 6         not the venue to argue that.  I don't have
 7         the authority to order the Town to do
 8         anything with regard to that book.  You are
 9         arguing in the wrong venue.  There are
10         other venues you may take that to.
11                    MR. DIEDERICH:  I have my
12         exception regarding the rulings?
13                    HEARING OFFICER WOOLEY:  You do.
14                    MR. DIEDERICH:  Thank you.
15                    HEARING OFFICER WOOLEY:  That's
16         it?
17                    MR. DIEDERICH:  For the time
18         being.
19                    HEARING OFFICER WOOLEY:
20         Mr. Klein, any procedural issues on your
21         part?
22                    MR. KLEIN:  No.
23                    HEARING OFFICER WOOLEY:  Are you
24         ready to call your next witness?
25                    MR. KLEIN:  I am.
```

1                    Proceedings

2                    HEARING OFFICER WOOLEY:  Call

3          your next witness, please.

4                    MR. KLEIN:  I call Lorraine

5          Wetzel.  Where would you like her to sit?

6                    HEARING OFFICER WOOLEY:  She can

7          sit right where she is.

8                    MR. KLEIN:  That's fine.

9                    HEARING OFFICER WOOLEY:  Would

10         you swear Ms. Wetzel, please.

11

12                   (Whereupon, Lorraine Wetzel was

13                   duly sworn by the Notary Public.)

14

15                   MR. DIEDERICH:  If I could have a

16         moment with my client?

17                   HEARING OFFICER WOOLEY:  Yes.

18         Off the record.

19

20                   (Break in the proceeding.)

21

22                   MR. DIEDERICH:  I would just like

23         to point out for the record that Mr. Klein

24         refused to advise me as to who he would be

25         calling as witnesses at any time.  And I

```
 1                        Proceedings
 2        not.  Given the fact he won't make that
 3        representation, I'm calling Lorraine Wetzel
 4        as my next witness.
 5                  MR. DIEDERICH:  And once again, I
 6        merely request that if the hearing officer
 7        is going to allow my client to testify,
 8        that he have the Town put on the other
 9        witness first just so the record is clear.
10                  MR. KLEIN:  The record is clear.
11        The record is always clear.  Whatever you
12        want to do, Mr. Hearing Officer.
13                  HEARING OFFICER WOOLEY:  I'm
14        going to deny your application to call
15        Lorraine Wetzel at this time.
16                  MR. KLEIN:  Okay, the Town rests.
17                  HEARING OFFICER WOOLEY:
18        Mr. Diederich.
19                  MR. DIEDERICH:  I'm going to need
20        to see who I have for witnesses.  If I
21        could have a one-minute break.
22                  HEARING OFFICER WOOLEY:
23        Five-minute break.
24                  MR. DIEDERICH:  Thank you.
25
```

```
 1                        Proceedings
 2               (Break in the proceeding.)
 3
 4               HEARING OFFICER WOOLEY:  Back on
 5          the record.  My recollection is when we
 6          went off the record the district had
 7          rested.
 8                    MR. KLEIN:  The Town.
 9               HEARING OFFICER WOOLEY:  The Town
10          had rested.
11                    MR. KLEIN:  Yes.
12               HEARING OFFICER WOOLEY:  And
13          Mr. Diederich, what is your pleasure?
14               MR. DIEDERICH:  Thank you.  What
15          I'd like to do is make a motion and
16          probably a brief opening statement and then
17          I'd like to call some witnesses.  I believe
18          they're all on -- the witnesses I have in
19          mind for the first witnesses are all on
20          duty, they should be readily available.
21               HEARING OFFICER WOOLEY:  A couple
22          of things.  Number one, I don't recall, did
23          you do an opening when we --
24                    MR. DIEDERICH:  No.
25               HEARING OFFICER WOOLEY:  You
```

```
 1                        Proceedings
 2        applications, I find that the Town has made
 3        a prima facie case and I'm going to direct
 4        that your applications are denied.
 5                  MR. DIEDERICH:  Okay.
 6                  HEARING OFFICER WOOLEY:  Are you
 7        ready to call your first witness?
 8                  MR. DIEDERICH:  Yes.
 9                  HEARING OFFICER WOOLEY:  And who
10        would that be?
11                  MR. DIEDERICH:  The first witness
12        is Frank Dowd.
13                  HEARING OFFICER WOOLEY:  Would
14        you get Mr. Dowd -- before you go any
15        further.  Understand that while we were off
16        the record I made an inquiry as to whether
17        or not this case would be finished today
18        and I was told that this will not be
19        finished today in all likelihood and we're
20        going to work -- in that case we'll work
21        until three o'clock.  I'm not going to stop
22        at three o'clock if we're in the middle of
23        testimony but use that as a guide.
24                  MR. DIEDERICH:  Thank you.
25                  HEARING OFFICER WOOLEY:  If you
```

```
 1                    Dowd-Direct-Diederich
 2        would get Mr. Dowd.
 3                    MR. DIEDERICH:  Where would you
 4        like the witness to sit?
 5                    HEARING OFFICER WOOLEY:  Swear
 6        Mr. Dowd, please.
 7
 8                    FRANK DOWD,
 9        having been first duly sworn by the Notary
10        Public, was examined and testified as
11        follows:
12                    *   *   *   *   *   *
13
14                    HEARING OFFICER WOOLEY:
15        Mr. Diederich.
16
17   DIRECT EXAMINATION
18   BY MR. DIEDERICH:
19   Q.   Would you please state your name and
20        address for the record?
21   A.   Frank Dowd, 42 Sunset Road, Blauvelt, New
22        York 10913.
23   Q.   Mr. Dowd, was there an occasion in June,
24        and specifically -- I'm sorry, July,
25        specifically July 7th, 2004 when you were
```

```
 1                    Dowd-Redirect-Diederich
 2              HEARING OFFICER WOOLEY:   Any
 3         redirect?
 4
 5    REDIRECT EXAMINATION
 6    BY MR. DIEDERICH:
 7    Q.   When you refer to your mother-in-law, you
 8         are referring to your girlfriend's mother,
 9         correct?
10    A.   Yeah, I call her, my mother and her, mom,
11         yeah.
12              MR. DIEDERICH:   I have nothing.
13         I appreciate you coming here.
14              HEARING OFFICER WOOLEY:   Any
15         recross?
16              MR. KLEIN:   No.
17              HEARING OFFICER WOOLEY:   Thank
18         you, Mr. Dowd.
19              THE WITNESS:   Thanks.
20              HEARING OFFICER WOOLEY:   Next
21         witness.
22              MR. DIEDERICH:   I would like to
23         request that we, since we're in the same
24         building, that we see the physical layout
25         of the booking room so that we can put on
```

```
 1                  Proceedings
 2                  HEARING OFFICER WOOLEY:  It's not
 3         fine because you've indicated to me on
 4         previous occasions that you are not doing
 5         anything in this matter that's not on the
 6         record.  So I need that very clear.  I'm
 7         not even asking you to do it right now.
 8         I'm going to consider it and probably will
 9         have a decision by the next time we appear
10         here.  But I need you to consider that
11         alternative, that probability.
12                  MR. DIEDERICH:  Or I request the
13         Town produce a floor plan, that might
14         satisfy that need.
15                  MR. KLEIN:  You can just note my
16         objection for the record.  I think the
17         Captain already testified as to the layout
18         of the room and if he wants to get other
19         witnesses to testify, there's no
20         contradictory evidence as to layout of that
21         area.
22                  HEARING OFFICER WOOLEY:  As I
23         said, I'll take it under advisement.
24                  MR. KLEIN:  Thank you.
25                  HEARING OFFICER WOOLEY:  Next
```

```
 1                    Proceedings
 2      witness.
 3                MR. DIEDERICH:  Sergeant
 4      Butterworth, if he's available --
 5      Lieutenant Butterworth.
 6                MR. KLEIN:  Is this pursuant to
 7      subpoena?
 8                HEARING OFFICER WOOLEY:  No, I
 9      believe he's working here though.
10                MR. KLEIN:  If he's not here he
11      doesn't have to show up.
12                MR. DIEDERICH:  Since he's an
13      employee and he's working right now, I
14      would request that he be produced.
15                HEARING OFFICER WOOLEY:  I'll ask
16      you to ask him if he'll come.  He does not
17      have to come.
18                MR. DIEDERICH:  Just on that
19      point.  Sir, this is a hearing conducted
20      presumably at the direction of the Town
21      Board but by the Town against my client, in
22      a disciplinary case against my client.
23      Captain Butterworth is a Town employee and
24      he is working right now and I would request
25      therefore that the Town produce him and if
```

```
1              Butterworth-Direct-Diederich
2     pioneering, however, this is the matter
3     that you need to be concerned with.
4              Off the record.  Take a
5     five-minute break while we determine the
6     availability of Lieutenant Butterworth.
7
8              (Break in the proceeding.)
9
10             HEARING OFFICER WOOLEY:  Back on
11    the record.  Would you swear Lieutenant
12    Butterworth, please.
13
14             DONALD BUTTERWORTH,
15    having been first duly sworn by the Notary
16    Public, was examined and testified as
17    follows:
18             *   *   *   *   *   *
19
20             HEARING OFFICER WOOLEY:
21    Mr. Diederich.
22
23    DIRECT EXAMINATION
24    BY MR. DIEDERICH:
25    Q.  State your name for the record, please?
```

```
 1                    Butterworth-Redirect-Diederich
 2             arresting officer when the sergeant was
 3             upstairs in the headquarters area?
 4       A.    What the procedure would be?
 5       Q.    Yeah.
 6       A.    You transfer the call.
 7       Q.    In other words, you dial an extension that
 8             you knew to be in the booking room and then
 9             push a button and the call would be
10             transferred?
11       A.    Similar to that, yes.
12       Q.    And you would then hang up the phone and
13             the call would be transferred?
14       A.    Right.
15                    MR. DIEDERICH:  I'd like to now
16             have marked Respondent's Exhibit A for
17             identification.
18
19                    (Respondent's Exhibit A -
20                    DOMESTIC INCIDENT REPORT marked
21                    this date for identification.)
22
23                    MR. DIEDERICH:  And ask if you
24             have any objection to this exhibit or are
25             you reviewing it?
```

1               Butterworth-Redirect-Diederich

2                    MR. KLEIN:  I'm reviewing it.  I

3          don't know what it's being offered for.

4                    MR. DIEDERICH:  Did you say you

5          have an objection?

6                    MR. KLEIN:  I don't know what

7          it's being offered for.  If you are

8          offering it in a vacuum, yeah.

9                    MR. DIEDERICH:  It reflects that

10         this is a report reflecting the arrest of

11         Frank Dowd with Nicole Colandrea's name on

12         the top and summarizing the facts relevant

13         to these charges.

14                   MR. KLEIN:  I have no objection.

15                   HEARING OFFICER WOOLEY:  Somehow

16         I didn't think you would.  Without

17         objection, Respondent's Exhibit A is in

18         evidence.

19

20                       (Respondent's Exhibit A received

21                        into evidence.)

22

23                   MR. DIEDERICH:  If I could show

24         it to the witness.  Thank you.

25    BY MR. DIEDERICH:

```
 1                    Butterworth-Recross-Klein
 2    RECROSS-EXAMINATION
 3    BY MR. KLEIN:
 4    Q.   Do you have Respondent's Exhibit A in front
 5         of you still?
 6    A.   Yes.
 7    Q.   That doesn't say in there anywhere that
 8         this is not a domestic violence incident,
 9         does it?
10    A.   No.
11                    MR. DIEDERICH:  Objection, to
12         prove a negative.
13    BY MR. KLEIN:
14    Q.   Does it say that much?
15    A.   It makes no indication on whether it's a
16         domestic or not.
17                    MR. KLEIN:  Thank you.  Nothing
18         else.
19                    HEARING OFFICER WOOLEY:  Any
20         redirect?
21                    MR. DIEDERICH:  No.
22                    HEARING OFFICER WOOLEY:
23         Lieutenant Butterworth, you are done.
24                    Anything in the week of August
25         28, 29, 30 for either of you?
```

```
1                    Proceedings
2                    MR. DIEDERICH:  I have Army
3        Reserve that whole week, I believe 28th
4        through the 30th, yes.  I'm absent the 15th
5        through the 18th and the 29th through the
6        5th of September.  After that I'm pretty
7        clear, except for the week the 18th through
8        the 22nd.
9                    HEARING OFFICER WOOLEY:  Of?
10                   MR. DIEDERICH:  Of September.
11                   HEARING OFFICER WOOLEY:  The
12       first full week in September.
13                   MR. KLEIN:  7th or 8th I'm
14       available.
15                   MR. DIEDERICH:  Just the 8th I'm
16       supposed to be somewhere in the evening but
17       as long as we're done by four or so, that
18       should be fine.
19                   HEARING OFFICER WOOLEY:  That
20       will depend to a large part on you,
21       Mr. Diederich.
22                   MR. KLEIN:  Can we schedule both
23       days?
24                   HEARING OFFICER WOOLEY:  The 7th
25       and the 8th?
```

```
 1                    Proceedings
 2              MR. KLEIN:  Yes.
 3              HEARING OFFICER WOOLEY:  The 7th
 4      and the 8th.  And just to keep things even,
 5      we'll start at ten o'clock on both days.
 6              MR. KLEIN:  Thank you.
 7              MR. DIEDERICH:  7th is not good,
 8      my client has to be with her son at
 9      college.
10              HEARING OFFICER WOOLEY:  8th is
11      okay, the 7th is no good.  The 8th I have.
12      How about the 6th?
13              MR. KLEIN:  The 6th is fine for
14      me.
15              MR. DIEDERICH:  I'd prefer the
16      following week, but I could do the 6th if I
17      had to.
18              HEARING OFFICER WOOLEY:  The
19      11th?  We are doing the 8th, we're going to
20      mark the 8th.  And the 11th?
21              LIEUTENANT WETZEL:  The 11th I am
22      working days.
23              HEARING OFFICER WOOLEY:  Then the
24      6th, the 6th and the 8th.  Thank you.
25
```

499

1
2          (Whereupon, the Hearing was
3          adjourned at 3:41 p.m.)
4
5              C E R T I F I C A T I O N
6
7
8          I, Lora J. Curatolo, RPR,
9     Certified Shorthand Reporter, Certificate
10    No. 1031-1, and Notary Public, do hereby
11    certify that I recorded stenographically
12    the proceedings herein at the time and
13    place noted in the heading hereof, and that
14    the foregoing transcript is true and
15    accurate to the best of my knowledge, skill
16    and ability.
17          IN WITNESS WHEREOF, I have
18    hereunto set my hand this 23rd day of
19    August 2000.
20
21
22                        _____
                          LORA J. CURATOLO, CSR, RPR
23
24
25

**EXHIBIT I**

COPY

STATE OF NEW YORK  :  TOWN OF ORANGETOWN
---------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

     -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
---------------------------------------X

VOLUME 3

H E A R I N G

September 6, 2006
10:22 a.m.
Orangetown T.H.
Orangeburg Road
Orangeburg, NY


BEFORE:          JOSEPH E. WOOLEY,
                 Hearing Officer


APPEARANCES:     LANCE KLEIN, ESQ.
                 Keane & Beane, P.C.
                 Attorneys for Chief Nulty
                 445 Hamilton Avenue
                 White Plains, New York 10601

                 MICHAEL J. DIEDERICH, JR.
                 Attorney for Lorraine Wetzel
                 361 Route 210
                 Stony Point, New York 10980

```
 1                      Proceedings
 2      else?
 3                MR. KLEIN:  I have nothing.
 4                HEARING OFFICER WOOLEY:
 5      Mr. Diederich, call your next witness,
 6      please.
 7                MR. DIEDERICH:  My next witness,
 8      retired Sergeant Dennis Flannery.
 9                HEARING OFFICER WOOLEY:  Would
10      you swear Sergeant Flannery, please.
11
12                DENNIS FLANNERY,
13      having been first duly sworn by the Notary
14      Public, was examined and testified as
15      follows:
16                *   *   *   *   *   *
17                HEARING OFFICER WOOLEY:  State
18      your name and position for the record,
19      please.
20                THE WITNESS:  Dennis Flannery,
21      F-l-a-n-n-e-r-y, retired sergeant Town of
22      Orangetown Police Department.
23                HEARING OFFICER WOOLEY:  Thank
24      you.
25                MR. KLEIN:  Could we have him
```

1                        Flannery-Direct-Diederich
2        slide over so I can -- right in front of
3        that doorway would be fine.
4                     HEARING OFFICER WOOLEY:  Off the
5        record.
6
7                     (Off-the-record discussion.)
8                     (Hearing Officer 13 - TOWN
9                     RESOLUTION marked this date for
10                    identification.)
11
12   DIRECT EXAMINATION
13   BY MR. DIEDERICH:
14   Q.    Sergeant Flannery, did you work for the
15         Town of the Orangetown Police Department?
16   A.    Yes, I did.
17   Q.    And did you retire from the Town of
18         Orangetown Police Department in December of
19         2004?
20   A.    Yes, I did.
21   Q.    Could you briefly state your experience as
22         a police officer?
23   A.    For the Town of Orangetown?
24   Q.    The entirety of your experience.  How long
25         have you been a police officer either as a

```
1                    Flannery-Cross-Klein

2         testify in favor of my client and therefore

3         my client's rights are being blatantly

4         violated by the Town.

5                    Thank you.  I have nothing

6         further.

7                    MR. KLEIN:  I just have a couple.

8

9    CROSS-EXAMINATION

10   BY MR. KLEIN:

11   Q.   Did anyone from the Town ask you to come

12        and testify at this disciplinary hearing?

13   A.   No, sir.

14   Q.   And on that July 7, 2004 date, can you just

15        tell us what your assignment was?

16                   MR. BAUMGARTNER:  I'm going to

17        object to that.

18                   HEARING OFFICER WOOLEY:

19        Sustained.

20                   MR. KLEIN:  I have nothing else.

21                   HEARING OFFICER WOOLEY:  Any

22        redirect?

23                   MR. DIEDERICH:  No.

24                   HEARING OFFICER WOOLEY:  Sergeant

25        Flannery.
```

```
 1                    Holihan-Direct-Diederich
 2                    THOMAS HOLIHAN,
 3          having been first duly sworn by the Notary
 4          Public, was examined and testified as
 5          follows:
 6                       *   *   *   *   *   *
 7
 8                    HEARING OFFICER WOOLEY:   State
 9          your name and position for the record.
10                       THE WITNESS:   My name is Police
11          Officer Thomas Holihan, H-o-l-i-h-a-n, Town
12          of Orangetown Police Department.
13                       HEARING OFFICER WOOLEY:   Thank
14          you.  Mr. Diederich.
15
16    DIRECT EXAMINATION
17    BY MR. DIEDERICH:
18    Q.   Good morning.  My name is Mike Diederich,
19         I'm representing Lieutenant Wetzel in this
20         disciplinary matter.
21    A.   How are you.
22    Q.   Did you receive my subpoena to come here
23         today?
24    A.   I did.
25    Q.   And is today a scheduled day of duty for
```

```
 1                          Holihan-Recross-Klein
 2              only arraign on charges that you bring to
 3              them, isn't that right?
 4    A.        I'm sorry, that an officer brings?
 5    Q.        That an officer brings.
 6    A.        Yeah, I believe so.
 7    Q.        And by the way, do you identify yourself
 8              when you pick up the phone as an officer of
 9              the police department?
10    A.        Usually.
11    Q.        And when you listen to the tape of Mr. Dowd
12              speaking to Nicole, how many times did he
13              say to her he needed bail?
14    A.        I don't know.
15    Q.        Did he ever mention a number, not to his
16              mother but to her?
17    A.        I think he said are you going to come down
18              here a couple times or come get me,
19              something to that effect.
20    Q.        And that was it, right?
21    A.        I'd have to listen to it again with that in
22              mind but I don't recall him mentioning a
23              number but I do remember him asking if she
24              was going to come down.
25                        MR. KLEIN:  I have nothing else.
```

```
1                    Proceedings
2         Thank you.
3                    MR. DIEDERICH:  Thank you.
4                    HEARING OFFICER WOOLEY:  You are
5         done.
6                    THE WITNESS:  Thank you.
7                    HEARING OFFICER WOOLEY:  Captain,
8         it's 3:40, could you see if we can round
9         up --
10                    CAPTAIN ZIMMERMAN:  How long do
11        you expect him?
12                    HEARING OFFICER WOOLEY:  I have
13        no idea.
14
15                    (Break in the proceedings.)
16
17                    HEARING OFFICER WOOLEY:
18        Mr. Diederich, are you ready to call your
19        next witness?
20                    MR. DIEDERICH:  Yes.  Actually,
21        on the record, we have Detective Lieutenant
22        McAndrew here.  Because of the hour, four
23        o'clock, he has things to attend to, I
24        would propose that we reconvene on Friday
25        morning at ten o'clock to begin his
```

1

2                    C E R T I F I C A T I O N

3

4

5            I, Lora J. Curatolo, RPR,

6       Certified Shorthand Reporter, Certificate

7       No. 1031-1, and Notary Public, do hereby

8       certify that I recorded stenographically

9       the proceedings herein at the time and

10      place noted in the heading hereof, and that

11      the foregoing transcript is true and

12      accurate to the best of my knowledge, skill

13      and ability.

14            IN WITNESS WHEREOF, I have

15      hereunto set my hand this 23rd day of

16      September 2006.

17

18

19      _____
        LORA J. CURATOLO, CSR, RPR

20

21

22

23

24

25

**EXHIBIT J**

COPY

STATE OF NEW YORK  :  TOWN OF ORANGETOWN
----------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

     -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
----------------------------------------X

VOLUME 4

H E A R I N G

                          September 8, 2006
                          10:25 a.m.
                          Orangetown T.H.
                          Orangeburg Road
                          Orangeburg, NY

BEFORE:           JOSEPH E. WOOLEY,
                   Hearing Officer

APPEARANCES:      LANCE KLEIN, ESQ.
                   Keane & Beane, P.C.
                   Attorneys for Chief Nulty
                   445 Hamilton Avenue
                   White Plains, New York 10601

                   MICHAEL J. DIEDERICH, JR.
                   Attorney for Lorraine Wetzel
                   361 Route 210
                   Stony Point, New York 10980

```
 1                    Proceedings
 2              HEARING OFFICER WOOLEY:  Have you
 3         subpoenaed Mr. Baumgartner?
 4              MR. DIEDERICH:  No.
 5              HEARING OFFICER WOOLEY:  Look --
 6              MR. DIEDERICH:  He is my client's
 7         former attorney.
 8              HEARING OFFICER WOOLEY:  You had
 9         subpoenaed and called Detective Lieutenant
10         McAndrew on Friday.  Because you took an
11         inordinate amount of time with another
12         witness, it became impossible for Detective
13         McAndrew to testify because he had child
14         care issues.  I put him on for the first
15         witness this morning.  He is here.  Call
16         him now.
17              MR. DIEDERICH:  Okay, I will call
18         him but I would like to note, I expect
19         objections from the PBA attorney.
20              HEARING OFFICER WOOLEY:  And
21         that's why he's sitting there.
22              MR. DIEDERICH:  And I would like
23         testimony from the PBA attorney as to some
24         of the bases for his objections.
25              HEARING OFFICER WOOLEY:
```

```
 1                      Proceedings
 2      Mr. Diederich, please.  On the record, get
 3      real and call Detective Lieutenant McAndrew
 4      and do what you are here to do with him,
 5      okay?
 6              MR. DIEDERICH:  Thank you.  Good
 7      morning, Detective Lieutenant McAndrew.
 8              HEARING OFFICER WOOLEY:  Would
 9      you swear in the witness.
10                  JOHN McANDREW,
11      having been first duly sworn by the Notary
12      Public, was examined and testified as
13      follows:
14              *   *   *   *   *   *
15
16              HEARING OFFICER WOOLEY:  Would
17      you state your name and position for the
18      record, please.
19              THE WITNESS:  John McAndrew,
20      detective lieutenant Town of Orangetown
21      Police Department.
22              HEARING OFFICER WOOLEY:  Thank
23      you.  Mr. Diederich.
24
25
```

```
 1                    McAndrew-Direct-Diederich
 2        investigations.
 3    Q.  And you prepared this report, Respondent's
 4        E for identification?
 5    A.  Yes.
 6    Q.  And is this an accurate copy, to the best
 7        of your knowledge, of your report except
 8        for the redactions on the report?
 9    A.  Yes.
10              MR. DIEDERICH:  I move this into
11        evidence.
12              MR. KLEIN:  No objection.
13              HEARING OFFICER WOOLEY:  Without
14        objection.
15
16              (Respondent's Exhibit E received
17               into evidence.)
18
19              HEARING OFFICER WOOLEY:  My
20        understanding was that that document was
21        originally asked for by you to refresh the
22        Lieutenant's memory regarding whether or
23        not there was anything dealing with
24        domestic abuse and you never dealt with
25        that.  I want to make sure it didn't slip
```

```
 1                         McAndrew-Recross-Klein
 2     A.    That's up to the administration to make a
 3           determination or not, I don't have any....
 4                   MR. DIEDERICH:  I have nothing
 5           further.
 6
 7     RECROSS-EXAMINATION
 8     BY MR. KLEIN:
 9     Q.    Lieutenant, when you were the
10           administrative lieutenant and you had
11           matters involving PBA, either arbitrations
12           or grievances, is it fair to say that you
13           wouldn't pay a witness called by the PBA
14           rather than a town?
15     A.    I can't recall a situation or circumstance
16           where that happened.  It would be difficult
17           for me to answer it because I don't recall
18           the circumstances or situation in that
19           matter.
20                   MR. KLEIN:  Nothing else.
21                   HEARING OFFICER WOOLEY:  You are
22           done.
23                   MR. DIEDERICH:  Thank you,
24           Lieutenant.
25                   HEARING OFFICER WOOLEY:  Thank
```

910

```
 1
 2                C E R T I F I C A T I O N
 3
 4
 5              I, Lora J. Curatolo, RPR,
 6         Certified Shorthand Reporter, Certificate
 7         No. 1031-1, and Notary Public, do hereby
 8         certify that I recorded stenographically
 9         the proceedings herein at the time and
10         place noted in the heading hereof, and that
11         the foregoing transcript is true and
12         accurate to the best of my knowledge, skill
13         and ability.
14              IN WITNESS WHEREOF, I have
15         hereunto set my hand this 1st day of
16         October 2006.
17
18
19                  LORA J. CURATOLO, CSR, RPR
20
21
22
23
24
25
```

**EXHIBIT K**

912



STATE OF NEW YORK  :  TOWN OF ORANGETOWN
----------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

     -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
----------------------------------------X

<u>VOLUME 5</u>

H E A R I N G

                     September 14, 2006
                     10:48 a.m.
                     Orangetown T.H.
                     Orangeburg Road
                     Orangeburg, NY

BEFORE:            JOSEPH E. WOOLEY,
                   Hearing Officer

APPEARANCES:      LANCE KLEIN, ESQ.
                   Keane & Beane, P.C.
                   Attorneys for Chief Nulty
                   445 Hamilton Avenue
                   White Plains, New York 10601

                   MICHAEL J. DIEDERICH, JR.
                   Attorney for Lorraine Wetzel
                   361 Route 210
                   Stony Point, New York 10980

```
 1                     Nulty-Direct-Diederich
 2                     HEARING OFFICER WOOLEY:   Would
 3          you swear Chief Nulty.
 4
 5                          KEVIN NULTY,
 6          having been first duly sworn by the Notary
 7          Public, was examined and testified as
 8          follows:
 9                     *   *   *   *   *   *
10
11                     HEARING OFFICER WOOLEY:   Chief,
12          would you state your name and position for
13          the record, please.
14                     THE WITNESS:   Kevin Nulty, that's
15          N-u-l-t-y.   I am the Chief of Police for
16          the Town of Orangetown Police Department.
17                     HEARING OFFICER WOOLEY:   Thank
18          you.   Mr. Diederich.
19                     MR. DIEDERICH:   Thank you.
20
21     DIRECT EXAMINATION
22     BY MR. DIEDERICH:
23     Q.   Good morning, Chief, how are you today?
24     A.   Good morning.
25     Q.   How long have you been a police officer?
```

```
 1                    Nulty-Direct-Diederich
 2         Holihan taking Mr. Dowd to Nyack Hospital?
 3    A.   Could I see the document that you are
 4         referring to?
 5                    HEARING OFFICER WOOLEY:
 6         (Handing).
 7                    MR. DIEDERICH:  While the chief
 8         is looking at the document, I'd like it
 9         noted that my client needs to depart for
10         important family business.  I'll note that
11         we didn't have lunch today, she didn't have
12         lunch today, nor did I, and she's going to
13         leave us now because of this family
14         business.  We would prefer that since it's
15         six p.m. now, we'd prefer that the chief
16         be -- his testimony be continued at a
17         subsequent date next week.
18                    HEARING OFFICER WOOLEY:  I want
19         to know how long you have left with the
20         chief and I want to know what areas you
21         intend to cover.
22                    MR. DIEDERICH:  I'd like to go
23         through all the charges.  I'd say half a
24         day.
25                    HEARING OFFICER WOOLEY:  Half a
```

1183

```
 1                  Nulty-Direct-Diederich
 2        day?
 3                  MR. DIEDERICH:  Three hours.  But
 4        it's hard to say because of the objections
 5        I get from Mr. Klein all the time.  I can't
 6        ask my questions.
 7                  HEARING OFFICER WOOLEY:  That's
 8        because most of them are sustainable.
 9                  MR. DIEDERICH:  I obviously
10        disagree.
11                  MR. KLEIN:  Here's a surprise.
12        He's not available next week.
13                  THE WITNESS:  Or the week after.
14                  MR. KLEIN:  Or the week after.
15        We'll be going into the first week in
16        October.  And by the way, I want the record
17        to reflect the fact that there is no
18        requirement that Lieutenant Wetzel be
19        present at this, it's her choice to be
20        here.  We have not subpoenaed her and we
21        have not forced her to be here.  But I'm
22        not saying that I object to her leaving or
23        if they want to break, they can break, but
24        I don't need to.
25                  MR. DIEDERICH:  Well, I'm saying
```

```
 1                  Nulty-Direct-Diederich
 2       as a matter of due process and fairness she
 3       would be able to attend her own
 4       disciplinary hearing.  And we've had the
 5       whole day here now, it's six o'clock and we
 6       haven't had lunch even.
 7               So I think it would be
 8       appropriate to continue this, if the chief
 9       isn't available until the first week of
10       October, we can continue his testimony then
11       and if need be we can put in other
12       witnesses.
13               HEARING OFFICER WOOLEY:  If need
14       be you will.  If I grant the adjournment we
15       are going forward on the 20th and we'll
16       take witnesses out of order because he will
17       still be on direct examination.  But you
18       will have other witnesses on the 20th.
19               Your schedule is such you will
20       not be available for the next two weeks?
21               THE WITNESS:  I will be out of
22       town on a long-term training assignment.
23               HEARING OFFICER WOOLEY:  The
24       application is granted and you're excused,
25       Chief.
```

1

2                    C E R T I F I C A T I O N

3

4

5              I, Lora J. Curatolo, RPR,

6       Certified Shorthand Reporter, Certificate

7       No. 1031-1, and Notary Public, do hereby

8       certify that I recorded stenographically

9       the proceedings herein at the time and

10      place noted in the heading hereof, and that

11      the foregoing transcript is true and

12      accurate to the best of my knowledge, skill

13      and ability.

14              IN WITNESS WHEREOF, I have

15      hereunto set my hand this 6th day of

16      October 2006.

17

18

19      *Lora J. Curatolo, CSR RPR*
        LORA J. CURATOLO, CSR, RPR

20

21

22

23

24

25

# EXHIBIT L



STATE OF NEW YORK  :  TOWN OF ORANGETOWN
---------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

    -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
---------------------------------------X

VOLUME 6

H E A R I N G

September 20, 2006
10:20 a.m.
Orangetown T.H.
Orangeburg Road
Orangeburg, NY


BEFORE:           JOSEPH E. WOOLEY,
                Hearing Officer


APPEARANCES:      LANCE KLEIN, ESQ.
                Keane & Beane, P.C.
                Attorneys for Chief Nulty
                445 Hamilton Avenue
                White Plains, New York 10601

                MICHAEL J. DIEDERICH, JR.
                Attorney for Lorraine Wetzel
                361 Route 210
                Stony Point, New York 10980

```
 1                Zimmerman-Direct-Diederich
 2         there any new procedural issues that need
 3         to be called?
 4                MR. DIEDERICH:  No.  I'll call as
 5         my next witness Captain Zimmerman.
 6                HEARING OFFICER WOOLEY:  Captain
 7         Zimmerman.  Would you swear Captain
 8         Zimmerman again, please.
 9
10                ROBERT ZIMMERMAN,
11         having been first duly sworn by the Notary
12         Public, was examined and testified as
13         follows:
14                   *   *   *   *   *   *
15
16    DIRECT EXAMINATION
17    BY MR. DIEDERICH:
18    Q.   Good morning, Captain Zimmerman.  Could you
19         please state your duty and position with
20         the town police department?
21    A.   The police captain.
22    Q.   So you're number two in command below the
23         chief?
24    A.   Yes.
25    Q.   And have you been attending these
```

```
 1                    Proceedings
 2              HEARING OFFICER WOOLEY:  16th,
 3         17th, 18, 19, 20.  I'm picking two more
 4         days, this case will be wrapped up in two
 5         more days.
 6              MR. KLEIN:  The 17th is fine.
 7              MR. DIEDERICH:  I think that's
 8         okay.  If it's not, I'll call you both or
 9         fax you.
10              MR. KLEIN:  We're going to pick
11         two days you said?
12              HEARING OFFICER WOOLEY:  Two
13         days.
14              MR. KLEIN:  The 13th was no good.
15              HEARING OFFICER WOOLEY:  The 13th
16         is no good.  I have an impartial hearing.
17              MR. KLEIN:  So the 17th and I can
18         do the 18th or the 19th.
19              HEARING OFFICER WOOLEY:  Pick
20         one, Mr. Diederich.
21              MR. DIEDERICH:  Which days are
22         those?
23              MR. KLEIN:  17th is a Tuesday,
24         18th is Wednesday and 19th is Thursday.
25              MR. DIEDERICH:  If I have any
```

```
 1                      Proceedings
 2        testimony was he took that from the
 3        official video.
 4                  CAPTAIN ZIMMERMAN:  Is there a
 5        question here for me?
 6                  MR. KLEIN:  No, there's no
 7        question.
 8                  MR. DIEDERICH:  I don't see any
 9        problem with him, since I'm sure he has
10        access and has seen --
11                  HEARING OFFICER WOOLEY:  So do
12        you.
13                  MR. KLEIN:  He's not going to
14        spend his time doing this, it's your job.
15                  MR. DIEDERICH:  He's the one that
16        testified on the charging party's case --
17                  HEARING OFFICER WOOLEY:  Do me a
18        favor.  Put what you want to do in writing,
19        I'll take it under advisement.  I may or
20        may not grant it.  The hearing is adjourned
21        until October 17th.
22
23                  (Whereupon, the Hearing was
24                  adjourned at 3:16 p.m.)
25
```

```
 1
 2                    C E R T I F I C A T I O N
 3
 4
 5              I, Lora J. Curatolo, RPR,
 6       Certified Shorthand Reporter, Certificate
 7       No. 1031-1, and Notary Public, do hereby
 8       certify that I recorded stenographically
 9       the proceedings herein at the time and
10       place noted in the heading hereof, and that
11       the foregoing transcript is true and
12       accurate to the best of my knowledge, skill
13       and ability.
14              IN WITNESS WHEREOF, I have
15       hereunto set my hand this 23rd day of
16       October 2006.
17
18
19                    Lora J. Curatolo CSR RPR
20                    LORA J. CURATOLO, CSR, RPR
21
22
23
24
25
```

# EXHIBIT M

1403



STATE OF NEW YORK  :  TOWN OF ORANGETOWN
----------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

     -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
----------------------------------------X

<u>Volume 7</u>
H E A R I N G

                         October 17, 2006
                         10:08 a.m.
                         Orangetown T.H.
                         Orangeburg Road
                         Orangeburg, NY

BEFORE:            JOSEPH E. WOOLEY,
                  Hearing Officer

APPEARANCES:       LANCE KLEIN, ESQ.
                  Keane & Beane, P.C.
                  Attorneys for Chief Nulty
                  445 Hamilton Avenue
                  White Plains, New York 10601

                  MICHAEL J. DIEDERICH, JR.
                  Attorney for Lorraine Wetzel
                  361 Route 210
                  Stony Point, New York 10980

```
 1                    Nulty-Direct-Diederich
 2                    (Break in the proceeding.)
 3
 4                    HEARING OFFICE CEWOOLEY:  Back on
 5          the record.  Chief, how are you?
 6                    THE WITNESS:  Mr. Hearing
 7          Officer, how are you?
 8                    HEARING OFFICER WOOLEY:  I'm
 9          well, thank you.  Please remember you are
10          still under oath.
11                    THE WITNESS:  Yes.
12                    HEARING OFFICER WOOLEY:
13          Mr. Diederich.
14
15                         KEVIN NULTY,
16          having been reminded of his previous oath,
17          was examined and continued to testify as
18          follows:
19                    *   *   *   *   *   *
20
21     DIRECT EXAMINATION
22     BY MR. DIEDERICH:
23     Q.   Good morning, Chief, how are you?
24     A.   Goo i@ncBrhing, Mr. Diederich.
25     Q.   I'm going to continue with my questions
```

