UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
LORRAINE WETZEL,

                 Plaintiff,

         -against

                              08 CIV 0196 (SCR)    *ECF Case*
                                  ***"Wetzel 6"***

THE TOWN BOARD OF ORANGETOWN,
THE TOWN OF ORANGETOWN,
THOM KLEINER, MARIE MANNING, AND
DENIS TROY,

                 Defendants.
--------------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF LAW
## OPPOSING DEFENDANTS' MOTION TO DISMISS

                          MICHAEL D. DIEDERICH, JR.
                          *Attorney for Plaintiff*
                          361 Route 210
                          Stony Point, NY 10980
                          (845) 942-0795
                          *Mike@DiederichLaw.com*

TO:  LANCE KLEIN, ESQ.
KEANE & BEANE, P.C.
*Attorneys for Defendants*
445 Hamilton Avenue, 15th Floor
White Plains, NY 10601
 (914) 946-4777

# Table of Contents

PRELIMINARY STATEMENT ................................................... 1

STATEMENT OF FACTS .......................................................... 1

ARGUMENT 5

POINT I PLAINTIFF'S EQUAL PROTECTION CLAIMS  AUGMENT HER DUE PROCESS CLAIMS ......................................................... 5

POINT II PLAINTIFF HAS BEEN DENIED DUE PROCESS OF LAW ................................... 6

    A.   Substantive Due Process ........................................ 8

    B.   Procedural Due Process—e.g., the refusal even to hear Plaintiff's disciplinary defense   14

        1.   Town Board denied Plaintiff the opportunity to be heard .............................. 14

        2.   There is no adequate state law remedy under Plaintiff's circumstances for the Town Board's denial of due process ................................................... 15

        3.   The availability of an Article 78 proceeding is irrelevant where Municipal policy-makers, not "random and unauthorized acts," are involved ...................................... 15

    C.   Due Process denied without a State remedy ......................................... 17

POINT III PLAINTIFF'S CPLR ARTICLE 78 CLAIM, TO THE EXTENT IT MIGHT APPROPRIATELY BE USED TO PROVIDE DECLARATORY OR INJUNCTIVE RELIEF, OR USED IN THE NATURE OF A COMMON LAW WRIT, IS WITHIN THIS COURT'S SUPPLEMENTAL JURISDICTION ....... 18

POINT IV PLAINTIFF WAS DENIED HER FIRST AMENDMENT  RIGHT TO PETITION HER GOVERNMENT  FOR THE REDRESS OF WRONG ............................. 20

POINT V THE INDIVIDUAL DEFENDANTS ARE NAMED ONLY IN THEIR OFFICIAL CAPACITY, AS TOWN BOARD MEMBERS, AND SHOULD NOT BE DISMISSED BECAUSE THEY MAY BE NEEDED IF THE COURT PROVIDES EQUITABLE RELIEF ................................ 21

POINT VI PLAINTIFF'S EXHIBIT "4" SHOULD NOT BE STRICKEN, BECAUSE IT SETS FORTH DETAILED FACTS FROM WHICH REASONABLE INFERENCES CAN BE DRAWN, INCLUDING AN ORCHESTRATED EFFORT TO DEPRIVE POLICE OFFICERS, INCLUDING PLAINTIFF, OF THEIR FEDERAL RIGHTS ................................ 22

POINT VII PLAINTIFF'S CLAIMS SHOULD NOT BE STAYED ......................... 22

CONCLUSION ................................................................. 24

# Table of Authorities

## Cases

*Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080 (1976).................................................... 9

Blount v. Forbes*, 250 A.D. 15, 293 N.Y.S. 319 (1ˢᵗ Dept. 1937)* ............................................... 19

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)
.................................................................................................................................................. 12, 14

*Board of Regents v. Roth, 408 U.S. 564, 570 n.7 (1972)* .............................................................. 14

*Bracy v. Gramley,* 520 U.S. 899, 904-05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) ..................... 11

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985) . 6, 14, 17

**Colondres v. Scoppetta**, 290 F.Supp.2d 376, 383 (E.D.N.Y. 2003)................................................ 10

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, *rehearing
denied*, 426 US 912 (1976)......................................................................................................... 18

*Cullen v. Fliegner*, 18 F.3d 96, 103-04 (2d Cir.), *cert denied*, 115 S.Ct. 480 (1994) ................. 20

*Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) .................. 9

*DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998,
1003, 103 L.Ed.2d 249 (1989)...................................................................................................... 9

*Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 201 (2d Cir. 2002)* ............................ 20

*Garcetti v. Ceballos*, 547 U.S. 410, 417, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)............. 20

Goldberg v. Kelly, 397 U.S. 254, 271 (1970)................................................................................. 13

*Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) .............................. 12, 13

*Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1114 (10th Cir. 2004)...................................... 10

*Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir.
1996)...................................................................................................................................... 10, 17

*Honey v. Distelrath, Chief of Police,* 195 F.3d 531 (9ᵗʰ Cir. 1999) ............................................. 15

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).......................... 9

*In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)............................. 11

*Johnson v. Mississippi*, 403 U.S. 212, 216, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971)..................... 11

Klein v. Department of Mental Hygiene, *15 A.D.2d 562, 222 N.Y.S.2d 1010 (2d Dept. 1961)* ... 19

*Lilgeberg v. Health Services Acquisition Corp*., 486 U.S. 847, 863, 108 S.Ct. 2194, 2205 (1988)
.................................................................................................................................................. 12

*Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 125 S.Ct. 2074, 2083-84 (2005) ............................ 9

*Mathews v. Eldridge*, 424 U.S. 319, 322 (1976)........................................................................... 13

*Mathews v. Eldridge,* 424 U.S. 319, 332-33, 96 S. Ct. 893, 901-2 (1976)............................... 6, 13

*Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 481-82 (1961) ........................................................ 10

*Moore v. City of East Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) ..... 10

*Palko v. Connecticut,* 302 U.S. 319, 325-326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) ........... 6, 8