```
 1                   Proceedings
 2        done?
 3                   MR. DIEDERICH:  I'm done with the
 4        chief.
 5                   MR. KLEIN:  Thank you, Chief.
 6                   HEARING OFFICER WOOLEY:  Thank
 7        you, Chief.
 8                   MR. DIEDERICH:  Thank you, Chief.
 9                   HEARING OFFICER WOOLEY:  Ten a.m.
10        tomorrow morning.  Now, groundrules for
11        tomorrow morning at ten a.m.  You have ten
12        minutes to argue your --
13                   MR. DIEDERICH:  I only need a few
14        seconds because I'm just citing 18 USV 25
15        15.
16                   HEARING OFFICER WOOLEY:  Listen
17        to me, you have ten minutes, if you choose
18        to use it, to argue your motion.
19                   You have ten minutes rebuttal --
20        strike that -- in opposition.
21                   You, if necessary, will have
22        three minutes in rebuttal.
23                   And I'm telling you, okay, and I
24        appreciate the fact that you only need
25        seconds, I am telling you that at the end
```

```
 1
 2                    C E R T I F I C A T I O N
 3
 4
 5            I, Lora J. Curatolo, RPR,
 6       Certified Shorthand Reporter, Certificate
 7       No. 1031-1, and Notary Public, do hereby
 8       certify that I recorded stenographically
 9       the proceedings herein at the time and
10       place noted in the heading hereof, and that
11       the foregoing transcript is true and
12       accurate to the best of my knowledge, skill
13       and ability.
14               IN WITNESS WHEREOF, I have
15       hereunto set my hand this 30th day of
16       October 2006.
17
18
19                    _____
                      LORA J. CURATOLO, CSR, RPR
20
21
22
23
24
25
```

# EXHIBIT N

ORIGINAL
1667

STATE OF NEW YORK  :  TOWN OF ORANGETOWN
----------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

     -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
----------------------------------------X

Volume 8
H E A R I N G

                          October 18, 2006
                          10:06 a.m.
                          Orangetown T.H.
                          Orangeburg Road
                          Orangeburg, NY

BEFORE:            JOSEPH E. WOOLEY,
                   Hearing Officer

APPEARANCES:      LANCE KLEIN, ESQ.
                   Keane & Beane, P.C.
                   Attorneys for Chief Nulty
                   445 Hamilton Avenue
                   White Plains, New York 10601

                   MICHAEL J. DIEDERICH, JR.
                   Attorney for Lorraine Wetzel
                   361 Route 210
                   Stony Point, New York 10980

**JUDICIAL REPORTING SERVICE, INC.**
120 BLOOMINGDALE ROAD
WHITE PLAINS, NEW YORK 10605
(914) 946-0888

```
 1                        Proceedings
 2       demand that the Town produce a witness.
 3                MR. DIEDERICH:  Sir, because of
 4       your position on this I have tendered the
 5       subpoenas to the Town Clerk.
 6                HEARING OFFICER WOOLEY:  And deal
 7       with it.  You were the subpoena issuer,
 8       deal with that.
 9                MR. DIEDERICH:  As well as the
10       captain.
11                HEARING OFFICER WOOLEY:  Deal
12       with that.  Who is your next witness?
13                MR. DIEDERICH:  Nicole Colandrea.
14                HEARING OFFICER WOOLEY:  Please
15       call Ms. Colandrea.
16                Would you swear Ms. Colandrea,
17       please.
18
19                   NICOLE COLANDREA,
20       having been first duly sworn by the Notary
21       Public, was examined and testified as
22       follows:
23                  *   *   *   *   *   *
24
25                HEARING OFFICER WOOLEY:  Ms.
```

```
 1                    Proceedings
 2            (Break in the proceeding.)
 3
 4            HEARING OFFICER WOOLEY:  Back on
 5    the record.  Captain, it's been awhile but
 6    remember you are still under oath, please.
 7            MR. DIEDERICH:  And by the way,
 8    just to conclude the last point, Mr. Klein
 9    made a number of claims, but he did not
10    indicate whether he recommended you,
11    Mr. Wooley, as hearing officer to be
12    appointed in this case.  And I'd like that
13    information from Mr. Klein, whether he or
14    his firm recommended you for employment for
15    this disciplinary proceeding.
16            MR. KLEIN:  Good for you.
17            HEARING OFFICER WOOLEY:  I can
18    only assume that there is a lot of things
19    that you would like, that's not one of them
20    that you are going to get.  I don't think.
21    Are you prepared to give him that
22    information?
23            MR. KLEIN:  No.
24            HEARING OFFICER WOOLEY:  I didn't
25    think so.  Next.
```

```
 1                  Zimmerman-Direct-Diederich
 2                    ROBERT ZIMMERMAN,
 3           having been first reminded of his previous
 4           oath by the Hearing Officer, was examined
 5           and continued to testify as follows:
 6                     *   *   *   *   *   *
 7

 8    DIRECT EXAMINATION
 9    BY MR. DIEDERICH:
10    Q.   Good afternoon, Captain Zimmerman.  Captain
11         Zimmerman, you've been attending all of
12         these proceedings, correct?
13    A.   Yes.
14    Q.   And you were here yesterday when we went
15         over the videotape of the booking room
16         scenes regarding Mr. Dowd's presence there
17         on July 7th of 2004?
18    A.   Yes.
19    Q.   Now that you've seen both that video again
20         and had an opportunity to closely examine
21         that video, would you like to correct any
22         of your prior testimony in this case
23         regarding Mr. Dowd wandering around the
24         booking room area on that date?
25                    MR. KLEIN:  Objection.  If he's
```

```
 1                     Zimmerman-Redirect-Diederich
 2     Q.    And would it not be the case that both
 3           those supervisors would have been made
 4           aware of Frank Dowd's injury after they
 5           took over their shift?
 6     A.    It should be the case, yes.
 7                     HEARING OFFICER WOOLEY:   Last
 8           question.
 9     BY MR. DIEDERICH:
10     Q.    The next shift's supervisors are
11           responsible for reviewing the paperwork of
12           the prior shift normally, is that not the
13           case?
14     A.    Normally.
15     Q.    So if they reviewed the paperwork of
16           Officer Holihan, that would have also
17           indicated an injury to Frank Dowd, correct?
18     A.    I can't answer that question the way you
19           just asked it.
20     Q.    Well, let me rephrase it.  If any
21           supervisor had reviewed paperwork dealing
22           with the arrest of Frank Dowd, they would
23           see that Frank Dowd was injured in
24           connection with that arrest, correct?
25     A.    I believe that report was signed off by
```

1864

```
 1                        Proceedings
 2         Sergeant Flannery, so I have no indication
 3         that anybody else saw that report,
 4         depending on what time they finished
 5         processing him.  The only name other than
 6         Officer Holihan I have on that domestic
 7         incident report I believe is Sergeant
 8         Flannery.  So if Sergeant Russo's name is
 9         on it, I could say Sergeant Russo saw it,
10         but it's signed by Sergeant Flannery, I
11         believe.
12                   HEARING OFFICER WOOLEY:   Thank
13         you.  You are excused.
14                   Now, I'm not --
15                   MR. DIEDERICH:  By the way, for
16         the record I wasn't finished but I
17         understand.
18                   HEARING OFFICER WOOLEY:  The next
19         day we are here, you will be back on
20         strictly on redirect examination and all
21         that that entails.
22                   THE WITNESS:  Whatever that
23         means, yes.
24                   HEARING OFFICER WOOLEY:  It's
25         legal mumbo jumbo.
```

```
1                      Proceedings
2                  I think you have indicated you
3          have another witness?
4                  MR. DIEDERICH:  I have Officer
5          O'Donnell.
6                  HEARING OFFICER WOOLEY:  Call
7          Officer O'Donnell.
8                  MR. DIEDERICH:  Whose shift ends
9          right now or 3:15 and it's three o'clock
10         right now, so I propose we take a 15 minute
11         break.
12                 HEARING OFFICER WOOLEY:  Done.
13
14                 (Break in the proceeding.)
15
16                 HEARING OFFICER WOOLEY:  Back on
17         the record.  Mr. Diederich, your next
18         witness.
19                 MR. DIEDERICH:  Yes, for the
20         record my client's shift duty started today
21         at three o'clock, so I'll try to be fast
22         because she's losing time.
23                 I'll call Police Officer Neil
24         O'Donnell as our next witness.
25                 HEARING OFFICER WOOLEY:  Would
```

1866

```
 1                 O'Donnell-Direct-Diederich
 2       you swear Officer O'Donnell, please.
 3
 4                 NEIL O'DONNELL,
 5       having been first duly sworn by the Notary
 6       Public, was examined and testified as
 7       follows:
 8                 *    *    *    *    *    *
 9
10                 MR. BAUMGARTNER:  Officer
11       O'Donnell has requested that I represent
12       him here.
13                 HEARING OFFICER WOOLEY:  Grab a
14       chair and make yourself comfortable.
15                 Mr. Diederich.
16
17  DIRECT EXAMINATION
18  BY MR. DIEDERICH:
19  Q.   Good afternoon, Officer O'Donnell.
20  A.   Good afternoon.
21  Q.   I have a few questions for you.  Are you
22       employed by the Town of Orangetown?
23  A.   Yes.
24  Q.   And what is your job?
25  A.   I'm a police officer.
```

```
 1                    Proceedings
 2              HEARING OFFICER WOOLEY:  Look at
 3         next week.
 4              MR. KLEIN:  24th.
 5              MR. DIEDERICH:  Can we go the
 6         following week, that week I have two very
 7         important things and if we can do the
 8         following week I think that would be
 9         better.
10              HEARING OFFICER WOOLEY:  That
11         would be the week of October 30th.
12              MR. KLEIN:  October 30th.
13              HEARING OFFICER WOOLEY:  Pick a
14         day other than the 31st.
15              MR. KLEIN:  I can do the 30th or
16         the 1st.
17              MR. DIEDERICH:  November 1st.
18              MR. KLEIN:  Yeah.
19              MR. DIEDERICH:  I think those are
20         both good.
21              HEARING OFFICER WOOLEY:  I played
22         this game before.
23              MR. DIEDERICH:  Let's pick one
24         and if it's a problem I'll fax you tonight.
25              HEARING OFFICER WOOLEY:  November
```

1893

```
 1                    Proceedings
 2        1st.
 3                    MR. DIEDERICH:  What day is that?
 4                    MR. KLEIN:  Wednesday.
 5                    HEARING OFFICER WOOLEY:
 6        Mr. Baumgartner?
 7                    MR. BAUMGARTNER:  That's fine
 8        with me.  I would ask if you change the
 9        days --
10                    HEARING OFFICER WOOLEY:  We'll
11        let you know, absolutely.
12                    MR. DIEDERICH:  Ten o'clock?
13                    HEARING OFFICER WOOLEY:  Ten
14        o'clock.
15                    MR. DIEDERICH:  Thank you.
16                    HEARING OFFICER WOOLEY:  Be
17        prepared, bring your sleeping bags if you
18        intend to be long, bring sleeping bags,
19        bring toothbrushes, we are going to finish
20        on November 1st.  Off the record.
21
22                    (Whereupon, the Hearing was
23                    adjourned at 3:50 p.m.)
24
25
```

1
2                    C E R T I F I C A T I O N
3
4
5              I, Lora J. Curatolo, RPR,
6        Certified Shorthand Reporter, Certificate
7        No. 1031-1, and Notary Public, do hereby
8        certify that I recorded stenographically
9        the proceedings herein at the time and
10       place noted in the heading hereof, and that
11       the foregoing transcript is true and
12       accurate to the best of my knowledge, skill
13       and ability.
14              IN WITNESS WHEREOF, I have
15       hereunto set my hand this 6th day of
16       November 2006.
17
18
19                         _____
                           LORA J. CURATOLO, CSR, RPR
20
21
22
23
24
25

**EXHIBIT O**

STATE OF NEW YORK  :  TOWN OF ORANGETOWN
----------------------------------------X
Disciplinary charges preferred by
Chief of Police Kevin Nulty,

     -against-

LORRAINE WETZEL,

pursuant to the Rockland County Police Act
----------------------------------------X

Volume 9
H E A R I N G


                          November 1, 2006
                          10:20 a.m.
                          Orangetown T.H.
                          Orangeburg Road
                          Orangeburg, NY


BEFORE:            JOSEPH E. WOOLEY,
                     Hearing Officer


APPEARANCES:      LANCE KLEIN, ESQ.
                     Keane & Beane, P.C.
                     Attorneys for Chief Nulty
                     445 Hamilton Avenue
                     White Plains, New York 10601

                     MICHAEL J. DIEDERICH, JR.
                     Attorney for Lorraine Wetzel
                     361 Route 210
                     Stony Point, New York 10980

```
 1                    Proceedings
 2        in as a hearing officer exhibit.
 3                    MR. DIEDERICH:  So October 31st
 4        letter will be included?
 5                    HEARING OFFICER WOOLEY:  It would
 6        be.
 7                    MR. DIEDERICH:  Thank you.
 8                    HEARING OFFICER WOOLEY:  Next.
 9        Who is your next witness?
10                    MR. DIEDERICH:  My next witness
11        is my client, respondent Lorraine Wetzel.
12                    HEARING OFFICER WOOLEY:  Would
13        you swear Lieutenant Wetzel.
14
15                    LORRAINE WETZEL,
16        having been first duly sworn by the Notary
17        Public, was examined and testified as
18        follows:
19                    *   *   *   *   *   *
20                    HEARING OFFICER WOOLEY:  Would
21        you state your name and position for the
22        record.
23                    THE WITNESS:  Lieutenant Lorraine
24        Wetzel, W-e-t-z-e-l.
25                    HEARING OFFICER WOOLEY:
```

```
 1                    Proceedings
 2           won.  Did you mention that?  I didn't think
 3           so.
 4                    HEARING OFFICER WOOLEY:  Does the
 5           respondent now rest?
 6                    MR. DIEDERICH:  Yes.
 7                    HEARING OFFICER WOOLEY:  Thank
 8           you.
 9                    MR. KLEIN:  No, I have no
10           rebuttal.
11                    HEARING OFFICER WOOLEY:  Thank
12           you.  All of that being said and done after
13           all these many months, I have checked with
14           the reporter and the transcripts will be --
15           the final transcript will be ready within
16           two weeks.
17                    Mr. Klein's assertion to the
18           contrary, I am ordering you to turn over
19           the transcripts to Mr. Diederich.
20                    MR. KLEIN:  But Mr. Diederich
21           says you have no authority here and there
22           are no rules and regulations.
23                    HEARING OFFICER WOOLEY:  And I
24           disagreed with Mr. Diederich on numerous
25           occasions and I disagree with him as to
```

```
 1                    Proceedings
 2        Mr. Klein at this point.
 3                    With that this hearing is --
 4                    MR. KLEIN:   There's one question
 5        I have.   This will be a deviation from any
 6        hearing that I have done, ordinarily you do
 7        have either a closing statement or a brief.
 8        And I think because you're making a
 9        recommendation to the Town Board, it might
10        be in the Town Board's best interest to not
11        only have your decision but to have briefs
12        from the parties or closing statements.
13                    HEARING OFFICER WOOLEY:   Choose
14        one.
15                    MR. KLEIN:   I'll choose a brief.
16                    HEARING OFFICER WOOLEY:
17        Mr. Diederich, choose one.
18                    MR. DIEDERICH:   I would like to
19        see the report and recommendation of the
20        hearing officer yourself and know when --
21        be advised when that is going to be
22        submitted to the Town Board so that I could
23        then make any comments to the Town Board
24        based upon your report and recommendation.
25                    HEARING OFFICER WOOLEY:   My
```

```
 1                        Proceedings
 2         question is do you want to do a closing
 3         statement or a brief or neither, I don't
 4         care.  If you don't want to do either,
 5         that's perfectly fine also.
 6                   MR. DIEDERICH:  My closing
 7         statement is the Town, A, didn't prove the
 8         case.  And B, this whole thing is
 9         retaliatory based upon her fighting
10         discrimination in this town.
11                   HEARING OFFICER WOOLEY:  Is that
12         the extent of your closing argument?
13                   MR. DIEDERICH:  And I'd like an
14         opportunity to review and comment upon the
15         hearing officer's report of recommendation
16         prior to it being submitted to the board.
17         I'd like at least two weeks notice.
18                   HEARING OFFICER WOOLEY:
19         Mr. Klein, feel free to submit a brief.  I
20         will tell you on the record there will be
21         no reply.
22                   The way this is usually done and
23         the way I do it is both sides submit their
24         briefs.  Mr. Diederich has chosen to do
25         what he purports to be a closing argument.
```