*Parratt v. Taylor*, 451 U.S. 527 (1981) ................................................................................. 10, 15

*Petrillo v. Town of Tonawanda*, Slip Copy, 2008 WL 905922 W.D.N.Y. (2008) ...................... 10

*Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) ................... 6, 9

*U.S. v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 2101 (1987) ............................................... 6

*Vargas v. City of New York,* 377 F.3d 200 (2d Cir. 2004) ......................................................... 17

*Wetzel "3"*, 06 CIV  6117 ............................................................................................................ 1

*Wetzel "5"*, N.Y.S. Supreme Court, Rockland County, No. 2107/07 .......................................... 1

*Wetzel 2"*, 06 Civ. 5144 .............................................................................................................. 1

*Wetzel 4"*, 06 Civ. 15190 ............................................................................................................ 1

*Wetzel v. Town of Orangetown et al. ("Wetzel 1"),* 03 Civ. 9896........................................ passim

*Withrow v. Larkin,* 421 U.S. 35, 46-47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) ......................... 11

*Zinermon v. Burch*, 494 U.S. 113, 130, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)....... 9, 10, 15

### Statutes

N.Y.S. Admin. Proc. Act § 303 ................................................................................................. 19

N.Y.S. Civil Rights Law, § 15 .................................................................................................. 20

### Treatises

19 N.Y.Jur.2d, <u>Civil Servants</u> § 260 ........................................................................................ 6

### Regulations

12 Rules of the City of New York § 1-07(g) .............................................................................. 19

### Constitutional

U.S. Constit., amend. I....................................................................................................... *passim*

U.S. Constit., amend. XIV ................................................................................................. *passim*

## PRELIMINARY STATEMENT

This is plaintiff's Memorandum of Law in opposition to the Defendants' motion to dismiss claims  (other than equal protection-related claims) in this most recent action in Plaintiff's ongoing battle against the wrongdoing municipal government.  Defendants' motion must be denied in its entirely.

## STATEMENT OF FACTS

The facts are set forth in detail in the Complaint.   Plaintiff is an Orangetown (Rockland County) police lieutenant who has opposing gender and other unlawful discrimination.  In reprisal, the Town brought disciplinary charges against her, and almost two years later, after Plaintiff refused to be extorted into discontinuing her federal court opposition to discrimination,[1] the disciplinary case was tried.  It was not tried before the Town Board, as would have been the proper and noticed venue, but rather tried before a White Plains attorney apparently hand-picked by Keane & Beane, PC, the labor counsel for the Defendant Town (and *Wetzel 1* Defendant Chief Nulty).

The facts summarized below relate to the biased, "for hire," hearing officer, lawyer Joseph Wooley.  Plaintiff will not recount the extensive instances of unfairness and irregularity contained in the complaint, virtually all of which derive from Mr. Wooley's "hire to convict" role.  However, Plaintiff requests the Court to examine both the complaint, and Exhibit "4" thereto, so that it can see for itself the one-sided and palpably unfair actions of Mr. Wooley as agent for the Defendant Town.

---

[1] *Wetzel v. Town of Orangetown et al.* (*"Wetzel 1"*), 03 Civ. 9896 (SCR)(unlawful discrimination/reprisal).  Subsequent lawsuits are:  *"Wetzel 2"*, 06 Civ. 5144  (SCR)( right to petition, currently on appeal), *Wetzel "3"*, 06 CIV  6117 (retaliation),  *Wetzel 4"*, 06 Civ. 15190 (SCR)(FLSA non-payment of wages/overtime during disciplinary trial), and *Wetzel "5"*, N.Y.S. Supreme Court, Rockland County, No. 2107/07 (State court FOIL proceeding); and this action.

The facts and inferences to be drawn from the facts are that Mr. Wooley was absolutely not an impartial adjudicator, and was never intended by the defendant Town or its attorneys to be impartial.[2] Rather, he was hired to convict, regardless of the evidence, as a device for undermining Plaintiff's pending federal lawsuit, *Wetzel 1*, 03 Civ. 9896.

As set forth in the complaint, and most relevant to the issues at hand, Mr. Wooley:

1) was appointed by the Town Board to preside over a disciplinary trial for which there was no legal authority for him to do so (e.g., there was no written delegation), and which disciplinary trial was unauthorized by law, rule or regulation and thus *ultra vires* and without jurisdiction;

2) presided over a disciplinary trial which had no Town or State rules, regulations or formalized procedures, notwithstanding that the Police Act[3] gave the Town the power to make appropriate rules.

3) had no prior credentials or experience, as a hearing officer or otherwise, regarding police disciplinary matters;

4) had a prior working relationship with the Defendant Town's outside counsel, Keane & Beane, PC., which firm apparently selected or recommended him for hire by the Town (and both have offices near each other, in Westchester);

5) gave Plaintiff no notice of his selection by the Town (nor did any other Town official), and thus denied Plaintiff the ability to make pre-trial applications such as requesting a bill of particulars;

6) refused, at the disciplinary hearing, to answer Plaintiff's *voir dire* questions related to impartiality or lack thereof;

7) conducted the disciplinary trial in a manner which was patently biased in favor of the disciplinary prosecutor (Keane & Beane) and patently abusive and unfair toward the Plaintiff, beginning with his refusal to grant a reasonable adjournment of the hearing;

8) exhibited behavior at the hearing corroborating his reputation as a municipal henchman. *See, e.g., Higham v Temple*, 2006 WL 2714712 (S.D.N.Y., Sept. 22, 2006).[4]

---

[2] Defendants go so far as to argue that Mr. Wooley need not be unbiased. *See*, Defendants' Memorandum of Law at p. 12: "In fact, procedural due process does not even require that the adjudicator of the pre-deprivation hearing be unbiased…."

[3] *See*, Rockland County Police Act ("Police Act"), Chapter 526 of N.Y.S. Laws of 1936, *as amended*.