```
 1                    Proceedings
 2        You have opted to do a brief.  There will
 3        be no reply briefs in this matter.
 4                    MR. DIEDERICH:  Then I would like
 5        to know what the submission date is going
 6        to be so that I would have the opportunity
 7        to submit a brief that's contemporaneous
 8        with Mr. Klein.
 9                    HEARING OFFICER WOOLEY:  I
10        understand or I'm lead to believe that you
11        do this on a regular basis, in which
12        point --
13                    MR. DIEDERICH:  I've never had a
14        hearing like this.
15                    MR. KLEIN:  Never had a hearing.
16                    HEARING OFFICER WOOLEY:  You
17        would know that what I will do is I will
18        submit to both of you my findings of fact
19        and recommendations, okay, at the same time
20        as submitting it to the Town Board.  I
21        would have thought that you would have
22        known that.
23                    This hearing is now closed.
24                    (Whereupon, the Hearing was
25                    concluded at 5:24 p.m.)
```

1

2                    C E R T I F I C A T I O N

3

4

5            I, Lora J. Curatolo, RPR,

6       Certified Shorthand Reporter, Certificate

7       No. 1031-1, and Notary Public, do hereby

8       certify that I recorded stenographically

9       the proceedings herein at the time and

10      place noted in the heading hereof, and that

11      the foregoing transcript is true and

12      accurate to the best of my knowledge, skill

13      and ability.

14            IN WITNESS WHEREOF, I have

15      hereunto set my hand this 11th day of

16      November 2006.

17

18

19      _____
        LORA  J.  CURATOLO,  CSR,  RPR

20

21

22

23

24

25

**EXHIBIT P**

**MICHAEL D. DIEDERICH, JR.**
*Attorney at Law*
**361 Route 210**
**Stony Point, NY 10980**
**(845) 942-0795**
**(845) 942-0796 (fax)**

SEP 2 5 2006

September 21, 2006

Supervisor Kleiner, Councilwoman Manning,
Councilman Morr, Councilman O'Donnell
& Councilman Troy
Town of Orangetown
26 Orangeburg Road
Orangeburg, NY 10962

Re: <u>Chief Nulty v Lt. Wetzel</u> – motion that Town Board end the Town's improper, illegal and retaliatory disciplinary proceedings

Dear Honorable Councilmembers:

This letter is written to you on behalf of my client, Lt. Lorraine Wetzel, in connection with the above disciplinary proceedings.[1]  You already have Mr. Lance Klein's letter to you dated September 7, 2006, urging you to disregard my client's motion (request) to you, written in Mr. Klein's role as the prosecuting attorney in this disciplinary case.  I disagree with Mr. Klein, and urge you to carefully consider what I write below, as is your duty as the Town's elected representatives.

Please consider this my client's motion for Town Board action to terminate the disciplinary proceedings.  One grounds is technical: that you as the Town Board have apparently authorized Joseph Wooley to be a "hearing officer," yet you have not, and cannot, delegate authority to him to act for you, to find facts and make recommendations to you under the Rockland County Police Act ("Police Act"), you have neither expressly made a delegation and have not promulgated any rule or regulation under the Police Act permitting Mr. Wooley to preside over a hearing such as this.   The Notice of Charges against my client states that she has the "right" to trial before the Town Board, which right is not being allowed.

The other grounds for my client's motion is much more basic: due process, fundamental fairness, and respect for the law (including federal law prohibiting retaliation for the exercise of federal statutory and constitutional rights).   Respectfully, I am not alone among people attending this disciplinary trial who have observed that it appears to be a mockery of the concept of a fair hearing.

I will discuss these issues below.  Respectfully, because basic respect for the rule of law

---

[1] As you know, I represent Lt. Wetzel and other plaintiffs in litigation against the Town of Orangetown and its Police Chief. This is not intended as a communication regarding the subject matter of those cases. Moreover, I expect any and all responses to this letter to be through your attorney(s).

is at stake, Orangetown's respect for the law, I urge you to immediately consider the matters set forth below regarding these disciplinary proceedings.

### Background

My client, Lt. Wetzel, was the second female police officer appointed in the history of the Town of Orangetown. She then became its first female sergeant. And she thereafter became, in 2001, 2004 and 2005, the candidate for promotion with the best credentials for promotion (i.e., objectively measured by the statutory criteria of the Rockland County Police Act --seniority, meritorious police service and superior capacity as show by civil service score).[2]  The Town Board eventually concluded that she should be promoted (perhaps also noting the U.S. District Court's decision of September 2005 allowing discrimination claims to proceed), and promoted Sgt. Wetzel to the rank of Lieutenant in January 2006, where she has performed competently ever since.

Two years ago, on September 3 and September 7, 2004, Chief Nulty preferred disciplinary charges against Sgt. Wetzel. An upcoming lieutenant promotional opportunity was in the works in 2004/2005, and disciplinary charges could certainly undermine Sgt. Wetzel's candidacy for such promotion.    In mid-July 2004, Sgt. Wetzel also filed an amended federal complaint of discrimination against Chief Nulty and the Town of Orangetown, and in late August, 2004, my Letter to the Editor describing the gender "glass ceiling" in the Town was published in the local newspaper Our Town. A week or so after the Our Town article, Chief Nulty preferred the disciplinary charges against her dated September 3 and September 7, 2004.

*Attempted extortion of a settlement by the Town*

The disciplinary charges remained pending through all of 2005 without, as far as I am aware, any notice to my client regarding the Town's intentions. In late 2004 and most of 2005, I was on active duty with the US Army in Iraq and therefore unable to actively represent Sgt. Wetzel. In September, 2005, the federal court judge handling my client's case issued a ruling allowing most of her discrimination claims to proceed. In January, 2006, the Town Board promoted Sgt. Wetzel to the rank of Lieutenant, presumably based upon merit, and not the federal court decision.

After Lt. Wetzel's promotion in 2006, I assumed there would be no further action taken on the 2004 disciplinary charges. The attorney for the Town and the Police Chief contacted me in January 2006 and asked that I propose a settlement, which I did. Thereafter, to my astonishment, the attorney for the Town and the Police Chief, Mr. Lance Klein, not only refused to negotiate with me regarding the federal case, but wrote me a letter which, in my opinion, can be fairly viewed as attempted extortion—that absent Lt. Wetzel dropping (or settling on Mr. Klein's terms) her federal lawsuit opposing unlawful discrimination, he would prosecute the disciplinary charges against Lt. Wetzel regarding supposed events of 2004. Mr. Klein's words:

---

[2] A State Court judge determined that there was a "rational basis" for promoting other individuals in 2001 and 2004 (Lt. Mecurio and Admin. Lt. Butterworth). Such ruling is not a determination of who was actually the best qualified, but only, in deference to the Town Board, whether there was a "rational basis." My client was most qualified, and not promoted due to discrimination, as I am confident a federal jury will decide in the pending federal lawsuit (the lawsuit which Mr. Klein refused to negotiate).

*Diederich Law Office*           *Page 3*           *9/21/2006*

"It would be a shame for your client, as the first female Lieutenant in the department, to be the first Lieutenant disciplined."

I gave Mr. Klein the benefit of the doubt, by not regarding his obnoxious threat as anything other than an ill-advised expression of frustration on his part. I simply could not imagine the Town, through Chief Nulty, pursuing a disciplinary trial against an officer whom it had just promoted, especially a high ranking police officer as accomplished and professional as is Lt. Wetzel.

### Disciplinary proceedings begin on short notice & abusive in nature

Unfortunately, I was wrong. I learned on the Friday afternoon before Independence Day weekend that a disciplinary trial would begin on July 11, 2006. This essentially gave me 4 work days to prepare the case which I had presumed would not occur, and regarding which my client had been given no advance warning, not even notice that a hearing officer had been appointed. I requested an adjournment of the trial (even mentioning that I had pre-scheduled Army Reserve duty). My adjournment request was denied by Mr. Wooley (after Chief Nulty's attorneys, the attorneys who presumably arranged for the trial date, opposed my request absent my client withdrawing certain discovery requests made in the federal lawsuit). Although reasonable adjournments are virtually <u>always</u> given this type of proceeding, none was granted here.

The trial began on July 11, 2006. The refusal to grant an adjournment was merely the first of many actions designed by Chief Nulty's lawyer, Mr. Klein, to deprive my client of basic legal rights, and designed to be as unfair and unreasonable as he could manage. Other examples include failure to:

- o provide advance notice to the PBA attorney or me that a hearing officer had been appointed (namely, Mr. Wooley, by Town Board Resolution 441 of May 22, 2006), thereby making it impossible to discuss pretrial and scheduling matters with him;

- o provide a Bill of Particulars providing necessary detail as to the charges,

- o provide necessary information about the manner in which the proceedings would be handled (e.g., procedures for obtaining the testimony of town employees[3] or evidence in the Police Department's possession);

- o require the town to identify the witnesses the Town intended to offer,

- o explain why the matter was being tried before a hearing officer, when the Notice of Charges indicated trial before the Town Board.

- o Require production of evidence of obvious relevance and necessity to the defense of the case, but which Hearing Officer Wooley characterized, incorrectly, as mere "discovery" and thus available only to the prosecution.

- o Require production even of paperwork prepared by my client on the date in

---

[3] As discussed further below, Chief Nulty's counsel requested, and of course Hearing Officer Wooley agreed, that Lt. Wetzel must bear the burden and cost of issuing a subpoena for other police department or Town employees, and that then, when the witness are present to testify at the hearing—an official town proceeding—the town employees will not be paid. This is unprecedented; and an outrageous financial penalty for providing testimony for a co-worker.

> question, such as overtime sheet, and production of her own Memo Book which the department had taken.

- o Require that I be provided with copies of trial transcripts to which my client is entitled, and which the town has already purchased (these being in Mr. Klein's possession).

- o Exclude what appear to be illegally obtained private telephone conversations between "Nicole" and "Frank", eavesdropped upon by Chief Nulty's "investigators," and used without Nicole or Frank's consent (and notwithstanding their objection) as the principal evidence against Sergeant Wetzel.

## Mr. Klein's conflicting roles as public prosecutor & private advocate

I must also point out that I find it quite improper that the Police Chief's personal attorney, Mr. Klein, is the municipality's prosecutor of these charges. A public prosecutor in a case such as this, acting on behalf of the government and thus the people, has the moral duty, if not the ethical duty found in a criminal case, to ensure that justice is done, not simply to obtain a "conviction."

Here, Mr. Klein has amply demonstrated his desire to conduct as unfair, costly and burdensome a disciplinary proceeding as he can muster. His aim is obviously an attempt to enhance Chief Nulty's litigation posture in the federal case, and to "zealously" attempt to enhance Chief Nulty's posture in the federal case.

As a municipal "prosecutor," Mr. Klein has shown himself incapable of providing a fair and just proceeding. On the contrary, his conduct and action, including his apparent hand-picking[4] of the "judge" –Mr. Wooley—is to ensure a "conviction" regardless of the lack of evidence of wrongdoing regarding the frivolous (and manifestly trivial) charges.

### *Mr. Klein's confidence in obtaining a "conviction" from his hand-picked hearing officer, and the destruction of the potential for future promotion*

I presume that Mr. Klein had full confidence that Hearing Officer Wooley will find guilt even in the absence of evidence, and that this is why the Charging Party's case-in-chief was so minimal. I presume Mr. Klein expected that Lt. Wetzel would be permitted to say some words in her defense (without being provided with specifics of what was alleged against her, or permitted evidence in the Town's possession with which to defend herself). Hearing Officer Wooley could then be expected to agree with Mr. Klein's arguments (perhaps rejecting a few to maintain the façade of fairness), find guilt, and then make a recommendation to the Town Board. Mr. Klein or his colleagues would advise you, as Town Board, to accept Mr. Wooley's findings and recommendations, and point out that Lt. Wetzel's recourse would be an article 78 proceeding (and thus suffer additional burden and expense).

---

[4] Neither Mr. Klein nor Mr. Wooley will disclose the history, nature and extent of their personal and/or professional relationships. It is obvious that Mr. Wooley has presided over prior hearings with Mr. Klein and/or his law firm, Keane & Beane, P.C.

And after beating Lt. Wetzel up once, Chief Nulty and Mr. Klein will have the opportunity to do so again, with the second set of charges (those of September 3, 2004). With this second set of charges, separated from the first set in order to portray Lt. Wetzel as a "repeat offender," and prosecuted in a similar manner as the first, Chief Nulty and Mr. Klein will have destroyed my client's opportunity for future promotion, and perhaps even provoke her into early retirement.

Most police officers would reasonably conclude that it is wiser to accept a small penalty, even if innocent of charges, than to suffer the adverse consequences (cost, career advancement, aggravation, etc.) of defending against charges. Police officer disciplinary trials are exceedingly rare in Rockland County. Lt. Wetzel may be the first police lieutenant <u>ever</u> tried on disciplinary charges in <u>all</u> of Rockland County, or perhaps the entire Hudson Valley.

Of course, if serious misconduct were involved, the status of being a 26 year career officer, holding high rank, should not provide immunity to be tried on disciplinary charges. Yet here, there is <u>no</u> misconduct is alleged. The Notice of Charges alleges only neglect of duty, stated 11 different ways, through 11 different charges, and 58 repetitive specifications stating, basically, nothing. Furthermore, these charges were preferred by Chief Nulty without any reasonable inquiry. Sgt. Wetzel was not asked about her duty activities on the evening in question (when she was the Headquarters Sergeant and OIC), nor was Sgt. Flannery, nor was Officer Holihan, nor was Town Judge Phinney (with whom Officer Holihan and Sgt. Wetzel discussed a detainee, Frank Dowd, and his girlfriend, Nicole Colandrea), nor were Mr. Dowd or Ms. Colandrea interviewed regarding these disciplinary allegations. And incidentally, Mr. Dowd has provided testimony for my client, as will his girlfriend, Ms. Colandrea.[5]

My client refuses to plead guilty to baseless charges designed by Chief Nulty (or more likely, his attorney, Mr. Klein) to discredit her abilities, damage her reputation, and hurt her federal lawsuit. Yet my client is always willing to receive constructive criticism and professional advice, as she does with her own police subordinates.

However, let me point out that no education, training, advice or constructive criticism was offered by Chief Nulty or his staff to Sgt. Wetzel regarding her alleged July 7, 2004 deficiencies. Nor was any education, training, advice or constructive criticism given to Sgt. Flannery (a 42 year police veteran), nor to Officer Holihan (a veteran and former NYPD officer), regarding their alleged July 7, 2004 deficiencies.[6] Nor was Lt. Wetzel counseled, educated or

---

[5] Their private and highly personal telephone conversations were eavesdropped upon by the Town, and used as evidence against my client in the public disciplinary proceedings. Mr. Dowd had filed a report of police brutality against other officers in connection with the events of July 7, 2004, as he received several stitches to his face. No disciplinary charges were brought against those officers.

[6] Sgt. Flannery does not believe he was guilty of anything. It is possible that Officer Holihan is innocent as well, and railroaded into accepting an insignificant penalty rather than face a trial (and charging Holihan time accruals for attending the hearing amounting to more than any penalty under the "settlement"). Moreover, it appears from the evidence at Lt. Wetzel's trial that the charges against Officer Holihan may, in fact, be baseless.

Sgt. Flannery is informed that he still has disciplinary charges pending against him, even though he retired in December 2004! This effectively prevents him from providing testimony on Lt. Wetzel's behalf, because Sgt. Flannery is concerned these charges could destroy pension rights. Thus, it appears that Police Nulty and Mr. Klein are holding retired Sergeant Flannery hostage to 2004 disciplinary charges so that he will not provide truthful testimony favorable to Lt. Wetzel.

trained regarding her alleged deficiencies of July 4, 2004.    The conclusion to be drawn is that Chief Nulty had and has no interest in correcting any alleged performance deficiencies of July 4 or July 7, 2004.    Chief Nulty's (or perhaps more accurately, Mr. Klein's) goal toward Lt. Wetzel is to discredit her in order to weaken (if not cause her to abandon) her federal discrimination claims.

This is certainly a rare proceeding, and one which is utterly unwarranted.    It is retaliatory conduct which is disgraceful and disreputable

My client's response to Chief Nulty and Mr. Klein is that she refuses to be intimidated by these bully tactics.    My client does, however, hope that the Town Board will now recognize these disciplinary proceedings for what they are—abusive and retaliatory—and to direct that the proceedings end immediately.

Yesterday, September 20th, was the sixth day of the disciplinary trial.    The abusive continued, and in outrageous fashion.[7]    Chief Nulty and Captain Zimmerman are scheduled to continue their testimony on October 17th.

### Disciplinary proceeding should be dismissed

Consistent with what I describe above, at the first day of hearing Chief Nulty's attorney offered only minimal evidence as his case in chief—the testimony of Cpt. Zimmerman and some audio tapes.    This evidence was patently insufficient to establish any of the 11 charges and 58 specifications contained in the September 7, 2004 charges.    Yet Hearing Officer Wooley, on the next day of trial, August 4th, denied my motion to dismiss all charges.    In fact, Hearing Officer Wooley refused to dismiss any charges, even a charge which recited an obviously nonsensical (and obviously mistaken) section of a police department regulation.

*Trial motion to dismiss*

On August 4, 2006, I made a motion to dismiss which included jurisdictional objections, and objection that the Town Board did not specify that only September 7, 2004 charges were to be heard.    I renewed this motion to dismiss on September 6, 2006, in part because Hearing Officer Wooley indicated on August 4th that he had no authority to dismiss charges (which is true, of course, because he has no delegation of authority by the Town Board to act on its behalf in any respect).

Thus, the appropriate entity to consider this motion to dismiss is the Town Board itself.

For reasons as yet unexplained to me, ten days after my August 4th motion to dismiss came the Town Board's "amendment" of its Resolution 441 of May 22, 2006, appointing Mr. Wooley with Resolution 600 of August 14, 2006, which specified that the September 7, 2004

---

[7] For example, Mr. Klein refused to provide video equipment to play video evidence which he himself previously introduced into evidence. He argued that I would bring in my own TV and video player. Mr. Wooley requires that I submt written argument on this topic. This is absurd.

As to more substantial matters, Mr. Wooley, at Mr. Klein's request, refused to require the Town to produce computer-generated FOB data entries which could easily refute some of the central allegations against her. Mr. Wooley even prevented Captain Zimmerman from answering my question whether this evidence could be easily provided in a matter of minutes.

charges were what Mr. Wooley was appointed to preside over (though without actually delegating to him authority to act in place of the Town Board.). Neither my client nor I were given advance notice that the Town Board was considering an after-the-fact resolution limiting the hearing to the September 7th charges. Obviously, Resolution 600 was the result of *ex parte* communication from Chief Nulty (or his representatives) to the Town Board (or its members).

As indicated above, we have had 5 days of trial already, and I anticipate several more days. Your hearing officer and your prosecuting attorney are working hand in hand, it appears, to make this proceeding a mockery of justice. The hearing officer appears to be acting as the proverbial "hanging judge," not only in his conduct and demeanor, but also in that he has:

- o  refused to allow me to put on the overwhelming evidence that the trial is in blatant retaliation for my client's pursuit of non-discrimination and gender fairness by the Town (and I note that Civil Service Law § 75-b expressly permits a retaliation defense);

- o  refused to allow evidence that the Chief of Police himself took made no genuine effort whatsoever to investigate the matters which he accuses Lt. Wetzel of not having investigated, even though the Chief, under my examination, professed that he viewed the information brought to his attention as "serious" and involving potential "domestic violence."[8]  Such hypocrisy is certainly relevant, especially when personnel actions are supposed to be based upon fairness, and where leadership should be by example.

- o  refused to permit me to explore whether these proceedings are malicious in nature, and designed solely for the purpose of coercing Lt. Wetzel into "pleading guilty" to charges for the Chief's use in justifying her non-promotion in 2001, 2004 and 2005.[9]

- o  refused to direct Chief Nulty's attorney provide a copy of the hearing transcripts to me, even though Lt. Wetzel is entitled to a copy, and the Town has (or will) pay for all copies. This refusal can only be viewed as designed to disadvantage the defense. [10]

---

[8]  Thus, Chief Nulty charged Lt. Wetzel with not investigating "harassment" and "domestic violence," even though Lt. Wetzel had obtained an opinion from Judge Phinney's on this issue that very evening. Moreover, Chief Nulty did not direct any investigation of whether the woman caller, "Nicole", suffered from domestic violence, or perhaps was a "battered spouse" An investigation, if the Chief had directed one, would show Nicole was not a victim in any way, and that she was never a complainant. Thus, an investigation would have shown that Lt. Wetzel's initial judgment was not only sound, but also was perfectly correct.

[9]  After all, potential punishment here is termination of employment, and destruction of a 26 year police career where my client has become the second police lieutenant in the history of Rockland County.

[10]  Astonishingly, my client is also being denied her right to copies of governmental documents, and timely response to requests made by her, under the N.Y.S. Freedom of Information Law. This violation is, it seems to me, a transparent effort to deny her access to documents relevant to the disciplinary proceedings against her. I request that this obstruction cease, and that timely and proper responses be furnished. As but one example, there is no justification for the Police Department (or its attorney, Mr. Klein) to withhold transcripts of these public disciplinary proceeding, which transcripts are paid for (or will be paid for) by town taxpayers. Nor should the "settlements" negotiated by other officers be withheld, as the N.Y.S. Freedom of Information Law requires disclosure.

- o refused to compel the Town to produce evidence relevant to the case;[11]
- o refused to instruct the Police Chief's representatives that the Town cannot penalize witnesses for testifying in these proceedings. (Witnesses whom I have subpoenaed in this case are being charged time accrual if they are required to testify during their work shift. This appears unprecedented. It appears to be an outrageous effort to create hostility toward Lt. Wetzel and obstruct her defense.)

Notwithstanding that these proceedings amount to a charade, and a "conviction" likely assured the moment Mr. Wooley was appointed on the presumed recommendation of Mr. Klein,[12] I will nevertheless do my best to defend against the charges, and to make a "record"[13] here.

You, the Town Board, should not be surprised by this letter request to you, as any reasonable inquiry on your part would have revealed that these proceedings are retaliatory in nature, unlawful, malicious and motivated by the Police Chief's self-interest.

Thus, I request that you consult with independent legal counsel, and then review and grant my motion here, which I also made on September 6, 2006 (and which I requested Hearing Officer Wooley to forward to you, the Town Board). I ask you to stop this abusive prosecution of Lt. Wetzel. I urge you to consider the public interest, not political self-interest, as the Town's elected officials.

### The Town Attorney should recuse herself; *Ex parte* contacts are wrong

It seems to me that Town Attorney Teresa Kenny and her office appear to be actively cooperating with and assisting Mr. Klein (Keane & Beane, P.C.) with his prosecution of these disciplinary charges against Lt. Wetzel. This, in my opinion, is highly improper. She should be impartial. The Town Board is legally obligated to remain neutral and impartial regarding the disciplinary charges against Lt. Wetzel.

Accordingly, I request that Ms. Kenney cease and desist from lending assistance and cooperation to the Police Chief's attorney, Mr. Klein, in these proceedings, and that she recuse herself from providing further advice to the Town Board in this matter. Some of my reasons for suggesting that Ms. Kenney is unable to provide impartial legal advice to the Town Board, in addition to what I have said above, include the following:[14]

---

[11] For example, at the September 14th session, well over an hour of time was spent on the single issue of identifying the time of telephone calls at issue in this case, placed to and from the Orangetown Police Department. We finally obtained the times, which is evidence further relevant to Lt. Wetzel's complete innocence. Your prosecuting attorney, Mr. Klein, has intentionally kept this and a large amount of other evidence from the defense. He views his job as one of disclosing as little evidence or information to Lt. Wetzel as possible, because he sees his role as convicting her of charges at all costs. This is not how an employer, especially a public employer, should treat its loyal employee, a senior manager, whose only "wrong" is having the courage to fight discrimination.

[12] Let me state that I do not have any direct knowledge of the circumstances surrounding Mr. Wooley's appointment, or whether Mr. Klein specifically recommended him, and so this is merely my <u>opinion</u>, and strong suspicion and surmise on my part, not a statement of fact. You, Town Board, presumably know these facts (and you can also ask your Town Attorney for further information).

[13] Let me note that Mr. Wooley frequently directs the stenographer to go "off the record", notwithstanding my protests, so that I am unable to preserve my objections on a written transcript, or comment upon irregularities.

[14] I intend no personal attack upon Ms. Kenny, whom I have always viewed as a well-intentioned and professionally

a.  as stated in the footnote below, Ms. Kenney office is extremely reliant upon the advice and guidance by the law firm Keane & Beane, P.C., whose partner, Mr. Klein, is defending both Chief Nulty and the Town in several federal lawsuits against him, including defending against my client's federal claims of discrimination, deprivation of constitutional rights, and retaliation.

b.  Ms. Kenney, by allowing these disciplinary charges to proceed to this point, now has a vested interest that there be a finding of guilt, as it will be very embarrassing for her and her office to have allowed these proceedings to advance to this stage, at such great cost and in such an abusive and unfair manner, against an innocent policewoman, my client.

c.  Ms. Kenney and Keane & Beane, P.C. undoubtedly discussed their recommendation(s) regarding the selection of Mr. Wooley as hearing officer in these disciplinary proceedings. Thus, she has a personal interest in backing his appointment and continuing role.

d.  Ms. Kenney may have previously expressed the opinion that my client is guilty of disciplinary infractions. I believe such opinion would be based solely upon the input of Chief Nulty's lawyer, Mr. Klein, and not based upon the review of any evidence whatsoever.

e.  Related to this, I believe that Ms. Kenney was undoubtedly involved with the Town Board's decision to authorize and fund disciplinary proceedings against Lt. Wetzel. Thus, again, Ms. Kenney has an interest in these proceedings concluding with a recommendation of guilt, even where such recommendation will not be supported by an impartial evaluation of evidence.

f.  Ms. Kenney knows that there are no rules of procedure or practice established by the Town Board in connection with Rockland County Police Act disciplinary proceedings. Yet her office has authorized disciplinary proceedings here, against my client, without rules of practice or procedure, apparently to allow such proceedings to be conducted in as unfair a manner as the Police Chief's attorney can muster.[15]

g.  I presume, for example, that Ms. Kenney is aware that my client is being docked pay, or must use personal time, to attend her own disciplinary trial (thereby imposing, especially after adding attorney fees, subpoena fees and other costs, a far greater financial penalty in defending against the charges than she would have suffered by acquiescing to the "settlement"[16] proposed by

---

courteous lawyer. I only suggest that as a part-time attorney, Ms. Kenny undoubtedly must place great reliance upon the advice and guidance of the Town's labor and employment law counsel, Keane & Beane, P.C. in labor and employment law matters. This White Plains law firm, as you know, is defending the Town in several federal lawsuits.

[15] I will check my correspondence, but my recollection is that no written settlement proposal was made to me by Mr. Klein after I began formally representing Lieutenant Wetzel in these disciplinary proceedings. He indicates that a settlement proposal was made. I have asked him for a copy of any such proposal.  ??????

[16] The proposed settlement offered to Lieutenant Wetzel included a proviso that she admit guilt in connection with

the Police Chief and his attorney).

h.  I presume likewise that Ms. Kenney is aware that witnesses called by me forfeit pay for attending these proceedings -- which action by the Town is designed to influence the witnesses against Lt. Wetzel, to create animosity toward her, and to make unmistakably clear to her police colleagues that anyone opposing Chief Nulty's police administration will face adverse financial consequences and retribution.

i.  Ms. Kenney has actively obstructed my efforts to obtain evidence relevant to these disciplinary proceedings by:

A.  presumptively allowing the Town to continue to hold disciplinary charges over retired Sgt. Dennis Flannery, notwithstanding his December 2004 retirement, for the purpose of preventing him from being able to testify. Sgt. Flannery possesses evidence favorable to Lt. Wetzel, but was prevented on September 6, 2006 from providing such testimony by Hearing Officer Wooley, after the objection of PBA attorney Joseph Baumgartner[17] that charges against Sergeant Flannery remained pending by the town. I immediately requested the Chief Nulty to withdraw all pending charges against Sergeant Flannery, so that he could testify, which Mr. Klein refused to do.

B.  not consenting to testimony by Assistant Town Clerk Teresa Sebastian relating to Town Board Resolution 600 of August 14, 2006, amending the appointment of Hearing Officer Wooley by Town Board Resolution 440 of May 22, 2006, which testimony may have revealed the Chief's or his attorneys *ex parte* contacts with Ms. Kenney, as representative of the Town Board.

C.  Not herself consenting to testify as to her office's involvement with Resolution 600, which resolution was passed 10 days after I made jurisdictional and procedural objections pertaining to, among other things, irregularities and defects regarding the appointment of Mr. Wooley as a hearing officer.

j.  Ms. Kenney apparently directed the Town Clerk's office to deliver to her the originals and all versions of the Town Board agenda and minutes for August 14, 2006. I believe this documentation will confirm that notice of the subject matter of Resolution 600 was not provided to the public, nor to my client, prior to the Town Board meeting. I request the Town Board or Town

---

these (bogus) disciplinary charges, and that such "coerced confession" could then be used against her in the federal discrimination lawsuit. Essentially, a disciplinary settlement would become a public admission of guilt, where in contrast the town has adamantly insisted that the settlements of other officers regarding September 2004 disciplinary charges confidential. This again demonstrates the police chief's desire to coerce Lieutenant Wetzel into abandoning her federal constitutional rights, and her opposition to gender discrimination.

[17] Mr. Baumgartner formally represented Lt. Wetzel regarding these disciplinary charges. He refused to provide testimony on her behalf when I called him as a witness, and continues to refuse to provide testimony.

Attorney to correct me if I am wrong in concluding that the published agenda was revised <u>after</u> the town board meeting to include the subject matter of Resolution 600. This would appear to be action designed to deceive the public, Lt. Wetzel and me.

### Request for Town Board review and action

I request that you, the Town Board, or your legal counsel (whom I suggest the independent counsel, not the Town Attorney or Keane & Beane, P.C.) review the hearing transcript in the disciplinary case, through the conclusion of the Charging Party's (Chief Nulty's) case in chief, and then grant Lt. Wetzel's motion to dismiss all charges against my client.

As to the September 7, 2004, charges, it is inexcusable, and abusive, for the Police Chief, as an official of the Town responsible to the Town Board, to continue to prosecute these retaliatory disciplinary charges where:

- o the Town's police administration never properly investigated the events at issue (not even seeking information from Sgt. Wetzel as to her activities during the time in question, over two years ago), .

- o where the Town Board has failed to promulgate rules and regulation designed to ensure fair and impartial hearings under the Police Act, and

- o where the <u>centerpiece</u> of Chief Nulty's case against Lt. Wetzel is one telephone call to police headquarters, from "Nicole," which Sergeant Wetzel answered, and which telephone call and surrounding circumstances fail to establish neglect, dereliction or misconduct on Sergeant Wetzel's part. <u>See</u>, attached copy of "Nicole-Wetzel audio transcript of July 7, 2004.

As to the September 3, 2004, charges, I request that you, the Town Board, dismiss the those disciplinary charges, upon which no evidence was presented during the pending disciplinary trial being presided over by Hearing Officer Wooley. The town board gave no written authorization to Chief Nulty to prosecute only one of the two sets of charges he made in September 2004 (charges dated September 3 and September 7, 2004), until the Town Board acted on Resolution 600, passed on August 14, 2006, which was 10 days <u>after</u> the Charging Party had finished his case in chief.

I request that you immediately instruct Chief Nulty to drop disciplinary charges against retired Police Sergeant Dennis Flannery, so that he will be able to testify on my client's behalf.[18]

The Town Board and Town Attorney should be aware that these baseless disciplinary charges serve no *bona fide* purpose, but are rather intended to oppress plaintiff for her pursuit of

---

[18] Sergeant Flannery worked on the same shift as Sergeant Wetzel on the date in question. He retired in December 2004, as he had reached mandatory retirement age (under his § 384-e retirement plan). He was served with disciplinary charges in September 2004 after he had mentioned possibly changing his retirement plan to § 375 to permit postponing his retirement. Those charges, which seem to be unfounded accusations, are the first blemish on Sergeant Flannery's <u>42 year police career</u>. It appears that Chief Nulty is holding Sgt. Flannery's retirement hostage to supporting him against Lt. Wetzel.

gender fairness in the Police Department. Moreover, charges like these against a police supervisor can only serve to undermine respect for the chain of command, and create doubt in the minds of police officers regarding their supervisors, and the police administration. These charges serve the wrongful purpose of potentially damaging plaintiff's reputation, diminishing her standing in the eyes of her peers and her subordinates, and the disciplinary proceedings have become a tool for creating resentment toward Lt. Wetzel by docking the pay of police officers who testify at these proceedings. Chief Nulty's testimony that this disciplinary trial is a corrective tool is absurd.

My client is also being denied her basic due process right to "confront her accuser." Chief Nulty, though he signed the disciplinary charges against Sergeant (now Lieutenant) Wetzel, had little if any memory as to the information presented by his "investigators" of the charges. He apparently could not recall who provided him with information about the various charges, other than that it might have been from (retired) Cpt. Sullivan, Det. Lt. McAndrew, Lt. Mecurio or Cpt. Zimmerman.

Denying my client the ability to identify, and confront, her accuser or accusers is an abuse by Hearing Officer Wooley, and again suggests that he is acting as the Charging Party's agent, to hinder my client's the ability to defense her innocence. It is absurd that Hearing Officer Wooley will not permit me to examine Chief Nulty regarding the factual basis of each and every allegation which Chief Nulty asserted against my client, in signing a formal notice of charges.

### Attorney submissions to Town Board

Chief Nulty's attorney, Mr. Klein, forbids me from communicating with the Town Board, under threat of his lodging a professional ethics complaint against me. However, Mr. Klein has no authority, nor right, to forbid me to request you to stop these improper, unlawful, retaliatory and utterly unprecedented disciplinary proceedings which you, as a town government, have authorized.

Implicit in Mr. Klein's September 7, 2006, letter to you is the suggestion that you should permit these disciplinary proceedings to continue – proceedings which, as described in part above, are a mockery of the very concept of a fair trial. If you are a town government with integrity, and responsible to the Rule of Law and American notions of justice and fairness, you will direct these disciplinary proceedings to cease immediately.

I am well aware of my ethical obligations as an attorney, and I require no instruction from Mr. Klein. Absent the written consent of the Town Attorney, I will not seek to communicate with the Town Board (including supervisor Kleiner) regarding any pending litigation to which the town is a Party.[19] Moreover, I will not attempt to petition you, the Town Board, for the redress of grievances on Lt. Wetzel's behalf, even though I believe this is my client's First Amendment right.

Please therefore do not mistake anything which I write in this letter as constituting a petition to you. It is not. This letter is a request (motion) to you as the entity which, it appears, is permitting these abusive proceedings, and regarding which you may become the ultimate

---

[19] So that there is never any misunderstanding on this point, let me instruct you, Town Board members, to please not speak to me about any pending litigation, absent your attorney's express written consent.

adjudicator.

Thus, on all litigation matters, you will need to obtain my views on behalf of Lt. Wetzel indirectly, through your attorneys Keane & Beane, P.C., which White Plains law firm you have chosen to represent you, and Chief Nulty, in connection with my client's pending federal lawsuits.[20]

### *Conclusion*

I respectfully request that the Town Board direct that these retaliatory disciplinary proceedings against Lt. Wetzel cease, by immediately granting this motion to dismiss. Otherwise, you will be condoning, in my view, inexcusable and illegal action against my client, the second female police lieutenant in the history of Rockland County, and perhaps quite unfairly, in Mr. Klein's words, "the first Lieutenant disciplined."

Your prompt consideration and corrective action in this matter will be appreciated.

Respectfully submitted,

Michael D. Diederich, Jr.

cc:  Lance Klein, Esq.
     Keane & Beane, PC

     Teresa M. Kenny, Esq.
     Orangetown Town Attorney's Office

---

[20] Incidentally, let me state for the record that I object to Keane & Beane, P.C.'s simultaneous representation of the Town Board and Chief Nulty in the various matters involving my client. It seems to me there exists a rather obvious conflict of interest. I request the Town Attorney or independent counsel look into this issue.

**Wetzel:**      Orangetown Police

**Nicole:**      Hi… um… My name is Nicole my boyfriend was arrested earlier this evening…um… he just call… um he was arrested and they told me that they would let me know if he was released because he was very very drunk and he is very abusive when he is drunk. So I just received…um… one, two three phone calls from him in a row

**Wetzel:**      Well, who is your boyfriend

**Nicole:**      Frank Dowd

**Wetzel:**      You received three phone calls from him?

**Nicole:**      Yes just now from the Orangetown Police Department cause I have caller ID…

**Wetzel:**      Yes

**Nicole:** …and he keeps calling and I'm wondering did they let him out?

**Wetzel:**      No, he is down in our holding cell

**Nicole:**      Oh he is in he holding cell, very good. Ok so he'll be there all evening?

**Wetzel:**      That I can't tell you

**Nicole:**      Oh alright, cause you know, like, I'm not going to be able to sleep cause he's still very drunk, cause when he's not drunk he does not call me names, he's calling me three times in a  row still calling me abusive names and…

**Wetzel:**      Do you want to sign a charge?

**Nicole:**  Well I'm just trying to figure out if, you know, he's out, if he's…

**Wetzel:**      He's in the holding cell

**Nicole:** Yeah

**Wetzel:**      Let me put you down to the arresting officer

**Nicole:**   Alright thank you

**Wetzel:**      Ok

# EXHIBIT Q

# MICHAEL D. DIEDERICH, JR.
*Attorney at Law*
**361 Route 210**
**Stony Point, NY 10980**
**(845) 942-0795**
**(845) 942-0796 (fax)**

December 10, 2007

Supervisor Kleiner
Councilmembers Manning, Morr, O'Donnell & Troy
of the Town Board
Town of Orangetown
26 Orangeburg Road
Orangeburg, NY 10962

Re: <u>Chief Nulty v Lt. Wetzel</u> – statement to Town Board (not addressing merits of case)
*Renewal of motion that Town Board dismiss the improper, illegal and retaliatory
disciplinary proceedings*

Dear Honorable Councilmembers:

You have given me only 5 minutes, so I will read a condensed version of the longer letter which I am furnishing to you. I have been informed by the Town Attorney that I cannot argue the merits of the Wetzel disciplinary case, or comment on the evidence, and so I will not do so here, but nevertheless continue my request that you provide me with such opportunity as I have requested in the letters I sent to the Town Attorney and the Town Board last week. I believe 90 minutes would be a reasonable amount of time to comment upon the evidence, and lack thereof.

This is the first time you have listened to me concerning my client, Police Lt. Lorraine Wetzel. It is perhaps the first time you have seen anything I have written or stated. My client is in her 28th year of service in your police department. You promoted her to the rank of Lieutenant in January 2006. The disciplinary charges at hand concern events from July 2004—in other words, events which occurred 18 months prior to Lt. Wetzel's promotion.

Almost immediately following Lt. Wetzel's promotion, I received a letter from your attorney, Mr. Lance Klein, which essentially threatened that Lt. Wetzel should either drop her federal lawsuit, which opposed unlawful discrimination, or face disciplinary charges regarding the July 2004 events. Mr. Klein's precise words to me:

"It would be a shame for your client, as the first female Lieutenant in the department, to be the first Lieutenant disciplined."

Mr. Klein's words, made on the Town's behalf, threatened my client's employment, her good name and her unblemished professional reputation if she refused to discontinue her federal lawsuit opposing unlawful discrimination.

Does there exist a gender "glass ceiling" in your police department, preventing the

advancement of female police officers in this Town? Is there gender discrimination in the police department? Let me ask: Were any females hired by Chief Nulty until my client sued? The answer is No. Has Chief Nulty ever recommended any woman for promotion, or to be made a detective? As far as I know, No. Have female officers left the department out of frustration, including your very first female police officer, Sgt. Barbara Noyes. The answer is Yes.

A few words about Lt. Wetzel. As a civilian, even before becoming a cop, Lt. Wetzel received an Orangetown PBA award for heroism in rescuing Patrolman Kevin Nulty, now Chief Nulty, from a dangerous situation. Retired Orangetown Sgt. Ed Fitzgerald said this about Lorraine Wetzel (in testimony under oath on August 1, 2006 regarding the candidates for promotion to the rank of lieutenant, the Fitzgerald deposition transcript, at page 41, reads):

> "Lorraine was the best sergeant I had ever seen when she became a sergeant. If it was between myself and Lorraine and she was number three on the lieutenant's list and I was number one…, she should get promoted, and I wouldn't say that about very many people, I wouldn't say it about anybody else on that job. Lorraine Wetzel was probably the best supervisor that job has seen in years and years."

Her record supports Sgt. Fitzgerald's assessment. After becoming the second female police officer in the history of the Town, she became its first female police sergeant, and then its first female police lieutenant (the second female police lieutenant in the history of the county). Reaching the rank of lieutenant was not easy, and I will not describe that battle here, except to briefly comment that the governing law—the Rockland County Police Act—says that police promotions must be based upon the following three criteria:

- seniority,
- meritorious police service, and
- civil service exam score.

Lt. Wetzel had 3 times the experience and service than the male chosen in 2001, and again much more than the male chosen in 2004. Six weeks or so after she protested her 2004 non-promotion in federal court, Chief Nulty placed the disciplinary charges against her. I think any reasonable person examining the facts would view this was wrongful discrimination and retaliation.