[4] In *Higham*, it was alleged that Wooley is "widely known to always and/or virtually always

The Town Board hired Mr. Wooley, refused to hear Plaintiff's objection regarding the non-impartial and abusive manner in which he was conducting the disciplinary trial, and refused to permit Plaintiff any meaningful opportunity to present a defense to the final disciplinary decision-makers, the Town Board.   The Town Board's procedures did not allow for it to receive <u>any</u> closing argument by Plaintiff Wetzel, nor her comment upon the actual evidence of the disciplinary trial (which showed, in videotape evidence, that the accusations of the <u>sole</u> witness against her on the disciplinary prosecutor's case were materially false, and made in reckless disregard to the actual facts, if not intentional perjury).

The evidence is clear that the Town Board did not see, and did not consider, this exculpatory evidence (of which it likely remains unaware, unless its members have been reading Plaintiff's litigation papers herein).  Rather, it appears to have made its decision solely upon the basis of the "findings" and recommendation of Mr. Wooley.

Moreover, the appointment of Mr. Wooley was approximately 3 months after Keane & Beane's partner Lance Klein[5] threatened in February 2006 to prosecute 2004 disciplinary charges against Plaintiff if Plaintiff refused to discontinue her *Wetzel 1* federal lawsuit against Chief Nulty and the Town.  Plaintiff refused to be extorted into abandoning her opposition to gender discrimination and political cronyism.  As a result, she was confronted with the Town's version of a Stalinist show trial.

Over one year after the disciplinary trial was concluded, the Town Attorney informed

---

decide disciplinary proceedings in favor of the municipal corporate subdivision paying his bill," and, as a result, issued a "biased report and recommendation."

[5]  Mr. Klein has been wearing several hats.  His firm represents the Town in labor matters, including defending it in Wetzel 1 and subsequent litigation all stemming from the disciplinary proceeding.  He also is defending Chief Nulty individually, as a *Wetzel 1* and *Wetzel 3* defendant. And he was the disciplinary prosecutor.

Plaintiff's attorney that he would be afforded "five minutes" to speak, but prohibited him from making "argument on the evidence." *Compl.*¶ 66. Thereafter, the Town Board adopted Mr. Wooley's findings of fact, and punished Plaintiff with a 10 day suspension, which suspension was imposed by Chief Nulty by suspending Plaintiff for 12 days (through the device of deeming Plaintiff's days off as non-suspension time). The suspension was begun prior to the running of the time in which Plaintiff could appeal through a *certiorari* challenge, as provided by the Police Act.

As to post-trial rights under State law, Plaintiff did not have the right to trial *de novo*, but only to an appeal, in the form of *certiorari*. The reviewing court, whether this federal Court or a state court, will not re-try the disciplinary case. Rather, the court will look for legal error and if appropriate remand to the Town for a new disciplinary trial.

Thus, if (as Defendant Town argues) the 9 day disciplinary trial was merely an "initial check" pre-deprivation hearing, there is no provision under the Police Act for a subsequent "full and fair" evidentiary hearing. A CPLR article 78 proceeding would not provide such. It would review only for relief appropriate for *certiorari*, not conduct a "post-deprivation trial."

The Defendant Town, and its Town Board, as official policy, have designed a system calculated to deprive civil servant police officers of their federal right to due process of law. This is not a "random or unauthorized" act by a governmental agent. It is official Town policy. Accordingly, Plaintiff brings this federal challenge against official State (via the Town) action designed to deny federal constitutional rights.

4

# ARGUMENT

## POINT I
## PLAINTIFF'S EQUAL PROTECTION CLAIMS
### AUGMENT HER DUE PROCESS CLAIMS

Defendants do not move to dismiss Plaintiff's equal protection claims (legal and equitable), and for good reason—the case for retaliatory and disparate treatment is manifest. Defendants, however, ask this Court to dismiss Plaintiff's due process and other claims, which will reduce this case to Plaintiff's equal protection claim.

The Court must not accept Defendants' invitation. While Plaintiff is surely the victim of discrimination and reprisal, due process and the right to petition for redress are constitutional rights much too important to be relegated to future victims. Moreover, this case is not about Plaintiff alone. It is about every honest, competent police officer's and civil servant's entitlement to, and expectation of, receiving fair treatment by local government, especially when what is involved is there property interest in their careers as civil servants, and their liberty interest as public employees. The governmental misconduct is egregious here. A scheme to employ a henchman adjudicator is constitutionally obnoxious whether or not the product of unlawful bias.

The government misconduct at issue here places the very integrity of New York's civil service protection of police officers at risk. When excellent and honest cops are wrongfully punished, it means that higher level officials are engaged in mischief or wrongdoing. Thus, it is not only the individual employee here, but also the public interest, which must be protected. This is the two-fold purpose of the State civil service laws. *See generally*, 19 N.Y.JUR.2d, <u>Civil Servants</u> § 260. This Court must ensure basic due process of law and First Amendment rights for the police officers of the Defendant Town, including those who are not women, minorities or whistle-blowers.

5

## POINT II
### PLAINTIFF HAS BEEN DENIED DUE PROCESS OF LAW

Plaintiff does not disagree with the Defendants that, in a public employment case, the

Court should first examine whether Plaintiff had a protected property interest in the benefit in

question, and second, if such a property right exists, to then determine whether Plaintiff was

deprived of that right without due process of law. *See, Cleveland Bd. of Educ. v. Loudermill,* 470

U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985); *Mathews v. Eldridge,* 424 U.S. 319, 332-33, 96 S.

Ct. 893, 901-2 (1976). Defendant cannot contest Plaintiff's property and liberty interest in her

public employment. Thus, the issue at hand is whether she was deprived of due process. As to

due process, as the Supreme Court has taught in *U.S. v. Salerno,* 481 U.S. 739, 746, 107 S.Ct.

2095, 2101 (1987):

> "This Court has held that the Due Process Clause protects individuals against two
> types of government action. So-called "substantive due process" prevents the
> government from engaging in conduct that "shocks the conscience," *Rochin v.*
> *California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), or
> interferes with rights "implicit in the concept of ordered liberty," *Palko v.*
> *Connecticut,* 302 U.S. 319, 325-326, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).
> When government action depriving a person of life, liberty, or property survives
> substantive due process scrutiny, it must still be implemented in a fair manner.
> *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).
> This requirement has traditionally been referred to as "procedural" due process.