On behalf of Lt. Wetzel, I have been challenging the discrimination and political cronyism ever since. Lt. Wetzel has sought to be reasonable. For example, shortly after you promoted her to Lieutenant in January 2006 (which was shortly after my return from a year in Iraq and shortly after Lt. Wetzel won a motion in federal court), I proposed reasonable settlement. Because she had been promoted, Lt. Wetzel had every reason to want an amicable resolution of the federal case. Yet you, the Town Board, refused to negotiate. Mr. Klein, on your behalf, made no counteroffer whatsoever.

Instead, on your behalf, Mr. Klein embarked on a campaign of abusive legal tactics designed to coerce Lt. Wetzel into submission. You have probably spent, I estimate, over $100,000 in Town taxpayers' money (you have Keane & Beane's invoices and can add up the exact numbers) in pursuing this disciplinary case against Lt. Wetzel—a case which is, in my opinion, designed as an illegitimate, retaliatory charade. As to this being a sham proceeding, I direct your attention to the legal papers I submitted in Wetzel 3, which papers were due on


Diederich Law Office                    *Page 3*                    12/10/2007

November 30th. The next business day, December 3rd, the Town Attorney advised me that the disciplinary case would be one of tonight's agenda items.

Let me digress for a moment to talk about money. Your outside counsel, Keane & Beane, have billed the Town of Orangetown over $1 million over the past few years, for police "personnel matters." What has this small Town received for such a huge expenditure of taxpayer funds? Not much! Rather, in my opinion, the Orangetown taxpayers have paid a great deal of money to enable Orangetown officials to abuse Orangetown civil servants and even your own citizens. (You can see the details by examining the litigation papers in the following federal cases: Wetzel 1, Wetzel 2, Wetzel 3, Wetzel 4 and Colandrea v Orangetown.)

Let me give you one important example. Your attorneys, Keane & Beane, argued all the way to New York's highest court that you, the Town Board, and not an impartial, mutually agreeable arbitrator, should be the final adjudicator of police disciplinary matters. The Court of Appeals agreed. Thus, you became entitled to be the adjudicator of police disciplinary charges. But then what did you do? Instead of presiding over the case yourselves, as a board, as is done in Westchester, you appointed a lawyer who appears to have been hand-picked by Keane & Beane and Mr. Klein—the ostensible disciplinary prosecutor. You appointed a hatchet man. You tell me if I am wrong.

I ask you to give me the 90 minutes I request to comment upon the disciplinary evidence, so that I can expose Report and Recommendation for what it is—a hatchet job. It is a document one would expect from a person selected by the Police Chief's attorney for the purpose of convicting his employee, regardless of the facts.

This form of abuse is insidious, and chills the rights of every Town employee who might someday need to report unlawful harassment or discrimination. At the end of the day, I hope the Town will see that she was fighting to uphold the Rule of Law, and fighting for equality under the law. She is a police officer who respects the law, and in whom the Town should take pride.

### Request for Recusal

I represented the plaintiffs in the taxpayer matter, Morgan v. Orangetown, challenging this Town Board's retroactive gifting of pension benefits to its members. As the Journal News pointed out in an editorial, my litigation likely caused the election defeat last month of two of you, Mr. Morr and Mr. O'Donnell, and both of you, together with Councilman Troy, publicly disputed the allegations of the taxpayer lawsuit against you.

Thus, I ask the three of you to recuse yourselves from deciding this disciplinary matter. It is, in my opinion, impossible for you to be fair towards Lt. Wetzel in light of my public interest advocacy. Absent dismissing the charges, you should adjourn this matter, so that the newly composed Town Board can address it.

### Conclusion

Let me suggest appropriate punishment in this case: First, you should discipline your police chief, Chief Nulty, for allowing the discrimination, the retaliation, the huge waste of public funds, and the other wrongdoing which have taken place here. Second, you should discharge your outside counsel, Keane & Beane and Mr. Klein, who have profited greatly at the



expense of the Town's taxpayers, and at the expense of justice. And I suggest that the Town seek from Keane & Beane a refund the $1 million in tax dollars paid to them.

As a lawyer, I take on some cases because I view them as public interest cases. This is one of those cases. Here, this evening, I have presumed for the sake of discussion that you, the Town Board, are uninformed or unfamiliar with the abuse which has been directed at Lt. Wetzel. I have described just a small portion of the abuse in this letter. I will conclude by asking that you "do the right thing," by dismissing all 2004 disciplinary charges against Lt. Wetzel. If you are unwilling to do so, then I must insist that I be provided an opportunity to provide a meaningful response to the accusations against Lt. Wetzel, to reasonable comment upon the evidence presented against her and the lack thereof, and to make appropriate "motions" to you regarding this disciplinary matter.[1]

There is no bona fide reason for this disciplinary case against Lt. Wetzel, nor reason to punish her. The only lesson that you will teach if you impose punishment is that opposing unlawfulness will result in reprisal. I request that you do the right thing, by dismissing all charges. Thank you.

Respectfully submitted,

Michael D. Diederich, Jr.

cc: Lance Klein, Esq.
    Keane & Beane, PC
    Teresa M. Kenny, Esq.
    Orangetown Town Attorney

---

[1] *Please also consider that, despite Mr. Klein's representations in his letter dated December 7, 2007 to Town Attorney Kenny—which I deem to be constructively a letter to you—I have not been afforded an opportunity to provide a Closing Statement in the disciplinary matter, nor to comment upon the evidence, nor to provide Lt. Wetzel's side of the case to you, the Town Board. Most fundamentally, if the Town Board has any interest in treating its civil servants fairly, it must employ fair procedures in a non-retaliatory proceeding conducted by an impartial adjudicator (e.g., the Town Board itself, less non-impartial members).*

# EXHIBIT R

FEB.21.2008    5:41PM    KEANE & BEANE

# KEANE & BEANE, P.C.

ATTORNEYS AT LAW
445 HAMILTON AVENUE
WHITE PLAINS, NEW YORK 10601
(914) 946-4777
TELEFAX (914) 946-6868
www.kblaw.com

STEPHANIE L. BURNS
MEMBER
ALSO ADMITTED IN NJ

February 21, 2008

**VIA FACSIMILE (914) 390-4179**

Hon. Stephen C. Robinson, U.S.D.J.
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

# MEMO ENDORSED

Re:    Wetzel v. Town of Orangetown, *et al.*
       08 Civ. 0196 (SCR)

Dear Judge Robinson:

Keane & Beane, P.C. has been asked to represent the Defendants in the above-referenced action. We have communicated with Plaintiff's counsel concerning the Defendants' intention to move to dismiss this action. The attorneys have agreed upon the following schedule, which we submit to Your Honor for approval:

> Motion to dismiss filed on or before March 28;
>
> Papers in opposition to the motion filed on or before May 2; and
>
> Reply papers filed on or before May 16.

Currently, the initial case management conference in this action is scheduled on May 9, 2008. Plaintiff's counsel has written separately to Your Honor requesting an adjournment of this conference to a date after May 28 or after the disposition of the motion proposed herein. Defendants have no objection to such an adjournment.

Thank you for your consideration of this matter.

**APPLICATION GRANTED**

*Stephen C Robinson*

HON. STEPHEN C. ROBINSON    2/25/08

Respectfully submitted,

*Stephanie Burns*

Stephanie L. Burns (SB 3467)

SLB/pe
cc:    Michael Diederich, Jr., Esq.
       (via facsimile (845) 942-0796)

USDC SDN
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

1868/121/333967 V1 2/21/08

**EXHIBIT S**

# KEANE & BEANE, P.C.

ATTORNEYS AT LAW
445 HAMILTON AVENUE
WHITE PLAINS, NEW YORK 10601
(914) 946-4777
TELEFAX (914) 946-6868
www.kblaw.com

LANCE H. KLEIN
PRINCIPAL MEMBER
ALSO ADMITTED IN NJ

March 27, 2008

VIA FACSIMILE 914-390-4179

Hon. Stephen C. Robinson, U.S.D.J.
United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

**MEMO ENDORSED**

Re:   *Wetzel v. The Town Board of Orangetown, et al.*
      08 Civ. 0196 (SCR)

Dear Judge Robinson:

Keane & Beane, P.C. represents the Defendants in the above-referenced action. I write to request a brief one week adjournment of the So-Ordered schedule for a motion to dismiss the Complaint. I seek this adjournment because I have been unavailable to work on the motion due to the so-ordered depositions in *Buddenhagen, et ano. v. City of Beacon, et al.*, 04 Civ. 290 (SCR)(MDF) and my colleague who is assisting me in this action, Stephanie L. Burns, Esq., has been very ill since last week. Plaintiff's counsel has not responded to my request for this adjournment, which was sent yesterday evening by facsimile. A one week adjournment of the existing motion schedule would result in the following schedule:

Motion to dismiss filed on or before April 4;

Papers in opposition to the motion filed on or before May 9; and

Reply papers filed on or before May 23.

Thank you for your consideration of this request.

Sincerely,

Lance H. Klein/sf
Lance H. Klein

Plaintiff sent letter consenting to adjournment.

LHK/pe
cc:   Michael D. Diederich, Jr., Esq.
      *via facsimile* 845-942-0796

1868/121/335771 V1 3/27/08

DATE FILED:
DOC #:
ELECTRONICALLY FILED
DOCUMENT
**APPLICATION GRANTED**

Stephen C Robinson  3/25/08

HON. STEPHEN C. ROBINSON

# EXHIBIT T



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LORRAINE WETZEL,

            Plaintiff,

         v.

TOWN OF ORANGETOWN, et al.

            Defendants.

06 Civ. 5144 (SCR)(MDF)

<u>ORDER ADOPTING
REPORT AND
RECOMMENDATION</u>

---

**STEPHEN C. ROBINSON, District Judge:**

      Plaintiff Lorraine Wetzel brings this action against the Town of Orangetown, its Chief of Police Kevin Nulty, and Town Supervisor Thom Kleiner. Plaintiff seeks a declaratory judgment for violation of her First Amendment rights to free speech and to petition government. Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). This motion was referred to Magistrate Judge Mark D. Fox for a report and recommendation. Judge Fox recommended that the motion to dismiss be granted. For the reasons below, this Court adopts Judge Fox's recommendation.

## I. Facts

      A detailed factual background can be found in Judge Fox's report and recommendation. In short, plaintiff is a Lieutenant in the Orangetown Police Department. In December 2003, plaintiff initiated an action before this Court ("*Wetzel I*", No. 03 Civ. 9896), alleging gender discrimination in promotions in the Orangetown Police Department. In September 2004, plaintiff was served with two sets of disciplinary charges, which she alleges were retaliatory.

      Plaintiff alleges that defendants have forbidden her, through her attorney, from addressing the Town Board and Supervisor in a public forum, placing a chilling effect and a prior restraint on her First Amendment rights. Plaintiff alleges that the prior restraint is the result of a warning from defendants' attorney that if plaintiff's attorney directly communicates with the town leadership with respect to the pending litigation or disciplinary proceedings, he will be the subject of a professional ethics complaint pursuant to N.Y. Code of Professional Responsibility DR 7-104, which bars attorneys from communicating with a represented party.

## II. Analysis

### A. Standard of Review

      In reviewing a report and recommendation, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate, to which no timely

1

objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citations omitted). *See also Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991) (court may accept report if it is "not facially erroneous"). However, a district court judge is required to make a *de novo* determination as to the aspects of the report and recommendation to which objections are made. 28 U.S.C. § 636 (b)(1); *United States v. Raddatz*, 447 U.S. 667, 673-674 (1980); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). Here, petitioner timely filed objections to Judge Fox's entire report and recommendation and it will therefore be reviewed *de novo*.

## B. 12(b)(1) Standard

This court must decide the jurisdictional question first. *Telemedia Partners Worldwide v. Hamelin Ltd.*, No. 95 Civ. 2452, 1996 U.S. Dist. LEXIS 1118, *10 (S.D.N.Y. January 31, 2006) In deciding a motion to dismiss for lack of subject matter jurisdiction, this Court accepts all factual allegations as true. *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). Plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. *Id.*

## C. Standing

Judge Fox recommended that the complaint be dismissed because plaintiff lacks standing to assert her claims. Reviewing this recommendation *de novo*, this Court agrees. "Article III requires [a court], as a threshold matter, to determine whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Bordell v. General Electric Co.*, 922 F.2d 1057, 1060 (2d Cir. 1991)(internal quotations omitted); *see also Selevan v. N.Y. Thruway Auth.*, 470 F. Supp.2d 158, 166 (N.D.N.Y. 2007).

"[T]he irreducible constitutional minimum of standing contains three elements: (1) there must be an injury in fact, -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Port Wash. Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 498 (2d Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))(internal quotations omitted).

Plaintiff has failed to establish an injury in fact which is either actual or imminent. First, plaintiff does not have standing to challenge the restraint on her counsel's right to address the elected officials of the town. *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 373 (N.D.N.Y. 2003)("Considerations of agency and constitutional law compel the conclusion that there is no First Amendment right to appear through an agent (including a licensed attorney) at a regularly scheduled, non-adversarial Board meeting").

Second, Orangetown Police Department General Order 130 prohibits plaintiff from contacting, regarding a police matter, the Town Supervisor or members of the Town Board except through regular channels or by permission of the Police Chief. Plaintiff in this case only sought

2

permission from the Police Chief to address the Town Supervisor or Town Board, but made no attempt to go through any other channel to address these persons.

Moreover, to the extent that plaintiff does have standing with respect to her right to speak to the Town Supervisor or Town Board regarding her disciplinary hearing, plaintiff has failed to state a claim because such speech would not be constitutionally protected. General Order 130 establishes that a police officer may not contact the Town Supervisor or members of the Town Board on a police matter. Such a restriction comports with the Supreme Court's pronouncement in *Garcetti v. Ceballos* that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S. Ct. 1951, 1950 (2006). Put another way, if an employee can be disciplined, pursuant to *Garcetti*, for speech related to their employment, such speech can also be curtailed before it occurs.

Third, there is no allegation that plaintiff attempted to contact the Town Supervisor or Town Board regarding any matter other than her disciplinary proceeding. Indeed, defendants have indicated to plaintiff that she may address the Town Board regarding any matters other than the pending disciplinary proceeding. *Amended Complaint Ex. 2.*

Accordingly, plaintiff has failed to establish any actual or imminent constitutional injury and therefore has failed to establish standing to bring her claim. To the extent that plaintiff does having standing with respect to her right to address the Town Board regarding her disciplinary proceeding, her complaint fails to state a claim.

In addition to dismissing plaintiff's federal claims, this Court declines to exercise supplemental jurisdiction over her state law claims. *See* 28 U.S.C. § 1367(c)(3). These claims are therefore dismissed.

## III. Conclusion

For the reasons stated above, this Court adopts Judge Fox's well-reasoned report and recommendation in its entirety. Defendants' motion to dismiss is granted. The complaint is dismissed. The clerk of the court is directed to close the case.

*It is so ordered.*

White Plains, New York
Dated: _October  1 2_, 2007

Stephen C. Robinson
United States District Judge

3

**EXHIBIT U**

(1 of 2)

≫AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

LORRAINE WETZEL,
          Plaintiff

V.

TOWN OF ORANGETOWN, KEVIN NULTY,
THOM KLEINER, ROBERT ZIMMERMAN,
KEANE & BEANE, P.C., LANCE H. KLEIN,
JOSEPH E. WOOLEY, and
"JOHN DOE," each in their official and
individual capacities,

          Defendants.

---------------------------------------------------------

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:   06-CIV 6117 (SCR)

TO: (Name and address of Defendant)

    Lance Klein, Esq.
    Keane & Beane PC
    445 Hamilton Ave
    White Plains, NY 10601

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

    Michael D. Diederich, Jr
    361 Route 210
    Stony Point, NY 10980

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON,

DATE    7/9/7

CLERK

(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

LORRAINE WETZEL,

                    Plaintiff,

        -against-

TOWN OF ORANGETOWN, KEVIN NULTY,
THOM KLEINER, ROBERT ZIMMERMAN,
KEANE & BEANE, P.C., LANCE H. KLEIN,
JOSEPH E. WOOLEY, and
"JOHN DOE," each in their official and
individual capacities,

                    Defendants.

-------------------------------------------------------------------

**AMENDED COMPLAINT**
FOR POST-JUNE 2004
DISCRIMINATION & REPRISAL
("*Wetzel 3*")

06 CIV 6117 (SCR)  "*ECF Case*"

## Complaint's Preliminary Statement

*This complaint ("Wetzel 3")[1] seeks damages for Defendants' gender discrimination and reprisal against the Plaintiff, Lt. Lorraine Wetzel, after she filed an amended complaint in July 2004 in her previous action (03 Civ. 9896 (SCR)). This post-complaint wrongdoing includes harassment, refusing again to promote her in January 2005, and most egregiously, pursuing retaliatory disciplinary charges and, when she refused to discontinue her federal lawsuit, a disciplinary trial staged by the municipal Defendants outside counsel (Defendants Keane & Beane and Klein) to ensure a conviction by Defendants' "for-hire" hearing officer (Defendant Wooley).*

*Besides discrimination and reprisal, the complaint seeks damages against the Town's outside law firm and partner, and their for-hire hearing officer, for their wrongful actions in conspiring to stage a fraudulent disciplinary proceeding; for their professional misconduct in making false and misleading statements to various governmental entities including this Court and the town board; and for their use of illegally eavesdropped telephone conversations between two citizens, the unlawful fruits of which were used against Lt. Wetzel.*

*Finally, the Town Supervisor and police management were fully aware that the actions being undertaken against Lt. Wetzel were retaliatory and wrongful, and injurious not only to Lt. Wetzel, but also to the civil service, to public integrity, and to the administration of justice.*

*In sum, the actions of the defendants, and especially the actions of the municipal Defendants' outside counsel and for-hire hearing officer, denied Lt. Wetzel the protection of various federal and state laws, and of equal protection under the law. Plaintiff seeks the remedies authorized by, inter alia, 42 U.S.C. §§ 1983, 1985, 1986, the Federal Wiretap Act, parallel N.Y.S. statutes, Judiciary Law § 487 and the common law.*

---

[1]  The original allegations herein were initially contained in "Wetzel 2" (06 Civ. 5144), but thereafter removed from that action, which is limited to Plaintiff's First Amendment right to petition claim.

# Complaint Table of Contents

Complaint's Preliminary Statement................................................................................................ 1

Complaint Table of Contents...................................................................................................... 2

THE PARTIES .............................................................................................................................. 3

JURISDICTION AND VENUE ALLEGATIONS......................................................................... 5

FACTS .......................................................................................................................................... 5

    PART I – ESSENTIAL FACTS ........................................................................................................ 5

    A.    Background & History.................................................................................................... 5

    B.    Chief Nulty signs retaliatory disciplinary charges in September 2004 ......................... 7

    C.    January 2005 Non-promotion ......................................................................................... 8

    D.    Chief's 2005 order that Plaintiff undergo a Gynecological exam, and unnecessary  "Sick Checks" ........ 9

    E.    Town Board promotes Plaintiff effective January 2006, despite Chief's opposition................................. 9

    F.    Chief's post-promotion reprisals for Plaintiff's refusal to abandon discrimination claims—a disciplinary trial................................................................................................................................... 10

        i.    Keane & Beane's (Lance Klein's) February 1, 2006 attempted extortion or coercion ............................ 11

        ii.    Defendants follow through on threat, by commencing a disciplinary trial on July 11, 2006................... 13

    PART II ASSOCIATED FACTS ...................................................................................................... 14

    G.    Events leading up to disciplinary charges against Sgt. Wetzel ..................................... 14

        i.    Frank Dowd's arrest on July 7, 2004 & subsequent excessive force complaint ..................................... 14

        ii.    Bogus nature of the disciplinary charges .............................................................................................. 15

    H.    A disciplinary trial designed by the Defendants as a sham proceeding, conducted as abusively as possible, with guilt a foregone conclusion................................................................................... 17

        i.    Cpt. Zimmerman as "Hatchet Man" for Chief Nulty ............................................................................ 18

    I.    Disciplinary charges—Chief Nulty's technique of discrimination, reprisal and intimidation against police officers ....................................................................................................................... 20

        i.    Legal challenge to impartial arbitration of disciplinary matters ............................................................ 22

    J.    Municipal & Law Firm's design of a bad faith Disciplinary prosecution against Plaintiff .................... 23

    i.    No discussion or counseling about alleged events of July 7, 2004 ......................................................... 23

    ii.    No untoward occurrence on July 7, 2004 ............................................................................................... 25

    K.    Disciplinary Trial Unfairness & Bad Faith ................................................................. 28

        i.    Unfairness even before the start of the disciplinary trial ...................................................................... 28

        ii.    Unfairness and abuse continue throughout the disciplinary trial ........................................................... 30

        iii. The false or misleading evidence of the first and only witness against Plaintiff, namely, Defendant Zimmerman........................................................................................................................... 31

        iv.    Intimidation of Defense Witnesses ....................................................................................................... 32

    L.    Pattern & practice of gender discrimination ............................................................... 36

        i.    "Kid glove" disciplinary treatment of misconduct by non-disfavored males highlights Defendants' discriminatory animus........................................................................................................... 37

        ii.    Plaintiff threatened with public disclosure of a (falsely) "blemished" record, whereas disciplined male officers who actually committed misconduct were not............................................................. 38

        iii.    July 4, 2004 disparate discipline ....................................................................................................... 38

    M.    "Hanging Judge For Hire"-- Hearing Officer Joseph E. Wooley............................... 39

        i.    Defendant Wooley's disciplinary trial conduct revealed that the "fix was in" ...................................... 40

        ii.    Defendant Wooley as a State actor and co-conspirator ......................................................................... 41

        iii. Not a quasi-administrative tribunal..................................................................................................... 41

2

N. Retroactive resolution a nullity ................................................................................ 42
   i. Defendant Wooley was without authority; the disciplinary hearing is a nullity ...................... 43
   ii. The individual Defendants are not entitled to immunity ........................................................ 44
O. Keane & Beane's role in orchestrating wrongdoing, including illegal release of audiotapes-- 42 U.S.C. §§ 1983, 1985 and 1986 violations .................................................................. 44
P. Defendants as State Actors without judicial or prosecutorial immunity ................................. 49
Q. Insufficient Butz factors for absolute immunity .................................................... 51
R. Defendant Chief Nulty's role .................................................................................. 55
S. Municipal policy and practice ................................................................................. 57
T. Timely EEOC charges-- exhaustion of Title VII remedies ........................................ 57

FIRST CLAIM FOR RELIEF— GENDER AND POLITICAL NON-AFFILIATION DISCRIMINATION IN DENYING PLAINTIFF A PROMOTION IN JANUARY 2005, IN VIOLATION OF 42 U.S.C. § 1983 AND TITLE VII .......................................................................................... 58

SECOND CLAIM FOR RELIEF— RETALIATION FOR EXERCISING FEDERAL RIGHTS UNDER 42 U.S.C. § 1983 AND TITLE VII .................................................................... 59

THIRD CLAIM FOR RELIEF— RETALIATION & DISCRIMINATION IN VIOLATION OF THE N.Y.S. HUMAN RIGHTS LAW ............................................................................... 60

FOURTH CLAIM FOR RELIEF— ABUSE OF PROCESS .................................................. 60

FIFTH CLAIM  DENIAL OF EQUAL PROTECTION ........................................................ 61

SIXTH CLAIM FOR RELIEF—— VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE AND PROCEDURAL DUE PROCESS ............................................................................. 61
   Defendants' Police Act scheme was not "random and unauthorized" wrongdoing .......................... 62
   Officially-sanctioned due process violations require a federal remedy .......................................... 63

SEVENTH CLAIM FOR RELIEF— CSL § 75-b AND COMMON LAW REMEDIES UNDER THIS COURT'S SUPPLEMENTAL JURISDICTION .......................................................... 67
   Civil Service Law § 75-b remedy for retaliation
   Common Law writs and Article 78
   Writ of Prohibition to prevent derivative use of illegal wiretap evidence ..................................... 68

EIGHTH CLAIM  CONSPIRACY, INTERFERENCE WITH, AND  FAILURE TO PROTECT PLAINTIFF'S FEDERAL RIGHTS, ACTIONABLE UNDER 42 U.S.C. §§ 1985 AND 1986 ............ 69
   Section 1985(2) – Obstruction of Justice ................................................................................. 71
   Section 1986 – Neglect to prevent ........................................................................................... 73

NINTH CAUSE OF ACTION – ATTORNEY DECEIPT, AND CONSENT TO COLLUSION, UPON COURT IN VIOLATION OF N.Y.S. JUDICIARY LAW § 487 .................................... 74

Exhibits ............................................................................................................................ 75

## THE PARTIES

1.    Plaintiff LORRAINE WETZEL, is and was at all times relevant herein a citizen of the United States and a resident of the Town of Orangetown, County of Rockland, State of New York.

2.    Defendant TOWN OF ORANGETOWN (hereinafter "defendant Town"), upon information and belief, is and at all times relevant herein, was a municipal corporation organized and existing under the laws of the State of New York, and located within Rockland County.

3

3.    Defendant KEVIN NULTY (hereinafter "defendant Nulty" or "Chief Nulty"), upon information and belief, is and at all times relevant herein, was a resident of the Town of Orangetown, County of Rockland, State of New York, and is sued both individually and as Chief of Police.

4.    Defendant THOM KLEINER (hereinafter "defendant Supervisor" or "Town Supervisor"), upon information and belief, is and at all times relevant herein, was a resident of the Town of Orangetown, County of Rockland, State of New York, and is sued both individually and as Town Supervisor.

5.    Defendant ROBERT ZIMMERMAN (hereinafter "defendant Zimmerman") is defendant Town's police captain and, upon information and belief, is resident of the Town of Orangetown, County of Rockland, State of New York.  He is sued in both his individual and official capacities.

6.    Defendant KEANE & BEANE, P.C., (hereinafter Keane & Beane) is a professional corporation, upon information and belief, duly organized and existing under the laws of the State of New York, with offices at 445 Hamilton Avenue, Suite 1500, in the City of White Plains, County of Westchester, State of New York, 10601.

7.    Defendant LANCE H. KLEIN is a principal member of Keane & Beane, P.C., and, upon information and belief, resides in Westchester County.

8.    Defendant JOSEPH E. WOOLEY is, upon information and belief, an attorney at law with offices at 15-6 Granada Crescent, City of White Plains, New York, 10603, and resides in Westchester County.

9.    Defendant JOHN DOE is a fictitious name representing one or more currently unknown persons taking part, or who may have taken part, in wrongful action intended to deprive Plaintiff of her federal and state rights, and is sued in his or her individual and official capacity.

10.    Upon information and belief, Defendant Town is an employer within the meaning of 42 U.S.C. § 2000e-(b).

11.    Upon information and belief, all individual defendants named herein have acted as "state actors" for purposes of, *inter alia*, 42 U.S.C. §§ 1983, 1985, 1986 and 1988.

## JURISDICTION AND VENUE ALLEGATIONS

12.    This court has jurisdiction over this action under 42 U.S.C. § 1983, the Fourteenth Amendments to the Constitution of the United States, Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, and the Federal Wiretap Act, as authorized under 28 U.S.C. § 1331 and § 1343(4).

13.    Supplemental jurisdiction exists under New York Law, including remedies under the N.Y.S. Bill of Rights, N.Y.S. statute, and the common law.

## FACTS

### PART I – ESSENTIAL FACTS

#### A. *Background & History*

14.    Plaintiff is a 27 year veteran of the Defendant Town of Orangetown's police department.

15.    As a civilian, and prior to applying to become a police officer for the town, Plaintiff received a written commendation from the Orangetown Policemen's Benevolent Association in 1977 for extraordinary actions taken by her in November 1977 essentially rescuing future police chief Nulty from a potentially very dangerous situation which he faced as a patrolman.

16.    Plaintiff was hired as a police officer in 1980 (the Town's second female police officer), and was subsequently promoted to the rank of sergeant in 1990 (becoming the Town's first female sergeant) and, since 2001 fought for the right to be treated equally with men regarding promotion to the rank of lieutenant.[2]

17.    In 2001, Plaintiff filed a New York State article 78 petition alleging, *inter alia*, that she was wrongfully denied promotion in January 2001 due to gender discrimination.

18.    In December 2003, Plaintiff filed a federal complaint alleging, *inter alia*, gender discrimination by the defendant Town and defendant Nulty, including discrimination resulting in Plaintiff's non-promotion to the rank of lieutenant in January 2001.

19.    On or about July 12, 2004, Plaintiff filed an amended/supplemental complaint (hereinafter "**2004 Federal Complaint**"), adding new post-2003 claims, including reprisal and discriminatory refusal to promote her in January 2004.

20.     The 2004 Federal Complaint alleged, *inter alia*, that as to the objective criteria for promotion set forth in the Rockland County Police Act[3] (hereinafter "Police Act"), Plaintiff, a woman, possessed an equivalent civil service examination score and approximately two to three times more seniority and meritorious service than the male candidates chosen for promotion in 2001 and 2004.

21.     Upon information and belief, reprisal and threats have been a *modus operandi* of Defendant Nulty with regard to Plaintiff's opposition to unlawful discrimination. See, Chronology attached hereto as Exhibit "1".

22.     At around this same time (July-August 2004), Defendant Nulty and his administration began (illegally) examining audiotaped telephone conversations between two citizens (detainee Frank Dowd and Nicole Colandrea), and exploring the possibility of bringing (baseless) disciplinary charges against Plaintiff Wetzel.

23.     For example, shortly after Plaintiff's 2004 Federal Complaint, Defendant Nulty, upon information and belief, made comments to a local newspaper, OUR TOWN, which publicly disparaged Plaintiff, belittled her, and publicly disputed that discrimination was afoot.

24.     Upon information and belief,  Chief Nulty's making statements to the OUR TOWN reporters regarding one of his own subordinates, a Town employee, was unprecedented, unprofessional and evidenced discriminatory and retaliatory animus toward Plaintiff Wetzel.

25.     Thereafter, Plaintiff's attorney wrote a response, which was published on or about August 23, 2004,  in the same local Orangetown newspaper, OUR TOWN.  The letter to the editor from Plaintiff's attorney expressed the view that defendant Nulty's police department had created a "glass ceiling" preventing the promotion of female police officers.

26.     On September 3, 2004, judgment was entered in the Rockland County Clerk's Office regarding an N.Y.S. Article 78 Proceeding relating to the Police Act challenge to Plaintiff's January 2004 non-promotion.  On September 7, 2004, Plaintiff was served with notice of entry of that judgment.[4]    As alleged below, these are also the precise dates of disciplinary charges against Plaintiff Wetzel.

---

[2]  Through her legal challenges, Plaintiff finally was promoted to the rank of lieutenant in January 2006, but not without  being subjected to further threats, abuse and retaliation alleged herein.
[3]  See, Rockland County Police Act, Chapter  526 of the N.Y.S. Laws of 1936, *as amended*.  This is a special State law.   Section 7 of the Police Act sets forth criteria for promotion.
[4]   Plaintiff brought an article 78 proceeding in 2001, and another in 2004, both of which (the 2001 article 78 proceeding through trial) focused on Defendants' noncompliance with the Rockland County Police Act (Chapter

**B. Chief Nulty signs retaliatory disciplinary charges in September 2004**

27.    Upon information and belief, based upon the 2004 Federal Complaint, the above mentioned August 2004 OUR TOWN letter to the editor, and the article 78 dismissals, Chief Nulty decided to undertake reprisal, which reprisal was also designed to sabotage Plaintiff's upcoming January 2005 promotional opportunity.

28.    On September 3, 2004 and September 7, 2004, Defendant Nulty signed departmental disciplinary charges against Plaintiff.

29.    The disciplinary charges in sum and substance alleged "failure to supervise" police subordinates properly on July 4 and July 7, 2004.

30.    Upon information and belief, Defendant Keane & Beane PC and its attorney, Defendant Lance Klein (together the "**law firm Defendants**") prepared and/or assisted in the preparation of such disciplinary charges, and gave Chief Nulty, Defendant Zimmerman, Supervisor Kleiner and the Defendant Town (together the "**municipal Defendants**") advice thereon.

31.    Upon information and belief, these disciplinary charges were not prepared in good faith, and had no reasonable and legitimate basis in fact.

32.    These September 2004 disciplinary charges were the first and only disciplinary charges made against Plaintiff in her entire 27 year police career with the Orangetown Police Department.

33.    Prior to these charges, Plaintiff had an unblemished police record, and the disciplinary charges do not allege that she committed misconduct herself, but essentially allege failure to supervise.

34.    Upon information and belief, the municipal Defendants did not even attempt to speak to her about the alleged events, to gather factual information or hear "her side of the story."

35.    No progressive discipline was sought or applied.

---

526 of the N.Y.S. Laws of 1936, *as amended*) regarding its statutory criteria for promotion of police officers, namely, seniority, meritorious police service, and superior capacity as shown by civil service examination. Gender discrimination was not the focus of the 2001 article 78 trial, nor was any claim for gender discrimination asserted in the 2004 article 78 preceding (as Plaintiff was already pursuing federal remedies through an EEOC charge of discrimination and ultimately her federal action).

36.     Upon information and belief, it is impossible to discern from the face of the charges precisely what Plaintiff is alleged to have done wrong. Upon information and belief, these disciplinary charges were for wrongful purposes, not corrective action and discipline.

37.     Upon information and belief, the disciplinary charges against Plaintiff were unrelated to duty performance, but rather were improperly motivated by discriminatory animus and retaliation for Plaintiff's opposition to unlawful discrimination, and as such also designed to sabotage Plaintiff's candidacy for a January 2005 promotion.

## C.  January 2005 Non-promotion

38.     Upon information and belief, Plaintiff was the most qualified candidate for selection to promotion for the promotional opportunity to be filled in or around January 2005.

39.     In particular, upon information and belief, Plaintiff was somewhat better qualified for promotion than the police sergeant selected for promotion, Sgt. James Brown.

40.     Upon information and belief, Sgt. Brown and Plaintiff were both much better qualified for promotion than the two politically-connected male sergeants promoted in 2001 and 2004, Sgts. Anthony Mecurio and Donald Butterworth, whose promotions were staged prior to Sgt. Brown's by Defendant Nulty and Defendant Town for the purpose of avoiding accusations of gender discrimination.

41.     Specifically, upon information and belief, by promoting Mecurio and Butterworth first, Defendant Nulty sought to defuse a claim of gender discrimination because he could point to Sgt. Brown as being a male with similar credentials as Plaintiff being denied promotion along with Plaintiff.

42.     Defendant Chief Nulty and Defendant Town could then subsequently promote Brown, and with such promotion argue the absence of gender discrimination because Brown had very similar credentials to Plaintiff's with the promotion therefore within the bounds of reasonable discretion.

43.     Upon information and belief, a reasonable jury can find that Plaintiff's gender and opposition to unlawful discrimination by the Defendant Town and its police chief was and continued to be a motivating factor for her non-selection for promotion to the rank of lieutenant in or around January 2005.

8

#### D. *Chief's 2005 order that Plaintiff undergo a Gynecological exam, and unnecessary "Sick Checks"*

44.     Around the time Plaintiff was being again passed over for promotion, namely, the winter of 2004/2005, Plaintiff developed a serious medical condition ultimately requiring surgery -- a partial hysterectomy -- in early 2005.

45.     Upon information and belief, Plaintiff's illness provided an opportunity for Chief Nulty and his administration to harass her and to treat her differently than male police officers and police supervisors.  In particular, this differential treatment included demanding that Plaintiff undergo an unauthorized and invasive gynecological examination--a pelvic examination by a male physician who was a stranger to her.

46.     Upon information and belief, this physician was not a designated police surgeon nor authorized by the Town Board to conduct police physical examinations.

47.     Chief Nulty and his administration also subjected Plaintiff to unnecessary and demeaning "sick checks," namely, phone calls to her residence for the ostensible purpose of insuring that she was convalescing at home after her major surgery.

48.     At and prior to the time of the calls to Plaintiff's residence, Defendant Nulty knew that Plaintiff was recovering from major surgery.

49.     Defendants requirement of "sick checks" subjected Plaintiff to unnecessary telephone calls to her residence during her convalescence.

50.     Upon information and belief, a male police supervisor during a similar time period, and with a much less serious medical problem, was not subjected to such annoying and harassing scrutiny.

51.     These actions, particularly the directive of a gynecological examination by a male stranger, were very upsetting to Plaintiff, and caused her anxiety and emotional distress.

52.     Upon information and belief, these actions were designed to annoy and harass, and motivated by gender discrimination and reprisal against Plaintiff.

#### E. *Town Board promotes Plaintiff effective January 2006, despite Chief's opposition*

53.     In September 2005, this federal Court refused to dismiss various of Plaintiff's *Wetzel 1* discrimination and retaliation claims.

54.     Upon information and belief, this decision caused the Defendant Town to realize that if it did not promote Plaintiff to the rank of lieutenant, and Plaintiff subsequently prevailed

before a jury on her federal claims, Plaintiff's awardable damages against the Town could be very large.

55.     Accordingly, in its own self interest, to avoid a substantial potential award of damages against it, the defendant Town's town board and supervisor discussed, in or around December 2005, the subject of whether or not to promote Plaintiff.

56.     Upon information and belief, Defendant Nulty continued his improperly motivated and gender-biased opposition to Plaintiff's promotion.

57.     In December 2005, the Town Board voted to promote Plaintiff to the rank of lieutenant, effective in January 2006.

58.     Upon information and belief, the Town Board promoted Plaintiff even though on this particular occasion, Plaintiff was less qualified for promotion under the Police Act criteria for promotion than was another sergeant, Det. Sgt.Terence Hutmacher.

59.     Det. Sgt. Hutmacher had recently received a civil service examination score which made him eligible for consideration for promotion, and his seniority (length of time in rank as a sergeant) and meritorious service (gauged by length of good service) was greater than Plaintiff's.

60.     Thus, upon information and belief, the Defendant Town again discriminated on the basis of gender (this time "reverse discrimination"), and again ignored the applicable law (the Police Act), by discriminating against a better qualified male officer (Sgt. Hutmacher) in order to make up for its prior discrimination in its 2001, 2004 and 2005 promotions, where Plaintiff was best qualified.

61.     Upon information and belief, Defendant Nulty harbored, and continues to harbor, resentment that Plaintiff was promoted in 2006 by the Town Board over his non-recommendation and/or non-concurrence.

### F. *Chief's post-promotion reprisals for Plaintiff's refusal to abandon discrimination claims— a disciplinary trial*

62.     Upon information and belief, defendant Nulty never, at any time, recommended to the Town Board that Plaintiff be promoted to the rank of lieutenant.

63.     Upon information and belief, a significant reason that the Town Board promotion Plaintiff was her pending federal litigation, and the fact that approximately 3 months prior to the Town Board's decision to promote, this federal Court, by its decision in *Wetzel I* dated

September 5, 2005, allowed some or most of Plaintiff's federal claims to survive defendants' motion to dismiss.

64.    Upon information and belief, Defendant Nulty persists in refusing to recognize and respect Plaintiff's right to seek a judicial remedy for past and present discrimination and retaliation, and persists in harboring animosity toward Plaintiff, as reflected by his attorneys' conduct described next.

> ### i. *Keane & Beane's (Lance Klein's) February 1, 2006 attempted extortion or coercion*

65.    In January 2006, after Plaintiff's promotion to the rank of lieutenant by the Town Board effective January 2006, Defendant Klein contacted Plaintiff's attorney and requested that he propose resolution of the pending *Wetzel 1* federal lawsuit (03 Civ. 9896).

66.    Plaintiff's attorney responded with a proposal.

67.    Defendant Nulty's attorney rejected Plaintiff's proposal "out of hand," declined to submit any counterproposal, and instead promised that, if Plaintiff were to continue to pursue her federal rights in the *Wetzel I* lawsuit, she would face trial on the September 2004 disciplinary charges. See, annexed Exhibit "2" (L. Klein letter dated February 1, 2006 (redacted).

68.    In particular, in his letter dated February 1, 2006, Mr. Klein wrote Plaintiff's counsel, in part, as follows:

> "I also held the mistaken belief that you and your client realized the consequences of the two (2) disciplinary charges pending against her. I can assure you that those cases will be prosecuted as soon as the Court of Appeals makes its determination as to who will hear the charges. It would be a shame for your client, as the first female Lieutenant in the department, to be the first Lieutenant disciplined. (*emphasis added*)

69.    Upon information and belief, at the time he wrote his February 1, 2006 letter, Mr. Klein was writing on behalf of both defendant Town and defendant Nulty.

70.    Upon information and belief, Mr. Klein's February 1, 2006 letter sought to extort a settlement or discontinuance of Plaintiff's legitimate federal claims by the threatened prosecution of disciplinary charges.

71.    Upon information and belief, Mr. Klein's letter constituted an abuse of legal process, an improper and unethical threat to prosecute disciplinary charges to gain advantage in a civil litigation, and constituted reprisal for Plaintiff's right to pursue her federal statutory and constitutional rights.

72.     Upon information and belief, Mr. Klein's letter also constituted, upon information and belief, the crime of attempted extortion or attempted coercion, and likely violated New York State laws such as N.Y.S. Penal Law § 155.05(e) and/or § 135.60, and federal criminal laws such as 18 U.S.C. § 241 (conspiracy against rights), § 14141 (pattern & practice by law enforcement), and the attempted violation of 18 U.S.C. § 875 (extortion).[5]

73.     Upon information and belief, defendant Supervisor Kleiner was aware of, and authorized his attorneys to undertake this abusive and illegal tactic in or around January 2006.