The present case involves both substantive and procedural due process violation, and is

unique in its municipal misconduct. Here, the municipal governing body has established a

municipal policy designed to deprive its police officers of a fair hearing, in what is offered as a

full and fair adjudicatory trial, with the trappings and outward indicia of such. After

presentation of formal charges, the appointment of a "hearing officer," and 9 days of public

hearing, complete with stenographer, the disciplinary prosecutor submission of a 46 page

"Closing Statement" six months after the hearing concluded (Plaintiff was denied this option),

and the transcribed 2,000+ page record, the Defendant Town makes the absurd argument that all

of this is in actuality only a "pre-deprivation" proceeding, and thus no constitutional wrong because Plaintiff supposedly has adequate further State remedies.

As argued below, the Defendant Town's arguments cannot withstand constitutional scrutiny. First, there can be no worse violation of substantive due process than an official governmental policy of using an agent paid, here given the title "hearing officer," to "convict" a person regardless of the evidence. This constitutes the official orchestration of a sham proceeding, not dissimilar to the "show trials" of Stalinist Russia. Here, the Defendant Town Board "rigged" the case. This is, simply put, outrageous and egregious conduct, an affront to the Rule of Law, and a violation of substantive due process.

Second, the Defendant Town's argument that there is no "procedural" due process violation because other remedies exist must fail. As further argued below, the case law does not support Defendants' arguments in the unique facts present here. Defendants' view is that a police officer presented with formal charges:

- must defend herself at, say, a nine day trial (incurring the expense of subpoenaing witnesses, employing an attorney, and being deprived of her wages during such attendance[6]);

- is denied the ability to present "her side of the story" to the Town Board, or even to ask it to correct the wrong of being judged by a "for hire" hearing officer;

- must seek relief from an unjust Town Board adjudication through the grant of *certiorari* from a State court,[7] which judicial remedy does not provide for *de novo* trial (retrial) of the disciplinary case, but merely a remand to the Town if the Town's disciplinary proceeding is deemed legally deficient;

---

[6] *See, Wetzel 4, supra*. Magistrate Judge Yanthis has recently recommended that the Court find that Plaintiff was entitled to her wages for her attendance at her own disciplinary trial.

[7] *See*, Police Act § 7 ("The conviction of a member of such police department by the town board shall be subject to review by certiorari to the supreme court in the judicial district in which such town is located….")

7

- must defend at possible re-trial of disciplinary charges before another hearing officer, using perhaps the same procedures as before (perhaps with another biased agent of the Town presiding);

- may have the need for further *certiorari* review, again without *de novo* review of the actual disciplinary charges, and again possible remand to another hearing officer;

- and so on, and so on.

As the Court can see, under New York law, as applied by the Defendant's Town Board, the civil servant is denied what is most essential—a due process in the form of a fair hearing.

Because the official policy and actions of the Town Board provide no adequate, post-deprivation hearing as to the officially sanctioned denial of due process, and because the intentional use of a "for hire" henchman appointed to convict, Defendants' motion to dismiss Plaintiff's due process claims must be denied.

## A. Substantive Due Process

Defendants' citation to excessive force cases is inapposite.  Where, as here, the official policy of local government is to approve a process <u>designed</u> to deny a civil servant of his or her property and liberty rights in his or her public employment—by appointed a person for the purpose of "convicting" of disciplinary charges regardless of the evidence—the municipal misconduct is beyond "arbitrary," but rises to the level of both egregious conduct and also conduct contrary to basic principles of ordered liberty.  As stated in *Palko, supra,* 302 U.S. 319, 327, 58 S.Ct. 149, 153 (1937):

> Fundamental too in the concept of due process, and so in that of liberty, is the thought that condemnation shall be rendered only after trial. *** The hearing, moreover, must be a real one, not a sham or a pretense.(*citations omitted*)

The instant case involves the rare situation where Plaintiff can show that "the public employer was motivated by a desire to curtail … the exercise of an employee's constitutionally protected right[]," namely, basic due process.  *Cf., Bishop v. Wood***,** 426 U.S. 341, 350, 96 S.Ct.

2074, 2080 (1976).(court found no property interest at stake under North Carolina law).

Substantive due process protects individuals against government action that is arbitrary, *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), conscience-shocking, *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952),  or oppressive in a constitutional sense, *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989).  Government action might be so arbitrary that it violates substantive due process "regardless of the fairness of the procedures used."  *Daniels*, *supra*, 474 U.S. at 331, 106 S.Ct. at 665.

Thus, arbitrary conduct by government is a well recognized basis for a substantive due process violation.  As stated in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 125 S.Ct. 2074, 2083-84 (2005):

> "An inquiry of this nature has some logic in the context of a due process challenge, for a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause. *See, e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (stating that the Due Process Clause is intended, in part, to protect the individual against 'the exercise of power without any reasonable justification in the service of a legitimate governmental objective')."

The fact that the Town Board, acting as such, as the official policy-making governing body of the Town, has authorized this tactic of depriving civil servants of their constitutional rights defeats any argument that the Defendant Town may attempt to make that this was a "random and unauthorized" act.  *See, Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Zinermon v. Burch,* 494 U.S. 113, 130, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).  Rather, as argued *infra* in connection with procedural due process, this was State-sanctioned official policy designed to deprive an American citizens, the Plaintiff, of her constitutionally-protected property and liberty rights in public employment.

If there is a constitutional violation, federal courts are available to hear § 1983 suits despite the availability of adequate state procedures. *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 481-82 (1961). *Parratt, Hudson* and their progeny, however, emphasize that there is no constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty. *Zinermon Parratt v. Taylor*, 451 U.S. at 541, 101 S.Ct. at 1916; *Hudson v. Palmer*, 468 U.S. at 531, 533, 104 S.Ct. at 3202-03, 3203-04 *(emphasis added)*. However, "[a]ctions in accordance with an official policy under Monell can hardly be labeled random and unauthorized." *Gonzales v. City of Castle Rock*, 366 F.3d 1093, 1114 (10th Cir. 2004).