74.     Defendant Supervisor Kleiner was told, at his deposition conducted in *Wetzel 1* in July 2006, of Mr. Klein's February 1, 2006 letter and of Defendant Nulty's retaliatory actions toward Plaintiff in pursuing disciplinary charges, yet did nothing to stop the illegality though within his power as a Town Board member to seek corrective action.

75.     Upon information and belief, Town's councilman Dennis Troy was put on notice, during the *Wetzel 1* litigation, of Mr. Klein's February 1, 2006 letter and of Defendant Nulty's retaliatory actions toward Plaintiff in pursuing disciplinary charges, yet did nothing to stop the illegality though within his power as a Town Board member to seek corrective action.

76.     Upon information and belief, Town's councilman Denis O'Donnell was put on notice, during the *Wetzel 1* litigation, of Mr. Klein's February 1, 2006 letter and of Defendant Nulty's retaliatory actions toward Plaintiff in pursuing disciplinary charges, yet did nothing to stop the illegality though within his power as a Town Board member to seek corrective action.

77.     Town's councilman Thomas Morr became, upon information and belief, on notice of Mr. Klein's February 1, 2006 letter and of Defendant Nulty's retaliatory actions toward Plaintiff in pursuing disciplinary charges, yet did nothing to stop the illegality though within his power as a Town Board member to seek corrective action.

78.     Town's councilman Marie Manning was, during the *Wetzel 1* litigation, put on notice of Mr. Klein's February 1, 2006 letter and of Defendant Nulty's retaliatory actions toward Plaintiff in pursuing disciplinary charges, yet did nothing to stop the illegality though within her power as a Town Board member to seek corrective action.

---

[5] The crime of extortion is found at 18 U.S.C. § 875(d), which provides:

> Whoever, with intent to extort from any person…, any money or other thing of value, transmits in interstate … commerce any communication containing any threat to injure the property or reputation of the addressee or of another… , shall be fined under this title or imprisoned not more than two years, or both.

79.     Plaintiff reserves the right to request that these Town Councilmembers be made individual defendants if facts are uncovered that they intentionally discriminated and retaliated against Plaintiff Wetzel, or intentionally aided others in hindering, obstructing or denying Plaintiff federal rights.

### ii. *Defendants follow through on threat, by commencing a disciplinary trial on July 11, 2006*

80.     The municipal and law firm Defendants carried through with the threat contained in Mr. Klein's February 1, 2006 letter.

81.     In particular, because Plaintiff refused to be coerced into submission by agreeing to discontinue her 2004 Federal Complaint, the municipal and law firm Defendants began a disciplinary trial against her commencing on July 11, 2006, on the September 7, 2004 disciplinary charges, and over two years after the alleged events.

82.     Upon information and belief, the law firm Defendants advised and recommended that a disciplinary trial against Lt. Wetzel be undertaken, and that the law firm Defendants prosecute such trial, for the wrongful purpose of obtaining a litigation advantage over Lt. Wetzel in the *Wetzel 1* federal lawsuit.

83.     Upon information and belief, the Wetzel disciplinary trial was a sham proceeding and mere charade, designed as an abusive show trial with the intended purpose of finding Plaintiff's "guilty" regardless of the evidence presented.

84.     Upon information and belief, this trial was both unauthorized under State law, and taken in bad faith and maliciously designed.

85.     The Defendants refused to permit Plaintiff to put on a defense of retaliation, unequal treatment or selective prosecution at the disciplinary trial.

86.     Defendant Wooley refused to permit Plaintiff to introduce evidence of retaliation. He refused to consider or allow into evidence Defendant Klein's February 1, 2006 letter.

87.     Upon information and belief, this refusal to consider retaliation in the disciplinary proceeding against Plaintiff, a civil servant, violated N.Y.S. Civil Service Law § 75-b, by denying Plaintiff the right under § 75-b(3)(a) to assert the defense of retaliation.

88.     Upon information and belief, § 75-b(4) permits this federal court to adjudicate this matter here, as the retaliation defense was not permitted by Defendant Wooley in the disciplinary trial.

13

89.     Upon information and belief, other police supervisors (all male) have committed worse inefficiency or misconduct than that alleged against Plaintiff Wetzel in the September 2004 charges, yet have not faced formal disciplinary action.

90.     Upon information and belief, where disciplinary action has been taken against male police officers, such action has often not become part of their permanent personnel records, and not sought to be collaterally used by the municipal Defendants in collateral civil proceedings (such as a discrimination lawsuit).

91.     The disciplinary trial against Plaintiff Wetzel on the September 7, 2004 charges entailed a total of 9 days of testimony, concluding on November 1, 2006.

92.     Regardless of the ultimate Town Board resolution of the disciplinary charges, Plaintiff has suffered damages by being put through the sham and bad faith disciplinary process and 9 days of trial thereon, including an obligation for substantial attorneys' fees, suffered damages to her professional reputation, and suffered injury regarding her potential for future advancement within the department.

## PART II
### ASSOCIATED FACTS

### G.  Events leading up to disciplinary charges against Sgt. Wetzel

#### i.   Frank Dowd's arrest on July 7, 2004 & subsequent excessive force complaint

93.     Frank Dowd was arrested by the Defendant Town's police officer in Blauvelt, New York on July 7, 2004.

94.     As mentioned above, Plaintiff Wetzel filed her amended/supplemental "*Wetzel I*" federal complaint alleging gender discrimination on or about July 12, 2004, and related litigation and media events took place in August and early September, 2004.

95.     Upon information and belief, a few days or weeks after Mr. Dowd's arrest, Plaintiff was being investigated by Defendant Zimmerman, purportedly in connection with Frank Dowd's complaint of excessive force or police brutality regarding his July 7, 2004 arrest in Blauvelt, New York.

96.     Specifically, upon information and belief, after Mr. Dowd's head was injured during his arrest on July 7, 2004, in the presence of other officers at Sunset Road, Mr. Dowd was accompanied to Nyack Hospital by Police Officer Thomas Holihan.

14

97.     Upon information and belief, Officer Holihan acted in a decent, respectful and professional manner toward Mr. Dowd after Mr. Dowd's arrest at Sunset Road, including accompanying Mr. Dowd via ambulance to Nyack Hospital, and supervising him during the booking process at the police station.

98.     Upon information and belief, Officer Holihan permitted Mr. Dowd to make several telephone calls.

99.     The General Orders of the police department authorize police personnel to permit a detainee to make one or more telephone calls.

100.    Upon information and belief, arresting Officers are permitted by the Defendant Town's police department general orders, and by the custom and practice of the department, to allow detainees to make more than one telephone call.

101.    Upon information and belief, Officer Holihan did not advise Plaintiff Wetzel of his arrival at the police department with Mr. Dowd, or of his specific actions taken in booking Mr. Dowd on July 7, 2004.

102.    After bringing Mr. Dowd to the booking room, Officer Holihan eventually went upstairs to the headquarters area of the police department, where he spoke with Sgt. Wetzel about Mr. Dowd's condition and possible criminal charges.

103.    Upon information and belief, Officer Holihan and Plaintiff Wetzel also spoke with Orangetown Justice Paul Phinney concerning Mr. Dowd's arrest and possible criminal charges.

104.    Subsequently, upon information and belief, after Mr. Dowd's complaint of excessive police force, Defendants Zimmerman and Nulty accused both Officer Holihan and Sergeant Wetzel of having permitted Mr. Dowd to be unsupervised in the booking room.

105.    Upon information and belief, Officer Holihan was accused by defendants of permitting Mr. Dowd to make threatening and/or harassing telephone calls to his domestic partner, Ms. Colandrea.

### ii. Bogus nature of the disciplinary charges

106.    Upon information and belief, the disciplinary charges of September 3 and September 7, 2004 against Plaintiff are frivolous, made in bad faith, retaliatory, and discriminatory.

107.    The September 7, 2004 disciplinary charges, consisting of ten separate "charges," and numerous specifications, essentially allege failure to supervise in that police officers with whom Plaintiff worked (one subordinate and one senior, Sgt. Flannery) supposedly failed in their duties.

108.    However, nothing untoward occurred as a result of the alleged mistakes by the other police officer and sergeant.

109.    Upon information and belief, no citizen was injured nor written complaint made by any citizen.

110.    Upon information and belief, nor did any citizen make any complaint about Plaintiff's conduct or Plaintiff's supervision of others.

111.    On or about September 7, 2004, defendant Nulty filed disciplinary charges against Officer Holihan regarding the events of July 7, 2004.

112.    Upon information and belief, Officer Holihan was the only police officer facing disciplinary charges who had direct supervision of detainee Mr. Dowd on July 7, 2004.

113.    The law firm Defendants and Defendants Chief Nulty and Cpt. Zimmerman accused Sgt. Wetzel of indirectly permitting Mr. Dowd to make threatening and/or harassing telephone calls to Ms. Colandrea, through purported lack of supervision, even though Plaintiff Wetzel was never in Mr. Dowd's presence at any time when he was using the telephone in the downstairs booking room.

114.    For example, Charge IV of the September 7, 2004 disciplinary charges against Sgt. Wetzel state at specifications 8 through 12 as follows:

> Specification 8: On or about July 7, 2004, at approximately 9 p.m., Officer Holihan returned to Orangetown Police Headquarters from the hospital with Mr. Dowd for processing.
>
> Specification 9: On or about July 7, 2004, at approximately 9:00 p.m., Officer Holihan proceeded to process the arrest of Mr. Dowd.
>
> Specification 10: On or about July 7, 2004, between 9:00 p.m., and 10:45 p.m., Officer Holihan failed to properly process Mr. Dowd in that he allowed Mr. Dowd to make several telephone calls to the complainant from the booking room.
>
> Specification 11: The telephone calls made by Mr. Dowd included harassment and inappropriate language.
>
> Specification 12: On July 7, 2004, you failed to supervise Officer Holihan thereby allowing Mr. Dowd to make the inappropriate telephone calls to

16

the complainant.
*(emphasis added)*

115.   Upon information and belief, Plaintiff was handling headquarters alone that evening, as Defendant Zimmerman, the Squad Commander was absent.

116.   Upon information and belief, in July 2004, except during the "midnight shift," ordinarily at least two or three police supervisors were assigned to headquarters.

117.   During Plaintiff's shifts of duty on both July 4 and July 7, 2004, the municipal Defendants had her single-handedly supervise headquarters, by not providing a substitute for the absent Lt. Zimmerman.

118.   Upon information and belief, the municipal Defendants knew full well that the headquarters supervisor, if handling that duty as the sole supervisor, would need to handle at least some of the regular duties of the other supervisor.

119.   Upon information and belief, on September 7, 2004, Plaintiff had to perform her own duties as headquarters sergeant, plus at least some of Lt. Zimmerman's duties (in his absence), at a headquarters where her subordinates included a probationary officer (Officer Drane) and an officer with disciplinary problems (Officer Youngman).

120.   Plaintiff was given no notice whatsoever that there were accusations against her regarding the events of July 7, 2004 until two months or so after the alleged events, when she was served with formal charges, at which time her Memo Book, used for noting events, was taken from her.

121.   Upon information and belief, her Memo Book was taken from her for the purpose of depriving her of the ability to recollect events for which she now stood accused.

122.   Notwithstanding the purported seriousness of the disciplinary charges, the municipal and law firm Defendants were willing to "settle" these for very minor punishment or no punishment at all, on the condition that the settlement and/or charges could be used against her in her federal discrimination case, *Wetzel 1*.

123.   Upon information and belief, this was an unconstitutional condition, which also violated her Title VII rights.

### H.  A disciplinary trial designed by the Defendants as a sham proceeding, conducted as abusively as possible, with guilt a foregone conclusion

124.   Upon information and belief, the municipal and law firm Defendants decided, after Plaintiff refused to be coerced and extorted into a settlement of *Wetzel 1*, to commence a

disciplinary trial against her designed by them as a sham proceeding, and intended to be conducted as abusively as possible, with guilt a foregone conclusion regardless of any evidence.

125.    Upon information and belief, the municipal Defendants conspired with their outside counsel in furtherance of this unlawful goal, and later sought and obtained the tacit agreement of Defendant Wooley in furtherance of the unlawful goals.

### i.  Cpt. Zimmerman as "Hatchet Man" for Chief Nulty

126.    Upon information and belief, Defendant Zimmerman has become a "hatchet man" for Defendant Chief Nulty and the law firm Defendants, aiding and abetting Defendant Nulty's discrimination and reprisal against Plaintiff and others (e.g., retired Sgt. Flannery).

127.    Upon information and belief, in so doing, Defendant Zimmerman has intentionally cooperated with others, including law firm Defendants acting in their capacity as attorney for the Town and/or the Defendant Chief Nulty, for the purpose of depriving Plaintiff and others of their federal rights.

128.    Upon information and belief, Defendant Zimmerman was often Plaintiff's direct supervisor after Plaintiff joined the police force, and consistently gave Plaintiff excellent performance evaluation, and otherwise was supportive of Plaintiff, through approximately the year 2000.

129.    However, in or after 2000, because Chief Nulty wished to promote only the department's men, it became in Defendant Zimmerman's own self-interest to take action hostile to Plaintiff, including but not limited to:

    a.  Discontinuing written performance evaluations, so that Plaintiff's performance could not be objectively measured, and memorialized, so that men could be favored by subjective evaluation based upon mere memory in promotional decision-making;

    b.  Discounting Plaintiff's excellent performance, in the rank of sergeant, when she served as the Officer in Charge of Lt. Zimmerman's squad during his approximately four month absence in around 2000.

    c.  Attempting to find fault with Plaintiff, or characterize her performance as not as excellent as her male colleagues, after she complained of discrimination in 2001;

    d.  Engaging in a "witch hunt" against Plaintiff after (illegally) listening to the private telephone conversations between Nicole Colandrea and Frank Dowd,

while at the same time taking no action whatsoever to explore whether Nicole Colandrea was a person potentially in need of police protection;

e.  Offering false (or materially misleading) testimony against Lt. Wetzel at her disciplinary trial;

f.  Attending the disciplinary trial on a daily basis as the Chief's (or the police department's) representative, even though the allegations of "failure to supervise" against Plaintiff could similarly be asserted against Defendant Zimmerman (who was Plaintiff's direct supervisor in July 2004).

130.    Upon information and belief, Defendant Zimmerman did not discuss the alleged events with Plaintiff or Sgt. Flannery, nor provided any mentoring, counseling, extra training or any other action designed to prevent a reoccurrence of the purported July 2004 supervisory errors of Plaintiff Wetzel and Sgt. Flannery.

131.    Nor, upon information and belief, did Defendant Zimmerman document this allegedly deficient duty performance in written performance evaluations of either officer.

132.    Performance evaluations were, in July 2004, required to be prepared semi-annually by the General Orders of the police department.

133.    Upon information and belief, notwithstanding the alleged deficiencies of the two sergeants and several patrol officers of Zimmerman's squad, only the sergeants and not the lieutenant (Zimmerman) were subjected to disciplinary action.

134.    Rather, Defendant Zimmerman was rewarded for his squad's ostensible failings, first by being promoted to Administrative Lieutenant, and then by promotion to Police Captain.

135.    Upon information and belief, the actual reason for Defendant Zimmerman's advancement, and the discipline against his sergeants, was that Defendant Zimmerman was willing to act as Defendant Nulty's "hatchet man" with regard to Plaintiff Wetzel and Sgt. Flannery.

136.    Upon information and belief, Plaintiff and 43 year police veteran Sgt. Dennis Flannery together had approximately 66 years of unblemished police service prior to the September 2004 disciplinary charges.

137.    Sgt. Flannery retired in December 2004, upon information and belief, in part because the municipal Defendants made it clear, through the making of disciplinary charges against him, that he was no longer wanted by the Chief on the police force.

19

138.    Upon information and belief, one reason that Sgt. Flannery was no longer wanted was that he would support Lt. Wetzel in her opposition to gender discrimination, and his opinion that Lt. Wetzel was and is a very competent police supervisor.

139.    Upon information and belief, punishing men for supporting female police officers is a *modus operandi* of Defendant Nulty.

140.    Upon information and belief, another male sergeant of the Defendant Town, Sgt. Edward Fitzgerald, was also pushed into retirement by the Defendant Chief for Fitzgerald's support of the Town's first female police officer, Barbara Noyes, who became (unsuccessfully) the Town's first female candidate for promotion to lieutenant.

141.    Upon information and belief, for a police supervisor such as Defendant Zimmerman to become the principal witness against his own immediate subordinates where he may share supervisory fault is grossly inappropriate.

142.    Here, upon information and belief, because the criticism of Sergeants Wetzel and Flannery was unjust and unfounded, Defendant Zimmerman's disciplinary actions evidence disloyalty to these subordinates taken in bad faith for his own personal advancement.

## I.    *Disciplinary charges—Chief Nulty's technique of discrimination, reprisal and intimidation against police officers*

143.    Upon information and belief, one technique employed by defendant Nulty in sabotaging female advancement within the Police Department was to prefer unfounded disciplinary charges against the female officer, as well as any male officers who might be seen as supportive of the female officers.

144.    Upon information and belief, Chief Nulty uses formal disciplinary charges as a technique of bias, reprisal and intimidation.

145.    Upon information and belief, defendant Nulty does not use disciplinary charges as a proper management tool.

146.    Upon information and belief, disciplinary charges against disfavored police officers who are the focus of discriminatory or retaliatory animus (e.g., female, supportive of females, or near retirement) is pretextual, exaggerated, and otherwise much more severe than that sought against non-disfavored police officers.

147.    Upon information and belief, Chief Nulty, through his bias and prejudice against female officers (and their male supporters) eventually caused, directly or indirectly, the

20

retirements of Sergeant Barbara Noyes, Sergeant Ed Fitzgerald, Sergeant Dennis Flannery, and Police Officer Cathleen Sampath, as well as causing Police Officer Susan Lanoce to file a complaint of discrimination with the EEOC.

148.    Upon information and belief, Defendant Nulty's abuse of his power by placing unjust disciplinary charges against police subordinates has been particularly obnoxious and illegitimate regarding charges he placed against Plaintiff Wetzel in September 2004.

149.    Upon information and belief, Defendant Nulty brought bogus disciplinary charges against a 61 year old police veteran, Sgt. Dennis Flannery, who was a police sergeant with 42+ years of unblemished police service in local policing and the military, for the purpose of forcing Sgt. Flannery's retirement, and because Defendant Chief Nulty knew Flannery would justifiably supportive of Plaintiff Wetzel regarding her actions on the same day for which charges were brought.

150.    Upon information and belief, Defendant Nulty brought disciplinary charges against another police veteran, Det. Lt. John McAndrew, because Det. Lt. McAndrew would not cooperate in concocting a disciplinary case against Plaintiff, and would not assist Chief Nulty in his retaliation against Plaintiff, and to sabotage his opportunity for promotion.

151.    Upon information and belief, Defendant Nulty brought bogus disciplinary charges against Police Officer Cathy Sampath regarding alleged events of July 4, 2004, because she is a woman.

152.    Upon information and belief, these disciplinary charges, and the overall gender hostility and "glass ceiling" created by Chief Nulty and his administration contributed to Officer Sampath's decision to retire from the Police Department, and instead work for a village police department (South Nyack) located geographically within the defendant Town.

153.    For example, upon information and belief, soon after he was promoted to police chief in 1997, Defendant Chief Nulty placed bogus disciplinary charges against Sergeant Barbara Noyes, as well as a male sergeant who worked with her and who was supportive of Sergeant Noyes.

154.    Upon information and belief, Defendant Nulty brought bogus disciplinary charges against Sgt. Barbara Noyes, to sabotage her opportunity for promotion to the rank of lieutenant, because she is a woman.

155.    Upon information and belief, Defendant Nulty used the implicit threat of disciplinary charges to deny Police Officer Susan Lanoce benefits in connection with her pregnancy and maternity, which actions caused Lanoce to complain to the U.S. Equal Opportunity Employment Commission, but not to go further, or to otherwise oppose gender discrimination, because of her fear of reprisal from Chief Nulty.

156.    Upon information and belief, the charges made against Holihan, Flannery and Wetzel were intended by the Police Defendants and Keane & Beane for improper purposes.

157.    Upon information and belief, the real motivation for the September 2004 charges was to intimidate Sgt. Flannery, hinder his support for Plaintiff and to ensure his retirement.

158.    Upon information and belief, any punishment Officer Holihan received was only <u>after</u> testifying at the Wetzel disciplinary proceeding on September 6, 2006.

159.    Upon information and belief, the municipal Defendants, acting on the advice of the law firm Defendants, refused to compensate Officer Holihan for his attendance at the Wetzel disciplinary hearing, after he was called to testify by Wetzel's attorney.[6]

160.    Upon information and belief, the law firm Defendants were not rendering legal advice, but rather involving themselves in an administrative matter, with their motivation being to harass and intimidate a disciplinary witness called by Plaintiff's attorney.

161.    Specifically, upon information and belief, the non-payment of wages to Officer Holihan by the Town in connection with his prosecution of the Wetzel disciplinary trial was at the behest or recommendation of Defendant Lance Klein.

### i.    *Legal challenge to impartial arbitration of disciplinary matters*

162.    Upon information and belief, the municipal and law firm Defendants sought to enhance Chief Nulty's power, and ability to arbitrarily exercise his disciplinary powers in biased and unlawful ways, by challenging the Town's long-standing collectively negotiated disciplinary procedures.

163.    Upon information and belief, this challenge was not intended to be in the public interest, but instead was designed to increase Chief Nulty's personal power, and also to benefit the law firm Defendants with substantial legal work and accompanying legal fees.

---

[6] Upon information and belief, the Town's refusal to pay its police officers for attendance at the (purported) official tribunal was unprecedented, and included denying Lt. Wetzel compensation for attending her own disciplinary hearing. This is the subject of another action pending in this federal Court, *Wetzel 4 (06 Civ.* 15190).

164.    Specifically, upon information and belief, after Plaintiff Wetzel's 2001 legal challenge to her non-promotion, the Defendant Town, for illegitimate reasons and no compelling need, represented by the law firm Defendants, challenged in <u>Matter of Orangetown PBA</u>[7] the longstanding collectively-bargained arbitration procedures for police disciplinary proceedings, including appeal to the intermediate appellate court (the Appellate Division), as to which Plaintiff Wetzel consented that the disciplinary cases be held in abeyance, and a further appeal to the New York's highest court (the Court of Appeals), to which Plaintiff Wetzel did not consent to further delay in her disciplinary case.

165.    After that <u>Matter of Orangetown PBA</u> resolution, upon information and belief, and as further reprisal, Plaintiff Wetzel then became a "guinea pig" as the first police officer tried on disciplinary charges under the Police Act rather than with the use of an impartial arbitrator.

166.    Upon information and belief, so that the malevolent municipal and law firm Defendants could demonstrate their complete and arbitrary power over police officers by undertaking an abusive proceeding against Plaintiff.

167.    Upon information and belief, the municipal and law firm Defendants never advised the New York appellate courts in <u>Matter of Orangetown PBA</u> that their intention was to devise a disciplinary process against public servants devoid of basic due process rights such as adequate notice of charges and a fair opportunity to defend against such before an impartial adjudicator.

### J.  Municipal & Law Firm's design of a bad faith Disciplinary prosecution against Plaintiff

#### i.  No discussion or counseling about alleged events of July 7, 2004

168.    Upon information and belief, the disciplinary charges against Police Officer Holihan of dereliction of duty and similar neglect, if any, could be just as reasonably be attributed to the Squad Commander (defendant Lt. Zimmerman) as attributed to his acting headquarters commander (Sgt. Wetzel).

169.    Officer Holihan's dereliction was committed outside of the presence of both Plaintiff Wetzel (who was upstairs) and Defendant Zimmerman (who was not working that day).

---

[7] Orangetown Policemen's Benevolent Ass'n v. Town of Orangetown, 18 A.D.3d 841 (2dDept 2004); <u>aff'd</u> 6 N.Y.3d 563 (2006).

23

170.     Upon information and belief, Defendant Zimmerman, after he learned of the circumstances which he ostensibly viewed as dereliction, took no remedial action, and did not even discuss alleged events with his immediate subordinate, Plaintiff Wetzel.

171.     Upon information and belief, Defendant Nulty did not discuss with Defendant Zimmerman the possible alternatives of

> ➢ discussing the events of July 7, 2004 with Plaintiff Wetzel,
> ➢ counseling or mentoring Plaintiff Wetzel;
> ➢ including relevant (purported) facts in a performance evaluation;
> ➢ verbally reprimanding Plaintiff Wetzel; or
> ➢ taking other action short of formal disciplinary charges.

172.     Nor, upon information and belief, did Chief Nulty ask Defendant Zimmerman or others to ascertain whether monitoring equipment was not working, or whether additional equipment needed.

173.     Nor, upon information and belief, did Chief Nulty ask Defendant Zimmerman or others to ascertain whether other remedial action, new policies or SOPs, or new or additional training was necessary to avoid recurrence of the alleged problem(s).

174.     Instead, without inquiring into or considering the above options and alternatives, Defendant Nulty chose to place formal departmental disciplinary charges against then-Sgt. Wetzel (and Sgt. Flannery and Officer Holihan) regarding the events of July 7, 2007.

175.     Specifically, in September 2004, defendant Nulty, with the assistance of Keane & Beane (including Defendant Klein) and Squad Lieutenant Zimmerman, filed two sets of disciplinary charges against Sgt. Wetzel for "failure to supervise": one set relating to the arrest and booking of Frank Dowd on July 7, 2004, and one set regarding a "missing child" on July 4, 2004 (which charges apparently remain pending).

176.     Yet, upon information and belief, Defendant Nulty took no corrective action toward Lt. Zimmerman, not even counseling him to ensure that Plaintiff Wetzel's or Officer Holihan's alleged dereliction or improper duty performance did not reoccur.

177.     Upon information and belief, these two sets of pretextual charges were made in bad faith and intended to punish, discriminate against, and retaliate against Sgt. Wetzel for opposing unlawful discrimination in police promotions in the defendant Town's police department, and for opposing retaliation.

24

### ii. No untoward events on July 7, 2004

178. Upon information and belief, there was nothing significantly untoward which occurred on July 7, 2004, let alone anything warranting formal disciplinary charges.

179. Upon information and belief, the arrest of a drunk, and some obnoxious language from a drunk, is not an extraordinary occurrence for a police department.

180. Moreover, Ms. Colandrea never made any formal or otherwise written complaint against her domestic partner, Frank Dowd, and never made a formal or otherwise written complaint that he was making "harassing" phone calls to her or threatening her.

181. Moreover, upon information and belief, Ms. Colandrea did not make, and did not desire to make, any complaint to the police about Mr. Dowd regarding any events of July 7, 2004.

182. However, upon information and belief, Ms. Colandrea has a serious complaint about the conduct of the Defendants herein, by their making her private conversations with Frank Dowd, and her private life, an issue in the Wetzel disciplinary matter and public. See, *Colandrea v. Town of Orangetown et al.*, 06 Civ 11441.

183. Upon information and belief, Ms. Colandrea was portrayed by Defendants inaccurately, and without her consent. Upon information and belief, the Defendants in their unlawful actions toward Plaintiff Wetzel created another female victim, Ms. Colandrea.

184. Upon information and belief, there was no bona fide reason for Defendants to magnify the routine and mundane case of the arrest of an intoxicated man into a significant police event.

185. Frank Dowd was arrested for drunk and disorderly conduct, treated for an injury, booked, and released on bail the next day or so, after which time he resumed his life with Nicole Colandrea and their daughter.

186. Plaintiff Wetzel efficiently performed her duties that day as headquarters supervisor. Plaintiff Wetzel forwarded Ms. Colandrea's telephone call downstairs to the booking room, where she reasonably expected it would be picked up by Officer Holihan.

187. Unexpectedly, the phone line was answered by Mr. Dowd.

188. Ms. Colandrea and Mr. Dowd then conversed, with Ms. Colandrea voluntarily stayed on the line and speaking with Mr. Dowd.

189. Upon information and belief, Mr. Dowd ended the telephone call.

190.    Upon information and belief, Plaintiff Wetzel, a woman, recognized Ms. Colandrea's phone call to the police department for what it was, namely, an inquiry, and the Defendants, with their sexist approach to policing, mis-portrayed the Colandrea phone call into something which it certainly was not, namely, a complaint of telephone harassment.

191.    Defendants alleged that Plaintiff's forwarding of Ms. Colandrea's telephone call downstairs to the department's booking room telephone, where the call was answered by Mr. Dowd, constituted misconduct or inefficiency by Plaintiff Wetzel.

192.    Upon information and belief, the facts to not warrant any discipline, let alone formal discipline.

193.    Upon information and belief, if the municipal Defendants actually believed that Plaintiff Wetzel had done something incorrect, and noting that she was at the time a very experienced police supervisor with an unblemished disciplinary record, the appropriate means of handling the situation would have been to discuss the matter with her, to obtain, at a minimum, her side of the story and then to counsel her, if appropriate, on how to avoid the perceived mistake in the future.

194.    Upon information and belief, this case is not about proper discipline.

Retired Sgt. Flannery

195.    Rather, it is solely about retaliation and discriminatory abuse of a competent, professional police supervisor.

196.    Upon information and belief, the arrogance of the municipal and law firm Defendants, and their willingness to hurt the innocent to retaliate and oppress their perceived opponents is demonstrated by disciplinary charges against Sgt. Flannery, a police veteran of 43 years, as well as against Plaintiff.

197.    In particular, the disciplinary charges against Sgt. Flannery, upon information and belief, served the purpose of masking the unlawfulness of the biased and retaliatory disciplinary against Plaintiff, and also reflected age bias against him, designed to dissuade him from seeking to extend his retirement date beyond December 2004.

"Paper Penalty"

198.    Upon information and belief, the Defendants have devised a ruse called a "paper penalty" as means of punishment which is in reality non-punishment.

26

199.    Upon information and belief, this "paper penalty" was concocted by the municipal Defendants upon the advice of the law firm Defendants.

200.    Upon information and belief, removing disciplinary records from a police officer's file (especially after a very short period of time) defeats one purpose of the punishment in the first place—to record performance.

Officer Holihan's delayed and/or non-punishment

201.    Officer Thomas Holihan was also charged with Plaintiff Wetzel and Sgt. Flannery.

202.    Upon information and belief, Officer Holihan was charged so that Plaintiff and Flannery could be charged without revealing the biased and retaliatory nature of the charges.  In particular, upon information and belief, the main reason for defendants' disciplinary charges against Officer Holihan was to provide "cover" for wrongfully charging Sgt. Dennis Flannery and Plaintiff.

203.    Upon information and belief, ultimately, Officer Holihan received little or no punishment, and not more than three days loss of pay, and this was only <u>after</u> he testified two years later, in 2006, at the Wetzel disciplinary trial.

204.    Upon information and belief, Officer Holihan was the officer who was directly supervising Mr. Dowd, and so directly responsible for the Dowd-Colandrea telephone calls—the telephone calls the Defendants purport to consider offensive.

205.    Upon information and belief, Holihan's "punishment" may in actuality have been no punishment at all, but rather a "paper penalty," with the disciplinary record removed from his file.

206.    Upon information and belief, notwithstanding Officer Holihan's "punishment," he was promoted to the rank of Sergeant in June 2007, which was within one year of the imposition, if any, of punishment regarding the July 7, 2004 disciplinary charges.

207.    Upon information and belief, the Town Board which promoted Holihan may not have been apprised by Defendant Nulty of the 2004 disciplinary charges and resolution of such charges.

Disparate and improper use of formal disciplinary charges

208.    Upon information and belief,  Defendant Nulty uses formal discipline as a method of picking and choosing officers for promotion, or non-promotion, at his discriminatory whim.

27

209.    Upon information and belief, Officer Neil O'Donnell and Det. Sgt. Terence Hutmacher were not charged, nor investigated, regarding the events of July 7, 2004, relating to Mr. Dowd in the booking room, even though one or both officers were present during one or more of Mr. Dowd's telephone conversations with Ms. Colandrea.

210.    Subsequently, Sgt. Hutmacher was promoted to the rank of Lieutenant.

211.    Sgt. Sean Russo and another sergeant supervised the oncoming 11 pm "midnight shift," and thus became responsible for detainee Dowd.

212.    Sgt. Russo was not charged with any disciplinary infraction, even though Mr. Dowd continued to make telephone calls, and walk around the booking room, during Sgt. Russo's shift.

## K. *Disciplinary Trial Unfairness & Bad Faith*

### i. *Unfairness even before the start of the disciplinary trial*

213.    Upon information and belief Defendant Wooley and his patron law firm Defendants worked together, under a *sub rosa* express or implied agreement, to conduct a disciplinary proceeding against Plaintiff Wetzel which was as abusive, oppressive and harassing as the law firm Defendants and Defendant Wooley could manage.

214.    Upon information and belief, some examples of orchestrated abuse, bias, and reprisal shown prior to the start of the disciplinary trial are as follows:

   a.  No advance notice whatsoever that trial of the disciplinary charges was to be delegated to a private attorney, rather than heard by the town board itself

   b.  Undertaking to "appoint" Defendant Wooley to conduct a hearing despite the absence of any citation to legal authority permitting such delegation of authority to an attorney to act as a hearing officer (it appears that no such authority exists);

   c.  the law firm Defendants' action, in advance of the disciplinary trial, forbidding Plaintiff's counsel from contacting non-management town employees in connection with the disciplinary case, and threatened recourse to the federal magistrate judge handling discovery in *Wetzel I* if Lt. Wetzel's counsel attempted to prepare a defense by contacting potential witnesses;

   d.  providing no bill of particulars, no discovery, nor providing any reasonable opportunity even to request such in the context of this Police Act proceeding;

   e.  providing no opportunity for Lt. Wetzel to request information, and be reasonably apprised of, the specifics of the disciplinary charges against her;

28

f.  Defendants' providing notice for the first time on June 30, 2006 that defendants were following through with their threatened reprisal

g.  In particular, providing notice on the afternoon of June 30, 2006—the Friday before the Independence Day weekend—that Mr. Joseph Wooley was the hearing officer, and that trial was scheduled for July 11th.

h.  Thereafter denying Plaintiff reasonable requested an adjournment.

i.  In particular, Plaintiff's request was denied by Mr. Wooley in a telephone conference call placed to him late on June 30th.

j.  On that date and the following week, the law firm Defendants refused to consent to an adjournment.

k.  On July 3, 2006, Plaintiff's counsel mailed a letter to Mr. Wooley detailing why an adjournment was necessary.

l.  Plaintiff's request included the fact that her attorney, the undersigned, an Iraq veteran, had previously arranged Army Reserve duty scheduled for July 11th.

m.  Thereafter, Wooley refused any adjournment—a lack of accommodation unprecedented, and not reasonably anticipated from, any impartial hearing officer.

n.  Defendant Wooley's refusal of an adjournment was particularly outrageous under the circumstances, where Defendants had not even arranged for a hearing room for the July 11th hearing, and this resulted in the parties and the public being required to relocate to three different locations during the first day of the hearing.

215.    Upon information and belief, the law firm Defendants and Defendant Wooley purposefully and maliciously arranged for the bare minimum five (5) business days notice, over a holiday weekend, to burden and oppress Plaintiff and her counsel, and to prejudice their ability to defend against the retaliatory disciplinary charges.

216.    Upon information and belief, the short notice, and refusal to provide a reasonable adjournment, indicates that this was not intended to be a fair proceeding, but rather that it was a staged proceeding, and a proceeding that was controlled by the law firm Defendants.

217.    Thus, almost two years after the disciplinary charges were made, but with only 5 business days notice of trial over the July 4th holiday weekend, the Wetzel disciplinary trial was commenced on July 11, 2006.

29

### ii. *Unfairness and abuse continue throughout the disciplinary trial*

218.    At and after the disciplinary trial began on July 11, 2006, the Defendants' abusive tactics continued.

219.    In fact, the Wetzel disciplinary trial which began on July 11, 2006 continued for 8 additional days of testimony, with the last day of testimony being November 1, 2006.

220.    Upon information and belief, some examples of actions and procedures evidencing abuse, bias, and reprisal <u>at and after the beginning of the disciplinary trial</u> are as follows:

    a.    Denying Plaintiff her right to trial before the Town Board itself, where she was notified in the notice of charges that trial would be before the Town Board, and where this such appears the requirement of the Police Act;

    b.    The law firm Defendants' refusal to produce evidence relevant to Lt. Wetzel's defense (e.g., "FOB" electronic key records, audiotape and videotape evidence);

    c.    Seeking to wear down the trial participants and the audience attending the trial, for example, by refusing to provide reasonable breaks. Despite the fact that Lt. Wetzel had reported to work at around 6:45 am on July 11, 2006, Defendant Wooley refused to allow a lunch break, and continued the proceeding until approximately 7 pm.

    d.    The law firm Defendants misrepresenting their intentions regarding witnesses (e.g., indicating that two brief witnesses would be called to testify, and then calling Respondent Wetzel to testify;

    e.    Permitting facially defective charges to remain;

    f.    Requiring that Plaintiff (the disciplinary respondent) subpoena and serve the Town's own employees and police co-workers, even though in all prior disciplinary proceedings the Town had arranged for on-duty employees to appear without the need for subpoenas.

    g.    Refusing to pay the witnesses subpoenaed by Lt. Wetzel for the time necessary for testifying, despite the fact that in prior disciplinary proceedings the Town had always paid its employees without charging their personal time accruals or otherwise penalizing the employees for attending a Town personnel proceeding;

    h.    Refusing to pay Lt. Wetzel (or deducting from her personal time accruals) for her attendance at her disciplinary trial (the personnel proceeding of her employer, the Defendant Town) even when she was scheduled for duty;

    i.    Refusing to require the production of subpoenaed evidence which could assist in exonerating Lt. Wetzel (e.g., FOB access card records);

j.  Inconveniencing Lt. Wetzel's civilian witnesses, by refusing to permit them to testify after the presence of one or more witnesses was arranged by Plaintiff's counsel;

k.  Blatantly favoring the prosecution, and disfavoring the defense, for example, by allowing Mr. Klein to undertaken extensive "cross-examination" unrelated to respondent's direct examination (e.g., improperly allowing Mr. Klein to make Adm. Lt. Butterworth a prosecution witnesses on Respondent's case—one simple question on direct results in 50 pages or so of unrelated testimony on Mr. Klein's cross-examination);

l.  Obstructing, whenever possible, the fact-finding process regarding facts helpful to the defense.

221.    In sum, upon information and belief, the municipal and law firm Defendants' sought to mislead and misrepresent the true facts and obstruct and undermine the fact-finding process, and were assisted in this by Defendant Wooley.

### iii.  The false or misleading evidence of the first and only witness against Plaintiff, namely, Defendant Zimmerman

222.    The first witness called by Keane & Beane's Mr. Klein at the Wetzel disciplinary trial in the Charging Party's direct case was Defendant Zimmerman.

223.    During Defendant Zimmerman's testimony, and at the request of defendant Klein, Defendant Zimmerman played audiotapes.

224.    Upon information and belief, Defendants played these audiotapes ostensibly to show that:

a.  That then-Sgt. Wetzel was not supervising another sergeant (a sergeant who was in actuality her superior, road sergeant Dennis Flannery); and

b.  That then-Sgt. Wetzel was not supervising her subordinate officer, Police Officer Thomas Holihan, when he was downstairs in the booking room with detainee Dowd—by using the Dowd-Colandrea audiotapes in an attempt to show that Holihan was not adequately supervising Mr. Dowd.

225.    Defendant Zimmerman also testified as to the purported contents of purportedly six (6) hours of videotapes.

226.    Plaintiff was not at that time provided with a copy of such videotapes, nor provided with any opportunity to view such tapes before Defendant Zimmerman's testimony.

227.    Defendant Zimmerman's testimony regarding the contents of such videotapes, as relating to Plaintiff Wetzel, was materially false.

228.    For example, upon information and belief, Defendant Zimmerman essentially testified and/or suggested that Frank Dowd was allowed to wander freely around the booking room unattended and unsupervised during Plaintiff's shift, yet this was not the case.

229.    During the portions of the disciplinary trial where the videotape of the booking room was actually played, which videotape portions directly contradicted what Defendant Zimmerman had previously testified to, Defendant Wooley at times was not even watching, and, upon information and belief, when asked about whether he could see the screen, indicated that he would watch the videotape in its entirety before making his findings.

230.    Upon information and belief, this misrepresentation regarding the supervision of Mr. Dowd during Plaintiff's shift was also related to the Town Board by the municipal Defendants and the law firm Defendants, knowing such characterization to be false and misleading, and that such misrepresentation would prejudice the Town Board against Plaintiff.

231.    The law firm Defendants also introduced on July 11, 2006, through their witness Defendant Zimmerman, copies of audiotaped telephone conversations ("Dowd-Colandrea audiotapes") which took place between Frank Dowd, while he was a detainee in the Defendant Towns's police department booking room, and Dowd's domestic companion, Nicole Colandrea.

232.    Upon information and belief, these conversations were recorded, used and disclosed at the Wetzel disciplinary hearing in violation of federal law, including but not limited to the Federal Wiretap Act.

233.    Upon information and belief, the Defendants used these Dowd-Colandrea audiotapes for the purpose of unfairly prejudicing the Plaintiff.

234.    Upon information and belief, the Defendants also used these Dowd-Colandrea audiotapes for the purpose of incorrectly and inaccurately portraying Ms. Colandrea as a person to made a "complaint" of "telephone harassment" to Plaintiff which Plaintiff, allegedly in violation of her duties as a police sergeant, did not properly act upon.

### iv. Intimidation of Defense Witnesses

235.    Upon information and belief, Defendants sought to intimidate and punish defense witnesses at the Wetzel disciplinary trial.

236.    Upon information and belief, one outrageous action by the municipal Defendants and law firm Defendants was the threat to one potential witness, retired Sgt. Flannery, of

32

pursuing disciplinary charges against him (even in his retirement), which threat thereby caused him to decline to testify regarding relevant facts.

237.    Upon information and belief, the Chief Nulty' and law firm Defendants' threatening to prosecute retired Sergeant Flannery upon disciplinary charges of the nature alleged was not only unprecedented, but was a blatant and outrageous attempt to intimidate this witness.