The present case does not involve a rogue governmental employee's "random" act, but rather involves official Town policy. As such, a § 1983 remedy must be afforded. As stated in *Petrillo v. Town of Tonawanda*, Slip Copy, 2008 WL 905922 W.D.N.Y. (2008), at p. 6:

> When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. ***

The Court went on to cite *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996), for the proposition:

> "When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process."

*See also*, *Colondres v. Scoppetta*, 290 F.Supp.2d 376, 383 (E.D.N.Y. 2003).

The concern with protection of the individual against the unfair use of the great power of the government is "deeply rooted in this Nation's history and tradition." *Moore v. City of East Cleveland*, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)(plurality opinion).

The intentional use by the Defendant Town of a "bought" adjudicator to deprive its civil

servant of a fair hearing is not merely a "procedural" error, but because it was designed as such by the Town Board, runs to the very heart of the fairness which due process requires. It is a substantive due process violation. Here, the individual defendants have not tilted the playing field, they have sabotaged and corrupted it. This is not merely a biased judge, it is a bought and paid for hanging judge. It is not merely a biased tribunal. Rather, the fix was in. This is not American justice, it is Stalinist injustice. This case is akin to that rare sort of case where a judge is bribed for his decision-making, such as in *Bracy v. Gramley,* 520 U.S. 899, 904-05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997), where the Supreme Court stated:

> Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. <u>But the floor established by the Due Process Clause clearly requires a "fair trial in a fair tribunal,"</u> before a judge with no actual bias against the defendant or interest in the outcome of his particular case. (*citations omitted*)(*emphasis added*)

"Trial before 'an unbiased judge' is essential to due process." *See*, *Johnson v. Mississippi*, 403 U.S. 212, 216, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) And as stated in *Withrow v. Larkin,* 421 U.S. 35, 46-47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975):

> Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' This applies to administrative agencies which adjudicate as well as to courts. <u>Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.</u>' (*citations omitted*)(*emphasis added*)

As stated in *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955):

> <u>A fair trial in a fair tribunal is a basic requirement of due process</u>. Fairness of course requires an absence of actual bias in the trial of cases. But <u>our system of law has always endeavored to prevent even the probability of unfairness</u>. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'Every procedure which would offer a possible temptation to

the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. <u>But to perform its high function in the best way 'justice must satisfy the appearance of justice.</u>' (*citations omitted*)(*emphasis added*)

The standard for reversal for judicial bias is a three part test:  1) the risk of injustice to the parties, 2) the risk of injustice in other cases, and 3) the risk of undermining public confidence. *See, Lilgeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 2205 (1988).  This test is just as appropriate in an administrative proceeding as a judicial one.  As to the "risks" set forth in above prongs, the use of a "for hire" henchman to "adjudicate" an administrative case does not involve the "risk" of unfairness, injustice and undermined public confidence.  Rather, it involves the <u>certainty</u> of such.

The above principles are involved as to any level of due process, whether initial screening or full adjudicatory hearing.  The point of even an initial screening (the pre-deprivation due process argued by Defendants) is to be fair, and there is ordinarily no reason to assume that a governmental department head, such as a police commissioner or deputy, is going to be unfair toward an employee accused of misconduct (e.g., absence from work) when providing the initial check (e.g., the employee calls from his hospital bed, describing his accident driving to work, or alternatively, the employee calls from home, saying he overslept after a night of partying).  The work supervisor is impartial enough, but if the public employee is ultimately fired, he has the right to a full hearing, either before (as New York's civil service laws provide) or after his termination.  The federal constitution requires the full hearing, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972),  with the "when" dependent upon the interests at stake, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).  Here, the Police Act requires the full hearing prior to deprivation, which

12

hearing (though a charade because the fix was in) was provided with all trappings of a full evidentiary trial .

### 1) An "initial check" must be fair

Even if "initial check" due process rules applied (which they do not, because the Police Act intends a full hearing, as the Defendant Town's hearing purported to be), the adjudicator must still be impartial. The Supreme Court is unambiguously clear that the decisionmaker for the property interest at stake <u>must</u> be impartial.  See, e.g., *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)("And, of course, an impartial decision maker is essential.").  Thus, even where a full hearing is only required post-deprivation, there remains the obligation for good-faith judgment by governmental officials to assure initially fair consideration of entitlement claims.  *Mathews v. Eldridge*, 424 U.S. 319, 322 (1976)(initial disability decisions based upon "routine, standard and unbiased medical reports").

A rigged proceeding with a "for hire" adjudicator hired to convict is antithetical to any standard of due process.  It is Stalinist.

### 2) This Court must provide a remedy, lest the federal right to Substantive Due become meaningless

Plaintiff has a property right in her job.  The Defendant Town deprived her of a portion of that property right when it suspended her without pay for 12 days.  The Defendant Town, as a political subdivision acting under color of authority vested in it by the State of New York, chose to appoint a henchman as a hearing officer, in order to obtain a conviction regardless of the evidence or lack thereof.  This scheme was motivated by Plaintiff's *Wetzel 1* opposition to unlawful discrimination.

This is municipal action taken in intentional disregard to Plaintiff's federal constitutional rights.  Plaintiff therefore has a right to seek a federal remedy to vindicate her federal rights.

13

Because the State administrative procedure was unauthorized, *ultra vires*, illegitimate and not sanctioned by State law, there is absolutely no reason why a State court would be a better forum than a federal forum, especially in light of the history of Plaintiff's plight, with this facts at issue here the most recent and culminating event in a sequence of the Defendant Town's violation of Plaintiff's federal rights, as reflected by the pending *Wetzel 1, Wetzel 2, Wetzel 3* and *Wetzel 4* federal actions.