238.    Defendant Wooley countenanced such outrageous threat--essentially the Charging Party's and his attorneys' intimidation of a witness--by denying Plaintiff an important and perhaps crucial defense witness, Sgt. Flannery.

239.    Defendant Wooley, upon information and belief, did not, and refused, to bring this prosecutorial misconduct to the attention of the Town Board or Town Attorney.

240.    Defendant Wooley and "prosecutor" Klein often appeared to be working cooperatively, collusively, and at times "double-teaming" and joining forces against the Plaintiff's attorney (such as when Plaintiff's attorney sought the helpful testimony, and motion to suppress, of a helpful witness, Nicole Colandrea).

241.    Other abuses perpetrated by the municipal and law firm Defendants, and countenanced by Defendant Wooley (including by his not bringing these issues to the attention of the Town Board or Town Attorney) include, upon information and belief, and in addition to the matters alleged above:

    a.   bifurcating the September 3 and September 7, 2004 charges into two sets of charges (Mr. Wooley's appointment did not authorize him to hear less than all charges). Prior to the hearing against Lt. Wetzel, the municipal Defendants had never before bifurcated the trial of disciplinary charges and had always done all outstanding charges at one hearing.  This change took place first in this case, which is also the <u>first disciplinary trial ever conducted against a female Orangetown police officer</u>.

    b.   not dismissing the charges not prosecuted, thereby creating the possibility that Plaintiff Wetzel may face, at some time in the future, the September 3, 2004 charges, charges now already almost 3 years old.

    c.   providing no procedural guidance regarding the conduct of the hearing, with the Town having promulgated no rules or regulations under the Police Act to guide Lt. Wetzel as a disciplinary respondent;

    d.   providing deficient notice of her rights, including no notice as to how to arrange for the attendance of witnesses and for the production of evidence (e.g., no room was designated for trial, nor notice of the Charging Party's intentions regarding the number of witnesses and expected duration of his case);

e.  providing no specific trial location (e.g., a specific room to convene the proceedings) in its notification to her, so that the public would know in advance of the location of the trial, as was Plaintiff's Police Act right;

f.  the appearance of likely bias and non-impartiality of the hearing officer, and his refusal to state whether he has a prior relationship with Keane & Beane, P.C. or its lead attorney, Lance Klein.

g.  The failure and refusal of the Charging Party to advise Plaintiff, as the disciplinary respondent, of what the Town regarded as the maximum punishment which it would impose, if all charges were proven. She is not informed, for example, whether the Town considered or considers termination, or demotion in rank, a possible punishment.

h.  purporting to afford rights similar to those under Civil Service Law § 75, as summarized in the Civil Service Commission "Manual" referred to by the hearing officer in his notice of hearing letter dated June 29, 2006, yet in practice denying such rights and/or customary procedures (e.g., the aforementioned request for a reasonable adjournment);

i.  The hearing officer's letter indicates that the procedures of Civil Service Law Section 75 will be applied, yet in the Town's challenge to arbitration in police disciplinary matters, New York's highest court expressly held that arbitration was impermissible, because Civil Service Law Section 75 and 76 did <u>not</u> apply. <u>See</u>, *Matter of Patrolmen's Benevolent Ass'n of City of New York v. New York State Pub. Empl. Relations Bd.*, 6 N.Y.3d 563,(2006), decided March 28, 2006 ("*Orangetown v. PBA*")("…where Civil Service Law §§ 75 and 76 apply, police discipline may be the subject of collective bargaining.").

j.  Notwithstanding *Orangetown v. PBA*, the Town has not promulgated rules and regulations in accordance with that N.Y. Court of Appeals decision.

242.  Defendants' abuse continued after the hearing was concluded. This included, upon information and belief:

a.  Not promptly providing Plaintiff with a copy of the hearing transcript for two or more months after all transcripts were completed and in the hands of the law firm Defendants;

b.  Not submitting a post-trial brief within two weeks of receipt of transcripts, as the hearing officer Defendant Wooley had indicated during trial would be the briefing process, and then Defendant Wooley, without explanation, waited over six (6) months after the conclusion of the disciplinary trial to issue his Findings of Fact and Recommendations;

c.  Not advising Plaintiff, after the conclusion of the disciplinary hearing, whether she would be permitted to submit a written post-trial brief or written closing statement;

d.  Not responding to the letters of Plaintiff's counsel on this subject;

34

e.  Apparently receiving and considering, long after Plaintiff's aforesaid requests, Defendant Keane & Beane undated "Closing Statement" , with no forwarding letter to Defendant Wooley, but received by Plaintiff's counsel in May 2007;

f.  The municipal Defendants and law firm Defendants recommending punishment far greater than imposed upon men for far more egregious misconduct;

g.  No response to the inquiry of Plaintiff's counsel after Keane & Beane's closing statement as to whether Plaintiff could provide a brief or other input prior to Mr. Wooley's ostensible fact-finding and recommendation;

h.  Preparing Findings and Recommendations which are clearly the product of someone "paid to convict" regardless of the evidence. Defendant Wooley omits mention of evidence favorable to Plaintiff, and draws every inference as adversely against her as he could manage. He appears to be arguing as a prosecutor, not an impartial adjudicator, and to go out of his way to paint as disparaging a picture as possible.

243.    Defendant Wooley's recommendation befits, upon information and belief, his role as "for-hire hanging judge."

244.    Upon information and belief, Defendant Wooley's findings and recommendation are evidence that this attorney is unfit to serve as a hearing officer in any disciplinary proceeding, and corroborates the municipal and law firm Defendants' bad faith in selecting and appointing him.

245.    Upon information and belief, Defendant Wooley's findings and recommendation are further evidence that he was appointed to do the bidding of the municipal and law firm Defendants who recommended him.

246.    Upon information and belief, the municipal and law firm Defendants are attempting to engage in unlawful discrimination and reprisal under cover of a disciplinary process which they have concocted under the guise (but not the authority) of the Police Act.

247.    Upon information and belief, defendants' abusive action and sham disciplinary hearing is an affront to justice, to the civil service system of merit protection, and, because its motivation was to obstruct, hinder and deny Plaintiff her federal rights, threatens the very integrity and power of this federal Court to provide protection and relief to the victims of § 1983 and Title VII violations.

### L. Pattern & practice of gender discrimination

248.    Defendant Nulty's manipulation of the Orangetown Police Department's system for selecting police officers for promotion (or recommendation to the town board for promotion) reflected an ongoing pattern and practice of gender discrimination and reprisal against females.

249.    Upon information and belief, the municipal Defendants' methods for selecting or recommending police officers for promotion also involved methodologies and procedures which had a disparate impact upon females, including but not limited to completely subjective recommendations of male supervisors without objective criteria for performance, and the use of memory, rather than required written performance evaluations.

250.    Prior to Plaintiff commencing her December 2003 federal lawsuit (*Wetzel I*), Defendant Nulty had never hired a policewoman, nor promoted (or recommended the promotion of) a policewoman, since his becoming chief of police in or about 1996.

251.    Regarding non-promotion of policewomen, upon information and belief, defendant Nulty (with the acquiescence of the town board) altered the prior methodology for selecting an officer for promotion to lieutenant in 1997 (the first occasion where a woman, Barbara Noyes, was an eligible candidate for promotion, and the superior candidate under the Police Act criteria), and then altered the methodology again in 2001 when Plaintiff was a candidate (and the superior candidate under the Police Act criteria), and then altered the methodology again in 2004 and 2005 (with Plaintiff again the superior candidate), and altered the methodology again in 2006, when Plaintiff was promoted.

252.    Upon information and belief, gender bias is a strong factor in Defendant Nulty's management of his department.

253.    Upon information and belief, during his tenure since 1997 as Chief of Police, and with several female candidates at various times to consider, Chief Nulty has not recommended even one female police officer to the Town Board for promotion or advancement.

254.    On the contrary, it appears Defendant Nulty prefers punishing women unjustly than rewarding them justly. Upon information and belief, female police officer exodus from the department is a product of his sexist approach to managing his department.

*i.* **"Kid glove" disciplinary treatment of misconduct by non-disfavored males highlights Defendants' discriminatory animus**

255.    In Orangetown, under the municipal Defendants' administration, Caucasian male officers under 40 have received very minor disciplinary punishment for quite severe errors in judgment or misconduct.

256.    Upon information and belief, examples of minor punishment for men for serious misconduct or negligence include:

      a.    a male Police Officer (now in another department) for his negligent discharge of an AR 15  (M16-like) semiautomatic assault rifle in the police officer lineup room, thereby endangering the lives of any police officers in attendance.  Upon information and belief, he received a punishment of  3 days pay or less.

      b.    a male Police Officer (now detective) for negligent discharge of a pistol, shooting another police officer in the ankle.  The Officer received a punishment of 3 days pay or less

      c.    a male Police Officer for negligent discharge of a pistol, shattering a mirror in the officers' locker room and traveling into the supervisors' section of the locker room.   Upon information and belief, he received a punishment of perhaps one day pay (but in no event more than 3 days pay).

      d.    Officer Robert Sick received minimal discipline for his involvement in permitting an improper and outrageous strip search of one or more emotionally disturbed high school (BOCES) student(s), yet received, upon information and belief, punishment of merely three days loss of pay.

257.    Upon information and belief, the official written policy of the Defendant Town's police department is progressive discipline, meaning ordinarily a progression from less severe punishment to correct disciplinary problems, to more severe disciplinary punishment if a problem continues.

258.    Thus, if an officer is in need of correction or discipline, supervisors should first use counseling, and if such counseling does not correct the deficiency, then  extra training, admonition, informal reprimand, formal reprimand, with formal disciplinary charges used only as a last result (or where the misconduct is so egregious that only formal discipline is appropriate).



**EXHIBIT U**
(2 of 2)

### ii.  *Plaintiff threatened with public disclosure of a (falsely) "blemished" record, whereas disciplined male officers who actually committed misconduct were not*

259.    Upon information and belief, there was no bona fide reason for Chief Nulty's signing of disciplinary charges against Sgt. Wetzel, nor any bona fide reason for trying these charges against Lt. Wetzel.

260.    Upon information and belief, if these disciplinary charges had a *bona fide* purpose unrelated to Plaintiff's federal lawsuit, the municipal and law firm Defendants would not have included in their proposal to Plaintiff that she agree that the Town and Police Chief could use such settlement against her in the *Wetzel 1* federal litigation.

261.    Upon information and belief, none of the men who "settled" with the Town had included in their settlements any provision that the disciplinary settlement could be used against them in future litigation.

262.    On the contrary, upon information and belief, the settlement agreements offered to men included a provision that the record of discipline would be entirely expunged from their records after a relative short period of time (i.e., under 2 years).

263.    Upon information and belief, if these were legitimate charges, such "expunging" of a disciplinary record is contrary to the public interest, because it creates a false "unblemished" record from police officers who have committed misconduct.

264.    Upon information and belief, as this relates to Plaintiff, the settlement proposed by the municipal and law firm Defendants would ensure that if *Wetzel 1* proceeded forward, that the <u>only</u> police officer with a "blemished" record, and the only officer whose "blemished" record would be disclosed by the Town to the public, would be the female officer's record, namely Plaintiff's record.

265.    Upon information and belief, the records of discipline regarding the "favored" male officers mentioned above, relating to serious misconduct involving the negligent discharge of firearms, in one instance injuring another officer, are no longer contained in these officers' personnel files.

### iii. *July 4, 2004 disparate discipline*

266.    Officer Kevin Drane was charged for events of July 4, 2004, but, upon information and belief, received only a "paper" penalty, and no actual punishment.

38

267.    Officer Robert Sick was <u>not</u> charged for events of July 4, 2004, even though he was the senior officer in Nyack on the date and times in question, upon information and belief, because of his personal friendship with Defendant Zimmerman.

268.    In contrast, a female police officer, Cathleen Sampath, was charged with "misconduct" in making an off hand comment to another police officer, and for this received actual punishment of one day's pay and a blemish to her record.

269.    Upon information and belief, this "record of misconduct" would be used by the Defendants against female Officer Sampath if she were to allege gender discrimination against the Town's police administration.

270.    Upon information and belief, this disciplinary abuse, and giving Officer Sampath assignments which she did not want (e.g., moving her from school resource officer to patrol; and denying her advancement, or potential advancement, to the detective bureau) contributed to Police Officer Cathleen Sampath's decision to retire from the force in January 2007, and begin work as a part-time police officer in the Village of South Nyack instead.

271.    Defendant Zimmerman himself was not charged for failure to supervise subordinates, even thought the events of July 3 and July 7, 2004 involved his squad's alleged acts and omissions, and matters which he should have addressed directly, through either counseling, corrective training or other appropriate means short of formal discipline.

272.    This disparate treatment in the use of formal disciplinary procedures was and is, upon information and belief, designed for oppression, discrimination and retaliation.

273.    Upon information and belief, the Defendants reserved these September 3, 2004 charges (relating to July 4, 2004) for the purpose of continuing to have leverage over Plaintiff, by continuing these threatened charges, with the additional option of pursuing these in a similarly abusive fashion as the September 7, 2004 charges, to obtain a bogus "second conviction" to further injure and threaten Plaintiff's police career.

### M. "Hanging Judge For Hire"-- Hearing Officer Joseph E. Wooley

274.    Upon information and belief, before beginning the disciplinary trial, the Defendant Chief and Defendants Keane & Beane and Mr. Klein sought to ensure victory for themselves by arranging for the appointment of a "for-hire" attorney, Defendant Joseph E. Wooley, to act in the role of a purported "hearing officer," with Defendant Wooley recommended to, and appointed by, the Town Board for the purpose of doing the municipal and

law firm Defendants' bidding.

275.    Upon information and belief, Wooley was hired to guaranty a victory for the law firm Defendants—Wooley's *de facto* employer—with a conviction against the Plaintiff, Lt. Wetzel.

276.    Upon information and belief, Defendant Wooley was selected and recommended to the Town Board, directly or indirectly, by the law firm Defendants.

277.    In particular, upon information and belief, Keane & Beane's Lance Klein endeavored to ensure his victory at the Wetzel disciplinary trial by arranging for the appointment of Defendant Wooley, another White Plains attorney, as the "hearing officer."

278.    Upon information and belief, this was done for the sole purpose of having an "adjudicator" who would rule in a manner favorable to Keane & Beane's clients, namely, Defendant Police Chief (the "Charging Party") and the Defendant Town (defendant, along with Chief Nulty, in *Wetzel I*).

279.    Upon information and belief, an express or implied agreement existed between Defendant Wooley and the law firm Defendants that Wooley would do their bidding.

280.    Upon information and belief, it was and is in the financial self-interest of the Defendant Wooley, including for future appointments, to provide findings and recommendations desired by his municipal employer and its counsel.

281.    Upon information and belief, the law firm Defendants have recommended Defendant Wooley to other municipalities for appointment as a hearing officer.

282.    Upon information and belief, Keane & Beane (including Mr. Klein) and Mr. Wooley have had a close working relationship in the past. See, Higham v. Temple, 2006 WL 2714712 (S.D.N.Y., Sep 22, 2006).

283.    Upon information and belief, Mr. Wooley has a reputation for always adjudicating cases in favor of his municipal employer. Id.

284.    Thus, upon information and belief, defendant Wooley is effectively a modern day "hanging judge," whose services are "for hire" to any municipality or its counsel desiring a favorable outcome against an employee, regardless of the evidence.

### *i.    Defendant Wooley's disciplinary trial conduct revealed that the "fix was in"*

285.    Upon information and belief, Defendant Wooley's actions and inactions at the above-described disciplinary proceedings corroborate Plaintiff's allegations herein that he was

not hired to conduct a fair trial, but rather was hired for the purpose of finding guilt, regardless of the evidence.   Upon information and belief, the "fix was in."

286.    Upon information and belief, Defendant Wooley conducted a hearing in a blatantly biased and one-sided manner, as the citizens in attendance at the trial can attest.

287.    In connection with the disciplinary proceeding, both Defendant Wooley and the law firm Defendants refused Plaintiff's request for disclosure of their prior dealings and any preexisting personal or professional relationship.

288.    In June 2007, Defendant Wooley recommended in his Finding of Fact and Recommendation to the Town Board that Plaintiff be given the maximum punishment possible short of termination of employment.

289.    Upon information and belief, this recommendation is unsupported by the facts and circumstances of this case and the evidence produced—and sufficiently unsupported such that a reasonably jury can reasonably conclude that Defendant Wooley was hired for the improper purposes alleged herein.

### ii. *Defendant Wooley as a State actor and co-conspirator*

290.    Upon information and belief, Defendant Wooley's activities undertaken prior to his appointment as a hearing officer, and in particular any *sub rosa*, illicit and conspiratorial agreements with the law firm Defendants or the municipal Defendants to favor the employer were not taken under color of law.

291.    However, upon information and belief, all actions of Defendant Wooley involving his acting as a "hearing officer" in connection with the disciplinary charges against Lt. Wetzel were under "color of law" and therefore "State action."

292.    Therefore, upon information and belief, Defendant Wooley is a "State actor" within the meaning of 42 U.S.C. § 1983.

### iii. *Not a quasi-administrative tribunal*

293.    Upon information and belief, the disciplinary trial on the September 7, 2004 charges was without jurisdiction, without authority, and without even the semblance of a proper delegation to Defendant Wooley to act as a hearing officer.

294.    Upon information and belief, the "disciplinary proceeding" was and is not cognizable as a quasi-administrative proceeding .

41

295.    Upon information and belief, the Defendant Town has promulgated no rules or regulations under the Police Act applicable to disciplinary charges against Plaintiff Wetzel, nor promulgated any rules or regulations allowing for a delegation of governmental authority to a private attorney such as Defendant Wooley.

296.    Furthermore, the Charging Party (Chief Nulty through the law firm Defendants) rested his case on August 4, 2006.

297.    At no time prior to Chief Nulty's attorney resting the disciplinary case, did the Town designate Defendant Wooley to make findings of fact regarding guilt, or a recommendation regarding punishment.

298.    Rather, in its Resolution 441 of May 22, 2006, the Town merely appointed Defendant Wooley to "act as hearing officer." Exhibit "6".

299.    The disciplinary charges against Plaintiff Wetzel stated that she had the right to have her disciplinary trial conducted "before the Town Board." Exhibit "3".

300.    In this regard, Defendant Wooley could have acted as a hearing officer by presiding over a trial conducted before the Town Board sitting as a jury.

301.    Upon information and belief, the logical (and only legally permissible) interpretation of Resolution 441/2006 was that Defendant Wooley was being appointed to preside over a trial to be conducted before the Town Board, similar to how a judge presides over a case being presented to a jury.

302.    Upon information and belief, if Defendant Wooley were a fair judge (which he most certainly is not), such a procedure would have helped avoid the presentation of extraneous, irrelevant, unfairly prejudicial or unlawful evidence (e.g., unlawful telephone recordings) to the fact-finding Town Board.

303.    Upon information and belief, because the purported Wetzel disciplinary trial was without jurisdiction, authority or any lawful power, it was and is a nullity.

### N. Retroactive resolution a nullity

304.    Upon information and belief, by Town Board Resolution 600 of August 14, 2006, the Town Board purported to "amend" Resolution 441 by tasking Defendant Wooley with making "findings of fact and issue a recommendation...."

305.    However, the Charging Party (Defendant Nulty, represented by his attorney, Defendant Klein) had already rested his case on August 4, 2006.

306.    Thus, upon information and belief, the Town sought to retroactively delegate its fact-finding decision-making, after the Charging Party rested.

307.    In particular, Resolution 600 was over a month after the first witness was sworn on July 11, 2006, and two weeks after the Charging Party rested.

308.    Thus, Resolution 600 was a legal nullity, as such a delegation cannot be made retroactively after witnesses have already testified.

309.    Upon information and belief, the law firm Defendants had direct or indirect *ex parte* contact with the Town Board on the subject of amending the resolution appointing Defendant Wooley.

310.    Upon information and belief, the law firm Defendants had *ex parte* contact with the Town Attorney (or Town Attorney's office) on the subject of amending the resolution appointing Defendant Wooley.

311.    Upon information and belief, such ex parte contact during the pendency of the disciplinary trial was impermissible.

### i.   *Defendant Wooley was without authority; the disciplinary hearing is a nullity*

312.    Upon information and belief, the disciplinary proceeding is a staged, sham proceeding and charade, commenced without any lawful authority, power or jurisdiction.

313.    Upon information and belief, even if the Defendant Town had the power to delegate its powers and duties (which it did not), Defendant Wooley was not provided with proper delegation by any town board action.

314.    Upon information and belief, nor was Defendant Wooley authorized by the Rockland County Police Act to be delegated fact-finding duties, at least absent any rule or regulation promulgated under the Police Act.

315.    Thus, defendant Wooley was acting totally *ultra vires*, without any authority or jurisdiction whatsoever, and accordingly the hearing has no legal status and is a nullity.

316.    In particular, as to the two resolutions purporting to appoint defendant Wooley as a "hearing officer," the first resolution, Resolution 441 dated May 22, 2006, did not specify a task or tasks for Mr. Wooley to perform. See, annexed Exhibit "5".

317.    Keane & Beane's Klein rested the Charging Party's (Chief Nulty's) disciplinary case against Lt. Wetzel on August 4, 2006.

43

318.    The Town's second resolution, Resolution 600 dated August 14, 2006, was made after the Town (Charging Party Nulty) rested the prosecution's case.

319.    Upon information and belief, the Police Act does not provide any powers for a Town Board to delegate its authority in the absence of a properly promulgated municipal rule or regulation.

320.    Defendants have never produced, and Plaintiff's counsel has never seen, any rule or regulation authorizing the Town Board to delegate to anyone the Town Board's statutory duty to adjudicate disciplinary charges against members of its police department.   Upon information and belief, none exists.

321.    In fact, the Wetzel disciplinary charges themselves indicate that trial would be before the Town Board.  See, Exhibit "3" (Wetzel Notice of Charges' "trial before town board"-- last two pages of each of 2 sets of charges against Lt. Wetzel)

### ii.  The individual Defendants are not entitled to immunity

322.    Upon information and belief, the disciplinary trial conducted by Wooley was clearly without jurisdiction or authority of any kind.  It was and is a legal nullity.

323.    Upon information and belief, because the disciplinary hearing conducted by Defendant Wooley was without authority or jurisdiction, the individual defendants cannot claim immunity of any kind for their wrongdoing, even if immunity were otherwise available in a proceeding such as this (which it is not).

324.    Accordingly, upon information and belief, neither the municipal Defendants, nor the law firm Defendants, nor Defendant Wooley have available to them any defense of immunity for their unlawful actions in connection with the unauthorized Wetzel disciplinary trial.

325.    Thus, upon information and belief, the individual Defendants are not entitled to the common law privilege of absolute or qualified immunity for their wrongdoing towards Plaintiff Wetzel, and in particular their wrongful actions taken in connection with or during the disciplinary trial.

### O. Keane & Beane's role in orchestrating wrongdoing, including illegal release of audiotapes-- 42 U.S.C. §§ 1983, 1985 and 1986 violations

326.    Upon information and belief, Keane & Beane have become government actors, and itself responsible, under the color of state law, for the wrongdoing at issue in this case.

327.    Upon information and belief, Defendant Keane & Beane is not a public prosecutor, nor is defendant Klein.

328.    Upon information and belief, the law firm defendants have not been specifically retained as disciplinary prosecutors by the Defendant Town.

329.    Upon information and belief, as private attorneys, the law firm Defendants' role and duties are quite different than that of a public prosecutor.

330.    Upon information and belief, in connection with the Wetzel disciplinary proceeding, the law firm Defendants appear to have:

   a.  no retainer agreement specifically retaining them to prosecute the Wetzel disciplinary matter;

   b.  assisted in investigating and concocting a disciplinary case against Lt. Wetzel, including taking action leading up to, and assisting in the drafting of, the disciplinary charges against Lt. Wetzel dated September 3 and September 7, 2004 (relating to July 4 and July 7, 2004);[8]

   c.  threatened the prosecution of a disciplinary trial if Lt. Wetzel did not abandon or settle (Keane & Beane's/Mr. Klein's terms) her federal discrimination case against the defendant town and defendant Nulty;

   d.  reviewed, analyzed and otherwise marshaled the evidence and otherwise "put together" the disciplinary case against Lt. Wetzel;

   e.  hand-picked Defendant Wooley to preside as the "hearing officer" in the disciplinary matter, and then orchestrated Defendant Wooley's appointment by the Town Board;

   f.  reviewed and evaluated audio taped conversations between Ms. Colandrea and Frank Dowd (the "Colandrea-Dowd audiotapes"), with full awareness of the circumstances surrounding this governmental eavesdropping;

   g.  acted in the personal interest of client Chief Nulty, whom Keane & Beane was representing both as an individual and as an official in *Wetzel 1*, and failed to act in the interest of Keane & Beane's other client, the defendant Town, when Mr. Klein chose to introduce the Colandrea-Dowd audiotapes into evidence during the Wetzel disciplinary trial;

   h.  chosen to play the Colandrea-Dowd audiotapes during the public disciplinary trial notwithstanding the protests of Ms. Colandrea, an

---

[8] These charges were 6 weeks or so after Lt. Wetzel filed an amended and supplemental federal complaint in *Wetzel 1*, 10 days or so after her attorney's "glass ceiling" letter to the editor was published regarding Sgt. Wetzel's opposition to gender discrimination, and almost simultaneously with the filing of a state court determination regarding a claim of improper non-promotion by Sgt. Wetzel. Keane & Beane appears to be an active participate in unlawful reprisal, such as by devising and preparing the Wetzel disciplinary charges, and compiling and marshalling evidence, such as, upon information and belief, audiotape evidence organized by Lt. Anthony Mecurio.

45

innocent citizen, regarding the use and continued publication of the audiotapes;

i.  continued to play the Colandrea-Dowd audiotapes notwithstanding the objections of both Plaintiff Wetzel and Ms. Colandrea regarding continued use and publication;

j.  offered "evidence" against Lt. Wetzel known by them (and in particular Mr. Klein) to be false, misleading and/or unfair, notwithstanding that the ethical role of a government prosecutor, if this were truly Mr. Klein's role, is to seek justice.

331.    Upon information and belief, the law firm Defendants improperly used and disclosed the the Dowd-Colandrea audiotapes for the purposes of, but not limited to:

a.  Using the audiotapes as a means to attempt to coerce a settlement from Lt. Wetzel with regard to *Wetzel 1 (03 Civ. 9896)*;

b.  Portraying the purported contents of the audiotapes as a rationale for recommending and justifying disciplinary charges against Plaintiff Wetzel;

332.    Upon information and belief, the law firm Defendants:

a.  Intentionally took abusive and harassing action towards Plaintiff in connection with the disciplinary case which caused Lt. Wetzel to seek the First Amendment right for her attorney to directly petition the Town Board for the redress of grievances ("*Wetzel 2", 06 Civ. 5144*);

b.  Took action causing Lt. Wetzel to commence a federal action against the Defendant Town ("*Wetzel 4", 06 Civ. 15190*) for unpaid wages and overtime where, upon information and belief, the municipal Defendants were advised by the law firm Defendants not to pay Lt. Wetzel for her necessary attendance at her own disciplinary hearing.

333.    Upon information and belief, Keane & Beane has submitted invoices to the Town in the above matters, which invoices are subject to the review and approval of the Defendant Chief Nulty.

334.    Upon information and belief, Defendant Chief Nulty routinely approved all Keane & Beane bills sent to the Town.

335.    Upon information and belief, Keane & Beane's invoices to the Town in connection with all *Wetzel* and *Colandrea* federal litigation likely total well in excess of $500,000, and a substantial portion of these fees were invoiced after Defendant Zimmerman's and Keane & Beane's examination of the Dowd-Colandrea audiotapes.

336.    Upon information and belief, since 2001, Defendant Keane & Beane has invoiced the Defendant Town sums nearing or exceeding <u>$1 million</u> for its work on behalf of this relatively small suburban town's police departments personnel matters.

337.    Upon information and belief, because of the huge amount which Keane & Beane has billed the defendant Town in connection with the various *Wetzel* matters, and also because Keane & Beane has itself taken actions violative of Lt. Wetzel's legal rights, resulting in further liability exposure by the town, it is in Keane & Beane's financial self-interest to defeat Lt. Wetzel's legal claims at any cost, including the cost of harming innocent civilians such as Ms. Colandrea through the reprehensible public disclosure of her private conversations with Mr. Dowd.

338.    Upon information and belief, Keane & Beane was a "State actor" in some of its activities, and not a State actor in certain other self-interested activities such as, for example:

    a.  acting as private attorneys to assist Defendant Chief Nulty in minimizing his personal liability exposure in *Wetzel 1* by endeavoring, through a disciplinary proceeding, to falsely portray and adjudicate Lt. Wetzel as a deficient or negligent, otherwise malfeasant police supervisor;

    b.  acting in its own selfish financial interest to select an attorney as hearing officer whom it could trust to make ruling in its and its client's favor, with the express or tacit reciprocal promise of similar recommendations in the future;

339.    Upon information and belief, Keane & Beane were not acting within the scope of the legal representation of client when it undertook illegal or unethical actions, including but not limited to:

    a.  conspiring with its clients to violate the legal rights of Ms. Colandrea, Plaintiff Wetzel and others;

    b.  making an express or implied agreement with its client, Chief Nulty, a defendant in his individual capacity, for Nulty to also, in his official capacity, approve all Keane & Beane invoices sent to the Town for town (taxpayer) payment;[9]

    c.  to represent Chief Nulty in his individual capacity, absent an express retainer agreement, and a waiver of potential conflict of interest by the Defendant Town and the individual Defendants;

---

[9] Upon information and belief, it is a patent conflict of interest for Chief Nulty to approve invoices regarding litigation in which he has a personal stake.

340.    However, regarding actions Keane & Beane took in representing defendant Chief Nulty in an official capacity, upon information and belief, such action were under color of law, including but not limited to the Police Act.

341.    Upon information and belief, Keane & Beane was purporting to act as a quasi-prosecutor in connection with the Police Act disciplinary proceeding. As such, it purported to have the authority of the State, in a tribunal which it purported to have Police Act authority and jurisdiction.

342.    Upon information and belief, defendant Klein was acting under color of law, as an ostensible public prosecutor in putting on the Charging Party's case, ostensibly under a special law of the State of New York, namely, the Police Act.

343.    Upon information and belief, defendant Klein was not acting as a private attorney, but instead purporting to act as a public prosecutor under the Police Act.

344.    Upon information and belief, the defendant Town, not the defendant Nulty, paid Keane & Beane's invoices for these Police Act "prosecutorial" services.

345.    Upon information and belief, although Defendant Keane & Beane and Defendant Klein were "clothed" by the Town as its Police Act prosecutor, and ostensibly empowered by the Town to act on the Town's and its Police Chief's behalf, there was and is no legal authority for the law firm Defendants to perform any role or activity as a Police Act prosecutor.

346.    In particular, upon information and belief, defendant Klein, as an agent of the Town, took actions which violated Ms. Colandrea's and Lt. Wetzel's rights which were outside of any authorized judicial or quasi-judicial proceeding, and outside the capacity of a private lawyer representing an individual client. *Cf., Polk County v. Dodson*, 454 U.S. 312 , 102 S.Ct. 445, 70 L.Ed.2d 509  (1981).

347.    Upon information and belief, the law firm Defendants' actual role regarding Lt. Wetzel is, and has been to act as private attorneys to do everything possible, on behalf of their individual client, Defendant Nulty, in furtherance of his personal interests, to undermine or destroy Lt. Wetzel's federal discrimination and retaliation claims.

348.    Upon information and belief, representing the personal interests of a client (e.g., Chief Nulty) does not permit his attorneys to engage in a conspiracy between the law firm and the Chief, and with others, including a private attorney (Defendant Wooley), to violate citizens' rights (e.g., Ms. Colandrea's rights) or a civil servant's rights (Plaintiff's rights).

349.    Upon information and belief, such unlawful conspiracy has occurred here.

350.    Upon information and belief, Keane & Beane was a "State actor" for purposes of § 1983, under applicable principles of law.  For example, as stated in Dahlberg v. Becker, 748 F.2d 85, 92 (2d Cir., 1984):

> "several theories have evolved that when properly alleged suffice to tie a private person so closely to governmental actions that a court will hold the private actor's conduct subject to suit for violating another's constitutional rights. Thus, a private party may be held a state actor when the complained of conduct results from a state agent's encouragement or command, the state and private actor jointly participate in depriving Plaintiff of his rights, the granting of benefits to a private actor by the state inseparably links them together, or the private actor undertakes to perform activities ordinarily exclusively engaged in by government."

351.    The Second Circuit in Dahlberg went on to explain that: "The second inquiry is whether the private party charged with the deprivation can be described as a state actor. [citation omitted]  In resolving that issue, the Court in Edmonson found it useful to apply three principles: (1) 'the extent to which the actor relies on governmental assistance and benefits'; (2) 'whether the actor is performing a traditional governmental function'; and (3) 'whether the injury caused is aggravated in a unique way by the incidents of governmental authority.'"

352.    Upon information and belief, in applying these factors, the law firm Defendants clearly are State actors regarding their actions violating Plaintiff's rights.

353.    The law firm Defendants purported to be acting as governmental prosecutors in a public employee disciplinary matter, and used the authority and power of that role to unlawfully prosecute the Plaintiff (through investigation, advice and trial conduct at the bogus proceeding).

## P. Defendants as State Actors without judicial or prosecutorial immunity

354.    Upon information and belief, the Defendants are State actors, but without entitlement to any privilege of absolute or qualified immunity for their constitutional and statutory wrongdoing in violation of Plaintiff's rights.

355.    Upon information and belief, and as described herein, the disciplinary trial conducted by Defendant Wooley was without jurisdiction or authority of any kind, and therefore a legal nullity.

356.    Upon information and belief, this was not a "quasi-judicial" proceeding, as it was without authority or jurisdiction.

357.    Upon information and belief, unlike a proceeding under § 75 of the N.Y.S. Civil Service Law,[10] there was and is no legal authority permitting the delegation by the Town Board to anyone to hear the police disciplinary case against Lt. Wetzel.   Absent a local law, rule or regulation, the Town Board's duty was non-delegable.

358.    Originally, it appears that the Town recognized that its Town Board was the appropriate entity of Town governmental for adjudicating police officer disciplinary matters, including determining guilt and punishment.

359.    The notice provided to Sgt. Wetzel in connection with her disciplinary charges states that trial would be "before the Town Board." See, Exhibit "3"

360.    Subsequently, the Defendant Town changed its view by appointing a private attorney to conduct a disciplinary trial, find facts, adjudicate guilt, and make a recommendation to the Town Board as to punishment.

361.    Yet Defendants have not produced any State or local law, ordinance, rule or regulation dealing with police discipline, nor any such authorization for the Town Board to delegate governmental authority to a non-governmental entity (Defendant Wooley) regarding police disciplinary matters.

362.    Upon information and belief, no such rule or regulation exists.

363.    Specifically, the Town has promulgated no local law, rules or regulations under the Police Act relating to police sergeants or lieutenants, such as Lt. Wetzel.

364.    Upon information and belief, without legislative authorization such as promulgation of rules and regulations, the Town Board must act in its own stead in police disciplinary matters.

365.    Upon information and belief, in 2006 the N.Y.S. Court of Appeals emphasized that the N.Y.S. Legislature placed police disciplinary decisions in the hands of the municipal board, and that such could not be delegated to an impartial arbitrator negotiated under collective bargaining. See, Matter of Patrolmen's Benevolent Ass'n of City of New York v. New York State Pub. Empl. Relations Bd., 6 N.Y.3d 563 (2006) (consolidated appeal with Matter of Orangetown PBA).

---

[10] Unlike the Police Act, N.Y.S. Civil Service Law § 75 (2) specifically empowers the "officer or body having the power to remove the [employee]" or a "deputy or other person so designated" to conduct a quasi-judicial administrative hearing on the question of a civil service employee's alleged misconduct and/or incompetence. Cf., Thomas v. Westchester County Health Care Corp., 232 F.Supp.2d 273 (S.D.N.Y., 2002) .

366.    Yet, upon information and belief, administrative action taken without written authority is a nullity.  See, *Wiggins v. Board of Educ. of City of New York*, 60 N.Y.2d 385, 387-88, 457 N.E.2d 758, 759-760 (1983).

### Q. Insufficient Butz factors for absolute immunity

367.    Upon information and belief, the following factors, among others, enunciated in Butz v. Economou, 438 U.S. 478, 512 (1978), assist the Court in determining whether a proceeding is sufficiently "judicial" to warrant a grant of absolute immunity (in contrast to considering qualified immunity):

(a) the need to assure that the individual can perform his functions without harassment or intimidation;

(b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

(c) insulation from political influence;

(d) the importance of precedent;

(e) the adversary nature of the process; and

(f) the correctability of error on appeal.

368.    Upon information and belief, applying these factors to the present facts, a grant of immunity to the Defendants herein would be grossly unwarranted.

369.    As to factor "a," upon information and belief, in the present case there is no need to assure that the municipal and law firm Defendants can perform their functions without harassment or intimidation.  This disciplinary case is essentially an employment personnel action.

370.    Upon information and belief, there is absolutely no persuasive reason why any of the defendants in the Wetzel disciplinary proceedings should be granted immunity, particularly as the proceeding is essentially an internal personnel action undertaken to discriminate against, harass, retaliate against and otherwise violate Lt. Wetzel's federal rights.

371.    On the contrary, upon information and belief, allowing the potential for liability for bad faith and intentionally wrongful conduct such as this will ensure that managers of local government employees, and their "hired gun" private lawyers, are held accountable for wrongdoing.

372.    The individuals involved in this case are not judges, nor public prosecutors, and this is not a proceeding which is essentially "governmental" in nature.

373.    As to factor "b," upon information and belief, unlike judges and public prosecutors, here there are no safeguards reducing the need and appropriateness of private damage action to control wrongful and unconstitutional conduct here. There are no rules or regulations which apply to this proceeding, ostensibly under the Police Act, and as the disciplinary transcript will show, it was run in accordance with the whim of the law firm Defendants and Defendant Wooley.

374.    Upon information and belief, as alleged above, Keane & Beane caused or influenced the Town to appoint defendant Wooley as "hearing officer," and defendant Wooley refused to answer any *voir dire* questions on this subject or *voir dire* as to whether or not he was impartial.

375.    Upon information and belief, neither the Town Supervisor nor the Town Board interviewed or even met Defendant Wooley prior to his appointment.

376.    Upon information and belief, there was no panel of hearing officer candidates to select from, nor an established list of qualified and impartial hearing officers. Upon information and belief, Defendant Wooley did not submit a resume or proposal to the Town. Rather, Defendant Wooley's appointment was an *ad hoc* appointment.

377.    Upon information and belief, Defendant Wooley has no *bona fide* credentials as a hearing officer in police disciplinary proceedings, other than, it appears, a reputation for always ruling in favor of his municipal employer. See, Higham v. Temple, supra.

378.    As to factor "c," upon information and belief, the defendants who may seek immunity herein are most certainly not "insulated from political influence," but on the contrary, upon information and belief, political influence resulted in the promotion of the Police Defendants to their present positions, and the hiring of a Keane & Beane and Defendant Wooley and the continued use of the law firm Defendants.

379.    Upon information and belief, under the disciplinary procedures applied to Plaintiff Wetzel's case, there is absolutely no insulation from politics, nor any assurance whatsoever of a fair adjudication.

380.    Moreover, Plaintiff Wetzel alleged political and gender discrimination in her *Wetzel 1* federal lawsuit, resulting in the political act of the Town Board (politicians) authorizing

52

its politically chosen Police Chief/"charging party" (Defendant Nulty), with the help of the Town's and the Police Chief's politically chosen outside counsel (defendants Keane & Beane and Lance Klein) to recommend the political selection of a hearing officer (Defendant Wooley).

381.    Upon information and belief, this factual scenario reeks of self-serving, politically influenced wrongfulness.

382.    Upon information and belief, from these facts, combined with examining the biased, non-impartial and at times outrageously unfair actions of Defendant Wooley in connection with the Wetzel disciplinary proceeding, it is clear that he was chosen to guaranty the desired (politically beneficial) result of "convicting" Lt. Wetzel, regardless of the evidence.

383.    Upon information and belief, to sanctify such a process and proceeding with absolute immunity would be unfounded, unprecedented and most unwarranted expansion of the scope of such immunity to entirely undeserving defendants.

384.    Moreover, upon information and belief, further irregularity regarding the selection and appointment of Defendant Wooley is evidenced by the lack of any competitive process employed by the town in making its selection.