**B. Procedural Due Process—e.g., the refusal even to hear Plaintiff's disciplinary defense**

*1.   Town Board denied Plaintiff the opportunity to be heard*

The Supreme Court has taught that, depending upon the liberty or property interest at stake, differing procedural protection "appropriate to the nature of the case" may be warranted at the pre-termination of benefits or employment stage than at the post-deprivation stage.  *See, e.g., Board of Regents v. Roth, 408 U.S. 564, 570 n.7 (1972); see also, Loudermill, supra.*  Basic is the right to present a defense to the governmental decision-makers, here, the Town Board.

The Defendant Town, and in particular its Town Board, refused to provide Plaintiff with a meaningful opportunity to present her defense to the Town Board decision-makers.   Shortly before the Town Board's December 10, 2007 "adjudication" of guilt, the Town Attorney notified Plaintiff's attorney that he would be allowed to speak to the Town Board for "five minutes," but that he would not be permitted to make a closing statement or "argument on the evidence." *Compl.*¶ 66.   The Town Board by this time had already made up its mind, as revealed in its brief conference with Plaintiff and her attorney after her attorney objected to the disciplinary prosecutor (Mr. Klein) commenting on the evidence during the 5 minutes he was granted.   Thus, the Town Board, in an official capacity (not a random and unauthorized act of an Town agent), intentionally deprived Plaintiff of the most basic element of procedural due process—the right to

14

be heard.

> 2. *There is no adequate state law remedy under Plaintiff's circumstances for the Town Board's denial of due process*

The availability of one form of remedy, *certiorari* to a state court through an article 78 proceeding is insufficient under the circumstances of this case. A State court, or this federal court, can certainly declare that the disciplinary proceeding was legally defective in many respects. This is essentially appellate review.

However, due process requires more under the circumstances of this case. Plaintiff was intentionally denied a fair trial of her disciplinary case. She is entitled to a fair trial, yet that is something which is not possible here. Plaintiff did not receive a constitutionally sufficient hearing before Mr. Wooley, and there is no further venue for a full and fair evidentiary hearing on the charges against her. All that is available is appellate (i.e., "certiorari") review, of the disciplinary trial, not a *de novo* trial of the disciplinary matter under fair conditions. Thus, the procedures designed by the defendant Town and its Town Board deny Plaintiff the hearing to which she is entitled to under *Laudermill* and its progeny.

> 3. *The availability of an Article 78 proceeding is irrelevant where Municipal policy-makers, not "random and unauthorized acts," are involved*

Second, and as argued as to substantive due process above, this is not a case of "random and unauthorized" municipal action. *See*, *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Zinermon v. Burch*, 494 U.S. 113 (1990).[8] As stated in *Alexandre v. Cortes*, 140 F.3d 406 (2d Cir. 1998):

---

[8] In *Zinermon*, the Supreme Court created an exception to the *Parratt* doctrine: relief under §1983 is not barred when the deprivation was predictable; creation of a post-deprivation process was not impossible; and the deprivation was the result of an official's "abuse of his position," and not "random and unauthorized." *See also, Honey v. Distelrath, Chief of Police,* 195 F.3d 531 (9th Cir. 1999)(police officials actions in terminating employee not "random and unauthorized"; available State mandamus remedy did not bar Section 1983 action).

"But 'an adequate post-deprivation remedy is a defense to a Section 1983 due process claim only where the deprivation is random and unauthorized.' By contrast, 'the existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures.'" (*citations omitted*)

Here, it is the Town which has officially devised a scheme for the an intentional deprivation of its employees' rights. The Town Board could have, can, and should be directed to correct this constitutional infirmity. Town rules and regulations providing for a *bona fide* impartial hearing officer (such as an arbitrator or JHO, perhaps with the concurrence of the PBA) would go a long way toward replacing a fraudulent adjudicatory process with a fair process. This Court has the power to so direct.

Defendants cite *Locurto v. Safir,* 264 F.3d 154, 174 (2d Cir. 2001) regarding dissimilar New York City disciplinary procedures. However, *Locurto* is unlike the present case, and, unlike here, includes the concession by the employee that adequate post-deprivation remedies were available to Officer Locurto. The New York City and New York State police officers are provided an administrative means for challenging an non-impartial hearing officer. Police officers in the Defendant Town are not. the State Administrative Procedures Act as to New York State's civil servants.[9]

The defendant Town offers no such protection, as it has promulgated no rules or regulations on this topic, though authorized to do so by the Police Act.

---

[9] *See*, N.Y.S. Admin. Proc. Act § 303 ("Upon the filing in good faith by a party of a timely and sufficient affidavit of personal bias or disqualification of a presiding officer, the agency shall determine the matter as part of the record in the case, and its determination shall be a matter subject to judicial review at the conclusion of the adjudicatory proceeding.") and 12 Rules of the City of New York § 1-07(g) (similar). Thus, New York State and New York City law provides a means for challenging a hearing officer as being biased. Defendant Orangetown has no similar provision, and Mr. Wooley pointedly refused to be subjected to *voir dire* on the subject of partiality or bias.

Neither *Locurto* nor the other similar cases[10] cited by Defendants involve the situation like the one here, where Plaintiff cannot obtain a de novo post-termination hearing, but, at most, would get a *certiorari* remand and the consequent ability of the Town to repeat the abuse through a new disciplinary proceeding.

### C. Due Process denied without a State remedy

The Defendant's Town Board appointed an agent for the purpose of convicting, and thereby denying the constitutional rights of, its police lieutenant, thereby denying her substantive due process, and it refused to provide Plaintiff with a meaningful opportunity to present her defense to it, the decision-makers, thereby depriving Plaintiff of procedural due process.   A State court article 78 proceeding would not provide Plaintiff with a *de novo* hearing, but rather, could merely grant *certiorari* and remand the matter back to the Town if it found legal error, thereby potentially forcing Plaintiff to endure a repeat of an abusive disciplinary process at a *de novo* trial. *See, e.g., Sinicropi v. Milone*, 80 A.D.2d 609, 436 N.Y.S.2d 48 (2d Dept. 1981)(non-impartial adjudicator; direction for *de novo* trial)

This does not comport with the teaching of the Supreme Court in *Loudermill* and its progeny.  Because the officially sponsored due process violation is clear and without a State law remedy, Defendants' motion to dismiss must be denied.