385.    Upon information and belief, even though selecting professionals does not require formal competitive bidding, a competitive process is nonetheless New York's public policy. See, N.Y.S. General Municipal Law § 104-b.

386.    Upon information and belief, no such competitive selection of a hearing officer took place here.

387.    Rather, upon information and belief, what took place was cronyism, designed to fulfill conspiratorial motives and unlawful ends.

388.    Upon information and belief, the court must not deny Plaintiff Wetzel a remedy against the municipal wrongdoers by allowing them to clothe themselves in, and hide behind, "judicial" attire when, in actuality, what they designed was a sham (and a sham without jurisdiction or authority).

389.    As to factors "d" and "e", upon information and belief, the present facts reveal an unprecedented case of local governmental abuse of power, and one which this Court has not likely seen before these facts. The defendants have essentially sought to stage a sham trial, brought on pretextual grounds, designed to convict female police lieutenant because she has opposed unlawful discrimination and reprisal. The disciplinary trial may have some of the

superficial trappings of a genuine trial (a stenographer, a presiding officer, a prosecutor, and an adversarial dialog), but it lacks the reality of an adjudicatory proceeding, because the end result has been purchased by Chief Nulty's attorneys by arranging for the appointment of the fact-finding adjudicator, Defendant Wooley.

390.    The Wetzel disciplinary proceeding had no jurisdiction, nor authority, nor proper delegation, but even if it had these, upon information and belief, under the <u>Butz</u> factors this proceeding is so far removed from the semblance of true "judicial" proceeding that to bestow absolute immunity upon it would be a mockery of justice.  Granting immunity will deny federal rights which Congress sought to protect.

391.    Upon information and belief, neither Congress in enacting the civil rights law including § 1983, nor the Supreme Court in interpreting the civil rights statutes, would approve of a U.S. district court expanding traditionally limited common law absolute immunity to include this intentional creation of a sham administrative tribunal.

392.    <u>And as to factor "f"</u>, it will be virtually impossible to obtain any "correction" through an appeal to the Town Board, if it finds disciplinary guilt against Plaintiff Wetzel by approving the findings and recommendations of Defendant Wooley.  Prior to Town Board action, Plaintiff Wetzel's attorney will likely be denied the ability to directly address the Defendant Town's Town Board.[11]

393.    Likewise, it will be impossible to obtain full relief and corrective action from a State court, for at least two reasons.  First, as with the Town Board, a State court will not likely overrule the "fact-finder's (Defendant Wooley's) determination on issues of witness credibility.  Credibility determinations belong to fact-finder, the hearing officer.  If the fact-finder is biased or, as appears the case here, essentially "paid off" with, at a minimum, an implicit promise of future employment if he decides the disciplinary matter favorably by determining all credibility questions in favor of his municipal and law firm benefactors.

394.    Upon information and belief, no reviewing body will be able to correct this corrupt species of non-impartiality, except by voiding the entire proceeding.

395.    Yet, upon information and belief, voiding the disciplinary proceeding will provide little solace for Lt. Wetzel.  She may be subjected to a re-trial, or the untried September 3, 2004

---

[11]    At least absent a ruling favorable to Plaintiff in her First Amendment right to petition claim pending in this federal court. <u>See</u>, <i>Wetzel 2.</i>

charges (relating to July 4, 2004 events) brought to trial. And in a State court proceeding, she will not have a remedy for the expense and burden of defending her police career against retaliatory disciplinary charges.

396.    Thus, upon information and belief, for an "offense" for which the Town alleges that it initially sought a mere two days' "for the record" penalty from Sgt. Wetzel (and an acknowledgement of guilt for use against her in her federal case), Lt. Wetzel has had to endure 9 days of a disciplinary trial, conducted over a period of 3 ½ months.

397.    The substantial legal services provided to Plaintiff Wetzel cannot likely be recouped voluntarily from the Town and are unavailable through an article 78 proceeding. Economically speaking, it would be unreasonable for a police officer to hire an attorney to contest disciplinary charges where the offered proposed resolution is minimal punishment, and contesting the charge will result in hefty legal fees and potential termination of employment because the adjudication is before a "for hire hanging judge" hearing officer such as Defendant Wooley.

398.    Upon information and belief, these disciplinary charges were intended as a "gun to Lt. Wetzel's head" to settle the charges, so that the municipal and law firm Defendants could then use such resolution against her in *Wetzel 1*.

399.    Upon information and belief, there is no sound policy reason to protect public officials abusing employees (Lt. Wetzel) and citizens (Ms. Colandrea and Mr. Dowd) through maliciously employed, ad hoc, politically self-interested, and manifestly biased personnel "hearing." This is not a "classic adjudicatory case." In form and function, it is about as far removed from an impartial adjudicatory case as one can imagine.

### R. Defendant Chief Nulty's role

400.    Upon information and belief, Chief Nulty was the complainant, because he signed the disciplinary charges against Lt. Wetzel, and it was the Town Board which authorized a Police Act proceeding.

401.    In particular, upon information and belief, the Town Board was the body which authorized a hearing on the charges, which hearing was noticed to be, and should have been, before it, the Town Board.

402.    Upon information and belief, Chief Nulty was not acting in an "executive" capacity, as he did not have the authority as Chief of Police to commence a disciplinary proceeding.  He only had the power to make or prefer disciplinary charges.

403.    Moreover, even assuming *arguendo* that Defendant Chief Nulty had such authority, he should be disqualified out of personal interest from making such decision regarding Lt.Wetzel, as he was already a defendant in her pending 2003 federal lawsuit (*Wetzel 1*) opposing his gender discrimination.

404.    Upon information and belief, a truly neutral, professional arbiter, such as one would expect of  a Judicial Hearing Officer (JHO) or an AAA arbitrator, is quite different from a person who is an employer-chosen or prosecutor-chosen private attorney, especially one chosen to preside over a proceeding where the "correct" adjudication might reasonably result in similar future appointments.

405.    Upon information and belief, granting defendants absolute immunity in this case would create ominous potential.  With such immunity, any malicious public official seeking to retaliate against any disfavored employee or employees (e.g, Afro-Americans, women, gays, Jews or any other disfavored minority) need only hire a high priced law firm to "prosecute" a disciplinary case and use its influence to arrange the appointment of an utterly biased hearing officer (e.g., a KKK member, sexist, homophobe or Nazi) to adjudicate the disciplinary case.

406.    Upon information and belief, if a municipality can intentionally hire a "hanging judge hearing officer" to preside, with the intent of assuring a conviction regardless of the evidence, it will achieve for itself and its client absolute immunity for any racist, sexist, retaliatory or otherwise outrageously illegal acts which it might engage in, notwithstanding federal civil rights laws such as § 1983 designed to protect citizens against such illegality.  It will also gut the merit-based job protection which is fundamental to the competitive civil service system.

407.    In sum, upon information and belief, granting municipal wrongdoers absolute immunity will a) reward a wrongdoer, b) serve no public purpose, and c) potentially subject the court to criticism for granting immunity notwithstanding the Congressional mandate to protect citizens' and public servants' civil rights.

### S.  *Municipal policy and practice*

408.    Upon information and belief, defendants' wrongful actions have been condoned and approved as a policy and practice by the defendant Town, including its Defendant Supervisor, Defendant Police Chief and Town Board

409.    Upon information and belief, Defendant Keane & Beane, as labor counsel for the Town, have a professional duty to keep the Town apprised of the law firms' and Defendant Klein's actions and activities on behalf of the Town, including the action taken with regard to Plaintiff Wetzel and Ms. Colandrea at the Wetzel disciplinary hearing.

410.    Therefore, upon information and belief, the actions of the municipal and law firm Defendants, and Defendant Wooley, reflect municipal policy and practice subjecting the Town to § 1983 liability.

### T.  *Timely EEOC charges-- exhaustion of Title VII remedies*

411.    As to Plaintiff's non-promotion in January 2005 and defendants' reprisal and harassment referenced in the prior paragraphs regarding Plaintiff's surgery, Plaintiff made a timely administrative charge with the U.S. Equal Employment Opportunity Commission (EEOC) in October 2005, and thereafter received a Notice of Right to Sue letter dated May 19, 2006.

412.    Therefore Plaintiff's post-*Wetzel I* claims have been timely as interposed in this action within 90 days of the EEOC Notice of Right to Sue letter in this action commenced in August 2006.

413.    Regarding the reprisal, *inter alia*, in the form of the above-described September 2004 disciplinary charges subsequently tried between July 11 and November 1, 2006 and Keane & Beane's  extortionate letter dated February 1, 2006, Plaintiff has submitted a charge of discrimination/reprisal to the EEOC, which charge has not yet, upon information and belief, been investigated nor acted upon by that federal agency.

414.    Plaintiff has requested the EEOC to conciliate this departmental disciplinary matter with the Town, by convincing the Defendant Town's town board to dismiss the extortionate and retaliatory disciplinary charges against Lt. Wetzel. The Town Board is requested to reject the findings and recommendations of Defendant Wooley. If the EEOC is unsuccessful in this requested conciliation, Plaintiff will request a Right to Sue letter, and seek further amendment of this federal complaint.

415.    Plaintiff Title VII rights are in addition to her rights under 42 U.S.C. § 1983, which require no exhaustion of remedies, and which claims are timely.

## FIRST CLAIM FOR RELIEF—
## GENDER AND POLITICAL NON-AFFILIATION DISCRIMINATION IN DENYING PLAINTIFF A PROMOTION IN JANUARY 2005, IN VIOLATION OF 42 U.S.C. § 1983 AND TITLE VII

416.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

417.    Plaintiff was denied promotion in January 2005 due to her gender and her political non-affiliation.

418.    Instead of Plaintiff Wetzel, a lesser-qualified male officer, James Brown, was selected for promotion and promoted.

*Gender as a factor*

419.    Upon information and belief, Plaintiff Wetzel believes Lt. James Brown to be a fine police officer and supervisor.   Upon information and belief, James Brown's credentials for promotion were superior to those of Anthony Mecurio's and Donald Butterworth's, yet Mecurio and Butterworth were promoted ahead of Brown to mask Chief Nulty's gender animus against women in general, and Plaintiff.

420.    In particular, upon information and belief, in order for Chief Nulty to best conceal his aversion to promoting a politically unconnected woman, he decided to first promote the least qualified men (Mecurio and Butterworth) to avoid the accusation of gender discrimination (by not promoting Brown), and then promote Brown, whose credentials were much closer to those of Plaintiff Wetzel, and Brown was not facing disciplinary charges.

421.    Upon information and belief, Defendants Keane & Beane assisted Chief Nulty in devising this strategy for promoting 3 men while not promoting the most qualified candidate, the Plaintiff, because Plaintiff is a woman.

422.    Upon information and belief, in this case, gender discrimination is intertwined with political discrimination because, as alleged next, the Irish-American organizations from which the Town Board majority receives political support are also male-only organizations.

*Irish support as a political factor*

423.    Lt. Brown was, and is, upon information and belief, a member of a male-only Irish-American organization, the Friendly Sons of St. Patrick.

58

424.    Upon information and belief, Lt. Brown's father is also a member of that organization.

425.    Upon information and belief, the Irish-American vote is important to the political campaign funding and election of politicians in the Town of Orangetown, and several members of the Defendants' town board pander to the "Irish vote" including, for example, attending Irish-American festivals, and providing other funding to Irish-American organizations for sponsorship of such politically popular activities as the St. Patrick's Day parade.

426.    Upon information and belief, the Town Board has a politically-based bias in favor of candidates who are affiliated with Irish-American organizations, because the majority of the Town Board draws political support from such organizations as the Ancient Order of Hibernians ("AOH") and the Friendly Sons of St. Patrick

427.    Both these Irish-American organizations are male-only.

428.    Defendants' actions in discriminating against Plaintiff violate 42 U.S.C. § 1983 and Title VII.

429.    Plaintiff suffered damages thereby.

### SECOND CLAIM FOR RELIEF—
### RETALIATION FOR EXERCISING FEDERAL RIGHTS
### UNDER 42 U.S.C. § 1983 AND TITLE VII

430.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

431.    Defendants retaliated against Plaintiff because Plaintiff opposed gender discrimination, opposing political patronage and political discrimination in police promotions, opposed unlawful retaliation, and opposed the violation of Plaintiff's federal statutory and constitutional rights.

432.    Defendants also retaliated against Plaintiff on account of her political non-affiliation, including not being affiliated with any Catholic, "male only" Irish-American organization.

433.    Defendants retaliation includes making abusive and pretextual disciplinary charges, harassment, threat to prosecute disciplinary charges, and the actual prosecution of disciplinary charges before a sham tribunal.

434.    Plaintiff was damaged thereby.

## THIRD CLAIM FOR RELIEF—
## RETALIATION & DISCRIMINATION IN VIOLATION OF
## THE N.Y.S. HUMAN RIGHTS LAW

435.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

436.    Upon information and belief, defendants have discriminated and retaliated against Plaintiff due to her charges of discrimination and retaliation, including her seeking relief from the courts.

437.    Defendants have also discriminated against Plaintiff in the terms and conditions of her employment, and her promotional opportunities, on account of gender, opposing gender discrimination, opposing political patronage and political discrimination, and on account of her political non-affiliation.

438.    Upon information and belief, the Defendant Town has violated the N.Y.S. Human Rights Law. See, N.Y.S. Executive Law article 15 and §§ 296 et seq.

439.    Plaintiff was damaged thereby.

## FOURTH CLAIM FOR RELIEF—
## ABUSE OF PROCESS

440.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

441.    Upon information and belief, defendants instituted, and prosecuted, disciplinary charges under color of the ostensible authority of the Police Act.

442.    Accordingly, under threat of potential forfeiture of her rights, and perhaps even her civil service employment, Plaintiff was compelled to attend Defendants' proceedings instituted under, and ostensibly tried under, the Police Act.

443.    Defendant Thom Kleiner facilitated and enabled the prosecution of these Police Act proceedings because, upon information and belief, as Supervisor he permitted the prosecution of the disciplinary charges by placing his Police Chief's improperly motivated disciplinary action against Plaintiff before the Town Board, and voted affirmatively to allow the disciplinary charges to proceed to a trial.

444.    Upon information and belief, Supervisor Kleiner also facilitated, placed upon the Town Board agenda, and voted for the appointment of the "for hire" hearing officer, Defendant Wooley.

445.    In this regard, Defendant Supervisor Kleiner knew, or should have known, that Defendant Wooley was not being hired as an impartial hearing officer, but rather was being hired at the recommendation of the prosecutors (Chief Nulty and his attorneys, Keane & Beane) for the purpose of obtaining a conviction regardless of the evidence.

446.    Accordingly, Defendant Kleiner's, Defendant Nulty's and the law firm Defendants' actions, ostensibly under color of the Police Act, caused  the issuance of legal process (notice of disciplinary hearing) compelling Plaintiff to attend a disciplinary proceeding scheduled on July 11, 2006 and all proceedings held thereafter.

447.    Defendants' purpose in pursuing these disciplinary charges was not proper, but rather had the ulterior motive of reprisal, with the purpose of coercing Plaintiff into settling or discontinuing her federal civil rights lawsuit against defendants.

448.    Defendants' use of disciplinary proceedings here constitutes an abuse of legal process, and a perversion of legal process, designed by defendants' to obtain a collateral advantage, and is otherwise intended to benefit defendants through means which are outside the legitimate ends of the process.

449.    This was malicious, wanton and intentional conduct on the part of defendants warranting an award, against the individual defendants, of punitive damages.

450.    Plaintiff was damaged thereby.

## FIFTH CLAIM
## DENIAL OF EQUAL PROTECTION

451.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

452.    Defendants have denied Plaintiff the equal protection of the law, because she is a woman who has opposed unlawful discrimination.

453.    Plaintiff Wetzel has been damaged thereby, for which she seeks the remedies available the 5th and 14th Amendments to the United States Constitution, as enforceable under 42 U.S.C. § 1983.

## SIXTH CLAIM FOR RELIEF——
## VIOLATION OF PLAINTIFF'S RIGHTS TO SUBSTANTIVE AND PROCEDURAL DUE PROCESS

454.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

455.    Upon information and belief, Defendants actions herein were and are designed to deprive Plaintiff of her right to substantive due process, and also designed to deprive Plaintiff of her rights to procedural due process.

***Defendants' Police Act scheme was not "random and unauthorized" wrongdoing***

456.    Upon information and belief, Defendants' actions are not "random and unauthorized."

457.    Rather, upon information and belief, Defendants' actions are intentionally designed, and authorized and official Town policy, municipally devised and intended to violate federal due process rights (as well as Plaintiff's right to equal protection, and her statutory and common law rights).  These actions are not "random and unauthorized acts" as that phrase is interpreted by U.S. Supreme Court precedent such as Parratt v. Taylor, 451 U.S. 527 (1981) and Zinermon v. Burch, 494 U.S. 113 (1990).

458.    Rather, the carefully constructed, lawyer-devised municipal policy, approved by the Police Chief and Town Board, and designed to circumvent established law to deprive Plaintiff of her federally protected due process rights, cannot be considered a "random and unauthorized act" for which a post-deprivation remedy suffices.  Rather, this federal Court must provide a remedy.

459.    Upon information and belief, present here is officially sanctioned governmental action designed to deny Plaintiff her federally protected due process rights.  Plaintiff will be denied any effective remedy if she is afforded only a State court article 78 remedy regarding the intentionally, municipally-designed, due process deprivations.

460.    Upon information and belief, a CPLR article 78 proceeding cannot provide an adequate remedy in the circumstances of this case.

461.    Upon information and belief, the lack of an adequate remedy for an intentional violation such as this is especially apparent if the Town Board either finds no guilt, or is "lenient" regarding punishment.  If it finds no guilt, Plaintiff will have reasonably incurred a very large legal expense (because her job was in jeopardy), yet have no State article 78 remedy at all because the final administrative/Town Board action was not adverse.  If the Town Board finds guilt and imposes punishment of two days (or 10 days, or 20 days, for that matter), all that an article 78 can accomplish is, at most, to invalidate the punishment.  The article 78 proceeding cannot reimburse Plaintiff for the cost and lawyer expense of the article 78 proceeding, nor

obtain damages for the large legal expense incurred in defending the underlying disciplinary case.

462.    In addition, the illegal yet official local governmental action challenged will be reviewed by the local judiciary, which judiciary is sponsored by the same political organizations (local Democratic and Republican) which sponsor the members on the Town Board.   Thus, there is the risk that politics will indirectly influence an State article 78 proceeding, where no jury is available.   Thus, where federally-violative official local action is at hand, and not unofficial "random and unauthorized action," only a federal jury can reasonably and fairly be trusted to guaranty the federal right.

463.    Finally, upon information and belief, the nature of the Defendants' governmentally-clothed wrongdoing denies, and is intended to deny, substantive due process rights--most significantly the right to an impartial adjudicator.

464.    Upon information and belief, nothing is more essential to due process than a fair and impartial adjudicator, because without this, procedural rights make no difference.

***Officially-sanctioned due process violations require a federal remedy***

465.    Upon information and belief, Defendants' officially sanctioned disciplinary process is so arbitrary, capricious, and abhorrent to basic principles of due process as to violate substantive due process of law.

466.    Upon information and belief, Defendants' disciplinary process is designed to deprive Plaintiff of due process of law.

467.    In particular, defendants disciplinary process intentionally, and by design, denied Plaintiff due process of law by:

      a.   denying Plaintiff the right to trial before the town board itself, where she was both notified of this in the notice of charges, and where this such appears a requirement of the Police Act;

      b.   providing Plaintiff with only five work days notice in advance of trial, at the same time Plaintiff was informed of the identity of the hearing officer, namely, June 30, 2006;

      c.   denying Plaintiff's reasonable request for an adjournment regarding the trial scheduled, on five work days notice, for July 11, 2006.

63

d.  bifurcating the September 2004 charges into two sets of charges, thereby requiring Plaintiff to prepare separate defenses for, and undergo, two separate disciplinary trials, one scheduled for July 11th, and the other yet unscheduled one year later.

e.  providing no procedural guidance regarding the conduct of the hearing, with the Town having promulgated no rules or regulations under the Police Act to guide Plaintiff as a disciplinary respondent;

f.  providing no effective opportunity for Plaintiff to subpoena witnesses or evidence prior to the first day of trial, and arguably no power to subpoena witnesses or evidence at all (because the hearing officer tribunal is unauthorized here);

g.  defendant Nulty's attorney, Mr. Klein, forbade Plaintiff's counsel from contacting any town employees in connection with the disciplinary case, and threatened recourse to the federal magistrate judge handling discovery in *Wetzel I* if Plaintiff's counsel attempted to prepare a defense by contacting potential witnesses.[12]

h.  providing no discovery (even of written material confiscated from Plaintiff in September 2004) as to material vital to Plaintiff's defense, such as activity logs, FOB access card records, video camera recordings, Plaintiff's own Memo Book, and many other items requested of the Town, in writing, but refused;

i.  providing no bill of particulars, or adequate opportunity to prepare and request same, so that Plaintiff was not reasonably apprised of the disciplinary charges against her;

j.  providing no specific trial location (e.g., a specific room to convene the proceedings) in its notification to her, so that Plaintiff could so inform the interested public, and have a public trial, as was and is her Police Act right;

_____

[12] See, Keane & Beane (L. Klein ) letter dated June 5, 2006, letter #1.

k. the appearance of bias and non-impartiality by the hearing officer, including that:

    A. there is no indication that defendant Wooley was selected in an impartial manner, but rather appears that he was selected by the defendant Town and defendant Nulty (who has a personal stake in the litigation as a § 1983 defendant), and their counsel, Keane & Beane PC is acting as both an advocate in *Wetzel 1*, as the "prosecutor" in the disciplinary matter, and apparently also as counsel to the Town Board, which in a disciplinary matter is obligated to be an impartial as "judge";

    B. thus, it appears the Charging Party (Defendant Nulty) is vicariously sitting as judge and jury, in violation of the express provisions of § 7 of the Police Act, and fundamental principles of due process;

    C. it appears that defendants attorneys engaged in *ex parte* communication with the hearing officer to establish a trial date on an expedited basis, to prejudice Plaintiff's rights in *Wetzel 1*.

    D. Plaintiff served discovery demands in *Wetzel 1* (inquiring into the retaliatory aspects of defendants actions) on June 28, 2006, and two days later Plaintiff was informed that the disciplinary trial was schedule for 5 work days later;

    E. The disciplinary trial was set to begin two days before the defendants' deposition of Plaintiff in *Wetzel 1*, and thus apparently designed to interfere with Plaintiff's preparation for her deposition in the federal lawsuit, *Wetzel 1*.

    F. There is no evidence that Defendant Wooley had <u>any</u> substantial prior experience in police disciplinary hearings or arbitrations;

    G. There is no evidence that this hearing officer was regularly selected through any regular and competitive system, such as a published request for proposals, or other process designed to avoid the favoritism disfavored by public policy, as described, for example, in N.Y.S. General Municipal Law § 104-b;

l. Plaintiff was has never been notified of what the Town regards as the maximum punishment which could be imposed, if all charges were proven. She is not informed, for example, whether the Town considers termination, or demotion in rank, a possible punishment.

m. The hearing officer's letter indicated that the procedures of Civil Service Law Section 75 will be applied, yet in the Town's challenge to arbitration in police disciplinary matters, New York's highest court expressly held that the

longstanding arbitration procedures were impermissible, and that Civil Service Law Section 75 did <u>not</u> apply. <u>See,</u> *Matter of Patrolmen's Benevolent Ass'n of City of New York v. New York State Pub. Empl. Relations Bd.,* 6 N.Y.3d 563,(2006), decided March 28, 2006 (*"Orangetown v. PBA"*)("...where Civil Service Law §§ 75 and 76 apply, police discipline may be the subject of collective bargaining.").

n.  Notwithstanding *Orangetown v. PBA,* the Town has <u>not</u> promulgated rules and regulations in accordance with Orangetown v PBA, even though that decision pre-dated the disciplinary trial.

o.  There is no "neutral" or "detached" governmental official responsible for supervising this disciplinary procedure, even though the procedure could significantly affect Plaintiff's property or liberty interests, 27 year career, and 2006 achievement of becoming the second female lieutenant in Rockland County history, with an unblemished disciplinary past, significant career achievements and excellent reputation among police officers and supervisors.

p.  There is no procedure in place for a disciplinary respondent to directly input the actual decision-maker, the Town Board, and thus no effective "opportunity to be heard."

q.  Threatening to repeat most or all of the above abuses if the municipal and law firm Defendants choose to prosecute additional disciplinary charges.

468.  Upon information and belief, disciplinary proceedings of civil servants are "quasi-criminal" and punitive in nature, and warrant full due process protections.

469.  Upon information and belief, Defendant Wooley's recommendation is that Plaintiff be penalized in an amount equal to one month's pay.

470.  In sum, this Court must provide a federal venue to remedy the law firm-devised, carefully calculated official action intentionally devised to deprive police officers (such as Plaintiff) of their federal right to due process of law.

471.  Plaintiff Wetzel has been damaged thereby, for which she seeks the remedies available under the 5th and 14th Amendments to the United States Constitution, as enforceable under 42 U.S.C. § 1983.

66

## SEVENTH CLAIM FOR RELIEF—
## CSL § 75-*b* AND COMMON LAW REMEDIES UNDER THIS COURT'S SUPPLEMENTAL JURISDICTION

472.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

### Federal Court's supplemental jurisdiction

473.    28 U.S.C. § 1367, Supplemental jurisdiction, provides in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts <u>shall have supplemental jurisdiction over all other claims that are so related to claims</u> in the action within such original jurisdiction that they form <u>part of the same case or controversy</u> under Article III of the United States Constitution. ***
(emphasis added)

### Civil Service Law § 75-b remedy for retaliation

474.    First, this court has express jurisdiction to review the disciplinary hearing, and to grant Plaintiff a trial, under the provision of Civil Service Law § 75-b.   The disciplinary trial was clearly for the sole purpose of retaliation.

475.    Upon information and belief, Section 75-b provides a remedy in any court of competent jurisdiction, including this federal court.

476.    Plaintiff sought to defend against  the disciplinary charges with a § 75-b defense of retaliation, but was denied such opportunity.

477.    Defendant Wooley would not permit evidence of retaliation at the disciplinary trial.

478.    Plaintiff has a remedy in this Court under N.Y.S. Civil Service Law § 75-b, because her retaliation claim was not permitted at the disciplinary hearing.

### Writ of Certiorari to Town Board

479.    Second, CPLR article 78 review, and review under the common law writs of mandamus, prohibition, *certiorari* or *corum nobis*[13] also, upon information and belief, constitute avenues of legal redress available to the Plaintiff here.

---

[13] Or perhaps even *habeas corpus*, because denying a citizen the means of livelihood and self-support can be viewed as perhaps worse than prison confinement, where the citizen receives a bed, medical care, needed medication, and meals.

480.    Upon information and belief, because CPLR article 78 is merely the codification of common law writs (prohibition, certiorari, mandamus), it is certainly within this federal court's supplemental jurisdiction to provide review using such common law writs and/or CPLR article 78.

481.    Upon information and belief, Plaintiff has no adequate State court remedy for Defendants' officially-sanctioned violation of her due process rights and her right to equal protection of the law.

482.    Therefore, upon information and belief, it would be improper for this federal Court to relegate Plaintiff's due process claims to the State courts, where no adequate remedy is possible in the circumstances of this case.

483.    This Court can grant a writ of certiorari, under its supplemental jurisdiction, directing the Town Board, as a tribunal under the Police Act, to cease and desist from the continued unlawful prosecution of the Wetzel disciplinary case.

484.    This court can declare as invalid and a nullity the disciplinary trial, because under New York law there was and is no legal authority for such trial.

485.    Accordingly, this Court must find, hold and declare that the ostensible "trial" presided over by Defendant Wooley was and is a legal nullity, and should so direct the Town Board via writ of *certiorari*.

### Writ of Prohibition to prevent derivative use of illegal wiretap evidence

486.    Upon information and belief, Plaintiff is also entitled to this Court's declaration and injunction prohibiting the use of wrongfully acquired wiretap evidence used against her in the disciplinary proceeding.

487.    Both Plaintiff and Ms. Colandrea sought suppression of this unlawfully obtained evidence, and both continue to request suppression by this federal court (the request for preliminary injunctive relief is *sub judice* in *Colandrea v. Orangetown*, 06 Civ 11441).

488.    Upon information and belief, the municipal and law firm Defendants have violated the prohibition of the Federal Wiretap Act which provides, at 18 U.S.C. § 2515 that:

> "no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, ... or other authority of ... a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

489.    Moreover, as set forth in 18 U.S.C. § 2517(4):

"No otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character."

490.    Finally, 18 U.S.C. § 2520(g):

"Improper disclosure is violation.--Any willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by section 2517 is a violation of this chapter for purposes of section 2520(a)."

491.    Thus, this Court is empowered within its supplemental jurisdiction to issue a common law writ of prohibition or mandamus, prohibiting the continued use of the unlawfully derived evidence against Plaintiff Wetzel.

492.    Plaintiff is entitled to equitable and legal remedies.

## EIGHTH CLAIM
## CONSPIRACY, INTERFERENCE WITH, AND
## FAILURE TO PROTECT PLAINTIFF'S FEDERAL RIGHTS,
## ACTIONABLE UNDER 42 U.S.C. §§ 1985 AND 1986

493.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

*Section 1985 liability*

494.    Upon information and belief, the defendants herein, under color of law, and as the official policy of the Defendant Town's town board, agreed and conspired to deprive Lt. Wetzel of the equal protection of the law, and to deprive her of other federal rights.

495.    Upon information and belief, the defendants herein, under color of law, and as the official policy of the Defendant Town's town board, similarly agreed and conspired to deprive Plaintiff of the equal protection of the law, and to deprive her of other federal rights.

496.    Upon information and belief, Keane & Beane and defendant Wooley engaged in a "joint participation"[14] with the defendant Town and defendant Police Chief Nulty to deprive both Lt. Wetzel and Ms. Colandrea of federal rights, for reasons including but not limited to gender animus.

497.    Upon information and belief, Keane & Beane, acting in their own self interest and in breach of their duty of loyalty to their municipal client, the defendant Town, conspired with

---

[14] Lugar v. Edmondson Oil Co., 457 U.S. 922, 932-933 (1982)(private litigant appropriately characterized as a state actor when jointly participating with state officials in securing the seizure of private property).

69

Defendant Nulty, whom they represented in both an individual and an official capacity, to deprive Lt. Wetzel of federal rights and equal protection under the law.

498.    Upon information and belief, this conspiracy included an express or implied agreement that Keane & Beane would undertake work for the Town in prosecuting a retaliatory Police Act proceeding against Lt. Wetzel, and in return defendant Nulty would approve the payment of all of Keane & Beane' invoices for legal services, and take all means possible to protect Chief Nulty's personal interest as an individually-named defendant in *Wetzel v. Orangetown* ("*Wetzel 1* ").

499.    Upon information and belief, the purpose of this conspiracy was to wrongfully prosecute and obtain a disciplinary conviction of Lt. Wetzel, to be used against her in Wetzel 1.

500.    Upon information and belief, in furtherance of the conspiracy, Chief Nulty, in his individual capacity, conspired with his private attorneys, Keane & Beane, to arrange for the defendant Town to appoint defendant Wooley as hearing officer in a Police Act proceeding, for the purpose of finding Lt. Wetzel guilty of charges regardless of the evidence.

501.    Upon information and belief, there is no other reasonable explanation for the selection of defendant Wooley as a hearing officer other than that Keane & Beane (or its principal Mr. Klein) expected to receive, by causing his appointment, the desired rulings and outcome.

502.    Keane & Beane and defendant Wooley both have offices in White Plains, whereas Orangetown is located across the Hudson River, in Rockland County.

503.    Keane & Beane and Defendant Wooley have had hearings together prior to the Wetzel disciplinary trial.

504.    Further corroboration that an express or tacit agreement or agreements among the defendants is shown by the manner in which Keane & Beane and Wooley appeared to have clearly acted in concert against Lt. Wetzel at her disciplinary hearing, and issued rulings so patently biased against Lt. Wetzel that any jury will reasonably conclude that defendant Wooley was acting as the accomplice of, and co-conspirator with, the other defendants.

505.    Additional further corroboration of an express or implied agreement is Defendant Wooley's after the disciplinary hearing, including refusing to provide Plaintiff's counsel with information relating to whether or how he could provide argument (e.g., a Closing Statement such as the law firm Defendants) for Defendant Wooley's consideration in making findings and

recommendations, as well as the clearly biased and non-impartial nature of his findings and recommendations.

506.    Upon information and belief, defendant Wooley was appointed by the defendant Town hired with the understanding, express or tacit, that to receive future recommendations of employment by Keane & Beane, and to receive possible future employment from the defendant Town, his assignment was to preside over a sham trial in which he was to use his legal skills to craft findings and a recommendation supporting guilt.

507.    Upon information and belief, the Wetzel disciplinary record is replete with examples of defendant Wooley acting in a manner suggesting that his role was merely to do the other Defendants' bidding, as are his Findings of Fact and Recommendations, recommending in this case the maximum punishment authorized by the Police Act short of termination.

## Section 1985(2) – Obstruction of Justice

508.    Upon information and belief, the defendants conspired to impede, hinder and obstruct the due course of justice with the purposeful intent of denying a citizens, Plaintiff Wetzel and Nicole Colandrea, the equal protection of the law, done under color of state law or authority, and that Plaintiff Wetzel was injured in her property and deprived of federal rights (constitutional and under the Federal Wiretap Act) by the acts of defendants done in furtherance of such conspiracy to deprive citizens of their rights and equal protection of law.

509.    Upon information and belief, 42 U.S.C. Section 1985 is broader than § 1983, in that it creates a cause of action against private actors as well as those acting under color of state law, and therefore encompasses the conduct of the individual Defendants, as the Defendants have at times been private actors (e.g. the law firm Defendants acting in its own self-interest, and also representing Defendant Nulty in his personal capacity), and Defendant Wooley, acting as a "hearing officer" but without any legal authority to do so.

510.    Upon information and belief, and as set forth above, the individual defendants herein have conspired to violate Plaintiff's civil rights, through an agreement to achieve unlawful ends, including but not limited to conspiring to concoct a sham disciplinary proceeding against Plaintiff.

511.    Upon information and belief, Defendants have engaged in obstructing justice in a manner violating § 1985(2), as there are

> "two or more persons ... conspir[ing] to deter, by ... , intimidation, or threat,

71

any party … in any court of the United States ….", namely, Defendant Klein's threat to Lt. Wetzel to settle her federal court lawsuit or face charges, with further intimidation being the use and the continued use of disciplinary proceedings (e.g., the untried September 3, 2004 charges) and future reprisal, and also there are,

➤ "two or more persons conspir[ing] for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, [e.g., Plaintiff Wetzel, because she is a woman opposing gender discrimination],or to injure [her] or [her] property [Plaintiff Wetzel's property right in her public employment] for … attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

512.    Upon information and belief, defendants obstructed justice regarding Plaintiff Wetzel, because she is a woman opposing gender discrimination, and also regarding Plaintiff and Ms. Colandrea, because they requested that the Colandrea-Dowd audiotapes not be played (via a motion to suppress) to the Defendant Town in connection with what it purports to be an official proceeding, namely the disciplinary trial.

### Section 1985(3) – Direct or Indirect intent to deny rights

513.    Upon information and belief, defendants have also engaged in conduct violating § 1985(3), as there are

➤ "two or more persons … conspir[ing] …, for the purpose of depriving, either directly or indirectly, any person or class of persons [Plaintiff and Ms. Colandrea, both women] of the equal protection of the laws [both are women, and both the Defendants' oppose illegal actions against women], or of equal privileges and immunities under the laws; ... [and therefore] the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

514.    Upon information and belief, defendants also conspired to deprive Plaintiff (a person within the same class of citizens as Ms. Colandrea, namely, women[15]) of equal "privileges and immunities under the laws" by devising a sham and utterly biased and unfair disciplinary trial against her, and also by the use in such trial of unlawfully obtained, unlawfully used and unlawfully disclosed wiretap evidence in violation of the provisions, including the derivative evidence provisions, of the Federal Wiretap Act.

---

[15] See, New York State Nat. Organization for Women v. Terry, 886 F.2d 1339 (2d Cir. 1989)("We therefore hold that women may constitute a class for purposes of § 1985(3)").

515.     Upon information and belief, Plaintiff Wetzel was the main or only target of the gender-based discriminatory animus and retaliation regarding the disciplinary, and as such has an entitlement of relief under § 1985.

516.     Nevertheless, Plaintiff Wetzel believes that she is also one in the group of all police women of the Defendant Town who have been either overtly or subtly discriminated against by Defendant Nulty and his administration.

517.     Upon information and belief, Defendants have engaged in a conspiracy which has the purpose, "directly or indirectly ... ", of depriving Lt. Wetzel (and also other female police officers, including those induced into retirement) of the equal protection of the law, and as a result of such conspiracy, Plaintiff was injured and therefore is entitled to a § 1985 remedy.

518.     Thus, upon information and belief, Plaintiff has established all of the elements of a § 1985 cause of action under because here a defendant (1) engaged in a conspiracy, (2) for the purpose of depriving any ... class of persons of equal protection of the laws, (3) acted in furtherance of the conspiracy, and (4) deprived a person of a federally protected right.

### *Section 1986 – Neglect to prevent*

519.     Upon information and belief, the defendants herein had knowledge of the wrongs intended against Lt. Wetzel and of the intention of the municipal and law firm Defendants to orchestrate a sham disciplinary proceeding using a "for hire" hearing officer selected by the prosecutor (Defendant Klein or his firm).

520.     Upon information and belief, the defendants herein had knowledge of the wrongs intended against Lt. Wetzel and of the intention to use and publish the Dowd-Colandrea audiotapes in violation of Lt. Wetzel's and Ms. Colandrea's right to equal protection of the law, yet neglected to prevent, or aid in preventing, such violation of federal rights.

521.     Defendants' neglect was in violation of 42 U.S.C. § 1986.

522.     Upon information and belief, each of the individual defendants had the power to, but neglected or intentionally failed to, prevent the various illegalities alleged herein.

523.     Upon information and belief, Keane & Beane was not acting "solely as attorney" in these matters, but rather was on various occasions acting in the role of a public prosecutor (and thus with a duty to ensure justice, and the public good), and also at other times had the discretion as a quasi-public prosecutor to prevent the interference of rights, for example, by not orchestrating the creation of an utterly unfair and biased trial, amounting to a charade, nor

introducing unlawfully obtained wiretap evidence (the Dowd-Colandrea audiotapes) at such proceeding.

524.    Similarly, the municipal Defendants had the ability to direct their (co-conspiring) outside counsel to protect, rather than hinder and obstruct, Lt. Wetzel's and Ms. Colandrea's rights had they so desired. Instead, they failed to do so, knowing that harm would result.

525.    Similarly Defendant Wooley could have attempted to conduct a fair hearing, notwithstanding the conspiratorial and wrongful purposes for which he was hired. He did not.

526.    Thus, Plaintiff Wetzel was damaged thereby.

## NINTH CAUSE OF ACTION –
## ATTORNEY DECEIT, AND CONSENT TO COLLUSION, UPON COURT IN VIOLATION OF N.Y.S. JUDICIARY LAW § 487

527.    Plaintiff repeats and reiterates the allegations above as if fully set forth again.

528.    Upon information and belief, the law firm Defendants engaged in deceit and collusion, and consented to such, with intent to deceive this federal court, and parties thereto (including Plaintiff Wetzel and the defendant Town of Orangetown).

529.    Upon information and belief, the law firm Defendants engaged in deceit and collusion, and consented to such, with intent to deceive the court, and Defendant Town's Town Board as a body or tribunal authorized to preside over Police Act disciplinary matters, including deceit upon the parties thereto (namely, Plaintiff Wetzel).

530.    Upon information and belief, Defendant Wooley was hired by the Town as a hearing officer because, *inter alia*, Defendant Wooley is a licensed attorney at law.

531.    Upon information and belief, Defendant Wooley's legal malpractice policy may provide defense in connection to the allegation made against him in connection with this complaint.

532.    Upon information and belief, if Defendant Wooley asserts that his acts or omissions alleged in this lawsuit are the result of possible professional negligence his part, his professional malpractice policy may provide potential indemnification under a policy of insurance.

533.    Upon information and belief, in relation to the Wetzel disciplinary proceeding, Defendant Wooley engaged in deceit and collusion and consented to such, with intent to deceive this federal court, and parties thereto (including both Plaintiff Wetzel and the defendant Town of

Orangetown), and also the Town Board, including, *inter alia*, that he was qualified and capable of acting as a fair and impartial hearing officer, when in actuality he was acting as surrogate for the disciplinary prosecutors (the law firm Defendants) and their client, Defendant Nulty.

534.    Upon information and belief, the law firm Defendants and Defendant Wooley have violated N.Y.S. Judiciary Law section 487, for which Plaintiff is entitled to a remedy.