---

[10] *Vargas v. City of New York,* 377 F.3d 200 (2d Cir. 2004) (*Rooker-Feldman* doctrine applied); *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877 (2d Cir. 1996), *cert. denied* 521 U.S. 1140, 118 S.Ct. 15 (1997)(article 78 provided an adequate remedy in that case).

## POINT III

### PLAINTIFF'S CPLR ARTICLE 78 CLAIM, TO THE EXTENT IT MIGHT APPROPRIATELY BE USED TO PROVIDE DECLARATORY OR INJUNCTIVE RELIEF, OR USED IN THE NATURE OF A COMMON LAW WRIT, IS WITHIN THIS COURT'S SUPPLEMENTAL JURISDICTION

The Police Act provides for review by "certiorari."  Certiorari is a common law writ of common usage, such as, for example, the appellate means of reaching the U.S. Supreme Court. It is a form of judicial review, nothing more.

This Court's supplemental jurisdiction is found at 28 U.S.C. § 1367, which  provides in relevant part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *** *(emphasis added)*

As judicially cognizable relief, the *certiorari* provided for by the Police Act certainly comes within this Court's subject matter jurisdiction.    All state law relief which Plaintiff seeks is inextricably intertwined with her federal claims.  *Compl.* ¶  237-38.  Such review is within, and can properly be undertaken under, this Court's supplemental jurisdiction.  See, e.g., City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997).  The federal district courts have, when appropriate, entertained article 78 claims, and the Second Circuit has not held this to be impermissible.   The Court should also be mindful that the federal courts have the "virtually unflagging obligation … to exercise the jurisdiction given them."    *Colorado River Water Conservation District v. United States,*  424 U.S. 800, 817, *rehearing denied*, 426 US 912 (1976) (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183 (1952)).

There can be no doubt that this case involves state claims that are inextricably intertwined

with Plaintiff's Federal claims, and that the state claims are certainly part of the federal case in controversy.   Where claims are not inextricably intertwined, as in the cases cited by Defendant, there is the argument for lack of subject matter jurisdiction.   This is not such a case.  Plaintiff is entitled by federal statute to elect the federal forum, where her federal rights have been violated on numerous occasions in relation to her opposition to unlawful discrimination, and in several constitutional respects regarding the Town Board's action here in continuing the reprisals.

If *certiorari* review is not provided by this federal court, Plaintiff may be forced to forego such remedy and proceed only on her federal claims.  This will, of course, defeat both the spirit and intent of the supplemental jurisdiction provisions of Title 28, regarding claims which are inextricably intertwined.  Accordingly, and especially in light of the other federal issues involved in this case, the Court should permit the possibility of appropriate *certiorari* relief under the auspices of CLPR article 78.

Finally, it would be a tremendous waste of judicial resources for this federal court to decline to review matters of state law,  which review might quickly dispose of the case.  For example, the Court may find it appropriate to grant *certiorari* by determining that the disciplinary proceeding was a legal nullity, because Mr. Wooley possessed no written delegation of authority to act as a hearing officer.[11]  If this Court allows itself the ability to dispose of this case on a State law technicality, it may thereby avoid the need to address the federal claims, such as the equal protection claims which Defendants have not attacked.

---

[11]  *See, e.g., Blount v. Forbes*,  250 A.D. 15, 293 N.Y.S. 319  (1st Dept. 1937)(without written delegation, hearing officer is divested of jurisdiction);  *Klein v. Department of Mental Hygiene,* 15 A.D.2d 562, 222 N.Y.S.2d 1010 (2d Dept. 1961).  The Police Act does not expressly provide for any delegation to hear charges, and the Defendant Town has no rules or regulations authorizing such.
.

## POINT IV
### PLAINTIFF WAS DENIED HER FIRST AMENDMENT
### RIGHT TO PETITION HER GOVERNMENT
### FOR THE REDRESS OF WRONG

The First Amendment, as codified for civil servants in § 15 of the New York State Civil Rights Law, guarantees civil servants the right to petition their government for the redress of grievances. Defendants have repeatedly denied Plaintiff this right.

The Defendants urge the Court to reject Plaintiff's "right to petition" claim because Plaintiff previously sought to petition the Town Board regarding the in-progress disciplinary process. *See, Wetzel 2* (currently on appeal). The *Wetzel 2* case involves distinctly different facts than those present here. Here, the Town Board, acting as an adjudicator, intended to take action (and eventually did take action) on Plaintiff Wetzel's disciplinary case. As argued above, she had a fundamental due process right to be heard in her own defense (which right was denied). If she believed a wrongful process and/or wrongful governmental action was involved, she also was entitled, as a citizen, to petition this government to redress the wrong.

The First Amendment, including the right to petition, provides fundamental protection of individual liberty. There is no principled basis here to deny the right. A petition to a Town Board regarding injustice is nothing akin to speaking as part of "official duties," which was the case in *Garcetti v. Ceballos*, 547 U.S. 410, 417, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Plaintiff's petition is not only of personal interest, but most certainly of public interest, since gender-based retaliation through sham disciplinary proceedings is obviously of public concern.

Thus, the Town deprived Plaintiff of the right to petition when it refused her the ability of presenting a meaningful petition at an appropriate time. A citizen has, of course, the right to

petition the courts for redress, including equitable or declaratory relief.[12]  However, it makes much more sense to recognize the right to petition the offending local government directly, in the first instance, so that the offensive conduct can be stopped.