535.    Upon information and belief, Plaintiff, as a party injured, is entitled to treble damages for her injuries, including but not limited to the cost of Plaintiff's legal defense in the Wetzel disciplinary proceeding and the litigation costs of *Wetzel 2*, *Wetzel 4* and the instant litigation (*Wetzel 3*).

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1. An award of compensatory damages in the sum of $1 million;

2. An award of punitive damages in the sum of $6 million.

3. Granting Plaintiff a permanent injunction against continued violation of law,

4. An award of treble damages under the N.Y.S. Judiciary Law, in the sum of $6 million,

5. An award of reasonable attorneys' fees and the costs of this action; and

6. Awarding Plaintiff such other and further relief as the Court deems just and equitable in the circumstances.

**Jury Demand**

*Plaintiff demands trial by jury in this action.*

Dated: Stony Point, New York
     July 9, 2007

Respectfully submitted,

_____
MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff    (MD 2097)*
361 Route 210
Stony Point, N.Y. 10980
845-942-0795
Mike@DiederichLaw.com

## *Exhibits*
Exhibit "1" (Chronology of Events outline)
Exhibit "2" (L. Klein letter dated February 1, 2006 (redacted))
Exhibit "3" (September 7, 2004 Notice of Charges, select pages indicating: "trial before town
     board")
Exhibit "4" (Wetzel-Colandrea telephone conversation of July 7, 2004)
Exhibit "5" (Resolution 441 dated May 22, 2006)

**EXHIBIT V**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

LORRAINE WETZEL,

                Plaintiff,

     -against-

TOWN OF ORANGETOWN, KEVIN NULTY,
AS CHIEF OF POLICE, AND THOM KLEINER,
AS TOWN SUPERVISOR,

                Defendants.

-----------------------------------------------------------------

AMENDED COMPLAINT --
SEEKING DECLARATION OF
FIRST AMENDMENT RIGHT TO
PETITION GOVERNMENT

06 CIV 5144 (SCR)   *"ECF Case"*

## THE PARTIES

1. Plaintiff LORRAINE WETZEL, is and was at all times relevant herein a citizen of the United States and a resident of the Town of Orangetown, County of Rockland, State of New York.

2. Defendant TOWN OF ORANGETOWN (hereinafter "defendant Town"), upon information and belief, is and was at all times relevant herein a municipal corporation organized and existing under the laws of the State of New York, and located within Rockland County.

3. Defendant KEVIN NULTY (hereinafter "defendant Nulty" or "Chief Nulty"), upon information and belief, is and at all times relevant herein was, a resident of the Town of Orangetown, County of Rockland, State of New York, and is sued in his capacity as Chief of Police.

4. Defendant Thom Kleiner (hereinafter "defendant Supervisor" or "defendant Kleiner") is, and was at all times relevant herein, the Supervisor of the Town of Orangetown, and is a resident of the Town of Orangetown, County of Rockland, State of New York.

## JURISDICTION AND VENUE ALLEGATIONS

5. This court has jurisdiction over this action pursuant to the First Amendment of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 1331 and § 1343(4).

## FACTS

6. Plaintiff, a 26 year veteran of the Defendant Town of Orangetown's police department, is its first female sergeant and, as of January 2006, its first female lieutenant.

7. Plaintiff is the second female lieutenant in the history of Rockland County.

8. Plaintiff is and continues to be an exemplary police officer.

### *Background*

9. In 2001, plaintiff filed an New York State petition alleging gender discrimination by her employer, the Defendant's police department.

10.  In December 2003, plaintiff filed a federal complaint, 03 CIV 9896 (SCR), alleging, *inter alia*, gender discrimination by the defendants, including her non-promotion in January 2001 and again in January 2004. See, *Wetzel v. Orangetown*, 03 Civ. 9896 (SRC)(*"Wetzel I"*)

11.  On or about July 12, 2004, plaintiff filed an amended complaint, which included a claim that her non-promotion in January 2004 was due to gender discrimination.

12.  Six weeks later, plaintiff was served with two sets of departmental disciplinary charges dated September 3 and September 7, 2004, respectively.

13.  Upon information and belief, these disciplinary charges were in retaliation for plaintiff's opposition to gender discrimination, and as a method of sabotaging plaintiff's candidacy for an upcoming promotion.

2

14.    Upon information and belief, a less qualified male police officer, Sgt. James Brown, was selected for promotion in January 2005.

15.    In September 2005, U.S. District Court Judge Stephen Robinson denied, in substantial part, the Defendant Town's and Defendant Chief's motion to dismiss the *Wetzel I* complaint.

16.    In January 2006, Defendant Town promoted plaintiff to the rank of lieutenant.

17.    In late January 2006, Lance Klein, Esq., the attorney for Defendant Town and Defendant Nulty, telephoned plaintiff's attorney and asked him to submit a settlement proposal.

18.    Plaintiff's attorney submitted a settlement proposal which was unacceptable to the defendants therein, and Defendant Town and Defendant Nulty made no counterproposal.

19.    By letter dated February 1, 2006, Lance Klein, Esq., wrote plaintiff's attorney, which letter included the following:

> "I also held the mistaken belief that you and your client realized the consequences of the two (2) disciplinary charges pending against her. I can assure you that those cases will be prosecuted as soon as the Court of Appeals makes its determination as to who will hear the charges. It would be a shame for your client, as the first female Lieutenant in the department, to be the first Lieutenant disciplined. (*emphasis added*)

20.    Upon information and belief, Mr. Klein's February 1, 2006 letter essentially attempted to coerce the plaintiff by threatening her with the possible destruction of her police career, professional reputation and livelihood if she refused to abandon or settle her federal discrimination lawsuit.

21.    Upon information and belief, at the time he wrote his February 1, 2006 letter, Mr. Klein was writing on behalf of both defendant Town and defendant Nulty.

3

22.    Upon information and belief, Mr. Klein's February 1, 2006 letter could fairly be characterized as attempted extortion. See, N.Y.S. Penal Law § 155.05.

### Prosecution of one set of disciplinary charges

23.    On Friday, June 30, 2006, shortly before the start of the Independence Day holiday weekend, plaintiff's attorney was informed, by her PBA attorney, that a disciplinary trial was scheduled for July 11th.

24.    Plaintiff's counsel, on June 30, 2006, requested Keane & Beane, P.C.'s consent for an adjournment, which consent was denied.

25.    In particular, defendants' attorney, Edward Phillips, Esq. (of Keane & Beane, PC) indicated to plaintiff's counsel that he had no authority to consent to an adjournment unless plaintiff agreed to withdraw certain discovery requests made in *Wetzel I*.

26.    Plaintiff's counsel, on June 30, 2006, also requested an adjournment from the hearing officer, Mr. Joseph Wooley, which consent was denied.

27.    The disciplinary trial against plaintiff commenced on July 11, 2006, continued on August 4, 2006, and is scheduled to continue on September 6 and September 8, 2006.

28.    This is the first police disciplinary proceeding undertaken by the town since the collectively bargained arbitration procedures previously used were declared void by the New York State Court of Appeals in March 2006.

29.    Upon information and belief, plaintiff's present disciplinary trial is the only disciplinary proceeding (trial, hearing or arbitration) conducted under Defendant Nulty's administration were all pending charges were not tried together, and the balance left to be tried at a future date.

4

30.    Upon information and belief, Defendant Nulty intends to prosecute two separate disciplinary trial against plaintiff, on the separate sets of September 3, 2004 and September 7, 2004 disciplinary charges.

31.    Plaintiff believes that the defendants' intention to conduct separate trials of two sets of disciplinary charges constitutes harassment and coercion, designed to extort a settlement from plaintiff in her *Wetzel 1* federal action.

32.    Upon information and belief, defendants' intention is that Joseph Wooley preside as hearing officer over both the September 3, 2004 and the September 7, 2004 disciplinary charges.

33.    Upon information and belief, Keane & Beane PC identified Joseph Wooley to the defendant Town as a potential candidate for appointment by the Town as a hearing officer.

34.    Upon information and belief, Keane & Beane PC recommended Joseph Wooley for appointment as a hearing officer to the defendant Town, defendant Supervisor or defendant Nulty.

35.    Upon information and belief, the disciplinary proceedings against plaintiff are designed by defendants' to be abusive, unfair, and to ensure that plaintiff has minimal opportunity to defend herself.

36.    A sampling of other unfairness or abuse in the pending disciplinary proceedings include:

a.    the hearing officer, Mr. Wooley, refuses to indicate whether or not he has any prior connection or relationship with the attorneys prosecuting the disciplinary charges (Keane & Beane, PC), and whether he was recommended by the "prosecuting attorney," Mr. Klein;

b.    the hearing officer refuses to state the extent of his prior experience, if any, in police disciplinary matters;

c.    plaintiff has been informed by the hearing officer that she must subpoena coworkers to hearing, even though these police officers are within defendants' control;

5

   d. the hearing officer refused to authorized a subpoena for relevant police department evidence within defendants' control;

   e. plaintiff is being required to use her employment time accruals to attend this disciplinary hearing;

   f. the disciplinary charges have been divided into two sets, thereby subjecting plaintiff to the additional burden and expense of defending against a second set of charges in the future;

   g. the disciplinary charges are baseless, as demonstrated by the lack of evidence presented on the Chief's case, which concluded on the morning of August 4, 2006.

   h. there is no *bona fide* reason to prosecute a police lieutenant on disciplinary charges relating to events which occurred over two years ago, prior to her promotion;

   i. on August 9, 2006, Mr. Klein indicated to plaintiff's counsel that the Town had previously offered settlement of the disciplinary charges with settlement including a "two (2) day suspension." However, because she refuses to be coerced, the Chief is prosecuting her.

   j. the Town Board has only received the point of view of defendant Nulty, with no input from plaintiff, her attorney nor the PBA, regarding these disciplinary matters.

   37.    Plaintiff has never had any disciplinary charges preferred against her either before or after the September 3 and 7, 2004 charges.

   38.    Plaintiff has been performing competently as a lieutenant in the department since her promotion in January, 2006.

   39.    Upon information and belief, plaintiff is currently the 7th most senior police officer in Defendant's police department, a department of between 90 and 100 uniformed members.

   40.    Upon information and belief, the public is entitled to know, and plaintiff through her attorney is entitled to present, a petition for redress directly to the elected political leadership of the defendant Town of Orangetown, including redress for the grievance that plaintiff is being persecuted by the Defendant Nulty because she is a highly competent police supervisor who opposes gender discrimination.

6

41.    Plaintiff's need for judicial recourse might become reduced, or even unnecessary, if plaintiff's attorney, as her spokesman, was allowed to describe to the Town's elected leadership the injustice, unfairness, inequality and retaliation that the plaintiff has encountered.

42.    If plaintiff's attorney was permitted to present plaintiff's grievances to the Defendant's Town Board and Defendant Supervisor, in a public forum, they would be put on public notice of the injustice, and held accountable for their failure and refusal to take appropriate action.

43.    Naturally, it is human nature that public officials will seek to avoid blame for wrongdoing, and seek to avoid being held accountable, whereas the public's interest is open and transparent government.

44.    The First Amendment is designed to compel the airing of disputes and contention, and its "right to petition" should be applied to prevent elected officials from claiming ignorance about complaints brought to their attention.

45.    Upon information and belief, under the First Amendment, a State or political subdivision cannot abridge the right of the people to "petition for the redress of grievances," and therefore, at a minimum, local elected officials are obliged to receive petitions from the public.

46.    By denying her the use of an attorney, plaintiff is being prevented from submitting a petition, whether orally or in writing, directly to the Defendant Supervisor and Town Board.

47.    Upon information and belief, plaintiff is being denied the opportunity to submit a petition to her local government by defendants' outside counsel, with the intention and purpose that one or more of the defendants can avoid political accountability on matters of importance to the public interest.

7

48.   Upon information and belief, the principal basis asserted by defendants in forbidding plaintiff's attorney from communicating directly with defendants' elected leadership is an attorney rule of ethics, DR 7-104.   This rule, generally speaking, prohibits an attorney representing one party to a litigation from communicating directly with the other party to the litigation. Exceptions to the rule exist when consent is given, or where the communication is "authorized by law."

49.   Upon information and belief, the Town's elected leadership has been "kept in the dark" by its outside counsel regarding abusive conduct perpetrated by the Defendant Police Chief and defendants' outside counsel in this litigation.

50.   For example, at their depositions in July 2006, neither the Defendant Supervisor nor Councilman Dennis Troy expressed awareness that defendants' outside counsel had threatened plaintiff with prosecution of the  disciplinary charges if plaintiff refused to abandon her federal discrimination lawsuit against the Defendant Town and Defendant Chief Nulty.

51.   Clearly, the Town's political leadership has received only one point of view regarding plaintiff's circumstances, namely, that of its outside counsel, Keane & Beane, P.C.

52.   Upon information and belief, concealing plaintiff's views and experiences from the political leadership stifles public discussion and debate, and as such, is contrary to the basic principles of the First Amendment.

53.   Because of the legal matters involved, and because plaintiff is a party to a pending action with the defendants, where anything she says could be possibly misconstrued, the only effective, practical and prudent method for her to communicate to her local government is through her attorney.

8

54.    This Court must therefore declare—for the sake of both public accountability and to vindicate the guarantee of the First Amendment—that plaintiff has the constitutional right to directly communicate, through her attorney, to her local government's leadership at an appropriate time, place and manner.

### A petition to the Town, by Plaintiff's attorney, might correct the injustice

55.    Upon information and belief, it is possible that one or more members of the Town Board are not aware of plaintiff's exceptional competence, and Defendant Nulty's and Mr. Klein's response to plaintiff's opposition to gender discrimination.

56.    Additionally, it is possible that one or more members of the Town Board are not aware that the disciplinary charges placed against plaintiff are, in actuality, made for one or more ulterior purposes motivated by discrimination and reprisal.

57.    Upon information and belief, Mr. Klein is, on behalf of Defendant Nulty, intentionally hindering and obstructing plaintiff's ability to publicly inform the Town's leadership of the abuse and injustice being perpetrated against her.

58.    Upon information and belief, Mr. Klein is acting as an agent of the Town, and therefore his efforts to keep the town leadership "intentionally ignorant" of relevant facts is designed to provide these elected officials with the "political cover" and "plausible deniability" regarding the Town's improper, discriminatory and retaliatory actions toward its employee and citizen, the plaintiff.

59.    If Plaintiff's attorney were permitted to "petition" the defendant Town's town board at the public input period of a Town Board meeting, in the presence of its statutory Town Attorney, plaintiff believes that the Town Board might come to realize the magnitude of the injustice perpetrated toward plaintiff, and the utterly wrongful nature of the Police Chief's

conduct here, and direct its police chief and/or attorneys to end the retaliatory disciplinary proceedings being pursued against the plaintiff.

60.   If Plaintiff's counsel were permitted to address the town board, he could outline for them, for possible redress, various wrongs and grievances for which plaintiff requests redress.

61.   Annexed hereto as Exhibit "1" is a draft petition, which Plaintiff's attorney would summarize orally at the public input portion of a Town Board meeting.

*Threat of Attorney Ethics Complaint Chills public speech & petition*

62.   Mr. Klein, as attorney for Defendant Town and Defendant Nulty, has forbidden plaintiff's counsel from communicating with the defendant Town or defendant Nulty regarding anything "even remotely connected" to plaintiff's pending federal litigation. <u>See</u>, annexed Exhibit " 2" (L. Klein letter dated August 9, 2006).

63.   Mr. Klein has stated his warning in such broad terms that it includes communication to the Town's political leadership regarding both federal litigation and the disciplinary charges which his firm likely prepared and which Mr. Klein is prosecuting on behalf of Defendant Nulty.

64.   Thus, Defendants' outside counsel, Keane & Beane, P.C., presumably with the authority and approval of the defendants, insulates the Defendant Town and Defendant Supervisor from being presented with plaintiff's rendition of the facts and injustice here.

65.   Keane & Beane's attorney asserts that only his firm can communicate with the defendants, even though, in the disciplinary matter, Defendant Nulty is the "charging party," using Keane & Beane as his prosecuting attorney, while Keane & Beane PC also represents the Town Board, the ostensible impartial final adjudicator.

10

66.    Keane & Beane represents the Defendant Town and Defendant Nulty in the *Wetzel 1* federal action, and as such has the ability to speak to them with confidentiality about anything which might relate to *Wetzel 1*.

67.    Upon information and belief, Keane & Beane has recommended improper action to the Town Board, in its governmental capacity, including but not limited to undertaking adverse and retaliatory action against the plaintiff.

68.    Upon information and belief, Keane & Beane has an ethical obligation to protect the legal interests of its client, Defendant Nulty, whom it represents in *Wetzel 1*.

69.    Upon information and belief, Keane & Beane, P.C., drafted the disciplinary charges against plaintiff.

70.    Upon information and belief, Keane & Beane, P.C. recommended that the defendant Town or defendant Chief prosecute disciplinary charges against plaintiff, including trial of such charges.

71.    Upon information and belief, Keane & Beane, P.C. recommended that a hearing officer, rather than the Town Board, actually conduct the trial of the disciplinary charges against plaintiff.

72.    Upon information and belief, Keane & Beane, P.C., has advised, and continues to advise, the defendant Supervisor, the Town Board, and defendant Nulty regarding the procedures and practices to be applied to the disciplinary charges being prosecuted against plaintiff, purportedly under the Rockland County Police Act.

73.    Upon information and belief, the procedural defects and irregularities encountered in the disciplinary proceedings against plaintiff, taken together, indicate an intent to deprive

plaintiff of due process of law, by subjecting her to a sham trial designed by defendants' to be a

mere charade.  An enumeration is attached.  See, annexed Exhibit "3".

74.    Upon information and belief, the First Amendment requires that the defendants, at

a minimum, receive plaintiff's petition for the redress of grievances regarding the abuse of

governmental power.


*Chilling effect*

75.    Here, the threat of a lawyer professional ethics complaint inhibits plaintiff's

attorney from being plaintiff's spokesperson in petitioning her local government for the redress

of grievances.  This abridges, and profoundly chills, plaintiff's First Amendment rights.

76.    First, if a complaint of lawyer professional misconduct is made against plaintiff's

attorney, he will need to divert attention from representing his client to instead devote time,

energy and resources to defending his personal reputation and conduct.

77.    Second, if a complaint of lawyer professional misconduct is made, it is possible

that the federal court might view such as founded, and perhaps disqualify plaintiff's attorney

from representing plaintiff in her federal lawsuit.

78.    This would have the serious impact of depriving the litigant of her chosen

counsel, and implicate the First Amendment right of association.

79.    The threat chills plaintiff, through her attorney, from petitioning her local

government.

80.    Third, this is not an abstract issue.  In Mr. Klein's letter of August 9, 2006, he

threatens to "report [plaintiff's counsel's] conduct to the appropriate grievance committee," if a

direct communication is made.

12

81.    Based upon the above, plaintiff's attorney will certainly not seek to communicate to the Town Board or Defendant Supervisor regarding plaintiff's desired petition for the redress of grievances.

82.    However, because of the legal issues involved, plaintiff's petition requires presentation by an attorney, for the same reason that an attorney is used to petition government via a lawsuit.

83.    Consequently, due to the threat of an attorney ethics grievance, plaintiff is effectively deprived of her right to petition her local government.

### DR 7-104's exceptions—not "party" to litigation

84.    Upon information and belief, it is not ethically improper for plaintiff's attorney to communicate with the local government and its representatives regarding official governmental action being undertaken against his client.

85.    In particular, the relevant disciplinary rule, DR 7-104, prohibits a lawyer from communicating

> "during the course of the representation ... on the subject of the representation ... unless the lawyer has the prior consent of the lawyer representing such other party or his authorized by law to do so. "

86.    First, as to departmental disciplinary charges, the Town Board is not a "party represented" within the meaning of DR 7-104.  Rather, it is acting in a governmental capacity, not in the role of a litigant.

87.    Thus, plaintiff's counsel should be permitted to communicate with the Town Board on this subject, particularly where, as here, there are no disciplinary procedures in place under the Rockland County Police Act prohibiting such contact.

13

88.    For example, plaintiff contests the very authority of the hearing officer to conduct a hearing, as the notice of disciplinary charges stated that plaintiff had the right to a trial before the Town Board itself.

89.    Plaintiff's attorney should be permitted to make this argument, attacking the hearing officer's jurisdiction, directly to the Town Board.

***First Amendment provides authorization***

90.    Second, as to the subject of plaintiff's federal claims, there is no basis for denying a citizen the First Amendment right to petition government through the assertion of DR 7-104. This attorney ethics rule is designed to prevent unfair litigation advantage or to circumvent an attorney-client relationship, not to abridge First Amendment rights.

91.    Respectfully, a citizen's right First Amendment right to seek redress from his or her government is a much more significant interest than a municipality's interest in hiding behind an attorney ethics rule, for the purpose of avoiding the petition for redress.

92.    DR 7-104 provides an exception to its prohibition, where a communication is "authorized by law."

93.    The First Amendment, as the supreme law of the land, and the most important of the Bill of Rights in protecting citizens against abuse from government, provides such authorization.

94.    Upon information and belief, an attorney communication with a municipal government on the subject of governmental action (such as prosecution of disciplinary charges) or on the subject of pending civil rights litigation against the municipality must be regarded as a communication "authorized by law," namely, the First Amendment to the United States Constitution, and Article I, Section 9, of the New York Constitution.

95.    However, only a court can declare what is "authorized by law."

14

96.    Upon information and belief, organizations such as the New York State Bar Association, which provide ethics opinions, expressly decline to state an opinion as to what is "authorized by law." See, e.g., N.Y.S. Bar Ass'n, Committee on Professional Ethics Opinion 652 (8/27/93)(discussing when, under DR 7-104, an attorney may communicate with a governmental entity represented by counsel, and mentioning the constitutional right to petition as beyond the Committee's power to opine).

*Implied Consent*

97.    Third, it is permissible to communicate with a party under DR 7-104 with the advance consent of the party's attorney.

98.    If the Town Board and Defendant Supervisor had independent counsel in this matters, such attorney would undoubtedly, if with the people's interest in mind, consent to the communication and petition for redress which plaintiff seeks.

99.    However, it is clear that Keane & Beane, P.C. is providing the principal legal advice to all the defendants, and therefore plaintiff's right to petition is effectively being denied by unelected, politically unaccountable, outside counsel.

100.   Upon information and belief, because of the Defendant Chief of Police's prosecutor (and his law firm) have the ability to communicate "ex parte" directly to the Town Board, plaintiff's attorney should be permitted access as well.  Such consent should be implied by law in the circumstances of this case.

*State Actors abridging free speech & right to petition*

101.   Because a Court's opinion is needed to define the constitutional right, it is vital that this Court so declare plaintiff's right to petition her government in the circumstances of this case.

102. Defendants' outside counsel should not be permitted to define plaintiff's First Amendment rights.

103. Upon information and belief, denying plaintiff the opportunity to have her attorney address the town board at the public input portion of a town board meeting, or at some other mutually agreed session, deprives plaintiff of her right to petition the government, in violation of the First Amendment to the U.S. Constitution.

104. Upon information and belief, Defendant Kleiner is an active participant in defendants' refusal to allow plaintiff the right, through her attorney, to petition town government.

105. Upon information and belief, Defendant Kleiner, as a licensed attorney, is aware of the Defendant Town's ability to consent to permitting plaintiff to petition her local government using her attorney to do so.

106. Upon information and belief, Defendant Kleiner could:

    a. grant plaintiff's counsel a reasonable amount of time to speak at a public meeting;

    b. arrange for the presence of the Town Attorney and/or outside counsel;

    c. inform his town board colleagues that they are only to listen, not respond, absent the consent of the Town's legal representative;

    d. arrange for an executive session, outside of public view, with or without the presence of plaintiff and her counsel, if potentially beneficial to the Town or its citizenry (including plaintiff).

107. Upon information and belief, instead of taking the above approach, Defendant Kleiner has approved the actions of defendants' outside counsel in attempting to insulate town officials from the ramifications of this local government's actions toward plaintiff.

16

108. Upon information and belief, Defendant Kleiner has improperly delegated the governmental authority of the town to defendants' outside counsel, Keane & Beane, P.C., and its partner, Lance Klein, Esq., thereby essentially making them "state actors" and agents of the Town.

109. Upon information and belief, Defendant Town has permitted Mr. Klein, its outside counsel, to create municipal policy that a citizen of the Town cannot address the Town on matters of public concern if he or she has brought a lawsuit against the Town on some other matter, or on the matter of public concern.

110. Upon information and belief, as the top executive in the town, Supervisor Kleiner has the responsibility and obligation to allow all citizens the right to petition the Town regarding matters of local governance.

111. Upon information and belief, Defendant Kleiner should not permit his Town government to hide behind their outside counsel's self-serving claims of the purported applicability of DR 7-104.

112. Defendant Kleiner and his Town Board should permit plaintiff, through her attorney, the opportunity to address the Town government on matters of public concern, including her claims of institutionalized gender bias and improper retaliation by the most senior police official or officials in the Town.

*Prior Restraint of Speech/Petition*

113. Upon information and belief, threatening plaintiff's attorney with a professional ethics grievance if he attempts to communicate with the town board constitutes a prior restraint, sanctioned by the defendant Town and defendant Supervisor, and designed to chill plaintiff's right to exercise her First Amendment right to petition her government, and of free speech.

*History of Reprisal*

114. Defendant Nulty has a history of retaliating against individuals.

115. Plaintiff therefore requests that this Court direct that defendants not retaliate against plaintiff for filing this amended complaint.

## FIRST CLAIM FOR RELIEF—
## DECLARATION REGARDING DEFENDANTS' INFRINGEMENT OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES, AND ITS PRIOR RESTRAINT ON SPEECH

116. Plaintiff hereby repeats and realleges each allegation contained above as if fully set for again at length.

117. Plaintiff, like all other citizens, possesses a First Amendment right to be able to petition her government for the redress of grievances.

118. Plaintiff, like all other citizens, possesses a First Amendment right to be able to associate with other persons, including her attorney, in connection with her personal affairs.

119. Plaintiff, through her attorney, possesses the right to petition her government for the redress of grievances.

120. Defendants are denying plaintiff's right to petition her government.

121. These threats constitute, *inter alia*, a prior restraint chilling plaintiff's exercise, through her desired spokesperson, of her First Amendment rights to free speech and to petition for the redress of grievances.

122. Defendants' refusal to permit plaintiff herself to address the Town Board on the subject of the pending disciplinary proceedings, and its potential use of police department general orders to enforce such prohibition, also constitutes a prior restraint and a denial of First Amendment rights.

123. Defendants' conduct constitutes state action remediable 42 U.S.C. § 1983.

18

124. Plaintiff requests that the Court declare that plaintiff, individually and through her attorney, is authorized to communicate to her local government regarding governmental action (for example, action authorizing a disciplinary trial before a hearing officer), as a matter of free speech and right to petition government for the redress of grievances.

125. Plaintiff requests that the Court declare that plaintiff, through her attorney, is authorized to communicate to her local government on matters of public and private concern, as her First Amendment right to petition government for the redress of grievances.

## SECOND CLAIM FOR RELIEF—
## N.Y.S. CONSTITUTIONAL RIGHTS TO PETITION,
## SPEECH & ASSOCIATION

126. Plaintiff hereby repeats and realleges each allegation contained above as if fully set for again at length.

127. The Constitution of the State of New York guarantees its citizens the right to freedom of speech, and to petition government.  See, N.Y.S. Constit., art. I, §§ 8 & 9.

128. An interpretation of New York law which prevents an attorney from presenting his client's petition to local government violates the State constitution.

129. The Court must declare that plaintiff has the right, though her attorney, to petition her government, and that this right is guaranteed by the New York State constitution.

WHEREFORE, plaintiff prays that this Court grant judgment to her containing the following relief:

1. This Court's declaration that plaintiff has the right, through her attorney, to petition her local government for the redress of grievances, and can permissibly present an oral statement and written submission at the public input portion of a Town Board meeting.

19

2.  Granting plaintiff a permanent injunction enjoining defendants from taking any action against plaintiff in reprisal for the exercise of her First Amendment right to petition her local government, whether personally or through her attorney, for the redress of grievances.

3. An award of reasonable attorneys' fees and the costs of this action; and

4. Awarding plaintiff such other and further relief as the Court deems just and equitable in the circumstances.

### Jury Demand--Waived

*No damages are sought; plaintiff's right to jury is waived.*

Dated: Stony Point, New York
       August 10, 2006

Respectfully submitted,

_____/S/_____
MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff   (MD 2097)*
361 Route 210
Stony Point, N.Y. 10980
845-942-0795


*Complaint Exhibits:*
Exhibit "1" – Draft "Petition for Redress"
Exhibit "2" – Klein letter of August 9, 2006
Exhibit "3" – Itemization of due process deprivations

# EXHIBIT "1"
## *DRAFT* PETITION FOR REDRESS OF GRIEVANCES

To: The Orangetown Town Board

From: Michael D. Diederich, Jr.;

Re: Gender Discrimination and Reprisal in the Police Department

This is a petition for the redress of grievances, presented on behalf of my client, Police Lieutenant Lorraine Wetzel, for the following purposes:

a. To outline the history and continuation of gender bias in the police department's management;

b. To briefly describe the huge waste of taxpayer dollars apparently spent for the sole purpose of transforming the Police Chief into a "Police Dictator", where he need not comply with civil service law and policy, but instead is bestowed with unfettered discretion to arbitrarily punish any police officer who might mistakenly believe that loyalty to the Constitution, and to the Townspeople, is of greater importance than personal loyalty to the police department leadership;

c. To briefly describe the reprisal and abuse of Lt. Wetzel individually, for her bravery in opposing gender bias in police department, and in particular its Police Chief's creation of a gender based "glass ceiling" in promotions.

As to an outline of the institutionalization of gender discrimination under the administration of Police Chief Kevin Nulty, and his reprisal for opposing discrimination and illegality, several individuals are willing to provide direct testimony:

1. I am personally willing to attest to my opinion that Chief Nulty condoned misconduct of at one or more subordinate police officer. Details can be provided either publicly, or in executive session.

2. Retired Orangetown Police Officer Barbara Noyes can testify as to how Chief Nulty had a method for denying promotion to worthy officers, including officers who were highly competent but not "yes" men, in particular, Sgt. Edward Fitzgerald, and herself, the first female police officer hired by the Town. Sgt. Noyes retired from the OTPD with great resentment over the unfairness, and now works as a police officer in South Nyack. She can testify as to some of the unsavory tactics employed by Chief Nulty to sabotage her candidacy for promotion, and make it clear that he would not promote a woman. She can describe the bogus disciplinary charges which Chief Nulty made against her.

3. Police Officer Sue Lanoce may testify, if given adequate assurances against Chief Nulty's reprisal, that she felt threatened by the possibility of disciplinary charges or other adverse action in connection with time accruals and her pregnancy leave and maternity leave. She, in fact, filed a charge of discrimination with the US Equal Employment Opportunity Commission.

4. Each and every police officer in the department can undoubtedly testify that without a fair departmental disciplinary process, officers will fear taking action contrary to the wishes of the police chief, especially if the "system" permits baseless charges to be prosecuted, which charges could result in lost of employment and destruction of a police career. Without a fair system of discipline, the police chief becomes much more than a leader and administrator, but rather a virtual dictator who can demand personal loyalty from police officers sworn to uphold the law and serve in the interest of the Town and its citizenry.

2

5. Lt. Lorraine Wetzel can testify as to the unfairness and gender bias (and also potential political cronyism) of the Anthony Mccurio promotion in 2001, and how the bias continued after his promotion.

Lt. Wetzel can then testify about the bogus disciplinary charges which were served upon her approximately 6 weeks after she filed an amended federal complaint in July 2004 relating to her 2004 non-promotion, and just days after a newspaper article in Our Town was published relating to the allegations of gender bias against Sgt. Wetzel. She can testify how these unfounded disciplinary charges were not properly investigated; how they appeared designed to sabotage her 2005 promotional opportunity, and the further harassment which she encountered from the Chief's administration after her non-promotion in 2005, including the Chief's directive that she be examined by a gynecologist who was not her own, and not even a police surgeon, and reasons which appear designed as harassment.

Lt. Wetzel can then testify how she was surprised to be promoted in January 2006, because the male candidate at that time had credentials superior to her own (unlike the situation in her three prior non-promotions in 2001, 2004 and 2005), thereby causing some understandable resentment by the men. Lt. Wetzel seeks only to be treated fairly with men, not better than her male colleagues.

Moreover, she believes the Town Board selected her only because the federal court had denied, for the most part, the Town's motion to dismiss her federal gender discrimination complaint.

However, rather than then attempting to make a good faith effort to amicably resolve its differences with Lt. Wetzel, Chief Nulty's attorney instead issued a threat, which essentially amounted to coercion for her to abandon her federal lawsuit opposing gender discrimination, or

3

face departmental disciplinary charges. This amounted to, it appears, attempted extortion—coercion to drop legitimate claims of gender discrimination, or face false a trial where, if she was found guilty by a factfinder hired by the Town (and perhaps selected by Chief Nulty or his attorney), would mean not only a permanent stain on an otherwise unblemished 26 year police record, but possibly even result in termination of her employment.

In sum, Lt. Wetzel has much to tell the Town, through her attorney, if it is willing to listen. She believes it is her constitutional right to be able to ask the Town to redress its wrongful conduct toward her. The Town should not be afraid to hear the truth, no matter how embarrassing this might be for the officials, and the attorneys, who have condoned the bias, the unfairness, the coercion and the retaliation.

5. Any one of a number of people can testify to the unfairness of the disciplinary proceedings being employed, starting with PBA Attorney Joseph Baumgartner. He urged his police officer clients to enter into agreements with the Town, perhaps because he realized that a disciplinary hearing without rules and procedures, and with a hearing officer unilaterally selected by the Town (perhaps selected by the Chief's personal attorneys), would likely be a show trial and a charade.

Lt. Wetzel's attorney, and other attorneys who have handled civil service cases, can testify how abnormal, irregular and unfair these proceedings have been, including providing a mere 4 business days to prepare for a hearing, with no mechanisms for an orderly and fair management of the proceeding. Lt. Wetzel was deprived of the evidence in her possession—confiscated by the Chief's administration two years ago, without return to her, and she has been denied significant items of evidence which would aid her defense.

4

Most significantly, the Chief's prosecuting attorney (who is also the attorney defending him against Lt. Wetzel's federal complaint of discrimination) has not presented a credible case for any neglect or misconduct on the part of Lt. Wetzel, yet nonetheless refuses to drop the proceedings. The hearing officer, paid $195 per hour, has no inclination to dismiss any charges, and has refused to dismiss even charges which reference incorrect General Order provisions, irrelevant to anything, and patently warranting dismissal.

As the people in attendance can attest, it is a trial which is in reality a charade. It is a disgrace that in the Town of Orangetown a career law enforcement officer can be subjected to sham justice—a hearing which is essentially a hoax—merely because she had courage to stand up to and oppose gender bias in her job.

6. It is undoubtedly the case that the Town has expended an exorbitant sum of money to pay its attorneys in connection with police department matters. This is likely money not well spent, but rather wasted:

a. Why is a high-priced outside firm from White Plains, rather than a local attorney or better, a Deputy Town Attorney, not prosecuting police disciplinary matters?

b. Why did the Town likely expend tens or hundreds of thousands of dollars or more to fight for "town board control" over disciplinary cases, when the local PBA likely should have (and perhaps would have) simply agreed to such if reasonable protections where incorporated into the process (such as selection of a mutually agreeable, and impartial, hearing officer to adjudicate disciplinary cases)?

c. What sum of money has been spent opposing plaintiff's efforts to seek gender equality? In this regard, is the Town Board afraid to learn the details of why plaintiff and her

5

attorney believe that Chief Nulty has been intentionally biased in promotional decisionmaking, and acts with reprisal toward those who oppose bias and unfairness?

  d. Has the Town Board considered the economic consequences of discriminating against and retaliating against a loyal public servant who is interested only in providing quality police service and leadership to the Town of Orangetown and its citizenry, and in opposing unlawful discrimination and retaliation?

  e. What it cost the Town for its insistence on possessing the unfettered power to act in an arbitrary and capricious manner, and to condone gender discrimination, cronyism and improper patronage?  Over a million dollars?

  I ran for the office of Rockland County District Attorney in 2003, on a platform that I would be willing to fight political corruption.  I served in Central Iraq with the U.S. Army last year in the belief that the United States stands for "freedom and justice for all."  My client and I remain willing to assist the Town in creating a town which its citizens can be proud of.  This can only be done, however, if the Town is willing to hear the message, not kill the messenger.

       Respectfully submitted,

       */draft /*

       MICHAEL D. DIEDERICH, JR.
       *Attorney for Lt. Lorraine Wetzel*

## Exhibit "3"--
### Itemization (*draft*) of various due process
### deprivations in the pending disciplinary process

The Town's ad hoc and unprecedented disciplinary process is arbitrary and capricious, and designed to deprive Lt. Wetzel of due process of law. It is essentially a sham, and a hoax as far as due process of law is concerned. In particular, defendants intended disciplinary process denies Lt. Wetzel due process of law for a number of reasons including, but not limited to, the following:

  a. denying Lt. Wetzel the right to trial before the town board itself, where she was notified in the notice of charges that trial would be before the Town Board, and where this such appears the requirement of the Police Act;

  b. providing Lt. Wetzel with only four regular work days notice in advance of trial, at the same time Lt. Wetzel was informed of the identity of the hearing officer, namely, June 30, 2006;

  c. denying Lt. Wetzel's reasonable request for an adjournment regarding the trial scheduled, on four work days notice, for July 11, 2006;

  d. bifurcating the September 2004 charges into two sets of charges, thereby requiring Lt. Wetzel to prepare separate defenses for, and undergo, two separate disciplinary trials, one scheduled for July 11th, and the other yet unscheduled;

  e. providing no procedural guidance regarding the conduct of the hearing, with the Town having promulgated no rules or regulations under the Police Act to guide Lt. Wetzel as a disciplinary respondent;

  f. providing deficient notice of her rights, including deficient opportunity to subpoena witnesses and evidence,

  g. purporting to rights similar to those under Civil Service Law § 75, as summarized in the Civil Service Commission "Manual" referred to by the hearing officer in his notice of hearing letter dated June 29, 2006, yet denying such rights;

  h. allowing defendant Nulty's attorney, Mr. Klein, to forbid Lt. Wetzel's counsel from contacting any town employees in connection with the disciplinary case, and threatened recourse to the federal magistrate judge handling discovery in *Wetzel I* if Lt. Wetzel's counsel attempts to prepare a defense by contacting potential witnesses;

  i. refusing to provide evidence relevant to Lt. Wetzel's defense;

3

j.  providing no bill of particulars, or adequate opportunity to prepare and request same, so that Lt. Wetzel is not reasonably apprised of the charges against her;

k.  providing no specific trial location (e.g., a specific room to convene the proceedings) in its notification to her, so that Lt. Wetzel can be confident that her trial will be public, if she elects such option, as is her Police Act right;

l.  the appearance of likely bias and non-impartiality of the hearing officer, and his refusal to state whether he has a prior relationship with Keane & Beane, P.C. or its lead attorney, Lance Klein.

m.  Lt. Wetzel was has never been notified of what the Town regards as the maximum punishment which could be imposed, if all charges were proven. She is not informed, for example, whether the Town considers termination, or demotion in rank, a possible punishment.

n.  The hearing officer's letter indicates that the procedures of Civil Service Law Section 75 will be applied, yet in the Town's challenge to arbitration in police disciplinary matters, New York's highest court expressly held that arbitration was impermissible, because Civil Service Law Section 75 and 76 did <u>not</u> apply.  <u>See, Matter of Town of Orangetown v. Orangetown Policemen's Benevolent Association</u>, No. 34, decided March 28, 2006 ("*Orangetown v. PBA*")("...where Civil Service Law §§ 75 and 76 apply, police discipline may be the subject of collective bargaining.").

o.  Notwithstanding *Orangetown v. PBA*, the Town has not promulgated rules and regulations in accordance with that N.Y. Court of Appeals decision.

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

LORRAINE WETZEL,

Plaintiff,

-against-

TOWN OF ORANGETOWN AND KEVIN NULTY,

Defendants.

------------------------------------------------

**AMENDED COMPLAINT**

06 CIV 5144 (SCR)

MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff* (MD 2097)
361 Route 210
Stony Point, NY 10980
(845) 942-0795
Mike@DiederichLaw.com