## POINT V
**THE INDIVIDUAL DEFENDANTS ARE NAMED ONLY IN THEIR OFFICIAL CAPACITY, AS TOWN BOARD MEMBERS, AND SHOULD NOT BE DISMISSED BECAUSE THEY MAY BE NEEDED IF THE COURT PROVIDES EQUITABLE RELIEF**

The individual defendants, as Town Board members, voted in favor of adopting the Report and Recommendation of the hearing officer.   Plaintiff is requesting that this Court direct equitable relief including the voiding of the disciplinary process resulting in the finding that Plaintiff committed dereliction or misconduct as a police sergeant.  Plaintiff also requests that the reprisal and unequal treatment cease.  The Town Board members, acting in their official capacity, accepted and condoned, if not affirmatively participated in, the unlawful and discriminatory treatment of Plaintiff.  Any federal remedy may involve corrective action by the Town Board defendants, who remain in office.

Accordingly, these officials should not be dismissed as parties, because they are needed for the just and proper adjudication of this case.  They may especially be needed if the court directs equitable relief.  Because no damages are sought as to them here, there is not present any issue of qualified or absolute immunity.

---

[12] *See, e.g., Cullen v. Fliegner*, 18 F.3d 96, 103-04 (2d Cir.), *cert denied*, 115 S.Ct. 480 (1994)(granting equitable relief where school district pursued disciplinary charges in a "strictly *ad hominem* manner … impos[ing] a chilling effect" on the teacher's constitutional rights);  *see also, Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 201 (2d Cir. 2002)*(finding that state administrative agency 'was incompetent by reason of bias to adjudicate the issues pending before it ….'").

## POINT VI

**PLAINTIFF'S EXHIBIT "4" SHOULD NOT BE STRICKEN, BECAUSE IT SETS FORTH DETAILED FACTS FROM WHICH REASONABLE INFERENCES CAN BE DRAWN, INCLUDING AN ORCHESTRATED EFFORT TO DEPRIVE POLICE OFFICERS, INCLUDING PLAINTIFF, OF THEIR FEDERAL RIGHTS**

Plaintiff's Exhibit "4" sets forth facts too extensive to be appropriately, or practically, submitted in the form of allegation of a complaint. Yet, these extensive details, and the inference which can and must be drawn from them, paint a much more complete picture of the illegalities involved than could be reasonably contained within the confines of a complaint.

The Town's official adoption of the *Wetzel 3* defendants' scheme to deprive police officers, and Plaintiff Wetzel, of property and liberty interests in their public employment is a carefully devised, well orchestrated and secretive plan. Complaint Exhibit "4" sets forth relevant facts, and various reasonable inferences to be drawn from such facts. This document is highly relevant to understanding the illegalities involved in this case, and the potential damage to the public interest and the integrity of New York's civil service system.

Exhibit "4" involves no procedural burden to Defendants, because no answer is required. The document puts the Defendant Town, and the Court, on notice of the nature of the claims, involving novel territory of due process law, and municipal misconduct is very disturbing in its corruption of local governmental processes and procedures. The rules Defendants cite do not prohibit, nor discourage, an informative document from being appended to a complaint.

## POINT VII

**PLAINTIFF'S CLAIMS SHOULD NOT BE STAYED**

Plaintiff's claims seek, for the most part, equitable relief, to clear her name, her personnel record, and to remedy a wrongfully motivated disciplinary process. The damages Plaintiff seeks are minor by comparison (the suspension without pay). The "stay" Defendants request is totally inappropriate, especially as Defendants requested stay is linked to *Wetzel 3*, which case remains

22

in the pre-discovery stage.

Plaintiff suggests, however, that the Court consider permitting consolidation of her equal protection and due process damages claims with *Wetzel* 3, as Plaintiff's suspension without pay is the culmination of the wrongdoings alleged in *Wetzel* 3.   If this is permitted by the Court, the only claims in the instant action will be equitable claims, which claims the Court can adjudicate without a jury.

Defendants correctly point out that the misconduct leading up to and underlying the Town Board's action is that of the *Wetzel* 3 defendants (the Police Chief, Mr. Klein and Mr. Wooley).  However, the municipal action contested here is that of the Town Board, whose members are sued only in their official capacity here).   This lawsuit seeks a remedy against a local government acting as such, not against individual constitutional tortfeasors.

Plaintiff is entitled to seek a prompt remedy here.  Her police record has been wrongfully stained, and her professional reputation injured, because the Town's outside counsel found a "for hire" attorney to serve as henchman, to find guilt and recommend severe punishment, regardless of the facts.   What the Town did was functionally no different than appointing one of opposing counsel's partners as a federal special magistrate to adjudicate this motion.  The outcome would be most assuredly against Plaintiff, despite the merit of the complaint.

This is not the case of merely a biased hearing officer, but rather a case of a hearing officer paid by the municipal to find guilt.   Opposing counsel has never denied his influence in the hiring of Mr. Wooley.  The circumstantial evidence is compelling.

Thus, after relatively narrow discovery this Court should be able, upon Plaintiff's motion for summary judgment, to adjudicate Plaintiff's federal rights as having been violated and to

grant appropriate equitable relief and a modest damage award for lost wages arising from

Plaintiff's 10 days suspension.

## CONCLUSION

Defendants' motions to dismiss must be denied, and Plaintiff afforded such other and

further relief as the Court may deem just and equitable.

Plaintiff also suggest that the Court consider allowing Plaintiff to make a motion (or to

suggest that the parties stipulate) that Plaintiff's equal protection claim for damages herein be

consolidated with the *Wetzel 3* action pending in this Court, in the interest of judicial economy.

The present case will then involve only equitable relief, such as a very appropriate declaratory

judgment declaring the use of hired henchmen as adjudicators to be antithetical to the Rule of

Law and basic due process of law.


May 8, 2008
Stony Point, NY

                                                    Respectfully submitted,

                                                    _____/S/_____
                                                    MICHAEL D. DIEDERICH, JR.
                                                    *Attorney for Plaintiff   MD 2097*
                                                    361 Route 210
                                                    Stony Point, NY 10980
                                                    (845) 942-0795

TO:  Lance Klein, Esq.
        Keane & Beane, PC